**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORRAINE H. LUCIANO,<br><br>Plaintiff,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT EQUITIES FUND (TIAA-CREF), et al.,<br><br>Defendants. | Civil Action No. 15-6726 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

### SHIPP, District Judge

This matter comes before the Court upon Plaintiff Lorraine H. Luciano's ("Plaintiff") Motion to Confirm Arbitration Award and Reopen the Case. (ECF No. 103.) Defendants Educational Testing Service ("ETS") and the Educational Testing Service Employee Benefits Administration Committee ("EBAC") (collectively, "Defendants") opposed (ECF No. 108), and Plaintiff replied (ECF No. 109). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is granted.

## I. BACKGROUND[1]

The instant putative class action concerns the two ETS retirement and savings plans of Plaintiff's deceased husband, James Rosso ("Mr. Rosso"), both of which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq. (See generally* Am. Compl., ECF No. 3.) Mr. Rosso was employed by ETS from 1979 to 1993 and participated in ETS's 401(a) Plan (the "Plan") and 403(b) Plan. (*Id.* ¶¶ 42–44.) Upon Mr. Rosso's death in 2014, Plaintiff learned from Defendants Teachers Insurance and Annuity Association of America – College Retirement Equities Fund, Teachers Insurance and Annuity Association of America, and College Retirement Equities Fund (collectively, "TIAA-CREF Defendants") that the surviving spouse death benefit she would receive under both plans would be half of Mr. Rosso's account balance, with the other half going to Mr. Rosso's sister and pre-marriage beneficiary, Lucille Rosso. (*Id.* ¶¶ 57–59.) Plaintiff subsequently filed a claim for the entire amount of the account balance, which the TIAA-CREF Defendants denied. (*Id.* ¶¶ 58, 66.) Plaintiff appealed the TIAA-CREF Defendants' decision to ETS, and the denial was affirmed. (*Id.* ¶ 68.)

On October 1, 2015, Plaintiff filed her Amended Complaint challenging Defendants and the TIAA-CREF Defendants' fifty-percent benefit determination. (*See generally* Am. Compl.) On July 29, 2016, upon Defendants and the TIAA-CREF Defendants' Motion to Dismiss the Amended Complaint (ECF Nos. 27, 30), the Court found that the Plan was subject to a mandatory arbitration provision (Mem. Op. 12, ECF No. 59). The Court, accordingly, compelled arbitration for the surviving claims under the Plan and stayed the action pending arbitration as it related to the 403(b) Plan. (July 29, 2016 Order ¶¶ 4, 6, ECF No. 60.)

---

[1] The Court writes for the parties, who are familiar with the facts and procedural history of this matter to date. *See also Luciano v. Teachers Ins. & Annuity Assoc. of Am. – College Ret. Equities Fund (TIAA-CREF)*, No. 15-6726, 2016 WL 4107688, at *1–2 (D.N.J. July 29, 2016). The Court, accordingly, recites only the facts necessary to resolve the instant motion.

2

On April 30, 2018, Ira F. Jaffe, Esq. (the "Arbitrator") held in a thirty-five-page opinion that the terms of the Plan were "clear and unambiguous and require[d] payment to [Plaintiff] of a ... benefit based upon the full Account Balance value of Mr. Rosso's account[.]" (Arbitrator Initial Op. ("Arb. Initial Op.") 33, Ex. A to Pl.'s Mot., ECF No. 103-3; *see generally id.*) On July 27, 2018, Defendants filed a Motion to Vacate the Arbitration Award and for Equitable Reformation of the Plans. (ECF No. 85.) On October 26, 2018, having heard oral argument on October 24, 2018, the Court reopened the action and dismissed Defendants' Motion without prejudice. (Oct. 26, 2018 Order ¶ 2, ECF No. 100; *see also* Oral Arg. Tr. 39:3-9, ECF No. 101 (finding Defendants' motion to vacate and for equitable reformation to be premature because the "Arbitrator found that the parties failed to fully brief [questions regarding relief and breach on] the counts the Court ordered arbitrated and retained jurisdiction").) On August 23, 2019, in an Interim Ruling on Relief, the Arbitrator found that although Plaintiff was entitled to reasonable attorneys' fees and costs, her petition at the time sought "fees significantly in excess of those that are properly awardable in this arbitration[.]" (Interim Ruling on Relief 21, Ex. F to Pl.'s Mot., ECF No. 103-8; *see also id.* at 3 (Plaintiff seeking $793,486.28 in attorneys' fees, costs, and expenses).) The Arbitrator, accordingly, directed Plaintiff to file a revised fee petition. (*Id.* at 32.) In the Second Ruling on Remedy, Attorneys' Fees, and Costs, the Arbitrator again found Plaintiff's fee petition—this time requesting $472,658.72—to be unreasonable, finding that Plaintiff "continued to seek compensation for an outrageously excessive number of hours for the work that reasonably needed to be performed with this arbitration." (Second Ruling on Remedy, Attys.' Fees, and Costs 4, 17, Ex. G to Pl.'s Mot., ECF No. 103-9.) The Court, however, granted requests for costs by Post, Polak, Goodsell & Strauchler, P.A. and Cohn, Lifland, Pearlman, Herrmann & Knopf, LLP for $13,597.22 and $5,377.03, respectively. (*Id.* at 19.) Plaintiff now moves to confirm all three of the Arbitrator's decisions and reopen the case. (ECF No. 103.)

3

## II. LEGAL STANDARD

"There is a strong presumption under the Federal Arbitration Act [("FAA")], 9 U.S.C. § 1 *et seq.*, in favor of enforcing arbitration awards." *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "As such, an award is presumed valid unless it is affirmatively shown to be otherwise, and the validity of an award is subject to attack only on those grounds listed in 9 U.S.C. § 10, or if enforcement of the award is contrary to public policy." *Id.* (citations omitted). Under § 10 of the FAA, a district court "may make an order vacating the [arbitration] award" where: (1) "the award was procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Such exceptions, however, arise only in "exceedingly narrow circumstances." *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003). Accordingly, "a reviewing court must take a limited approach and vacate an arbitration award 'in the rarest of case[s].'" *Caputo v. Wells Fargo Advisors, LLC*, No. 19-17204, 2020 WL 2786934, at *2 (D.N.J. May 29, 2020) (quoting *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986)). Moreover, "[t]he party seeking to overturn an award bears a heavy burden[.]" *Dluhos*, 321 F.3d at 370.

## III. DISCUSSION

In opposition to the instant Motion, Defendants argue the Arbitrator

> ignored the EBAC's consideration and analysis of Plan documents and related materials establishing that the Plan language was

4

> extrinsically ambiguous, and rejected as 'factually unsupported' the EBAC's contention that Plaintiff's interpretation of the Plan would frustrate Mr. Rosso's donative intent. In doing so, and in refusing to address the extrinsic ambiguity found by the EBAC, [the] Arbitrator . . . manifestly disregarded the applicable law requiring that the EBAC be afforded significant deference in its resolution of both questions concerning the intent of the Plan and factual issues raised by claimants. [The] Arbitrator . . . further disregarded the law when, rather than address the issue of extrinsic ambiguity or remand the issue to the EBAC for determination, he substituted his own conclusions for those of the EBAC.

(Defs.' Opp'n Br. 13, ECF No. 108.) Although not explicitly set forth in the FAA, "the judicially created 'manifest disregard of the law' [doctrine] . . . allows a district court to vacate an arbitration award that evidences manifest disregard of the law rather than an erroneous interpretation."[2] *Dluhos*, 321 F.3d at 369. This doctrine, however, "is to be used 'only [in] those exceedingly rare circumstances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the [vacatur] provisions of the [FAA] apply.'" *Black Box Corp. v. Markham*, 127 F. App'x 22, 25 (3d Cir. 2005) (quoting *Duferco Int'l Steel Trading v. T. Klavness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003)); *see also Bender v. Smith Barney, Harris Upham & Co.*, 901 F. Supp. 863, 870 (D.N.J. 1994) ("The 'manifest disregard' doctrine may provide a basis for vacating

---

[2] In *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576, 583 (2008), the Supreme Court held that 9 U.S.C. §§ 10 and 11 "provide the FAA's exclusive grounds for expedited vacatur and modification." Since this ruling, a circuit split has emerged regarding the manifest disregard of the law doctrine, with the "Second, Fourth, and Ninth Circuits hav[ing] found that it continues to exist as a 'judicial gloss' under § 10(a)(4)," while the "Fifth, Eighth, and Eleventh Circuits have concluded that . . . [it] no longer survives because it is not enumerated in the FAA." *Caputo*, 2020 WL 2786934, at *3 (collecting cases). The Third Circuit, however, has declined to weigh in on the issue. *See CD&L Realty LLC v. Owens Ill., Inc.*, 535 F. App'x 201, 205 n.3 (3d Cir. 2013) ("We assume, without deciding, that the 'violation of public policy' and the 'manifest disregard of law' grounds for vacatur survive."). Recently, the Honorable Freda L. Wolfson, U.S.D.J., presumed, "in the absence of more specific guidance from the Third Circuit . . . that these extra-FAA mechanisms continue to exist as a basis for vacatur after *Hall Street*[.]" *Caputo*, 2020 WL 2786934, at *3. Here, the Court finds no reason to stray from Chief Judge Wolfson's presumption and will consider Defendants' arguments pursuant to the doctrine.

an award in some circumstances, but its scope is exceedingly narrow[.]"), *aff'd*, 67 F.3d 291 (3d Cir. 1995). Importantly, the term "manifest disregard"

> means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator *appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it*[.]

*Bender*, 901 F. Supp. at 870 (emphasis added) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933–34 (2d Cir. 1986)).

In support of their argument, Defendants cite to the Supreme Court's decision in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989). (*See* Defs.' Opp'n Br. 16.) In *Firestone*, the Supreme Court held that a denial of benefits under an ERISA plan "is to be reviewed under a de novo standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115. Thus, where "an ERISA-governed benefits plan grants discretionary authority to the plan administrator to determine eligibility for benefits under the plan, a court reviewing the plan administrator's actions should apply the arbitrary and capricious standard of review." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997) (citing *Firestone*, 489 U.S. at 110–12). In other words, "a fiduciary's interpretation of a plan will not be disturbed if reasonable." *Id.* (citations omitted). Defendants, therefore, argue that because the Plan affords the EBAC with such discretionary authority, (Defs.' Opp'n Br. 17–18),[3]

---

[3] (*See* 401(a) Plan Art. IX § 9.1, Ex. B to Pl.'s Mot., ECF No. 103-4 (noting that the EBAC "shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion they deem to be appropriate in their sole judgment" and that "the validity of such finding of fact, interpretation, construction or decision shall not be given de novo review if challenged . . . and shall be upheld unless clearly arbitrary or capricious").)

6

> any determination by the EBAC that the Plan is ambiguous, and any resolution of such an ambiguity by the EBAC in accordance with the intent of the Plan, is entitled to deference and may only be overturned if [it is] "without reason, unsupported by substantial evidence or erroneous as a matter of law."

(*Id.* at 18 (quoting *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011)).)

Despite this limited review, a plan administrator's "interpretation may not controvert the plain language of the document. We must uphold a plan interpretation even if we disagree with it, so long as the administrator's interpretation is rationally related to a valid plan purpose and is not contrary to the plain language of the plan." *Dewitt*, 106 F.3d at 520 (citation omitted). For example, in *Dewitt*, an ERISA plan stated that distribution of an employee's benefits was to be made "as soon as practicable *after the end of the calendar month in which termination of employment occurs*[.]" *Id.* at 521. Although the funds were distributed to the employee prior to the end of the calendar month in contravention of this provision, the plan in question contained a clause granting discretionary interpretation authority to the plan administrator. *Id.* at 518, 520. The district court subsequently agreed with the plan administrator's interpretation that the provision prevented it "from taking too long to pay out benefits but contained no prohibition on paying early." *Id.* at 521. The Third Circuit reversed, holding that "[e]ven under our deferential standard of review, we conclude that the [p]lan [a]dministrator's interpretation of these [p]lan provisions is unreasonable, because it disregards the language of the [p]lan[.]" *Id.* at 521–22 ("Accordingly, we conclude as a matter of law that the [p]lan [a]dministrator's interpretation of the [p]lan was inconsistent with the plain language of the [p]lan and, therefore, there was no reasonable basis for the . . . denial of benefits.").

Similarly, the Arbitrator here held that the language of the Plan, "viewed objectively, is unambiguous and is capable of only one reasonable interpretation – i.e., that absent a Qualified Election waiving her right to benefits, [Plaintiff] as the surviving spouse of Mr. Rosso, is entitled

7

to receive a preretirement survivor benefit equal to the full Account Balance." (Arb. Initial Op. 28.) Moreover, the Arbitrator acknowledged the "significant discretion in the interpretation and application of ambiguous language" afforded to the EBAC under the Plan, as well as *Firestone* and the deference afforded to plan administrators when plan language is both ambiguous and unambiguous. (*See* Arb. Initial Op. 31 ("[The *Firestone*] decision also recognizes, however, that it is inconsistent with ERISA to grant plan administrators or fiduciaries deference in situations when the underlying Plan language is clear and unambiguous.").) It certainly cannot be said, therefore, that the Arbitrator manifestly disregarded the appropriate standard of review in the instant matter. *See Bender*, 901 F. Supp. at 870 (citation omitted) ("[T]he term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it[.]"). Furthermore, despite Defendants' assertions to the contrary, the Arbitrator set forth in detail the reasons why prior practice and administration, extrinsic ambiguity, and donative intent were not applicable to the instant matter. (*See generally* Arb. Initial Op. 30–33.) The Arbitrator determined that the Defendants' arguments in this regard were either factually unsupported or erroneous as a matter of law. (*Id.*) As Defendants correctly note, such determinations are sufficient to overturn a plan administrator's denial of benefits. *See Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (a reviewing court "may overturn a decision of the [p]lan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law"), *abrogated on other grounds by Metro. Life Ins. v. Glenn*, 554 U.S. 105, 112 (2008); *Miller*, 632 F.3d at 845. The Court, accordingly, does not find the instant matter to be one of the "exceedingly rare circumstances" where the manifest disregard of the law

doctrine's "exceedingly narrow" scope applies.[4] *Markham*, 127 F. App'x at 25; *Bender*, 901 F. Supp. at 870.

Alternatively, Defendants argue that "should this Court decide to confirm the Arbitrator's award in favor of Plaintiff on the question of the underlying benefit at issue and decline to remand to the EBAC, it should confirm the award in full, including the Arbitrator's complete denial of Plaintiff's 'outrageously excessive' request for fees." (Defs.' Opp'n Br. 37.) In her Moving Brief, Plaintiff states she "disagrees strenuously with the Arbitrator's denial of counsel fees and does not now seek to confirm it." (Pl.'s Moving Br. 15 n.8, ECF No. 103-1.) Plaintiff, however, concedes that "the grounds to vacate any portion of an arbitration award are few, and nothing the Arbitrator did in the Arbitration falls within those limited circumstances." (*Id.*) Moreover, in her Reply, Plaintiff again concedes "there simply is no basis for this Court to undo any of [the Arbitrator's] rulings. As such, [Plaintiff] does not oppose [Defendants'] application to enforce the [a]wards in their entirety." (Pl.'s Reply Br. 2, ECF No. 109-1.) As stated previously, "a reviewing court must take a limited approach and vacate an arbitration award [only] 'in the rarest of case[s].'" *Caputo*, 2020 WL 2786934, at *2 (citation omitted). The Court, accordingly, will confirm the Arbitrator's

---

[4] Alternatively, Defendants argue that "[h]aving found that Section 7.3 [of the Plan] was intrinsically ambiguous, [the] Arbitrator . . . should have remanded the issue to the EBAC for further consideration in light of his decision." (Defs.' Opp'n Br. 32.) Defendants, accordingly, request that the Court vacate the Arbitrator's award and remand to the EBAC for further consideration. (*Id.* at 34.) Defendants, however, cite only to a Supreme Court case that did not involve arbitration, and merely assert in a conclusory fashion that the Arbitrator's actions "disregarded the law." (*Id.* at 33.) The Court is unpersuaded by Defendants' argument and declines to vacate the Arbitrator's award on this ground.

three decisions and accompanying awards in their entirety and reopen the case to resolve the remaining issues related to the 403(b) Plan.[5]

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Confirm Arbitration Award and Reopen the Case is granted. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[5] Lastly, Defendants request permission to renew their motion for equitable reformation of the ETS plans. (Defs.' Opp'n Br. 40.) As stated previously, the Court dismissed without prejudice Defendants' Motion to Vacate the Arbitration Award and for Equitable Reformation of the Plans as premature. (ECF No. 100.) Because the Court confirms the Arbitrator's award, it will also grant Defendants' request to renew their motion.

10