<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated**, <br><br> Plaintiff, <br><br> v. <br><br> **TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT EQUITIES FUND,** *et al.*, <br><br> Defendants. | Civil Action No. 15-6726 (ZNQ) (DEA) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Strike Class Allegations from Plaintiff's First Amended Complaint by Defendants Teachers Insurance and Annuity Association of America – College Retirement Equities Fund, Teachers Insurance and Annuity Association of America, and College Retirement Equities Fund (collectively, "Defendants" or "TIAA-CREF"). ("Motion," ECF No. 117.) Defendants filed a brief in support of the Motion. ("Moving Br.," ECF No. 125-1.) Lorraine H. Luciano ("Plaintiff") opposed the Motion, ("Opp'n Br.," ECF No. 124), to which Defendants replied, ("Reply," ECF No. 126). The Court has carefully considered the parties' submissions and decided the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will deny the Motion.

I.  **BACKGROUND AND PROCEDURAL HISTORY[1]**

This matter arises from Defendants' treatment of defined-contribution pension benefits allegedly payable to Plaintiff. TIAA-CREF provides retirement and savings plan design, consultation, and administration for employee benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. (July 29, 2016 Mem. Op. at 2, ECF No. 59.) Plaintiff's husband, James Rosso ("Mr. Rosso"), was employed by Educational Testing Service ("ETS") and was a participant in the ETS Retirement Plan ("40l(a) Plan") and the ETS 403(b) Match Plan ("403(b) Plan") (collectively, the "Plans"). (*Id.*) Mr. Rosso originally designated his parents and sister, Intervenor Lucille Rosso ("Intervenor"), as his beneficiaries under the Plans. (*Id.*) Mr. Russo later changed his designated beneficiary to only his sister. (*Id.*) Thereafter, Plaintiff and Mr. Rosso married in February 2004, and Mr. Rosso passed away in April 2014. (*Id.*)

After her husband's death, Plaintiff informed TIAA-CREF that she was his surviving spouse. (*Id.* at 3.) TIAA-CREF informed Plaintiff that as the surviving spouse, she was entitled to a death benefit of $119,253.33, half of Mr. Rosso's account balance. (*Id.*) TIAA-CREF informed Plaintiff that the other half of the benefit would be paid to Intervenor. (*Id.*) Plaintiff first filed an injunction application in the Superior Court of New Jersey to prevent TIAA-CREF from paying out any of the funds to Intervenor. (*Id.*) The state court action was voluntarily dismissed following an agreement that no funds would be disbursed until the outcome of the formal plan procedures and any related litigation. (*Id.*) Plaintiff then filed a claim for benefits with TIAA-

---

[1] The Court will consider documents and materials cited in the Complaint. *See Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 177 n.2 (3d Cir. 2000) ("[i]nasmuch as the complaint references and relies on the content of certain documents, [the court will] consider them"); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (consideration of even a stand-alone contract is proper when the "complaint is based on [a] contract").

2

CREF, which was denied by written decision on March 13, 2015. (*Id.*) Plaintiff appealed the denial, which ETS affirmed on July 8, 2015. (*Id.*) Defendants interpreted Section 7.3 of the 40l(a) Plan and Section 8.4 of the 403(b) Plan to entitle a surviving spouse to a qualified pre-retirement survivor annuity ("QPSA") of 50% of a participant's account balance. (*Id.*)

Plaintiff subsequently filed this putative class action challenging Defendants' fifty-percent benefit determination and the 401(a) Plan's mandatory arbitration provision through six counts: (1) failure to make payments pursuant to 29 U.S.C. § 1132(a)(l) and (3); (2) declaratory judgment regarding payments pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 1132(a)(3); (3) breach of fiduciary duty pursuant to 29 U.S.C. § 1104; (4) declaratory judgment regarding the arbitration clause pursuant to 28 U.S.C. § 2201, 29 U.S.C. §§ 1132(a)(3), 1133(2), and 29 C.F.R. § 2560.503-1; (5) enjoinment of the arbitration clause pursuant to 29 U.S.C. § 1132(a)(3); and (6) breach of fiduciary duty regarding the arbitration clause pursuant to 29 U.S.C. § 1104. (*See generally* Am. Compl., ECF No. 3.)

Defendants filed motions to dismiss, and the Court determined that the 40l(a) Plan contained a mandatory arbitration provision. (July 29, 2016 Mem. Op. at 9.) The Court determined that the mandatory arbitration provision was enforceable and dismissed Counts Four, Five, and Six of Plaintiff's Amended Complaint, which sought relief from the 40l(a) Plan's mandatory arbitration provision. (*Id.* at 9–13.) The Court further compelled arbitration pursuant to the mandatory arbitration provision with respect to Counts One, Two, and Three of Plaintiff's Amended Complaint as they related to the 401(a) Plan. (*Id.*) The Court, however, declined to compel arbitration with respect to the 403(b) Plan because it did not contain a mandatory arbitration provision. (*Id.*) Accordingly, the Court stayed Counts One, Two, and Three as they related to the 403(b) Plan pending arbitration with respect to the 40l(a) Plan. (*Id.* at 12–13.)

In 2017, Plaintiff and the ETS Employee Benefits Administration Committee ("EBAC") conducted an arbitration to resolve Plaintiff's individual claim under the 40l(a) Plan. On April 30, 2018, the Arbitrator held that the terms of the 401(a) Plan required payment of 100% of Mr. Rosso's account balance to Plaintiff, not 50% as previously determined. (Alison Douglas Decl., Ex C, ECF No. 117-2.) The Arbitrator found that the terms of the 401(a) Plan were "clear and unambiguous and require[d] payment to [Plaintiff] of a . . . benefit based upon the full Account Balance value of Mr. Rosso's account . . . ." (*Id.*)

Plaintiff then filed a Motion to Confirm the Arbitration Award and Reopen the Case, which the Court granted. (April 28, 2021, Mem. Op., ECF No. 111.) At this juncture, Plaintiff's putative TIAA-CREF Plan Arbitration Class and the ETS Plan Arbitration Sub-Class are no longer viable. (*See* July 29, 2016 Mem. Op. 9–13.) Therefore, Defendants challenge the two remaining putative classes: the TIAA-CREF Plan Class and the ETS Plan Sub-Class. Plaintiff's Amended Complaint proposes the following classes:

> **The TIAA-CREF Plan Class**: Any Plan Participant or current or surviving spouse of a Plan Participant who participates or participated in a "qualifying" Plan under ERISA, which Plan's account or assets were invested with or managed or administered by TIAA-CREF, or applied toward the purchase of TIAA or CREF Contracts and which Plan had or has a Plan Document[2] that provides for a QPSA at a level above 50% of the Account Balance, in language identical to or substantially similar to that in the Plan Documents under which the Plaintiff is claiming relief.
>
> **The ETS Plan Sub-Class**: Any Plan Participant or current or surviving spouse of a Plan Participant who participates or participated in a "qualifying" plan under ERISA, which was sponsored by ETS and which Plan's account or assets were invested with or managed or administered by TIAA-CREF, or applied toward the purchase of TIAA or CREF Contracts and which Plan had or has a Plan Document that provides for a QPSA at a level above 50% of the Account Balance, in language identical to or substantially

---

[2] The Plan Document sets forth a Plan Participant's rights in detail. (*Id.* ¶ 24.)

4

similar to that in the Plan Documents under which the Plaintiff is claiming relief.

(Am. Compl. ¶ 89(a)-(b).) For clarity, Plaintiff alleges that the Plans are subject to ERISA as amended by the Retirement Equity of 1984 ("REACT"), which views a marital relationship as a partnership and the retirement benefits derived therefrom as result of the efforts of both spouses. (Am. Compl. ¶ 12.) She alleges that "ERISA establishes certain minimum requirements for all private-employer-sponsored retirement plans," including "the right of a surviving spouse to receive an annuity if the Plan Participant dies before the spouse does." (*Id.* ¶ 13.) Specifically, REACT provides the surviving spouse a death benefit known as the QPSA when the Plan Participant dies before retirement. (*Id.* ¶ 15.) The QPSA of a defined-contribution plan must be in the form of an annuity, "the actuarial value of which is not less than 50% of the vested accumulated account value" ("Account Balance"). (*Id.* ¶ 18.) Notably, "REACT permits the Plan Participant to waive the QPSA benefits[] or designate anyone other than the spouse as beneficiary of Plan death benefits, only with written spousal consent." (*Id.* ¶ 16.)

Plaintiff alleges that "TIAA-CREF permits alienation of up to 'one half' of the Account Balance without the spouse's consent," in violation of ERISA. (*Id.* ¶ 32.) Plaintiff claims that:

> [U]pon receiving notice of a Plan Participant's death, TIAA-CREF sends out a form letter advising the surviving spouse of the precise monetary value of 50% of the Account Balance, stating that this is the amount payable to the surviving spouse. The letter does not state that the amount is, in fact, only 50% of the Account Balance or that, if the surviving spouse has not executed a waiver, he or she may be entitled to more than 50%.

(*Id.* ¶ 36.) Plaintiff alleges "many TIAA-CREF Plans require QPSAs of more than 50%" of the Account Balance, and TIAA-CREF employs this uniform practice regardless of the language in the Plan Document. (*Id.* at 33, 37.) According to Plaintiff, even where the terms of a plan require the QPSA to be funded with more than 50% of the Account Balance, TIAA-CREF pays the

surviving spouse only 50% of the Account Balance, contrary to the provisions of its plans and ERISA. (*Id.* ¶ 38.) Thus, the parties dispute whether the 401(a) Plan, the 403(b) Plan, and other similar TIAA-CREF plans provide for a QPSA funded with either 100% or 50% of the Account Balance. (Opp'n Br. at 4.) Plaintiff seeks compensation for surviving spouses who have been denied the QPSA to which they are entitled under the plans, along with declaratory and injunctive relief to enjoin Defendants' uniform practice. (Am. Compl. at 39–42.)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) permits a district court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike are generally viewed with disfavor[] and will usually be denied unless the allegations in the pleading have no possible relation to the controversy[] and may cause prejudice to one of the parties." *Gray v. BMW of N. Am.*, LLC, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (quoting *Sliger v. Prospect Mortgage, LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011)).

Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety. *Id.* (citing *Holak v. Kmart Corp.*, Civ. No. 12-304, 2012 WL 6202298 (E.D. Cal. Dec. 12, 2012)). "Class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, and discovery is therefore integral." *Id.* See *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 459 (D.N.J. 2015) ("Generally courts do not consider whether a proposed class meets the [Rule] 23 class requirements until after plaintiffs move for class certification.").

"A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action

6

cannot be met." *In re Allergan Biocell Textured Breast Implant Prod. Liab. Litig.*, 537 F. Supp. 3d 679, 752 (D.N.J. 2021) (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n.3 (D.N.J. 2003)). "In a putative class action suit, a plaintiff is generally entitled to discover information relevant to Rule 23's class certification requirements." *McPeak v. S-L Distribution Co.*, Civ. No. 12-348, 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014). Thus, "a court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.* "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Id.* (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir.2011)). *See also John v. Nat'l Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings").

"If the viability of a class depends on factual matters that must be developed through discovery, a motion to strike will be denied pending the full-blown certification motion." *McPeak*, 2014 WL 4388562 at *4 (quoting 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 3.4 (7th ed.2010)). In this District, "dismissal of class allegations at [the pleading] stage should be done rarely," and "the better course is to deny such motion because the shape and form of a class action evolves only through the process of discovery." *Allergan Litig.*, 537 F. Supp. 3d at 752 (citation omitted and alteration in original).

### III.   DISCUSSION

Defendants seek to strike the class allegations even though Plaintiff has not yet moved for class certification. Defendants argue that the "class allegations should be stricken because of the facial structural and legal issues with each of Plaintiff's alleged classes." (Moving Br. at 11.)

7

Here, the Amended Complaint itself does not demonstrate that the requirements for maintaining a class action cannot be met. *Allergan Litig.*, 537 F. Supp. 3d at 752. The Court will deny the Motion for the foregoing reasons.

"[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). "Before turning to the explicit requirements of Rule 23 in *Marcus*, [the Third Circuit] addressed two 'preliminary matters': first, whether the class was clearly defined, and second, 'whether the class must be (and, if so, is in fact) objectively ascertainable.'" *Carrera v. Bayer Corp.*, 727 F.3d 300, 305 (3d Cir. 2013) (quoting *Marcus*, 687 F.3d at 591).

Regarding the second of these two preliminary matters, the "ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013)). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that 'class members can be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2).

"The method of determining whether someone is in the class must be 'administratively feasible.'" *Carrera*, 727 F.3d at 307 (quoting *Marcus*, 687 F.3d at 594). "A plaintiff does not satisfy the ascertainability requirement if individualized fact-finding or mini-trials will be required to prove class membership." *Id.* (citing *Marcus*, 687 F.3d at 593). "Administrative feasibility

means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Id.* at 307–08 (quotation marks and citation omitted).

### A.   <u>Facial Defect</u>

Defendants argue that Plaintiff's TIAA-CREF Plan Class and ETS Sub-Plan Class contain facial defects because they include "Plan Participants" who have suffered no harm. (Moving Br. at 14, 24–25.) They argue that the inclusion of Plan Participants in Plaintiff's purported TIAA-CREF Plan Class is deficient because a Plan Participant, while alive, can change the beneficiary designation and obtain an appropriate spousal waiver at any time. (*Id.* at 14.) In addition, Defendants claim that there is no harm to Plan Participants who have not died and no harm to spouses who do not disagree with a benefits determination that they receive less than 100% of the Account Balance. (*Id.*) Defendants rely on *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 284–85 (D.N.J. 2011), for the proposition that there are members of the class who have not yet suffered any harm and, therefore, presently have no claim against Defendants. (*Id.* at 14–15.)

In opposition, Plaintiff argues that Defendants' challenges to the propriety of this matter proceeding as a Rule 23(b)(3) class action are meritless. (Opp'n Br. at 24.) Plaintiff contends there are no facial defects in the class definitions as ERISA expressly permits the type of forward-looking relief that would benefit all class members. (*Id.*) In addition to seeking compensation for surviving spouses who have already been denied the QPSA to which they are entitled under the Plans, Plaintiff also seeks declaratory and injunctive relief for the class. (*Id.*) She contends that an injunction would benefit every member of the putative class because it would "requir[e] Defendants to make QPSA determinations based upon the actual language of the applicable plan and/or to cease their uniform practice of always assigning a 50% QPSA without examining the

9

plan's text . . . ." (*Id.*)  Plaintiff contends this "requested relief [would] benefit all current Plan Participants and their spouses, now and going forward, by requiring Defendants to stop violating their fiduciary obligations to make benefit determinations based upon actual plan language." (*Id.*; *see* Am. Compl. ¶¶ 17–28.)

The Court agrees with Plaintiff.  She claims that Defendants have engaged in the uniform practice of always assigning a 50% QPSA to a surviving spouse regardless of what the underlying ERISA plan actually says—thereby denying Plaintiff and other surviving spouses half of the death benefits to which they are entitled as a matter of federal law. (Am. Compl. ¶¶ 25, 30–32, 36, 60–65.) Plaintiff's requested relief seeks to prevent a uniform practice. *See* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan"). Indeed, Defendants' citations are inapposite because they are not ERISA cases. The Court finds that the TIAA-CREF Plan Class and ETS Plan Sub-Class definition do not contain facial defects.

### B. Ascertainability of Class

Defendants also argue that there is "no reliable and administratively feasible means of identifying [the TIAA-CREF Plan Class members and the ETS Plan Sub-Class] members absent individual inquiries." (Moving Br. at 17, 25.) They contend Plaintiff failed to plead that TIAA-CREF would know of any surviving spouse who would be a potential class member. (*Id.*) Second, they argue that there is no administratively feasible way to determine on a class-wide basis whether the spouses that Plaintiff seeks to represent (in connection with her challenge to Defendants'

administration of QPSA benefits) is actually eligible for benefits under the TIAA Plan Class and ETS Plan Sub-Class.[3]  (*Id.* at 17–18.)

In opposition, Plaintiff argues that Defendants' motion incorrectly assumes that she is only seeking certification under Federal Rule of Civil Procedure 23(b)(3).  (Opp'n Br. at 22.)  She contends that ascertainability is not a requirement under Federal Rule of Civil Procedure 23(b)(2) and that predominance only applies to Rule 23(b)(3).  (*Id.* at 22.)  Plaintiff notes that courts have routinely held that ERISA class actions are suitable for certification under Rule 23(b)(1) and (b)(2).[4]  (*Id.* at 23.)

In the alternative, Plaintiff argues that there is a reliable and administratively feasible way of identifying the class members.  She claims that TIAA-CREF—one of the largest ERISA fiduciaries in the United States and the administrator of the Plans—maintains required detailed records of Plan Participants and their beneficiaries, as well as their surviving spouses (who are entitled to payment under ERISA) and any qualified elections.  (*Id.* at 25.)  Plaintiff contends that each time death benefits are distributed, federal law requires the administrator of the benefits to determine the following:  (1) whether the Plan Participant had a Surviving Spouse; (2) whether the Plan Participant died before the distribution of benefits commenced; (3) whether the Plan Participant had any other beneficiaries; and (4) whether there had been a qualified election.  (*Id.* at 26.)  Plaintiff argues that Defendants should, therefore, know what the benefit determination was in each case because TIAA-CREF already conducted the factual inquiries necessary to determine class membership.  (*Id.*)

---

[3] Defendants contend eligibility is contingent on the following events: (1) the Plan Participant predeceasing the spouse; (2) the Plan Participant died before the payout period of the deceased Plan Participant's benefits; (3) the spouse was still married to the Plan Participant at the time of death; (4) the Plan Participant had named one or more non-spouse beneficiaries; (5) the surviving spouse did not sign a waiver concerning the non-spouse beneficiaries; (6) Defendants made benefits determination adverse to the surviving spouse.  (*Id.* at 18, 25.)

[4] Because this Motion seeks to strike class allegations rather than certify the class, the Court will not foreclose Defendants' arguments concerning ascertainability and predominance.

The Court cannot determine upon the present pleadings the ascertainability of the class members. *See Peruto*, 126 F. Supp. 3d at 460 ("the question of ascertainability is more appropriately addressed upon a developed factual record after class discovery"). Plaintiff does not need to identify all class members at the class certification stage, much less at this stage. *See Byrd*, 784 F.3d at 163. Plaintiff need only show that the "class members can be identified." *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2). There could be an "administratively feasible" method of determining the TIAA-CREF members, including the putative class members who were allegedly harmed by adverse determinations and those who will be harmed by Defendants' alleged uniform practice of always assigning a 50% QPSA without examining the plan's text. *See Carrera*, 727 F.3d at 307. Defendants argue that identifying the class members is contingent on several events. (*Id.* at 17–18.) However, discovery may reveal that Defendants are able to identify the class members because they already made certain determinations before distributing the QPSA benefits to the surviving spouses (*e.g.*, whether the Plan Participant had a surviving spouse, whether the Plan Participant died before the distribution of benefits commenced, whether the Plan Participant had any other beneficiaries, and whether there had been a qualified election). So, identifying the class members may involve a "manageable process," not requiring much—if any—individual factual inquiry. *Carrera*, 727 F.3d at 307–08. Thus, it is not facially apparent from the pleadings that there is no ascertainable class.

C.     **Individual Inquiries**

Defendants also argue that Plaintiff's class allegations raise numerous individualized issues warranting dismissal.⁵ (*Id.* at 18, 25.) First, they contend an individualized inquiry would be needed to determine indispensable parties like Ms. Rosso, the non-spouse beneficiary in this instance. (*Id.* at 20, 25.) Second, resolution of any beneficiary's claim depends on an individualized inquiry concerning her or his eligibility in light of facts unique to each beneficiary and the Plan Participant, including whether each purported class member exhausted all forms of administrative remedies as provided by ERISA. (*Id.*) Third, an individualized inquiry is required to determine if the plan in question is governed by ERISA because there are numerous statutory provisions that exempt retirement plans from ERISA. (*Id.* at 21.) Fourth, the court would have to determine whether different plans in the putative TIAA-CREF Plan Class have statute of limitations provisions that preclude any putative class member from seeking redress. (*Id.* at 22.) Fifth, the court would have to determine whether the plans in the TIAA-CREF Plan Class have arbitration provisions that require arbitration, such as the 401(a) Plan. (*Id.* at 22, 25.) Sixth, an individualized inquiry is needed to determine how each plan's language should be interpreted to determine whether a plan allows for a 50% or 100% QPSA or for some other amount. (*Id.*) Seventh, ETS anticipated motion to reform the ETS Plans evidences an additional complicating factor precluding class treatment. (*Id.* at 23.)

In opposition, Plaintiff contends Defendants' argument concerning the "numerous individual issues" is a predominance challenge. (Opp'n Br. at 27.) She argues that there are no

---

⁵ Defendants rely on *Trunzo v. Citi Mortgage*, Civ. No. 11-1124, 2014 WL 1317577, *7–9 (W.D. Pa. Mar. 31, 2014), for the proposition that class treatment is not appropriate where claims are based on "specific circumstances" and conduct that was individual to each of the claimants. (*Id.* at 19.) Defendants also rely on *Semenko v. Wendy's Int'l, Inc.*, Civ. No. 12-836, 2013 WL 1568407, *8 (W.D. Pa. Apr. 12, 2013), for the proposition that a motion to strike class allegation should be granted where individualized issues of eligibility under the statute would require a number of individual mini-trials. (*Id.*)

13

individual issues in this case that predominate over the common issues of fact and law.  (*Id.*)  Though Defendants argue that an individualized inquiry would be needed to determine indispensable parties, Plaintiff contends TIAA-CREF and the non-spouse beneficiaries hold the same interests.  (*Id.* at 29–30.)  Plaintiff also argues that "[t]he overwhelming consensus among other courts to consider the question in the ERISA context is that exhaustion by unnamed class members is not necessary where the named plaintiffs have exhausted their administrative remedies." (*Id.* at 30.)  In addition, Plaintiff argues that discovery will address whether the plan is governed by ERISA and whether the plans contain any statute of limitations.  (*Id.* at 31.)  Moreover, Plaintiff argues that "every plan managed by TIAA may not be identical, but the applicable QPSA calculation provisions are a discrete part of each plan, and irrelevan[t] differences as to other portions of the plan are meaningless." (*Id.* at 31.)  She contends that without the benefit of discovery, she cannot determine how similar the other TIAA plans are to TIAA's ETS plans.  (*Id.* at 32.)

"[A]t the motion to strike stage, the burden on plaintiffs is less than at the certification stage." *Allergan Litig.*, 537 F. Supp. 3d at 756 (quoting *In re Ry. Indus. Emple. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 514 (W.D. Pa. 2019)).  "The court must determine only whether plaintiffs satisfied their burden to set forth factual allegations to advance a *prima facie* showing of predominance or that at least it is likely that discovery will reveal evidence" that will satisfy critical elements of the plaintiff's claims on a class-wide basis. *Id.*  "Courts in this Circuit have declined to conduct a predominance inquiry upon a defendant's motion to strike/dismiss a plaintiff's class allegations, recognizing the dismissal of class claims before discovery and a class certification motion 'is the exception rather than the rule.'" *Id.* (citations omitted). Courts in this Circuit and other circuits have found that a pre-discovery predominance inquiry is premature. *Id.* at 756–57.

14

The Court agrees with Plaintiff that Defendants' arguments challenge predominance. The Court finds that a predominance inquiry is premature at this juncture. The Court will not scrutinize the factual differences among individual class members at this stage and will not dismiss class allegations because of potential differences. Plaintiff has made a *prima facie* showing of predominance. She referred to a series of common factual and legal issues arising out of Defendants' uniform practice as it pertains to the QPSA distribution. In addition, Plaintiff's prayer for relief does not present issues that predominate over common ones—Plaintiff seeks damages relating to adverse determinations and seeks injunctive relief to stop Defendants' uniform practice.

## IV. CONCLUSION

For the reasons stated above, the Court will deny Defendants' Motion. An appropriate Order will follow.

Date: April 7, 2022

                                                  s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**