UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA – COLLEGE RETIREMENT EQUITIES FUND (TIAA-CREF), et al.,<br><br>Defendants. | Civil Action No. 15-6726 (RK) (JBD)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Plaintiff Lorraine H. Luciano's Motion for Reconsideration. ("Pl. Br.," ECF No. 202.) Defendants Educational Testing Service ("ETS") and Educational Testing Service Employee Benefits Administration Committee ("EBAC," and with ETS, "ETS Defendants"), Teachers Insurance and Annuity Association of America – College Retirement Equities Fund, Teachers Insurance and Annuity Association of America, College Retirement Equities Fund ("TIAA," and together with ETS and EBAC, "Defendants") filed an opposition brief. ("Defs.' Br.," ECF No. 209.)[1] Plaintiff moves the Court to reconsider its Memorandum Opinion and Order dated July 26, 2023, (ECF Nos. 200, 201), granting Defendants' Motion to Amend the ETS 401(1) Retirement Plan. The Court has carefully considered the parties'

---

[1] The ETS Defendants filed an opposition brief, which TIAA later joined. (ECF No. 210.) As such, the Court will consider ECF No. 209 on behalf of both the ETS Defendants and TIAA.

submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion for Reconsideration is **DENIED**.[2]

I. <u>BACKGROUND</u>

The Court discussed the relevant facts at length in its prior Opinion, ("Challenged Op.," ECF No. 200), as have multiple prior Opinions in this case, (*See* ECF Nos. 59, 83, 111, 136). As such, the Court briefly recites the key facts from the Challenged Opinion for purposes of resolving the subject Motion.

Plaintiff is the surviving spouse of James Rosso, who was employed by ETS from 1979 until 1993. (Challenged Op. at 2.) The retirement plans in which Mr. Rosso participated included both a 401(a) Plan and 403(b) Match Plan, both of which were covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq. T. (*Id.*) TIAA administered both plans. (*Id.*) Section 7.3 of the 401(a) Plan provided for a Qualified Preretirement Survivor Annuity ("QPSA"), defined as follows:

> If a married Participant dies before benefits have commenced, then the Participant's Account Balance shall be applied toward the purchase of an annuity (or any other form of benefit determined by the Administrator) for the life of the Surviving Spouse (a "Qualified Preretirement Survivor Annuity") unless any other Beneficiary has been designated pursuant to a Qualified Election.

(*Id.*) Plaintiff married Mr. Rosso in 2004, decades after Mr. Rosso initially completed the beneficiary designation forms, and as such, she was not listed as a beneficiary. (*Id.*) When Mr.

---

[2] The Court notes this is not Plaintiff's first, or second, request, throughout this nearly nine-year litigation, for the Court to redecide issues previously ruled upon. Plaintiff previously appealed the January 15, 2016 decision of the Honorable Douglas E. Arpert, U.S.M.J. (ret.) granting Proposed Intervenor Lucille Rosso's Motion to Intervene. (*See* ECF No. 37.) Plaintiff also filed a Motion for Reconsideration seeking the Court to reconsider its dismissal of Counts IV, V, and VI, of Plaintiff's First Amended Complaint. (*See* ECF No. 61.) Both of these Motions were denied. (*See* ECF Nos. 60, 66, 67.)

Rosso died in 2014, the beneficiary designation form for the 401 (a) Plan listed only his sister, Lucille Rosso, as the sole beneficiary. (*Id.*)

In 2015, Plaintiff filed an administrative claim with TIAA seeking to recover the entirety of her deceased husband's annuities (*i.e.*, a 100% QPSA benefit). (*Id.*) TIAA denied her claim and EBAC affirmed, finding that Section 7.3 of the 401(a) Plan and Section 8.4 of the 403(b) Plan—construed in conjunction with Plan communications issued to participants throughout the relevant time period—provided only a 50% QPSA benefit to Plaintiff as the surviving spouse. (*Id.* at 3.) The other half would go to Mr. Rosso's sister and pre-marriage beneficiary, Lucille Rosso.[3]

On October 1, 2015, Plaintiff filed her Amended Complaint challenging, on behalf of a putative class, the 50% QPSA determination under the 401(a) and 403(b) Plans. (*See* ECF No. 3.) The District Court, in an Opinion and Order by the Honorable Michael A. Shipp, U.S.D.J., compelled arbitration as to the 401(a) Plan and stayed the 403(b) claims pending the resolution of the arbitration. (ECF Nos. 59–60.)[4] The case was administratively terminated pending the conclusion of the arbitration. (See ECF No. 60.)

On April 30, 2018, Ira F. Jaffe, Esq. (the "Arbitrator") held that the terms of the 401(a) Plan were "clear and unambiguous and require[d] payment to [Plaintiff] of a . . . benefit based upon the full Account Balance value of Mr. Rosso's account[.]" (Arbitrator Initial Op. at *83, Ex. A to Pl.'s Opp. Br., ECF No. 176-1.)[5] Because the Arbitrator found the Plan to be unambiguous on its face, he declined to consider any extrinsic evidence. (*Id.* at *81–83.)

---

[3] Ms. Rosso, who intervened in this case, died during the pendency of the proceedings. The executrix of her estate, Josephine Mercantini Bocci, has since been substituted for her as a party. Ms. Bocci has not taken a position on the instant motion.

[4] The Subject Motion does not pertain to the 403(b) Plan, and the Court therefore does not discuss it.

[5] The page numbers referencing the Arbitrator's opinion and court filings correspond to those in the ECF docket number, not those in the actual submission or opinion.

On July 27, 2018, Defendants filed a Motion to Vacate the Arbitration Award and for Equitable Reformation of the subject Plan. (ECF No. 85.) Following oral argument on October 24, 2019, the Court issued a decision, holding that Defendants' motion was premature because the Arbitrator had not yet issued his final award. "In the interest of judicial economy and to avoid piecemeal litigation," the Court dismissed the motion without prejudice and allowed the motion to be refiled once the final award had been entered. (Oral Arg. Tr. 39:3–9, ECF No. 101.)

The Arbitrator issued the subject award on April 30, 2020, and Plaintiff thereafter filed a Motion to Confirm Arbitration Award and Reopen the Case. (ECF No. 103.) Defendants opposed the motion, arguing that the Arbitrator "manifestly disregarded the applicable law requiring that the EBAC be afforded significant deference" in its analysis of the Plan documents and the establishment of extrinsic ambiguity. (ECF No. 108 at 13.) Defendants also requested permission to renew their motion for equitable reformation of the ETS plans. (*Id.* at 40.) On April 28, 2021, the Court issued a written decision confirming the Arbitrator's award in its entirety and reopened the case. (ECF No. 111.) In a footnote, the Court also granted Defendants' request to renew their motion for equitable reformation. (*Id.* at 10 n.5.)

Thereafter, on December 29, 2022, Defendants filed a Motion to Reform the ETS 401(a) Retirement Plan. (ECF No. 167.)[6] Following briefing, the Undersigned granted Defendants' Motion in the challenged July 26, 2023 Opinion and Order. The Court held that Defendants' Motion was not barred under New Jersey's six-year statute of limitations for contract claims because Defendants' Motion to Amend was an affirmative defense, as opposed to a "claim," and thus not subject to the statute of limitations; and even assuming Defendants' argument was a counterclaim, the statute of limitations had not expired due to Defendants' claim accruing in 2014

---

[6] The TIAA Defendants joined the ETS Defendants' Motion. (ECF No. 170.)

4

when Defendants first became aware of the mistake in the ERISA plan. (Challenged Op. at 7–10.) Regarding Plaintiff's waiver contention, the Court held that Defendants had not waived their equitable reformation argument by not raising it during the administrative proceedings or arbitration, because the Court found Defendants did not become aware of the drafting error until discovery several years after the completion of any administrative proceedings; and equitable reformation was not within the scope of the arbitration, such that Defendants did not waive their claim by failing to bring it before the Arbitrator. (*Id.* at 10–15.) Finally, the Court considered the "voluminous record evidencing that the language in question was a drafting error," and, as such, "the evidence [was] clear and convincing that a drafting error occurred in the 2002 Restatement of Section 7.3 of the 401(a)." (*Id.* at 15–20.)

## II.  LEGAL STANDARD

Reconsideration is an "extraordinary remedy" to be granted "sparingly." *United States v. Coburn*, No. 19-120, 2022 WL 874458, at *2 (D.N.J. Mar. 23, 2022) (quoting *NL Indus. Inc. v. Com. Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 251 (3d Cir. 2010) (quotation marks omitted) (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). To succeed on a motion for reconsideration, a movant must show "(1) an intervening change in the controlling law; (2) new evidence that was not available when the court issued its order, or (3) the need to correct a clear error of law or prevent manifest injustice." *Gibson v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 182, 190 (3d Cir. 2020) (citing *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)).

Pursuant to Local Civil Rule 7.1(i), a party may move for reconsideration within fourteen (14) days of an entry of order or judgment on the original motion. In its brief, the party must "set[]

5

forth concisely the matter or controlling decisions which the party believes the Judge has overlooked." *See* L. Civ. R. 7.1(i). "The word 'overlooked' is the operative term in the Rule." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) (citing Allyn Z. Lite, *New Jersey Federal Practice Rules* 30 (2001)). A motion for reconsideration does not entitle a party to a second bite at the apple, and reconsideration is inappropriate when a party merely disagrees with a court's ruling or when a party simply wishes to re-argue its original motion. *Sch. Specialty, Inc. v. Ferrentino*, No. 14-4507, 2015 WL 4602995, *2–3 (D.N.J. July 30, 2015); *see also Florham Park Chevron, Inc. v. Chevron U.S.A.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

## III. DISCUSSION

Here, Plaintiff does not argue that any new law or evidence requires reconsideration, instead focusing on what she perceives are three errors in the Challenged Opinion. First, Plaintiff contends that Defendants waived their equitable reformation claim by failing to raise it in arbitration. (Pl.'s Br. at 2–10.) Second, Plaintiff contends that the Court ignored the Arbitrator's and Judge Shipp's findings that the QPSA called for a 100% QPSA. (*Id.* at 11–14.) Third, Plaintiff argues that the Court erred by finding that Defendants had not waived their reformation argument by failing to advance it in the administrative proceedings. (*Id.* at 14–15.)

### A. FAILURE TO RAISE IN ARBITRATION

Plaintiff first argues that Defendants waived their reformation claim by failing to raise it in arbitration. (Pl.'s Br. at 2–10.) Plaintiff argues that equitable reformation was a subject of arbitrability such that the Arbitrator should have decided the issue, and therefore the Court lacked jurisdiction to rule on the issue. (*Id.* at 2–3.) The Court addressed this exact issue in the Challenged Opinion. (*See* Challenged Op. at 13–15.) The Court cited to both the Arbitrator's decision and Judge Shipp's prior statements regarding equitable reformation to hold that "neither the arbitrator nor the District Court considered a motion for equitable reformation to be within the scope of the

arbitration." (*Id.* at 15.)[7] Plaintiff's disagreement with the Court is not a valid basis for reconsideration. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("Mere disagreement with a decision of the District Court should normally be raised through the appellate process and is inappropriate on a motion for reargument.").

Plaintiff also contends that the Court's "Opinion can alternatively be read as holding that even if reformation could have been arbitrated, ETS should nonetheless be excused from seeking reformation in the Arbitration because there was 'confusion' as to the Arbitration's scope" and the Court "misconstrue[d] the record in concluding there was 'confusion' as to whether reformation was arbitrable." (Pl.'s Br. at 5–10 (capitalization normalized).) This argument is based on one word cherry-picked from this sentence of the Court's Challenged Opinion: "The Arbitrator also noted that after some initial confusion regarding the scope of the arbitration, the Parties agreed to proceed with this arbitration on an individual rather than a class basis." (Challenged Op. at 14. (citations and internal quotation marks omitted).)

While the Court did use the term "confusion," the Court did not find that there was any confusion regarding either the scope of the arbitration by the Arbitrator or Judge Shipp. (*Id.* at 15.) As the Court made clear, "the scope of the arbitration—as reflected in the Arbitrator's understanding of the limited scope of his authority—was confined to interpreting the plan terms and those terms alone, and with respect to Plaintiff only," and therefore, the "motion to equitably reform the ERISA plan, which would affect the entire putative class, was simply not within the

---

[7] For these same reasons, the Court rejects Plaintiff's contention that its finding "derived from a mistake of law that reformation was a 'class claim.'" (Pl.'s Br. at 4.) As the Court stated in its Challenged Opinion, the Court noted that the equitable reformation claim would affect the entire purported class in the context in considering whether the Arbitrator believed reformation within the scope of the Arbitration. (Challenged Op. at 13–15.) As the Court explained, "the scope of the arbitration—as reflected in the Arbitrator's understanding of the limited scope of his authority—was confined to interpreting the plan terms and those terms alone, and with respect to Plaintiff only." (*Id.* at 14.)

7

contemplated ambit of the arbitration." (*Id.*) The Court cited Judge Shipp's prior comments following oral argument in which he stated that "the parties may re-file a renewed motion [for equitable reformation] after the arbitrator issues a final award." (*Id.* at 14 (quoting ECF No. 101 at 39:8–9).) The Court also noted "[i]n [his] Opinion dated April 28, 2021, Judge Shipp grant[ed] Defendants' request to renew their [equitable reformation] motion." (*Id.* at 14–15 (quoting ECF No. 111 at 10 n.5).) As such, the Court held that "the record indicates that neither the Arbitrator nor the District Court considered a motion for equitable reformation to be within the scope of the arbitration." (*Id.* at 15.) There was no confusion on the part of the Court; instead, the Court unequivocally held that equitable reformation was not within the scope of the arbitration.

### B. FAILURE TO RAISE IN ARBITRATION

Plaintiff also contends that the Court erred in finding that Defendants did not waive their right to seek equitable reformation by failing to raise it during the administrative review. (Pl.'s Br. at 14.) Plaintiff raised this argument before, and now attempts to demonstrate a "clear error of law," *Gibson*, 994 F.3d at 190, by contending that that the Court applied the wrong legal test—applying a "readily apparent test" as opposed to considering whether "factual information supporting that defendant was available to the administrator at the time." (Pl.'s Br. at 14.) Plaintiff is incorrect that the Court applied a "readily apparent test" in the Challenged Opinion; instead, Plaintiff seeks to manufacture a legal error by focusing on the Court's description of other district court decisions who have found waiver. (*See* Challenged Op. at 11–12.)

The Court reviewed the administrative record and found that it "[did] not demonstrate sufficient indicia of Defendants' knowledge of the drafting error, must less to support a viable equitable reformation argument. (*Id.* at 12.) As such, the Court did not apply any heightened test and rather sought to ascertain whether there was any evidence in the record that Defendants were

aware of the mistake during the administrative proceedings. (*Id.* at 12–13.) Upon a review of the record, the Court held that the "record appear[ed] to have been too undeveloped [during the administrative proceedings] to support an equitable reformation motion," and as such, Defendants did not waive its motion. (*Id.* at 13.)

### C. FAILURE TO ADHERE TO THE ARBITRATOR AND JUDGE SHIPP'S PRIOR FINDINGS

Plaintiff next argues that the Court incorrectly concluded that the prior version of the Plan called for a 50% QPSA, ignoring the plain language of the annuity contracts, the Arbitrator's Award which discussed same, and Judge Shipp's Order affirming the Arbitrator's Award. (Pl.'s Br. at 11–14.) Plaintiff points to the language of the annuity contracts and argues that the Challenged Opinion "contradicts the Arbitrator's interpretation" of the annuity contracts and Judge Shipp's confirmation of the Arbitrator's Award. (*Id.* at 11.) In Plaintiff's view, the Arbitrator and Judge Shipp previously held that 401(a) Plan calls for a 100% QPSA, and thus the Court erred in concluding otherwise. (*Id.*) Plaintiff also contends that the Court erred in its determination that the Arbitrator did not consider extrinsic evidence in interpreting the 401(a) Plan. (*Id.* at 13.)

Plaintiff again recycles a prior argument that the Court considered and did not find convincing. *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20-7959, 2021 WL 3012864, at *1 (D.N.J. July 16, 2021) (noting that motions for reconsideration do not "entitle a party to a second bite at the apple"). In its opposition to Defendants' original Motion, Plaintiff contended that the "law of the case" already established that the annuity contracts call for a 100% QPSA. (*See* Challenged Op. at 5 (summarizing Plaintiff's argument).) On its own, this regurgitation of a previously rejected argument with no new facts or law is enough to deny Plaintiff's Motion.

As the Challenged Opinion made clear, the Court considered both the Arbitrator's prior decision and Judge Shipp's confirmation of same and held that "[n]either decision has any bearing

9

on Defendants' equitable reformation claims." (*Id.* at 19–20.) The Court reviewed the Arbitrator's prior decision and found it "made very clear that it did not consider any evidence outside the Plan language." (*Id.* at 20.) The Court agreed with Judge Shipp's discussion of the Arbitrator's decision in which Judge Shipp noted that "the Arbitrator set forth in detail why the reason why prior practice and administration, extrinsic ambiguity, and donative intent were not applicable to the instant matter." (*Id.* at 19–20 (quoting ECF No. 111 at 8).) As the Court explained in the Challenged Opinion, "[n]either decision has any bearing on Defendants' equitable reformation claim, which inherently must rely on 'parol evidence' outside the Plan to substantiate its claim." (*Id.* at 20 (citations omitted).) As such, both the Undersigned and Judge Shipp held that the Arbitrator did not review extrinsic evidence in the Arbitration, and neither the Arbitration Award nor Judge Shipp's confirmation of same impact the equitable reformation claim. Plaintiff improperly "ask[s] the Court to rethink what is ha[s] already thought through—rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co. of Md.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (citations and internal quotation marks omitted). As such, the Court remains unconvinced that the Arbitrator's and Judge Shipp's prior decisions relate in any way to this Motion to Reform.

## IV.  CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Reconsideration, (ECF No. 202), is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: May 23, 2024

11