

Park 80 West–Plaza One
250 Pehle Avenue
Suite 401
Saddle Brook, NJ 07663

(201) 845-9600 Main
(201) 845-9423 Fax

Matthew F. Gately, Esq.
mfg@njlawfirm.com
Direct Line: (551) 497-7189

March 4, 2025

**VIA ECF**

Honorable J. Brendan Day, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

*Re:*   Luciano v. TIAA-CREF, Civil Action No.: 3:15-cv-06726-RK-JBD

Dear Judge Day:

Pursuant to Your Honor's order directing Plaintiff and TIAA to meet and confer regarding the collection and review of C&B Data and submit a joint status letter by February 13, 2025 (ECF No. 245), Plaintiff and TIAA jointly write to advise the Court as to the current status of the parties' discussions.

After submission of the Parties' joint update to the Court on February 12, 2025 (ECF No. 244), the Parties continued to meet and confer pursuant to Local Civil Rule 37.1 and Your Honor's Judicial Preferences. However, at this time, the Parties submit to the Court the following joint dispute letter relating to TIAA's objection to producing additional Claims and Beneficiary Data ("C&B Data"), requested by Plaintiff on February 3, 2025, beyond the C&B data for the six plans for which TIAA has already produced.

    **I.**    **TIAA's Position**

The Parties have been in the process of pre-class certification discovery since 2021. Plaintiff's continued requests for additional C&B Data should be denied because they pose an undue burden to TIAA, and represent a seemingly endless delay to the prosecution of this action.

On February 3, 2025, Plaintiff made her latest request that TIAA produce C&B Data for an additional four of TIAA's client plans (the "Requested Plans"), which includes, at minimum, research on 1,844 participants with a date of death on file. This would be the fourth round of C&B Data production. The

Hon. J. Brendan Day, U.S.M.J.
Page 2

first three rounds involved researching C&B Data for two plans at a time, and took approximately six months each.[1]

Plaintiff suggested, in her request for C&B Data for four additional plans, that additional C&B Data can be quickly produced and efficiently utilized to move the litigation forward. That is not the case. The production of C&B Data for an additional four plans poses undue burden to TIAA that, when combined with the delay that it will cause to moving the litigation forward, is not warranted.

Based on past experience, a fourth round of C&B Data production would entail a multi-step process that requires significant time and effort by TIAA to identify and confirm up to fourteen pieces of information:

1. **Step One:** First, TIAA's Data Team is required to identify the universe of participants in each of the Requested Plans for whom TIAA has a date of death on file and who held at least one deferred annuity contract with an accumulation of benefits at death. Executing and validating a similar query for only *two* plans took the Data Team approximately 30 hours of total personnel time.
2. **Step Two:** Next, TIAA's Beneficiary Relationship Team ("BRT") is required to retrieve the Beneficiary Checklist for each deceased participant identified by the Data Team at step one in order to conduct individual research necessary to provide the requested C&B Data.[2]
3. **Step Three:** Once the Beneficiary Checklists are retrieved, the BRT members are required to undertake individual research to answer up to five relevant questions, including:
    a. Whether the deceased participant had a spouse alive at the time of their death;
    b. Whether 100% of the participant's balance was paid to the participant's surviving spouse;
    c. Whether 100% of the participant's balance was paid to a non-spouse beneficiary;
    d. Whether there was a Qualified Pre-Retirement Survivor Annuity ("QPSA") spousal waiver on file; and

---

[1] After producing C&B Data relating to the two Educational Testing Service ("ETS") plans at issue in the case, following the January 4, 2024 status conference before Your Honor, TIAA undertook effort to collect and analyze C&B Data for two plans, plan numbers 101107 and 103385, which TIAA initially produced on February 14, 2024 (the "Second C&B Data Set"). Following requests by Plaintiff, including on March 2, 2024 and March 4, 2024, TIAA produced additional data related to the Second C&B Data set on April 10, 2024. Plaintiff took approximately six weeks to review the data and provide follow-up questions on May 23, 2024, which TIAA resolved on May 29, 2024.

[2] Beneficiary Checklists are documents that members of the BRT use in the ordinary course to memorialize information they learn in the process of researching and verifying beneficiaries in order to settle benefits—*i.e.*, the necessary research into a deceased plan participant, their named beneficiaries, and their spouse (if any) in order to determine to whom the participant's account balance should be settled ("Beneficiary Research").

Hon. J. Brendan Day, U.S.M.J.
Page 3

       e. Whether the participant's surviving spouse or the spouse's estate (for a spouse who died after the participant but prior to settlement of the participant's account) renounced their beneficiary rights.[3]

4. **Step Four:** For any participants in the Requested Plans with a date of death after September 8, 2009 that meet the following conditions (a) had a spouse alive at the time of decedent's death; (b) surviving spouse was not paid 100% of the decedent's benefits contract accumulation; (c) non-spouse beneficiary was not paid 100% of decedent's benefits contract accumulation; (d) there was not a QPSA spousal waiver on file; and (e) surviving spouse or surviving spouse's estate did not renounce beneficiary rights, the BRT would then be required to conduct research confirming: (1) the date the form describing settlement of benefits was mailed to a surviving spouse; and (2) the percentage of settled funds that still remain with TIAA as of the date of the research in December 2023.

5. **Step Five:** Finally, for any participants in the Requested Plans that satisfied the conditions at step four, the BRT would then conduct additional contract-level research, which could be housed in a number of different locations (including the Beneficiary Checklist, OMNI, or TIAA's Legacy system), to determine: (a) total balance of decedent at date of death; (b) surviving spouse settlement amount; (c) date settled benefits were paid to surviving spouse; (d) date account was fully settled; (e) beneficiary name and relationship; and (f) gross amount paid to each beneficiary.

As averred in the February 2024 Declaration of Jeffrey Kelsen, TIAA-LL_00016114 ("Second Kelsen Declaration") this would be an extraordinary undertaking, requiring up to thirteen minutes per participant. Second Kelsen Decl. ¶ 13 (approximately 6 minutes per participant to complete steps two through four for participants that satisfied all criteria); *id.* ¶ 14 (approximately 5-7 minutes per participant to complete step five). Although Plaintiff has attempted to downplay this burden by emphasizing the reduced time required to research participants whom TIAA is able to stop researching at an earlier step, each of those such participants still requires up to five minutes of individual research—with 1,844 PINs with a date of death on file in the Requested Plans, even five minutes per participant would require over *150 hours* of the BRT's time after a significant undertaking by the Data Team. Second Kelsen Decl. ¶ 5 (approximately 2-3 minutes per participant to retrieve Beneficiary Checklist); *id* ¶ 13 (approximately 1-2 minutes per participant to partially research step three). Because such work would need to be performed in addition to the Data Team and BRT members' normal work duties, it would take weeks—if not months—to complete. Accordingly, TIAA has explained in the past that it does not in the ordinary course of its business retrieve and re-review *en masse* benefit determinations made under its client plans (let alone under multiple plans), and does not have the systems or mechanisms to do so without the extreme burden of completing this time-intensive, manual process. *See, e.g.* ECF No. 205 at 22.

---

[3] Further, although many Beneficiary Checklists contain information sufficient to answer these five queries, this is not always the case depending on the participant and version of the Beneficiary Checklist, which have changed over time.

Hon. J. Brendan Day, U.S.M.J.
Page 4

The ability for an additional C&B Data production to cause significant delays in the litigation is apparent from the protracted process and delays attendant to Plaintiff's handling of the most recent C&B Data (the "Third C&B Data Set"):

1. On July 17, 2024, the parties agreed that TIAA would provide the Third C&B Data Set, and TIAA began the process of identifying the relevant data to undertake the research process.
2. On August 29, 2024, following a delay due to staffing shortages (*see* ECF No. 226), TIAA began the research for the Third C&B Data Set, which was produced to Plaintiff on October 17, 2024.
3. On December 4, 2024—the day before the deadline for Plaintiff to notify TIAA as to whether she viewed the Third C&B Data Set as sufficient in order to delay the filing of Plaintiff's class certification motion (*see* ECF No. 231, "Order")—Plaintiff wrote to TIAA (the "December 4 Letter") that the produced data set was insufficient and that she had "identified certain issues in that data." Plaintiff failed to meet and confer in advance of that deadline or her notification, and failed to provide any detail regarding the supposed issues or deficiencies.
4. After the December 4 Letter, Plaintiff delayed another *eight weeks* to provide her letter on February 3, 2025 letter (the "February 3 Letter") seeking additional C&B data and requesting clarification concerning data points related to only four (out of 210) participants in the Third C&B Data Set. The February 3 Letter provides no explanation for why these issues could not have been raised sooner.

As noted, the Second C&B Data Set proceeded similarly—likewise taking approximately six months from when the parties agreed on the plans for which data would be produced to complete production and resolution of Plaintiff's follow-up questions. TIAA has no reason to believe that a fourth round of C&B Data production would proceed differently, which would thus only cause further unnecessary, months-long delays in this decade-old litigation.

While the December 4 Letter claimed "TIAA's productions of C&B Data to date are currently insufficient," Plaintiff's only basis for her continuing requests, as explained when the Parties met and conferred, is her concern about meeting the numerosity requirement of Rule 23. However, Plaintiff has not identified why she believes the C&B Data already produced are not sufficient to meet this requirement—for example, she has not identified the threshold of potential class members that she is seeking, nor why the specific additional data requested is necessary to move for class certification.[4] The lack of a specific and tangible purported basis for additional data productions underscores why a further burdensome compilation and production of C&B Data is unnecessary when at the class certification stage Plaintiff need "only show that class members *can* be identified" not that they *have* been identified. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) as amended (Apr. 28, 2015). TIAA's position is

---

[4] Moreover, three of the plans for which Plaintiff has requested data utilize a prototype plan document, unlike the ETS 403(b) Plan, which utilizes a custom plan document, and the fourth plan identified by Plaintiff utilizes an external document. TIAA continues to dispute that such prototype plan documents fall within Plaintiff's putative class definition.

Hon. J. Brendan Day, U.S.M.J.
Page 5

consistent with the Court's prior ruling that TIAA could produce a sample set of plan documents, not the many thousands Plaintiff requested. *See* ECF Nos. 144, 150. Plaintiff has provided no basis to impose the burden and delay that the additional discovery would entail.

Accordingly, the Court should decline Plaintiff's request for the production of C&B Data for additional plans, at the very least until after the Court resolves the pending motions for summary judgment (*see* ECF No. 243 for deadline for completion of briefing), which may obviate the need to address this dispute.

## II.    Plaintiff's Position

As Your Honor is aware, Plaintiff has consistently maintained that class discovery (and, indeed, the ultimate determination of class membership) is a two-step inquiry in which one would: (1) determine the plans for which TIAA was awarding a 50% QPSA notwithstanding contrary plan language requiring a 100% QPSA; and then (2) for that subset of plans, identify any Surviving Spouses who received only a 50% QPSA using TIAA's C&B Data. The scope of discovery related to the first inquiry was resolved by Judge Arpert, who ordered production of a subset of plan documents (the "Sample Set").

The scope of discovery on the second issue was originally brought before the Court by way of the Parties' August 30, 2023, joint dispute letter. *See* ECF 205. As detailed in that letter, the then-pending dispute was TIAA's refusal to produce C&B Data for any plans other than the two plans sponsored by ETS, in which Plaintiff's husband was a participant. In that letter, Plaintiff not only responded to each of TIAA's objections, but also reiterated her commitment to working collaboratively with TIAA to resolve TIAA's purported burden objections. *Id.* at 7. TIAA, on the other hand, took the position that Plaintiff's request should be denied in its entirety. *Id.* at 19.

Your Honor held a conference on this issue on January 4, 2024. While TIAA had articulated a blanket refusal to further productions in the joint dispute letter, TIAA represented during the call that it would soon be producing C&B Data for two additional non-ETS plans. Following the Parties' conference with the Court on January 4, 2024, the Court ordered that "the parties are directed to meet and confer regarding the identification of a reasonable and sufficient number of relevant sample plans for which C&B data can be produced." *See* ECF No. 214. Ultimately, TIAA produced C&B Data for four additional plans in two separate tranches (the Second and Third Sets of C&B Data). Plaintiff now seeks C&B Data for an additional four plans (the "Requested Discovery" or the "Fourth Set of C&B Data"). TIAA objects to providing any additional C&B Data.

Fed. R. Civ. P. 26(b)(1) makes clear that a party is entitled to discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information,

Hon. J. Brendan Day, U.S.M.J.
Page 6

>  the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

There is no dispute that only TIAA has access to this information or that this information is not privileged. There can be no dispute that TIAA has vastly greater resources than Plaintiff. As TIAA claims on its website, TIAA's "assets under management as of 9/30/2022 are $1,179B or $1.2T."[5] It is thus hard to imagine that even if TIAA's estimate of "150 hours" of additional work was correct, this investment of time would have any real impact on an entity of TIAA's size, or that TIAA lacks the resources to address any short-time labor requirements. In comparison, the value of the claims to putative class members is significant. Based upon the data provided to date, the amount in dispute for many putative class members is a five- or six-digit figure.

Furthermore, the Fourth Set of C&B Data is critical to Plaintiff's upcoming motion for class certification. As the Court has already indicated that C&B Data for plans other than the two ETS plans is relevant to the case and TIAA has since agreed to produce (and has produced) C&B Data for several non-ETS plans, TIAA cannot argue that the requested discovery is completely irrelevant. Instead, TIAA creatively argues that additional C&B Data is not relevant because TIAA "believes that Plaintiff has received sufficient C&B Data to determine if she can identify a methodology to meet her obligations under Rule 23" (*i.e.*, Rule 23(b)(3)'s ascertainability requirement) and because Plaintiff allegedly failed to identify such a methodology, further discovery will not rectify this alleged failure. In other words, TIAA contends that the Requested Discovery is only relevant to the question of ascertainability and, based upon that consideration alone, this discovery is unnecessarily duplicative. This argument is wrong as both a matter of law and fact.

First, TIAA is incorrect that the requested discovery is **only** relevant to the question of ascertainability. Indeed, during the party's prior conference with Your Honor, Plaintiff made clear that while additional C&B Data would speak to ascertainability, her primary concern was numerosity. Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While there is no numerical floor to satisfy numerosity, the Third Circuit has recognized that this numerosity requirement is generally met if the potential number of plaintiffs exceeds 40. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001); *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).

"To be sure, class discovery can be expensive and burdensome, but the Court must balance that cost and burden against Plaintiffs' right to reasonable discovery to support their pursuit of class-wide relief." *MacLean v. Wipro LTD*, No. 20-3414, 2023 U.S. Dist. LEXIS 94359, at *8-9 (D.N.J. May 31, 2023). Ultimately, however, the plaintiff must be "afforded a reasonable opportunity to develop evidence in support of both their individual claims and the claims asserted on behalf of putative class members—particularly as it pertains to class certification." *Id.* at *9-10 (emphasis added). Proper pre-certification

---

[5] https://www.tiaa.org/public/about-tiaa/how-we-help/how-we-invest (last visited March 4, 2025).

Hon. J. Brendan Day, U.S.M.J.
Page 7

discovery "may be used to help determine whether the class can be properly certified, particularly with respect to the threshold requirements of numerosity, common questions, and adequacy of representation." *Id.* at *11 (quotation and citation omitted); *see also Ramos v. Walmart, Inc.*, No. 21-13827, 2023 U.S. Dist. LEXIS 85248, at *10 (D.N.J. May 16, 2023) (Wolfson, C.J. (ret.)) (recognizing discovery must be "sufficiency broad such that plaintiffs have a fair and realistic opportunity to meet the Rule 23(a) requirements"). Indeed, before ruling on a class certification motion, "the district court is required to be sure that enough pre-certification discovery is provided so that it is satisfied that each Rule 23 requirement has been met." *Calabrese v. CSC Holdings, Inc.*, No. 02-cv-5171, 2007 U.S. Dist. LEXIS 16059, *20 (E.D.N.Y. Mar. 7, 2007). This includes Rule 23(a)'s numerosity requirement. *Id.* at *19-20. In fact, when a plaintiff moves for class certification and is unable to demonstrate numerosity, a court may deny the motion without prejudice and permit additional discovery to proceed, even when that plaintiff failed to move to compel such discovery before moving for certification. *See Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-cv-1421, 2023 U.S. Dist. LEXIS 102257, at *20-23 (S.D.N.Y. June 13, 2023) (collecting cases).

Second, TIAA's assertion that Plaintiff has not been able to develop a methodology to identify putative class members is factually incorrect. Indeed, it is the results of Plaintiff's methodology that compels Plaintiff's request for the Fourth Set of C&B Data. While Plaintiff has already explained this to TIAA during the Parties' meet-and-confer, TIAA continues to feign ignorance, perhaps in a strategic attempt to place the validity of this methodology before Your Honor so that TIAA can have "two bites at the apple" by improperly litigating this issue to both Your Honor and then Judge Kirsch. But the substance of Plaintiff's upcoming class certification motion is an issue for the District Court. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, No. 11-cv-61357, 2012 U.S. Dist. LEXIS 132860, at *7 (S.D. Fla. Sep. 18, 2012) ("The question before the Magistrate Judge was whether Plaintiff is entitled to discovery on the issue of numerosity, not whether Plaintiff's class certification motion will ultimately succeed.") (affirming Magistrate Judge's ruling that defendant should produce discovery relevant to numerosity); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-cv-6198, 2007 U.S. Dist. LEXIS 37642, at *8 (S.D.N.Y. May 24, 2007) (putative class action defendants cannot "refuse to produce discovery relevant to class certification" on the basis that the defendants "contend that the plaintiff cannot succeed in obtaining certification of the proposed class").

Separately, TIAA contends that the Court should deny Plaintiff's request for this discovery based upon the purported burden in producing it. This objection is not well founded, as the agreed-upon procedure of having BRT review the underlying information and produce the C&B Data in an excel document was only implemented in response to TIAA's overstated privacy objections to providing the underlying documents and information to Plaintiff. As this Court is aware, it is routine in class actions that personal information will be produced in discovery and that protection of same is resolved through the implementation of a Discovery Confidentiality Order. Notwithstanding the fact that the DCO that was entered into this case (ECF 119) was jointly proposed by the Parties (ECF 118), TIAA nonetheless objected to producing the underlying documents and information that Plaintiff could have used to generate the C&B data fields herself.

Hon. J. Brendan Day, U.S.M.J.
Page 8

Nonetheless, even though it was TIAA that chose to proceed in this manner, Plaintiff has attempted to work with TIAA in good faith to further refine the C&B Data production process to expedite discovery. As set forth in the Parties' prior joint dispute letter, Plaintiff initially: (1) proposed to accept C&B Data from a small subset of Plans for which Judge Arpet had ordered the production of plan documents; and (2) offered to have TIAA produce C&B Data in tranches, so that TIAA does not compile more than was necessary at this stage of the litigation. *See* ECF 205, at 7.

Additionally, when it became clear that TIAA had essentially 'reinvented the wheel' for each deceased participant in the First Set of C&B Data, Plaintiff collaborated with TIAA on significantly reducing the amount of time per-participant required for TIAA to generate the necessary C&B Data. Specifically, as set forth in the First Declaration of Jeffrey Kelsen, TIAA originally ignored all of the work that TIAA had already done in the ordinary course of business and began manually reconfirming the date of death, conducting a "manual review of images of beneficiary designation forms," manually reviewing spousal waivers and martial status verifications forms, etc. (First Kelsen Decl. ¶¶ 7-13). In other words, TIAA proceeded as if it was making a benefit determination for the first time, when the PIN-specific inquires necessary for determining class membership had already been determined by TIAA as part of its normal benefit settlement process and all (or almost all) of the information necessary was contained in a single document that existed in each deceased participant's file, the "Beneficiary Checklist." Indeed, TIAA later confirmed that this re-review for each participant (as set forth in First Kelsen Declaration) was unnecessary, as the results of Mr. Kelsen and BRT's compilation of data in the First Set of C&B Data exactly mirrored the beneficiary determinations that TIAA had made in the ordinary course. *See* TIAA First Response to Plaintiff's April 27, 2023 Interrogatories, at Response No. 7(v).

As a result of the foregoing, TIAA thereafter implemented a much more efficient procedure for generating C&B Data, as reflected in Mr. Kelsen's Second Declaration. Nonetheless, TIAA contends above that this streamlined process is still an "extreme burden" and "time-intensive." Prior to addressing the substance of TIAA's contentions, even if TIAA was not overstating its burden (which it is), the procedure that TIAA details will take—at most—11-13 minutes for a given deceased participant and this is not unduly burdensome when considering that his/her Surviving Spouse's claim may be **several hundred thousand dollars.** There are likely entire litigations pending before this Court where the total amount at issue is less than the value of many individual putative class members' claims in this case.

Turning to TIAA's substantive claims, TIAA is clearly overstating its burden. For example, TIAA asserts that at Step One its Data Team must identify deceased participants with an accumulation and it previously took 30 hours to develop this query when it first had to develop it for this litigation. TIAA ignores the fact that because this code is already written, it cannot possibly take 30 hours to run it against a few additional plans.

Likewise, TIAA's assertion that the Request Discovery seeks a review of 1,844 PINs is misleading, as a **significant** percentage of those PINs will be automatically excluded (*i.e.*, removed before any manual

Hon. J. Brendan Day, U.S.M.J.
Page 9

review by TIAA's BRT) during the culling process (which includes excluding PINs that have a date of death before September 8, 2009 or if the PIN did not have an account balance at the date of death). In other words, there is no way that TIAA's BRT will be proceeding to "Step Two" for all 1,844 PINs.

As to the remaining "four steps" identified by TIAA, TIAA provides an intentionally convoluted summary of the necessary inquires and references a variety of different time estimates, all to distract from the fact that the **vast** majority of PINs who were not automatically culled in Step One will be excluded after less than five minutes of review and a full 11-13 minute review will only be conducted for a tiny percentage of the total PINs requested.

This reality is evidenced by simply examining the Second Set of C&B Data (which was the first C&B production that followed the streamlined methodology set forth in the Second Kelsen Declaration). While TIAA represented that the two plans included in that data set had 338 PINs with a date-of-death on file, it produced C&B Data for only 210 PINs. In other words, about 1/3 of all PINs were excluded at Step One. By next simply checking to see if there was a Surviving Spouse indicated on the Beneficiary Checklist, almost half of the remaining PINs were excluded (leaving only ~ 115 PINs). The vast majority of these PINs were then removed by determining if the Surviving Spouse received 100% of the benefits, leaving less than 30 PINs. As additional PINs were removed for other reasons, TIAA ultimately produced contract-level information (*i.e.*, proceeded to what TIAA calls "Step Five" above) for an even smaller number of PINs.

The results are similar for the Third Set of C&B Data. While TIAA reported a total of 328 individuals with a date of death on file for the plans that comprised this data set, TIAA provided C&B Data for only 247 PINs. That number was essentially cut in half at the first manual step (determining if there was a Surviving Spouse) to just 124 PINS. Likewise, the **vast** majority (almost 100) of remaining PINs were removed because the Surviving Spouse received 100% of the benefits. Indeed, TIAA ultimately provided contract-level information for only 17 PINs for this data set. In other words, of the 328 total deaths, TIAA had to provide contract-level information (*i.e.*, proceed to Step Five) for only **5%** of deceased PINs.

Plaintiff has no reason to believe the Requested Discovery would materially deviate from the foregoing trends. As such, Plaintiff is essentially requesting contract-specific information for about 92 PINs. Assuming the 12-minute-per-PIN figure in Mr. Kelsen's Second Declaration is accurate, that would only be about 18.5 hours of work. Second Decl. ¶¶ 13-14. As to the 95% of other PINs with a date of death on file, those that are not automatically removed as a matter of TIAA's automatic query will almost all be resolved in no more than 3-5 minutes each. *See id.* ¶¶ 5, 13.

TIAA's final objection is that an additional production of C&B Data will delay the case. At the outset, the sincerity of TIAA's concern for delay is questionable, as TIAA later contends that any further discovery should abide resolution of the Parties' summary judgment motions (which have not yet been fully briefed). As TIAA is correct that the time required to complete the production and review of a set

Hon. J. Brendan Day, U.S.M.J.
Page 10

of C&B Data is several months, this is all the more reason to move forward with this discovery now, so that when dispositive motions are decided, Plaintiff would be in a position to promptly move for class certification, instead of that motion abiding several months of additional discovery. Additionally, TIAA's complaints over delay should be rejected as Plaintiff only agreed to proceed with discovery in tranches to address TIAA's burden objections. No good deed goes unpunished. Finally, the reason that Plaintiff now seeks C&B Data for four plans instead of two is that the Parties have come to realize that are significant "ramping up" periods required by each side when TIAA compiles and Plaintiff then reviews the C&B Data. As such, Plaintiff has intentionally chosen a sample set that Plaintiff hopes is broad enough to reduce the chance that any further pre-certification discovery will be necessary,.

### III.  Conclusion

We thank the Court for its attention to this matter, and remain available should Your Honor require anything further.

Respectfully submitted,

*/s/ Matthew F. Gately*

Matthew F. Gately

cc:  All counsel of record