# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT EQUITIES FUND, et al.,<br><br>*Defendants.* | Civil Action No.:<br><br>3:15-cv-06726-RK-JBD |

## THE ETS DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

JEFFREY I. PASEK
RAYMOND A. KRESGE
Cozen O'Connor
1010 Kings Highway South
Cherry Hill, NJ 08034
(856) 910-5000

*Attorneys for Defendants*
*Educational Testing Service*
*and Educational Testing Service*
*Employee Benefits Administration*
*Committee*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION...................................................................................1

II.  THE AMENDED COMPLAINT........................................................5

III. PROCEDURAL HISTORY................................................................8

IV.  ARGUMENT.......................................................................................10

    A.    The EBAC Decision To Deny Luciano's Claim For A 100% Spousal Death Benefit Under The 403(b) Plan Was Neither Arbitrary Nor Capricious. The Court Should, Therefore, Enter Judgment In Favor Of The ETS Defendants On Count I...................10

        1.    *Firestone* Deference Applies  To The EBAC Decision...........10

        2.    The Retirement Equity Act Context For the EBAC Decision.........................................................................15

        3.    The EBAC Decision Was Neither Arbitrary Nor Capricious. .........................................................................20

    B.    Counts II And III Of The Amended Complaint And The Count I Claim For An Injunction Should Be Dismissed Because These Claims Are Not For Equitable Relief Under *Great-West*.........................................................................29

    C.    Counts II and III of The Amended Complaint And The Count I Claim For An Injunction Should Be Dismissed Because These Claims Are Not For Appropriate Relief Under ERISA Section 502(a)(3). .......................................................35

V.   CONCLUSION...................................................................................39

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Art Builders Profit Sharing Plan v. Bosely*,
  649 F. Supp. 848 (D. Md. 1986)...................................................................18, 20

*Baker v. Sun Life and Health Insurance Co.*,
  767 Fed. Appx. 215 (3d Cir. 2019).............................................................11, 13

*Bickhart v. Carpenters Health and Welfare Fund of Philadelphia*,
  732 Fed. App'x. 147 (3d Cir. 2018) ...................................................................36

*Bicknell v. Lockheed Martin Group Benefits Plan*,
  410 Fed. Appx. 570 (3d Cir. 2011)....................................................................31

*Central States, Southeast and Southwest Areas Health and Welfare
  Fund v. Bollinger, Inc.*,
  573 Fed. App'x. 197 (3d Cir. 2014) ...........................................................30, 31

*Central States, Southeast and Southwest Areas Health and Welfare
  Fund v. Gerber Life Insurance Co.*,
  771 F.3d 150 (2d Cir. 2014) .......................................................................30, 32

*Central States, Southeast and Southwest Areas Health and Welfare
  Fund v. Health Special Risk, Inc.*,
  756 F. 3d 356 (5th Cir. 2014) ............................................................................30

*Conkright v. Frommert*,
  559 U.S. 506 (2010)................................................................................12, 13

*Doroshow v. Hartford Life and Accident Insurance Co.*,
  574 F. 3d 230 (3d Cir. 2009) .............................................................................13

*Dowling v. Pension Plan for Salaried Employees of Union Pacific
  Corp.*,
  871 F.3d 239 (3d Cir. 2017) .......................................................................11, 12

*Firestone Tire and Rubber Co. v. Bruch*,
  489 U.S. 1 (1989)..................................................................................*passim*

*Gallagher v. Park West Bank and Trust Co.*,
  921 F. Supp. 867 (D. Mass. 1996)................................................................18, 19

*Gifford v. Burton*,
  2022 WL 3702266 .................................................................................16

*Gismondi v. United Technologies Corp.*,
  408 F.3d 295 (6th Cir. 2005) ...................................................................14

*Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002)........................................................................*passim*

*Lucaskevge v. Mollenberg*,
  1989 WL 83197 (W.D.N.Y. July 24, 1989) .........................................18, 19, 20

*Ogden v. Blue Bell Creameries U.S.A., Inc.*,
  348 F.3d 1284 (11th Cir. 2003) .................................................................36, 37

*Profit Sharing Plan for Employees of Republic Financial Services v.
  MBank Dallas, N.A.*,
  683 F. Supp. 592 (N.D. Tx. 1988).............................................................18, 20

*Tolson v. Avondale Industries, Inc.*,
  141 F.3d 604 (5th Cir. 1998) ...................................................................36, 37

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)........................................................................4, 5, 35, 36

*Wilkins v. Baptist Healthcare System, Inc.*,
  150 F.3d 609 (6th Cir. 1998) ...................................................................36, 37

## I.    <u>INTRODUCTION</u>

On July 8, 2015, Defendants Educational Testing Service ("ETS") and

Educational Testing Service Employee Benefits Administration Committee

("EBAC"), acting as Plan Administrator for the ETS 403(b) Plan (a retirement

benefit plan), issued a Decision (hereinafter referred to as "EBAC Decision") on an

administrative appeal from Plaintiff Lorraine Luciano ("Luciano"), who demanded

100% of the death benefit under the 403(b) Plan in which her deceased husband,

James Rosso ("Rosso"), had been a Participant.  The EBAC, acting with the

discretionary authority given to it under the Plan, interpreted the 403(b) Plan to

provide the pre-retirement death benefit to Rosso's sister (Lucille), his designated

beneficiary, subject to Luciano's entitlement under the 403(b) Plan to 50% of the

benefit in the form of a Qualified Preretirement Survivor Annuity ("QPSA").

Rosso was a former ETS employee and a Participant in the 403(b) Plan.

Rosso's retirement benefit under the 403(b) Plan was in an Annuity Certificate

issued by College Retirement Equities Fund ("CREF") that provided for the

preretirement death benefit to be paid to the designated beneficiary, subject to a

50% QPSA for a surviving spouse (if any).  Rosso's CREF Annuity Certificate

was incorporated into the 403(b) Plan, as were all the individual annuity contracts

issued under the Plan.  On two separate occasions before marriage, Rosso

designated his sister, Lucille Rosso, as the beneficiary for the 403(b) Plan benefit,

and Rosso never changed those beneficiary designations before he died on April 11, 2014.

Interpreting the 403(b) Plan differently from the EBAC, Luciano has filed this lawsuit based on her interpretation that the 403(b) Plan directs payment of 100% of the preretirement death benefit to her as the surviving spouse. In other words, Luciano's position in this lawsuit is that the 403(b) Plan invalidates the pre-marital beneficiary designations submitted by Rosso even though there is no language in the 403(b) Plan that states that pre-marital beneficiary designations are invalidated or rendered null and void upon marriage. Luciano has sued the EBAC (Plan Administrator) and ETS (Plan Sponsor) under the Employee Retirement Income Security Act ("ERISA") and has filed this lawsuit as a putative class action. In an attempt to widen the putative class action, Luciano has also sued the issuers of the individual annuity contracts and annuity certificates - - Teachers Insurance and Annuity Association of America ("TIAA") and CREF - - along with TIAA-CREF (collectively the "TIAA Defendants").[1]

Luciano's core claim against the ETS Defendants is her Count I benefit claim under Section 502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), that she is entitled to a 100% preretirement death benefit instead of the 50% QPSA. Luciano has re-packaged her ERISA Section 502(a)(1)(B) benefit claim as an ERISA

---

[1] The TIAA Defendants are represented by a different law firm.

Section 502(a)(3) (29 U.S.C. §1132(a)(3)) claim for an "injunction" to stop the denial of her claimed 100% benefit (Count I); and as a claim for a Declaratory Judgment under Section 502(a)(3) (Count II); and as a claim for breach of fiduciary duty (with the main breached duty being a failure to distribute benefits pursuant to the Plan) under Section 502(a)(3) (Count III).

The ETS Defendants have now moved for summary judgment on Counts I, II and III[2] and will establish in this brief that:

1.     The 403(b) Plan provides the EBAC with discretionary authority to interpret the Plan and make benefit determinations, and thus, the EBAC is entitled to deferential review by the Court under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 1 (1989).  The EBAC's Decision was neither arbitrary nor capricious.  The EBAC Decision to award Luciano a 50% QPSA under the 403(b) Plan and to honor Rosso's pre-marital beneficiary designation for the remaining 50% constituted a reasonable interpretation of the 403(b) Plan and as such, should not be disturbed.  Judgment in favor of the ETS Defendants on Count I should, therefore, be entered by the Court.

2.     Luciano's claims for an injunction in Count I and for equitable relief in the form of a Declaratory Judgment for a 100% spousal benefit (Count II)

_____

[2] Counts IV, V, and VI of the Amended Complaint presented challenges to the arbitration clause in a different Plan (the 401(a) Plan).  The 403(b) Plan has no arbitration clause.  Counts IV, V and VI are no longer in the case.

and for an injunction for an alleged breach of fiduciary duty in Count III all fail as repackaged claims for a benefit denial that is the core claim in Count I. Luciano brings each of these claims under ERISA Section 502(a)(3) that is limited to "appropriate *equitable* relief." 29 U.S.C. §1132(a)(3) (emphasis added). As held by the Supreme Court, labels of "injunction" for money or a "declaratory judgment" for money do not convert a monetary claim into a claim for "equitable" relief under Section 502(a)(3). *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002). Since Luciano's claims for an injunction in Counts I and III and for declaratory judgment (Count II) are not equitable, the Court should dismiss the claims. In addition to the *Great-West* legal basis for dismissal of those three claims, if the Court holds that the EBAC Decision is not to be disturbed, there is no factual basis for these three claims, all of which should be dismissed on that ground as well.

        3.      Luciano's claims for injunction in Counts I and III and for declaratory relief in Count II are not viable Section 502(a)(3) claims for *"appropriate* equitable relief" for the separate reason that they are not seeking "appropriate" relief. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). Under *Varity*, if adequate relief can be pursued by Luciano under an ERISA provision other than Section 502(a)(3) - - as it can through Luciano's 502(a)(1)(B) claim in Count I - - then the relief sought by Luciano under Section 502(a)(3) is not "appropriate," i.e.,

there is no viable Section 502(a)(3) claim. *Id.* at 516.  The Court should, therefore, dismiss Counts II and III, as well as the Count I claim for injunction, under *Varity*.

For any and all of the reasons herein and as supported by the accompanying Statement of Facts[3] that are incorporated herein, the Court should grant the ETS Defendants' Motion for Summary Judgment.

## II.    THE AMENDED COMPLAINT

On October 1, 2015, Luciano filed her Amended Complaint against the ETS Defendants and the TIAA-CREF Defendants. (ECF3)  In the Amended Complaint, Luciano pled that:

1.    Luciano married Rosso on February 27, 2004 and that Rosso "had never been married before he married Luciano." (ECF 3 at 13/¶40).

2.    Rosso worked for ETS from 1979 to 1993. (ECF 3 at 13/¶42).

3.    Rosso was a fully-vested participant in the 403(b) Plan, which is an ERISA plan. (ECF 3 at 13/¶¶43-44).

4.    The endorsement to the annuity contracts that held Rosso's 403(b) Plan retirement benefit provided for a retirement spousal death benefit "which is the actuarial equivalent of one-half of the portion of the Accumulation." (ECF 3 at 10-11/¶29).

---

[3] In accord with Local Rule 56.1, the ETS Defendants have separately filed a Statement of Facts as part of their Motion for Summary Judgment.

5.      Rosso's sister, Lucille Rosso, was a designated beneficiary of the 403(b) Plan benefit when Rosso left ETS in 1993. (ETS 3 at 17/¶52).

6.      "In 1996, at age 42 - - eight years before marrying Lorraine - - Jim changed his account investments from TIAA accounts to CREF accounts, and named Lucille as his designated beneficiary."  (ECF 3 at 17/¶52).

7.      Rosso died on April 11, 2014 at the age of 60. (ECF 3 at 13/¶41).

8.      Luciano asserted an administrative claim under the 403(b) Plan for a 100% spousal death benefit. (ECF 3 at 18/¶58, 20/¶68).  TIAA made the initial determination on Luciano's administrative claim, denying her claim in a March 13, 2015 letter from TIAA. (ECF 3 at 18/¶58, 20/¶66).  Luciano appealed TIAA's initial determination to the EBAC, which is authorized by the 403(b) Plan to decide appeals of benefit claims.  (ECF 3 at 20/¶68).  On July 9, 2015, the EBAC denied Luciano's appeal. (ECF 3 at 20/¶68).

9.      The 403(b) Plan "contains no arbitration requirement."  (ECF 3 at 25/¶88).

In Count I, Luciano presents an ERISA Section 502(a)(1)(B) benefit denial claim for a 100% spousal benefit instead of a 50% QPSA. (ECF 3 at 34).  Luciano also adds a Section 502(a)(3) claim for an injunction against the ETS Defendants

to enjoin what she alleges to be violations of the 403(b) Plan in not paying a 100%

spousal benefit. (ECF 3 at 34-35/¶116).

In Count II brought under ERISA Section 502(a)(3), Luciano seeks a

Declaratory Judgment of a "proper calculation" of a 100% spousal death benefit

instead of a 50% QPSA. (ECF 3 at 35).  In the Prayer For Relief, Luciano fleshes

out the requested "declaration" as one providing for a 100% spousal death benefit;

as one providing for the benefit to which she is entitled under the 403(b) Plan; and

as one interpreting the 403(b) Plan to disregard the spousal benefit language in

Rosso's annuity contracts. (ECF 3 at 40).

In Count III brought under ERISA Section 502(a)(3), Luciano alleges a

breach of fiduciary duty by the ETS Defendants in "failing to administer the Plans

and distribute benefits in accordance with the Plan's provisions." (ECF 3 at

36/¶126).  In Count III, Luciano cited ERISA Section 502(a)(3) for an injunction

against alleged continued violations of the provisions of the Plan. (ECF 3 at

37/¶128).  In the Prayer For Relief, Luciano fleshes out the requested "injunction"

as one requiring the ETS Defendants to provide her with the spousal death benefit

"in accordance with the provisions of the Plan" and as one prohibiting an

interpretation of the 403(b) Plan that relies on the annuity contract language

(despite the fact that the annuity contracts are specifically incorporated into the

Plan).  (ECF 3 at 41).

## III.    **PROCEDURAL HISTORY**

In addition to her claims connected to the 403(b) Plan that are the subject of this motion, Luciano sued the ETS Defendants for a spousal death benefit under the ETS 401(a) Plan.  (ECF 3).  The 401(a) Plan claims have been litigated, proceeding through arbitration (which does not apply to the 403(b) Plan) and then through a reformation of the 401(a) Plan ordered by this Court.  (ECF 201).  The 401(a) Plan has materially different language when compared to the 403(b) Plan. For example, as highlighted by Luciano in her Amended Complaint, Article 7 of the 401(a) Plan, which addresses the spousal preretirement survivor benefit, has language that was viewed by the arbitrator to effectively prohibit consideration of anything outside Article 7 in determining the spousal death benefit  (ECF 3 at 15/¶49) -- language that, for example, precluded consideration of the TIAA annuity contract and CREF annuity certificate issued to Rosso for the 401(a) Plan benefit. In contrast, such language is not present in Article 8 of the 403(b) Plan.  As to procedure, the 401(a) Plan has a mandatory arbitration provision for challenges to denial of an administrative claim/appeal -- which is why Luciano's claim under the 401(a) Plan went to arbitration.  (ECF 3 at 24/¶8(a)).  In contrast, the proper forum for challenges to a denial of an administrative claim/appeal under the 403(b) Plan is this Court.  (ECF 3 at 25/¶88).

While Luciano prevailed in arbitration on her 401(a) Plan claim based in large part on the above-referenced limiting language in Article 7 of what could be considered in an interpretation of the Plan, this Court later granted the ETS Defendants' Motion to Amend the 401(a) Plan.  (ECF 200-201).  In its Order entered on July 26, 2023, the Court stated:

> [The 401(a) Plan] is reformed to provide a QPSA benefit equal to the actuarial equivalent of fifty percent (50%) of the total value of a participant's account, which is the QPSA benefit stated in Exhibit A (TIAA annuity contract/endorsement) and Exhibit B (the CREF annuity contract/endorsement) that were expressly referenced in the QPSA section of the 1994 Plan and that were attached to the 1994 Plan.

(ECF 201 at 2).

In issuing this Order, this Court relied on a "voluminous record" presenting "clear and convincing evidence" of an intent by ETS to provide a 50% QPSA benefit under the 401(a) Plan and a record that ETS "never intended … to provide for a 100% QPSA benefit."  (ECF 200 at 15, 18).  This Court discerned ETS' intent from, among other things, "the TIAA/CREF annuity contracts and certificates [and] endorsements further describing the certificates" -- annuity contracts/endorsements that could not (as determined by the arbitrator) be considered in the interpretation of the 401(a) Plan.  (ECF 200 at 17).[4]  On May 24,

_____

[4] The EBAC, directed by the 403(b) Plan to interpret the Plan in accord with its "intended meaning," was neither arbitrary nor capricious in its Decision (*cont'd*)

2024, the Court denied Luciano's motion for reconsideration of the Order granting

reformation of the 401(a) Plan  (ECF 221) -- thereby ending the litigation as to the

401(a) Plan.

With the closure of discovery for anything related to the 403(b) Plan (which

included the production of the administrative record for Luciano's benefit claim

under the 403(b) Plan), the time is now ripe for this summary judgment motion.

## IV.    ARGUMENT

### A.    The EBAC Decision To Deny Luciano's Claim For A 100% Spousal Death Benefit Under The 403(b) Plan Was Neither Arbitrary Nor Capricious. The Court Should, Therefore, Enter Judgment In Favor Of The ETS Defendants On Count I.

Luciano's Count I claim for a 100% spousal death benefit constitutes a

challenge to the EBAC Decision that interpreted the 403(b) Plan to provide a 50%

QPSA.  As a matter of law, judicial deference is to be accorded the EBAC

Decision given the 403(b) Plan language that grants the EBAC with discretion to

interpret the Plan and make benefit determinations.  The EBAC Decision was

neither arbitrary nor capricious, and so should not be disturbed by this Court.

#### 1.    *Firestone* Deference Applies To The EBAC Decision.

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 1 (1989), the Supreme

Court applied trust law principles in deciding the standard of judicial review to be

---

(*cont'd*) to deny Luciano's claim for a 100% spousal benefit.  In the event that the Court were to find otherwise, the ETS Defendants preserve the right to move to reform the 403(b) Plan to provide for a 50% QPSA benefit.

given to plan administrators' determinations of benefit claims. The Court found that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers" and when a trustee is "given power to construe undisputed or doubtful terms, and in such circumstances the trustee's interpretation will not be disturbed if reasonable." *Id*. at 111 (citations omitted). The Court referred to this deferential review as "the arbitrary and capricious standard." *Id*. at 112. Applying these trust law principles to ERISA Section 502(a)(1)(B) cases, the Court held that the arbitrary and capricious standard for judicial review applies when there is "a denial of benefits challenged under §1132(a)(1)(B)" when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115; *see also, e.g.*, *Dowling v. Pension Plan for Salaried Employees of Union Pacific Corp.*, 871 F.3d 239, 244 (3d Cir. 2017) (plan language that plan administrator had authority "to determine all questions of … eligibility [and] … construe and interpret the provisions of the Plan" triggered *Firestone* deference); *Baker v. Sun Life and Health Insurance Co.*, 767 Fed. Appx. 215, 216 (3d Cir. 2019) (plan language that "plan administrator has discretionary authority to determine eligibility for benefits" sufficient to trigger *Firestone* deference).

In *Conkright v. Frommert*, 559 U.S. 506 (2010), the Supreme Court held that *Firestone* deference was triggered by plan language providing the plan administrator with authority "to construe the Plan" and applied *Firestone* deference to a plan administrator interpreting the plan on remand (after the Second Circuit had rejected the administrator's first interpretation of the plan). The Court quoted caselaw on trusts for the propositions that: (1) "[i]f more than one reasonable disposition could be made, then the trustee *must* make the choice", and (2) "the court was *without authority* to determine the amount of support to which plaintiff was entitled from the trust fund" because "the court has *no authority* to substitute its judgment for that of the trustees." *Id*. at 514 n. 1 (emphasis added by Supreme Court and citations omitted).

In *Dowling*, the Third Circuit explained that *Firestone* deference exists for "at least two good reasons." *Dowling*, *supra*, 871 F.3d 239, 246 (3d Cir. 2017). The first reason is that "courts have an obligation to give effect to the plan-drafter's intentions because ERISA abounds with the language and terminology of trust law, and the hallmark purpose of trust law is to accomplish the settlor's intentions." *Id*. (citations and internal quotation marks omitted). The second reason for *Firestone* deference is that "giving deference pays heed to Congress' concern for not discouraging employers in their adoption of ERISA plans," with the Supreme Court "recogniz[ing] that employers often commit the power of

12

interpretation to a plan administrator because doing so serves the employer's interests of efficiency, predictability and uniformity -- interests ERISA seeks to protect."  *Id*. (citations omitted); *see also Conkright*, 559 U.S. 506, 517 (Firestone deference "promotes efficiency" and "predictability" and "uniformity" and by "grant[ing] primary interpretive authority over an ERISA plan to the plan administrator, preserves the 'careful balancing' on which ERISA is based.").

The Third Circuit has described the *Firestone* arbitrary and capricious standard of review as "highly deferential" and "extremely deferential" and one under which the "Plan Administrator's determination will not be disturbed if reasonable."  *Baker v. Sun Life and Health Insurance Co.*, 767 Fed. Appx. 215, 216, 218 (3d Cir. 2019) ("highly deferential" standard of review under *Firestone* and "axiomatic" that "arbitrary and capricious" is "extremely deferential").  The Third Circuit explained the *Firestone* deferential review as follows:

> Under a traditional arbitrary and capricious review, a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.  The scope of this review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.

*Doroshow v. Hartford Life and Accident Insurance Co.*, 574 F. 3d 230, 234 (3d Cir. 2009) (citation and quotation marks omitted).

13

In *Gismondi v. United Technologies Corp.*, 408 F.3d 295 (6th Cir. 2005), the

Sixth Circuit, also referring to *Firestone* as a "highly deferential" standard of

review, applied the *Firestone* standard of review as follows:

> When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.

*Id*. at 298 (citation and annotation marks omitted).  In *Gismondi*, the plaintiffs were

former employees of United Technologies Automotive, which was sold.

Following the sale, the plaintiffs filed administrative claims for benefits under an

ERISA early retirement plan, and at issue was the interpretation of the definition of

"severance date" in section 2.59(a) of the plan, as the "severance date" would

determine if the plaintiffs had reached the age 50 condition for an early retirement

benefit.  While the Sixth Circuit agreed with the plaintiffs that the plan

administrator's interpretation of a subpart of section 2.59(a) was "irrational," the

Court upheld the outcome of a benefit denial because the plan administrator's

interpretation of another subpart of section 2.59(a) was rational and was sufficient

to support the benefit denial outcome under *Firestone*.  *Id*. at 300.

In this case, the language of the ETS 403(b) Plan triggers *Firestone*

deference to the EBAC Decision denying Luciano's administrative claim/appeal.

Section 13.7(a) of the 403(b) Plan provides the Plan Administrator with the power

"to construe and interpret the Plan, and to decide all questions of eligibility for any

benefits hereunder."  Section 13.13 of the 403(b) Plan provides the Plan

Administrator with the "discretion to interpret or construe ambiguous, unclear or

implied (but omitted) terms in any fashion it deems appropriate in its sole

judgment," with any determination by the Plan Administrator being "final and

binding upon all persons."  Establishing beyond doubt the application of *Firestone*

deference to EBAC decisions under the 403(b) Plan, Section 13.13 also states that

any "interpretation, construction or decision" by the plan administrator "shall be

upheld unless found to be arbitrary or capricious."  Therefore, the 403(b) Plan

satisfies what the Supreme Court requires for deference -- that is, a "plan giv[ing]

the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan."  *Firestone*, 489 U.S. 101, 115.

> 2.    The Retirement Equity Act Context
>        For the EBAC Decision.

In 1984, Congress passed the Retirement Equity Act ("REA") that amended

ERISA (and that also had parallel provisions in the Internal Revenue Code).

ERISA Section 205 is the part of REA relevant to this case in its provision of

spousal rights, including a right to a 50% QPSA.  29 U.S.C. §1055.  Section 205(b)

identifies individual account plans (like the ETS 403(b) Plan) as plans to which

Section 205 applies.  29 U.S.C. §1055(b)(1)(C).  Section 205(a)(2) requires that "in

the case of a vested participant who dies before the annuity starting date and who

has a surviving spouse, a qualified preretirement survivor annuity shall be provided

to the surviving spouse of such participant." 29 U.S.C. §1055(a)(2). For individual account plans, Section 205(e)(2), in turn, defines a QPSA as "an annuity for the life of the surviving spouse the actuarial equivalent of which not less than 50 percent of the portion of the account balance of the participant." 29 U.S.C. §1055(e)(2).

For individual account plans that do not offer an annuity form of retirement benefit or if the participant does not elect an annuity, Section 205(b)(C)(i)-(ii) requires that the plan must "provide [ ] that the participant's nonforfeitable accrued benefit…is payable in full, on the death of the participant, to the participant's surviving spouse." 29 U.S.C. §1055(b)(C)(i)-(ii). In *Gifford v. Burton*, 2022 WL 3702266 at ** 3-4 (S.D.W.Va. Aug. 26, 2022), the Court, citing the Internal Revenue Code parallel provision to ERISA Section 205(b)(1)(C)(i)-(ii), referred to this statutory section as the "safe harbor provisions" and the "safe harbor requirements." The Court held that an individual account plan that did not provide for life annuities fell "within the safe harbor" by providing a 100% spousal death benefit. *Id*. at *3.

Section 205(c) permits a participant to elect to waive a QPSA form of benefit, but only if the participant's spouse consents in writing to such an election **or** "there is no spouse" or a "spouse cannot be located." 29 U.S.C. §1055(c)(2). Section 205(c) also requires a "written explanation" of a QPSA be provided to

16

"each participant…before the annuity starting date" -- a written explanation that must describe the QPSA, the participant's rights to waive and the spouse's rights. 29 U.S.C. §1055(c)(3)(B).  This written explanation is to be issued the later of "the first day of the plan year in which the participant attains age 32 and ending with the close of the plan year preceding the plan year in which the participant attains age 35" or a "reasonable period after the individual becomes a participant."  29 U.S.C. §1055(c)(3)(B)(ii).  While not applicable to this case, Section 205 also contains definitions of a Qualified Joint and Survivor Annuity ("QJSA") and Qualified Optional Survivor Annuity ("QOSA"). 29 U.S.C. §1055(d).

A comparison of Section 8 of the 403(b) Plan and ERISA Section 205 shows that Plan Section 8 was drafted to track ERISA Section 205.  Section 8.1 states that except for Section 8.2, Section 8.1 applies to participants who elected a life annuity form of benefit.  For the first time, the 403(b) Plan in the 2007 Restatement no longer provided for an annuity for new participants or new contributions, and so, Section 8.2 titled "Safe Harbor Rules" provided a 100% spousal benefit connected to participants who in the past had not elected an annuity and who in the future could not elect an annuity -- in compliance with ERISA Section 205(b)(1)(C)(i)-(ii).  Section 8.5(a) of the 403(b) Plan defines a "Qualified Election" for a waiver of spousal rights and in that regard directly follows ERISA Section 205(c)(2) - - including a deemed "Qualified Election" when there is "no spouse."  While the

17

403(b) Plan has no definition of a QPSA, the Plan definitions of QJSA and QOSA in Plan Sections 8.5(b)-(c) follow the ERISA Section 205(d) definitions. And in the 403(b) Plan Section 8.6 on "Notice Requirements," the Plan presents the written explanation requirements for QJSAs (Section 8.6(a)) and for QPSAs (Section 8.6(b)) that are found in ERISA Section 205(c)(3).

One legal issue litigated in the early years of REA was whether REA invalidated beneficiary designations without spousal consent that were made before marriage and/or before REA or whether REA just limited those beneficiary designations to the spousal benefit required by REA. Federal Courts regularly held that REA did <u>not</u> invalidate pre-marital or pre-REA beneficiary designations. *Gallagher v. Park West Bank and Trust Co.*, 921 F. Supp. 867, 870 (D. Mass. 1996); *Lucaskevge v. Mollenberg*, 1989 WL 83197 at *3 (W.D.N.Y. July 24, 1989); *Profit Sharing Plan for Employees of Republic Financial Services v. MBank Dallas, N.A.*, 683 F. Supp. 592, 595 (N.D. Tx. 1988); *Art Builders Profit Sharing Plan v. Bosely*, 649 F. Supp. 848, 851 (D. Md. 1986). In *Gallagher*, the plan participant designated a trust as the beneficiary, with his children as beneficiaries of the trust. This beneficiary designation pre-dated the participant's marriage to his second wife and pre-dated REA. When the plan participant died, the second wife, who was the spouse at the time of the participant's death, sued for the entire benefit on the grounds that the beneficiary designation was ineffective without her

18

consent and that the safe harbor rules in Section 205(b)(1)(C) applied to require a 100% spousal death benefit. The Court held that because the plan was not a "safe harbor" plan that excluded annuities, the safe harbor 100% spousal benefit rule did not apply. The Court also specifically rejected the position of the surviving spouse, Carol Gallagher, that the pre-marital beneficiary designation was invalid under REA in not having her written consent:

> The court rejects…Carol Gallagher's contention that the designation of [trustee] Park West as a beneficiary is ineffective without Carol Gallagher's written consent. There is no indication in the language of the [REA] or in its legislative history to demonstrate that Congress intended the absence of spousal consent to render ineffective the designation of beneficiaries other than spouses.

921 F. Supp. 867, 870.

In *Lucaskevge*, a participant of a pension fund designated his children as beneficiaries prior to marriage and before REA. The surviving spouse contended that the beneficiary designation was not effective because she never executed a spousal waiver. The Court rejected that argument, concluding instead that:

> [N]either the plain language of the statute nor its legislative history evidences an intent on the part of Congress to have an earlier-made beneficiary designation rendered ineffective because the spouse did not consent to such designation, especially when the earlier designation was made prior to both the enactment of the REA and the marriage of the plan's participant and his spouse.

1989 WL 83197 at *3 (citations omitted). *See also, Profit Sharing Plan for Employees of Republic Financial Services*, *supra*, 683 F. Supp. 592, 595 ("designation of decedent's estate as beneficiary of the plan benefits was not rendered ineffective by the lack of written, notarized spousal consent"); *Art Builders*, *supra*, 649 F. Supp. 848, 851 ("Nothing in the Act requires spousal consent to the designation of a beneficiary, [and] [a]ll that the Act requires is that unless the spouse files a written consent not to take the pre-retirement survivor annuity, such annuity shall be paid.").

In sum, REA -- and in particular ERISA Section 205 -- provides an important context for Plan Section 8 and the EBAC Decision.

3.    The EBAC Decision Was Neither Arbitrary Nor Capricious.

The EBAC Decision that provided a 50% QPSA to Luciano and that honored Rosso's pre-marital beneficiary designation to Rosso's sister for the remaining 50% of the 403(b) Plan benefit is based on a reasonable interpretation of the 403(b) Plan and is neither arbitrary nor capricious. In its Decision, the EBAC addressed Luciano's administrative appeal position for a 100% benefit that relied upon Plan Sections 8.2 and 8.4 and that discounted Rosso's individual annuity contracts as a misreading of REA and that treated Rosso's valid pre-marital beneficiary designations as irrelevant under the Plan.[5] While acknowledging

_____

[5] Luciano's appeal arguments under the 403(b) Plan are at EBAC 604, 606.

ambiguity in Plan Sections 8.2 and 8.4, the EBAC presented its reasonable interpretation of Plan Sections 8.2 and 8.4 and relied upon both Rosso's individual annuity contracts that had been incorporated into the Plan and Rosso's valid beneficiary designations.[6]

The EBAC interpreted Plan Section 8.2 ( and the statement therein that the "Account Balance shall be paid to the Participant's Surviving Spouse") based on the alignment of the Section 8.2 title of "Safe Harbor" with the above-described REA requirements for plans with no annuity form of benefit --statutory requirements that a Federal Court recently referred to as a "safe harbor" in the above-cited Opinion.  As the EBAC explained, the 2007 Restatement of the 403(b) Plan (i.e., the governing Plan per Luciano) marked the first time that the 403(b) Plan was not offering annuities for new participants or new contributions and the first time that Section 8.2/Safe Harbor Rules appeared in the 403(b) Plan.  Citing ERISA Section 205(b)(1)(c) (i.e., the "safe harbor" provision) for the requirement of a 100% spousal benefit for plans without annuities, the EBAC connected the Plan's Safe Harbor rule of a 100% spousal benefit to the statutory safe harbor requirements when an annuity form of retirement benefit is not an available option. As the EBAC reasoned: "we must construe Section 8.2 in light of the Plan design change it reflects, namely, the freezing on July 1, 2007, of all contributions to the

---

[6] The EBAC Decision is at EBAC 616-622.

TIAA-CREF contracts and shifting of future contributions to mutual funds." (EBAC 620). There is nothing arbitrary or capricious about that interpretation.

Further support for the EBAC interpretation of Section 8.2 as applying when no annuity form of benefit is offered can be found in: (1) the Section 8.2 reference to a "distribution" of the benefit, with a "distribution" not being an annuity stream; and (2) the Plan Section 8.1 statement that Article 8 applies to Participants who elect to receive the retirement benefit "in the form of a life annuity" "except as provided in Section 8.2 below" - - that is, Section 8.2 is the part of Article 8 that does not apply to Participants who have annuities.

With Section 8.2 being interpreted as "Safe Harbor Rules" for those Participants without annuities (i.e., all new contributions beginning on July 1, 2007), the EBAC made the necessary corollary conclusion that Section 8.2 did not apply to Rosso whose entire 403(b) Plan benefit was held in an annuity certificate. (EBAC 620). This EBAC conclusion is logical and reasonable and so, should not be reversed by the Court.

The EBAC also reasonably interpreted 403(b) Plan Section 8.4 on Qualified Preretirement Survivor Annuity, along with the overall question of the case as to whether the spousal death benefit is a 50% QPSA or a 100% benefit. The EBAC acknowledged that the Section 8.4 language of a surviving spouse being able to convert the Account Balance to a QPSA "unless any other beneficiary has been

designated pursuant to a Qualified Election" was ambiguous. This ambiguity is compounded by the absence of any definition of a QPSA in Section 8 of the 403(b) Plan - - in contrast to the Plan Section 8.5 definitions of a Qualified Joint and Survivor Annuity and Qualified Optional Survivor Annuity. Moreover, in contrast to the Section 8.2 Safe Harbor statement that the "Account Balance shall be paid to the Participant's Surviving Spouse" (as ERISA Section 205 so requires for plan participants with no annuity option), Section 8.4 has no such direct statement of Account Balance payment to the spouse, but rather refers to the spouse's right of conversion to an undefined QPSA.

Set against this ambiguity, the EBAC reasonably considered Rosso's individual annuity contract provisions in QPSAs and Rosso's valid pre-marital beneficiary designations as supporting an intended meaning of a 50% QPSA. (EBAC 621). After all, Plan Section 8.4 is all about the "QPSA" and the "beneficiary designation." Luciano's dismissive approach to the TIAA and CREF individual annuity contracts in her appeal (EBAC 606) was rejected by the EBAC for the fundamental reason that "the terms of the individual annuity contracts are incorporated by reference in the Plan" through Plan Sections 13.8 and 14.10 (with Section 14.10 titled "Incorporation of Individual Agreements"). (EBAC 620). In other words, Rosso's TIAA annuity contract (which held some of his 403(b) Plan benefit through July 2006) and CREF annuity certificate (which held all of Rosso's

23

benefit at the time of death) are terms of the 403(b) Plan that cannot and should not be ignored.  And the EBAC's conclusion (at EBAC 620) that Rosso's annuity contracts "specify that the payment is 50% to the surviving spouse and 50% to the named beneficiary" cannot be challenged.

Rosso's CREF annuity certificate supplied, as an incorporated Plan term, the definition of a QPSA that was missing from Plan Section 8 and did so in the following clear language of a 50% benefit:

> If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of **one-half** of the portion of the Accumulation.

(ECF 51-2 at 150) (emphasis added).

Moreover, the standard TIAA Annuity Contract and CREF Annuity Certificate issued to 403(b) Plan Participants in 2007[7] (as referenced in Plan Appendix A which incorporated these standard annuity contracts into the Plan) provided for a 50% QPSA.  The 2007 CREF Annuity Certificate defines the QPSA as a 50% benefit:

> If you die before the Annuity Starting Date and your spouse survives you, the payment of the Death Benefit to your named Beneficiary is subject to your spouse's right to receive a Death Benefit of a Unit-Annuity which is the

---

[7] These annuity contracts were issued to 403(b) Plan Participants before the July 1, 2007 Restatement that froze annuities.

> actuarial equivalent as of the date such Unit-Annuity begins of **one-half** of your Accumulation.

(Dreyer Decl. at Exh. 1) (emphasis added).  Similarly, the 2007 TIAA Annuity Contract provides for a 50% QPSA with a "spouse's right to receive a death benefit of **one-half** of … your accumulation." *Id*. (emphasis added).

The EBAC also reasonably relied on Rosso's "valid beneficiary designations" that were "filed prior to the date he married Ms. Luciano in 2004," with no later beneficiary designation ever filed. (EBAC 617).  In her appeal, Luciano agreed that Rosso's beneficiary designation to his sister was the last beneficiary designation for the 403(b) Plan benefit and was made at a "time [that] Jim [Rosso] was not, and never had been made, married." (EBAC 603).  But then Luciano ignored Rosso's valid pre-marital beneficiary designation in the rest of her appeal, contending that since she did not execute a "Qualified Election" waiver to the death benefit, she is entitled to the entire benefit. (EBAC 604).  Implicit in Luciano's position is the assumption, without any basis, that Rosso's valid pre-marital beneficiary designation was somehow invalidated by his marriage to her. There is nothing in the 403(b) Plan that invalidates pre-marital beneficiary designations upon a later marriage.  And as supported by the caselaw cited above, there is nothing in REA that invalidates pre-marital beneficiary designations upon a later marriage.  All that REA does in this case is to limit Rosso's pre-marital

beneficiary designation to his sister to a 50% benefit so as to allow for the REA-mandated 50% QPSA for Luciano.

Luciano's appeal position, based on the absence of a "Qualified Election," also fails under the 403(b) Plan definition of a "Qualified Election" - - a Plan definition ignored by Luciano in her appeal.  Section 8.5(a) defines "Qualified Election" as a written waiver by the surviving spouse to a QPSA and separately defines "Qualified Election" in the absence of a surviving spouse waiver by providing that when "(i) there is **no spouse**, (ii) the Participant and his spouse are legally separated, (iii) the spouse has abandoned the Participant, as demonstrated by a court order to that effect, **or** (iv) the Participant cannot locate his spouse and has no reasonable way to obtain knowledge of the spouse's whereabouts, and the Participant has submitted a sworn statement to that effect, a waiver **will be deemed a Qualified Election**." (EBAC 2093) (emphasis added).  Thus, under Section 8.5(a) of the 403(b) Plan, Rosso's pre-marital beneficiary designations for his 403(b) Plan benefit, executed in 1988 when there was no spouse and executed in 1996 when there was no spouse, are the very "Qualified Elections" under the Plan that Luciano contends were needed for 50% of the benefit to go to Rosso's sister, Lucille.  And so, even if the Plan definition of a QPSA through the incorporated annuity contracts were to be wrongly ignored in interpreting Section 8.4 of the Plan, the Plan Section 8.5 definition of a Qualified Election

encompasses Rosso's pre-marital beneficiary designations, resulting in 50% of the death benefit going to Rosso's sister.

Section 8.6 of the 403(b) Plan (titled "Notice Requirements") also supports the EBAC Decision by directing a "written explanation of the Qualified Preretirement Survivor Annuity" be sent to "each Participant … at least once during the three-year period beginning on January 1 of the year the Participant attains age 32, and at such other times as may be required by applicable law or as the Administrator shall determine."  (EBAC 2093).  Section 8.6 of the 403(b) Plan directs that this written explanation of a QPSA must present the "terms and conditions" of the QPSA and "the rights of the Participant's Spouse."  (EBAC 2093).

From 1985-on, the 403(b) Plan Participants received the Section 8.6 written explanation in Annual Notices.  In 1985 (the first year after REA was passed), the Notice/written explanation mandated by the 403(b) Plan described a 50% QPSA and explained the QPSA under what would become Rosso's course of events:

> **IF YOU ARE NOT MARRIED NOW BUT YOU ARE MARRIED AT YOUR DEATH**, then 50% of your annuity death benefits covered by the law will be payable to the person to whom you are married at the time of your death and the remainder will be payable to the person(s) you have named in your beneficiary designations.

(Baseshore Declaration, ECF 86-1 at 98) (emphasis in original).  Similarly, in the Plan Section 8.6 Notice to 403(b) Plan Participants issued in 2008 (the first year

27

after the 2007 Plan became effective), the QPSA was defined as a 50% QPSA with the remaining 50% going to the designated beneficiary:

> Anyone can be your beneficiary. **But, if you're married, the law requires us to pay 50% of your benefits to your surviving spouse.** The other 50% can go to any beneficiary you choose.

(Dreyer Decl. at Exh. 2) (emphasis in original). Thus, the Plan-directed Notices on the QPSA further support the EBAC Decision of a 50% QPSA under the 403(b) Plan.

Finally, the EBAC's focus on the "intended meaning" was directed by Plan Section 13.13 that required that any interpretation of the Plan terms be in accord with "their intended meanings." (EBAC 2104). The EBAC's reliance on the Plan definition of QPSA in the incorporated annuity contracts and on the valid, pre-marital beneficiary designations and on the REA Safe Harbor context for the 2007 Restatement was reasonable in discerning the intended meaning of 403(b) Plan Section 8. And as noted by the EBAC, the consistency of the summary plan descriptions' written explanation of the QPSA (i.e., another "written explanation" of the QPSA) with the annuity contracts' definitions of the QPSA only provided confirmation of ETS' "intended meaning" for the QPSA. (EBAC 621).

In sum, the EBAC correctly determined that Luciano's spousal death benefit under the 403(b) Plan is a 50% QPSA. As established herein, the EBAC Decision

was reasonable and was neither arbitrary nor capricious.[8]  Luciano's benefit denial claim for a 100% QPSA should, therefore, be dismissed.

> **B.    Counts II And III Of The Amended Complaint And The Count I Claim For An Injunction Should Be Dismissed Because These Claims Are Not For Equitable Relief Under *Great-West*.[9]**

Section 502(a)(3) of ERISA allows for a claim for "appropriate equitable relief" under which a participant may sue "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other *appropriate equitable* relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the Plan."  29 U.S.C. §1132(a)(3) (emphasis added).  Under the Supreme Court's interpretation of "appropriate" and "equitable," Luciano has not pled a Section 502(a)(3) claim in Counts I, II or III, which are all re-packaged benefit denial claims for the monetary relief of a retirement benefit as pled in the Section 502(a)(1)(B) claim in Count I.

---

[8] Even if *Firestone* deference were not to apply, the EBAC Decision is the correct interpretation of the 403(b) Plan as shown above and so, would survive a *de novo* review.

[9] If judgment is entered in favor of the ETS Defendants on Luciano's Count I/Section 502(a)(1)(B) claim for a benefit denial, then Counts II and III of the Amended Complaint are rendered moot, as would be the Count I claim for an "injunction."  Simply put, if the EBAC Decision that Luciano is entitled to a 50% QPSA under the 403 (b) Plan is not "reversed" by the Court, then Luciano cannot proceed with claims for an injunction or a declaration for a 100% benefit under the Plan.

In *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), the Supreme Court "[r]espected Congress's choice to limit the relief available under §502(a)(3) to equitable relief" and held that the term equitable relief must "refer to those categories of relief that were *typically* available in equity." 534 U.S. 204, 218-219 (citation omitted) (emphasis in original). The Supreme Court stressed that attempts to apply equitable-sounding labels (e.g., injunction or declaration) to a monetary claim will not create a viable claim under Section 502(a)(3):

> A claim for money due and owing under a contract is quintessentially an action at law. Almost invariably … suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

*Id*. at 210 (citation and quotation marks omitted).

Applying *Great-West*, federal appellate courts have regularly affirmed dismissals of Section 502(a)(3) claims on the ground that the relief sought was not "equitable" regardless of the equitable labels that plaintiffs sought to attach to such claims. *See, e.g.*, *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Bollinger, Inc.*, 573 Fed. App'x. 197 (3d Cir. 2014); *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Gerber Life Insurance Co.*, 771 F.3d 150 (2d Cir. 2014); *Central States, Southeast and*

*Southwest Areas Health and Welfare Fund v. Health Special Risk, Inc.*, 756 F. 3d 356 (5th Cir. 2014); *Bicknell v. Lockheed Martin Group Benefits Plan*, 410 Fed. Appx. 570 (3d Cir. 2011). In *Bollinger*, an employee welfare benefit plan paid medical expenses for injured dependents of plan participants and then sued the defendant insurers under Section 502(a)(3), invoking its coordination of benefit provisions to assert claims for payment of those medical expenses. The plaintiff used equitable labels throughout its complaint, with claims for a "declaratory judgment," "restitution," "equitable lien," and "constructive trust." In affirming the District Court's dismissal of the complaint at the Rule 12(b)(6) stage, the Third Circuit rejected the plaintiff's equitable labels, holding that the claims were for monetary relief/money damages, thereby rendering the claims as non-viable under Section 502(a)(3):

> Central States attempts to cast the relief it seeks as equitable, using terms such as restitution, equitable lien, constructive trust, and declaratory judgment. Nevertheless, none of its arguments convince us that it is seeking relief that differs from the relief that a successful plaintiff can obtain in an action to impose personal liability for money damages.

573 Fed. App'x. 197, 201-202 (footnote and citations to complaint omitted); *see also*, *Bicknell*, 410 Fed. App'x. 570, 576-577 ("Count V of Complaint, though captioned a request for equitable relief, in fact seeks nothing other than money [and] money damages are, of course, the classic form of *legal* relief, which is

31

unavailable under §1132(a)(3) [Section 502(a)(3)]") (quotation marks and citations omitted) (emphasis in original).

Similarly, in *Gerber Life*, the Second Circuit rejected attempts by the plaintiff to place equitable labels of injunction or declaration on monetary claims in an attempt to fit within Section 502(a)(3).  In affirming the District Court's dismissal of the complaint at the Rule 12(b)(6) stage for failure to state clam for equitable relief, the Second Circuit admonished against attempts by plaintiffs to place equitable labels on monetary claims:

> As …*Great-West* makes clear, [plaintiff's] claims are, in essence, legal ones for money damages even though they are covered by an equitable label.  Litigants are not at liberty to plead around ERISA's limitations by resorting to common law or declaratory judgment claims.

*Gerber Life*, 771 F.3d 150, 154.

Under *Great-West*, Luciano's claim against the ETS Defendants in Count I under ERISA Section 502(a)(3) to "enjoin" the ETS Defendants from violating the 403(b) Plan and ERISA is not a claim for "equitable" relief.  In her Prayer for Relief, Luciano presents the requested "injunction" as one requiring the ETS Defendants to provide her with the spousal death benefit in accordance with the provisions of the Plan" and as one prohibiting an interpretation of the 403(b) Plan that relies on the annuity contracts. (ECF 3 at 41).

As shown by the Count I heading of "Failure to Make QPSA **Payments**" (ECF 3 at 34) (emphasis added), Luciano is seeking the monetary relief of payment of the 50% of the death benefit under the 403(b) Plan that she was denied in the administrative claim/appeal process.  In Count I, Luciano pleads that she should be paid "a QPSA in accordance with the provisions of the [] Plan" (ECF 3 at 34/¶112); that she was not paid "a QPSA in accordance with the Plan's terms" (ECF 3 at 34/¶113); and that she was denied a 100% death benefit "regardless of [the] Plan's provisions" (ECF 3 at 34/¶114) - - a pleading for the monetary relief of the denied benefit that is also part of Count I.  As the Supreme Court held in *Great-West*, labels of "injunction … to compel the defendants to pay a sum of money to the plaintiff are suits for money damages." 534 U.S. 204, 210. Therefore, Luciano's label of injunction in Count I does not create a Section 502(a)(3) claim for "equitable" relief and so, the Section 502(a)(3) claim in Count I should be dismissed.

Similarly, under *Great-West*, Luciano's label of "Declaratory Judgment" for Count II does not create a 502(a)(3) claim for "equitable" relief.  As shown by the Count II heading of "Declaratory Judgment Regarding QPSA **Payments**" (ECF 3 at 35) (emphasis added), the requested Declaratory Judgment is for monetary relief.  In Count II, Luciano pleads for "a declaration addressing the proper calculation of QPSA **payments**" (ECF 3 at 35/¶121) (emphasis added) and for "a

33

declaration that [she is] entitled to QPSA **payments** in accordance with the provisions of [the] Plan." (ECF 3 at 35/¶123) (emphasis added).  Similarly, in her Prayer for relief, Luciano presented the requested declaration as one providing for a 100% spousal death benefit; as one interpreting the 403(b) Plan to disregard the annuity contracts; and as one providing for the benefit to which she is entitled under the 403(b) Plan. (ECF 3 at 40).  A declaration of entitlement to the claimed QPSA benefit is an ERISA Section 502(a)(1)(B) claim for the denied benefit. Again, as the Supreme Court held in *Great-West*, labels of "declaration … to compel the defendant to pay a sum of money to the plaintiff are suits for money damages" that cannot be brought under ERISA Section 502(a)(3) that is limited to "equitable" relief. *Id.* at 210.  Count II should be dismissed under *Great-West*.

Finally, Luciano's Count III "fiduciary duty" claim brought under ERISA Section 502(a)(3) also fails because it is a claim for monetary relief.  The Count III heading of "Breach of Fiduciary Duty Regarding QPSA **Payments**" (ECF 3 at 36) (emphasis added) reveals the monetary relief character of Count III.  And Luciano's Count III allegations of "failing to administer the Plan [ ] and distribute benefits in accordance with the Plan's provisions" and of misapplying the annuity contracts "without concern to the specific Plan's terms" present a Section 502(a)(1)(B) for a denied benefit, not a Section 502(a)(3) claim for equitable relief. The requested injunction in Count III to stop the ETS Defendants from violating

34

the 403(b) Plan provisions (ECF 3 at 37/¶128) is a request for monetary relief to compel the payment of a 100% death benefit under the 403(b) Plan - - a re-packaged benefit denial claim that, under *Great-West*, is not "equitable." *Id*. at 210.

In sum, *Great-West* compels judgment in favor of the ETS Defendants on Counts II and III and also on the Count I claim for an "injunction" brought under ERISA Section 502(a)(3).

### C.    Counts II and III of The Amended Complaint And The Count I Claim For An Injunction Should Be Dismissed Because These Claims Are Not For Appropriate Relief Under ERISA Section 502(a)(3).

A separate and independent basis for dismissal of Counts II and III and for the Count I claim for an injunction is that the relief sought in these Section 502(a)(3) claims is not "appropriate," because Luciano has a Section 502(a)(1)(B) avenue that she has pursued through Count I.  In *Varity v. Howe*, 516 U.S. 489 (1996), the Supreme Court stated this principle as follows: "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." 516 U.S. 498, 515 (citation and quotation marks omitted).  The Third Circuit and many other federal appellate courts have applied *Varity* to dismiss Section 502(a)(3) claims when a plaintiff can pursue another avenue for relief, such as a claim under Section 502(a)(1)(B), even if the pursuit of that claim

is unsuccessful.  *See, e.g.*, *Bickhart v. Carpenters Health and Welfare Fund of Philadelphia*, 732 Fed. App'x. 147, 152-153 (3d Cir. 2018); *Ogden v. Blue Bell Creameries U.S.A., Inc*., 348 F.3d 1284, 1287-1288 (11th Cir. 2003); *Wilkins v. Baptist Healthcare System, Inc*., 150 F.3d 609, 615 (6th Cir. 1998); *Tolson v. Avondale Industries, Inc*., 141 F.3d 604, 610 (5th Cir. 1998).

In *Bickhart*, the plaintiff, a retired plan participant sued the plan administrator for reinstatement of medical benefits under ERISA Section 502(a)(1)(B) after administrative exhaustion of the plan claims procedures and also (like Luciano) brought a breach of fiduciary duty claim under Section 502(a)(3). The District Court dismissed both claims, and in affirming the dismissal of the Section 502(a)(3) claim, the Third Circuit cited *Varity* and held as follows:

> At its core, this claim is indistinguishable from the entitlement to benefits claim.  It … seeks nearly identical relief -- e.g., an injunction preventing the Board from enforcing its decision against Bickhart, restoration of Bickhart's benefits, and monetary damages.  This Court is wary of fiduciary breach claims under ERISA that, as here, are actually [claims] based on denial of benefits under the terms of [a] plan.  In such instances, the alleged fiduciary breaches are inseparable from the claim for benefits and do not afford a free-standing basis for relief.

732 Fed. App'x. 147, 152-153 (footnotes and annotation marks omitted).

Importantly, it is irrelevant to the analysis whether the plaintiff's Section 502(a)(1)(B) claim is ultimately successful. As the Circuit Courts in the above-cited cases have held, under *Varity*, a plaintiff cannot plead a Section 502(a)(3)

36

claim if a Section 502(a)(1)(B) claim is available.  In *Ogden*, the Eleventh Circuit

reversed the District Court for allowing a Section 502(a)(3) claim to proceed when

the plaintiff had an available avenue for the relief of a medical benefit under

Section 502(a)(1)(B) (even though the 502(a)(1)(B) claim was barred by res

judicata).  As the Court held:

> The central focus of the *Varity* inquiry involves whether
> Congress has provided an adequate remedy for the inquiry
> alleged elsewhere in the ERISA statutory framework.
> Thus, it is irrelevant for *Varity* purposes that the Odgens
> no longer have a viable Section 502(a)(1)(B) claim.
>
> Section 502(a)(1)(B) clearly and unambiguously provided
> the Odgens with an adequate remedy for their injury by
> according them with a cause of action to recover benefits
> due [them] under the terms of [David Odgen's] plan.  29
> U.S.C. §1132(a)(1)(B).  Therefore, the Odgens could not
> have pleaded or proceeded under a Section 502(a)(3)
> theory of recovery.

348 F.3d 1284, 1288 (quotation marks and citation omitted) (emphasis added).  *See*

*also*, *Wilkins*, 150 F.3d 609, 615 (6th Circuit holding that under *Varity*, the

"Supreme Court clearly limited the applicability of §1132(a)(3) to beneficiaries

who may not avail themselves of §1132's other remedies"); *Tolson*, 141 F.3d 604,

610 (5th Circuit holding that under *Varity*, because the plaintiff "has adequate

relief available for the alleged improper denial of benefits through his right to sue

the Plans directly under Section 1132(a)(1), relief through the application of

Section 1132(a)(3) would be inappropriate").

*Varity* compels dismissal of Counts II and III and the Count I claim for an injunction.  As established by Luciano's pleading of an ERISA Section 502(a)(1)(B) claim in Count I, Luciano has an available avenue for relief under ERISA in this case in the form of her benefit denial claim.  While Luciano should not prevail on her Section 502(a)(1)(B) claim (as established in the above Argument), the application of *Varity* is not dependent on whether Luciano is successful on her Section 502(a)(1)(B) claim.  Rather, in defining the meaning of "appropriate" in the Section 502(a)(3)  provision for "appropriate equitable relief," *Varity* renders a claim for alleged "equitable relief" to <u>not</u> be "appropriate" when there is an avenue for relief elsewhere in ERISA (such as in Section 502(a)(1)(B))that is available to the plaintiff.  And since Section 502(a)(1)(B) is not only available to Luciano but has been used by Luciano for her pled Count I benefit denial claim, she does not have viable Section 502(a)(3) claims under *Varity*.

Moreover, the nature of Counts II and III and the Count I claim for an "injunction" as re-packaged benefit denial claims (as established above) only further confirms that those claims are not "appropriate" under Section 502(a)(3). As stressed in *Bickhart*, the Third Circuit is "wary" of benefit denial claims that are re-packaged under Section 502(a)(3) and will not allow Section 502(a)(3) to be used as "a free-standing basis for relief" in such cases.  732 Fed. Appx. 147, 152-

153.  In other words, a plaintiff like Luciano is not seeking "appropriate" relief in Section 502(a)(3) claims that are re-packaged benefit denial claims.

In sum, Luciano's Section 502(a)(3) claims (<u>i.e.</u>, Counts II and III and the Count I claim for an "injunction") do not fit within the Section 502(a)(3) provision for "*appropriate* equitable relief" as a matter of law.  The Section 502(a)(3) claims should, therefore, be dismissed.

## V.    <u>CONCLUSION</u>

For any and all of the reasons herein, the Court should grant the ETS Defendants' Motion and enter judgment in favor of the ETS Defendants on Counts I, II and III of the Amended Complaint, resulting in a final disposition of the case against the ETS Defendants.

Respectfully submitted,

/s/ *Raymond A. Kresge*
JEFFREY I. PASEK
RAYMOND A. KRESGE
Cozen O'Connor
1010 Kings Highway South
Cherry Hill, NJ 08034
(856) 910-5000

Attorneys for the ETS Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2024, a true and correct copy of the foregoing ETS' Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment was served upon all counsel of record via e-mail.

<u>*/s/ Raymond A. Kresge*</u>
RAYMOND A. KRESGE

.