## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LORRAINE H. LUCIANO, on behalf of
herself and all others similarly situated,

    *Plaintiff,*

  v.

TEACHERS INSURANCE AND ANNUITY
ASSOCIATION OF AMERICA - COLLEGE
RETIREMENT EQUITIES FUND, et al.,

    *Defendants*

  and

JOSEPHINE MERCANTINI BOCCI,
EXECUTRIX OF THE ESTATE OF
LUCILLE ROSSO,

    *Intervenor Defendant.*

Civil Action No.:

3:15-cv-06726-RK-JBD

## THE ETS DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
## IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

JEFFREY I. PASEK
RAYMOND A. KRESGE
Cozen O'Connor
1010 Kings Highway South
Cherry Hill, NJ 08034
(856) 910-5000

*Attorneys for Defendants
Educational Testing Service
and Educational Testing Service
Employee Benefits Administration
Committee*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ........................................................................1

II.     JAMES ROSSO'S HISTORY WITH THE ETS 403(b) PLAN .....................2

III.    THE 403(b) PLAN TERMS ..........................................................8

  A.     The Freezing of the Annuity Contracts ...................................8

  B.     The Incorporation Of TIAA-CREF Annuity Contracts Into The 403(b) Plan ......................................................................9

  C.     The Incorporated TIAA-CREF Annuity Contracts ........................11

  D.     Beneficiaries .............................................................12

  E.     The Qualified Preretirement Survivor Annuity ...........................13

  F.     The Plan Administrator's Discretionary Authority To Interpret The Plan And Decide Claims ..............................................17

  G.     The Administrative Claims Process ......................................19

IV.     LUCIANO'S ADMINISTRATIVE CLAIM AND APPEAL .....................19

  A.     The Claim .................................................................19

  B.     The Claim Denial ..........................................................20

  C.     The Appeal ................................................................22

  D.     Lucille Rosso's Submission ...............................................24

  E.     The EBAC Denial Of Luciano's Appeal ...................................25

## I.    <u>INTRODUCTION</u>

Defendants Educational Testing Services ("ETS") and the Educational Testing Service Employee Benefits Administration Committee ("EBAC") (with ETS and EBAC collectively referred to as the "ETS Defendants") have moved for summary judgment on the claims in Counts I-III of the First Amended Complaint regarding the ETS 403(b) Match Plan (the "403(b) Plan"). The 403(b) Plan is a retirement plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Plaintiff Lorraine Luciano ("Luciano") married 403(b) Plan Participant James Rosso ("Rosso") in 2004, and Rosso died in 2014 before his retirement benefit commenced.

In this lawsuit brought as a putative class action under ERISA, Luciano challenges the Decision of ETS and the EBAC (herein referred to as "EBAC Decision") that she is not entitled to all of Rosso's retirement benefit under the 403(b) Plan.[1] The EBAC decided that under the terms of the 403(b) Plan, Luciano is entitled to a Qualified Preretirement Survivor Annuity ("QPSA") valued at 50% of Rosso's retirement benefit, with the balance going to Rosso's designated beneficiary (i.e., his sister, Lucille Rosso). In their summary judgment motion, the ETS Defendants contend that since the decision of the EBAC (which has the

---

[1] Luciano's claim under the ETS 401(a) Plan has been fully litigated. The 401(a) Plan has different language regarding the spousal benefit when compared to the 403(b) Plan.

discretionary authority to interpret the 403(b) Plan and decide claims) was neither arbitrary nor capricious, Luciano's claims should be dismissed.

In accord with Local Rule 56.1, the ETS Defendants present the following Statement of Undisputed Facts in support of their summary judgment motion.

## II.  JAMES ROSSO'S HISTORY WITH THE ETS 403(b) PLAN

1.  Rosso was born in October 1953.  (Exh. B/EBAC 71).[2]

2.  Rosso worked at ETS from 1979 – 1993.  (ECF 3 at 13/¶42)[3]

3.  Rosso enrolled in the 403(b) Plan in January 1988.  (Exh. B/EBAC 595).  Rosso's retirement benefit under the 403(b) Plan was through a Teachers Insurance and Annuity Association ("TIAA") Retirement Annuity Contract B6499160 and a College Retirement Equities Fund ("CREF") Retirement Annuity Certificate Q6499167.  (Exh. B/EBAC 595).  The Annuity Contract and the

---

[2] All of the documents cited herein as record support for this Statement of Facts are attached to the Declaration of undersigned counsel, Raymond A. Kresge (which Declaration is attached hereto as Exhibit 1), and the cited documents are as follows: Exhibit A/the ETS 403(b) Plan (July 1, 2007 Restatement) that is Bates-stamped EBAC 2066-2109; Exhibit B/other cited administrative record pages that have EBAC Bates-stamps; Exhibit C/Rosso's TIAA Annuity Contract and CREF Annuity Certificate that are part of the administrative record and that were part of a prior ECF filing by TIAA (ECF 51-2); Exhibit D/the cited pages to the Baseshore Declaration and the one cited exhibit to that Declaration that were part of a prior ECF filing (ECF 86 and 86-1) in this case; and Exhibit E/Declaration of Andrea Dreyer, the Associate General Counsel for Teachers Insurance and Annuity Association of America. Citations to these supporting documents will be in the form Exh. ___/ [page number].

[3] Citations to ECF 3 are to the First Amended Complaint.

Annuity Certificate are referenced in the 403(b) Plan as "Individual Agreements." (Exh. A/EBAC 2076)

4.     Rosso's TIAA Annuity Contract under the 403(b) Plan was issued in 1988 and is a contract between Rosso (as owner) and TIAA. (Exh. C/ECF 51-2 at 90, 92). Rosso's Annuity Starting Date under this TIAA Annuity Contract was November 1, 2018, and the Contract provided that "if you die before starting to receive this income, the accumulated funds will provide a benefit for your beneficiary." (Exh. C/ECF 51-2 at 90, 92, 123).

5.     Rosso's TIAA Annuity Contract had a number of endorsements that amended the Annuity Contract. (Exh. C/ECF 51-2 at 119). One such endorsement was issued to conform to the requirements of the Retirement Equity Act of 1984 ("REA") that amended ERISA. (Exh. C/ECF 51-2 at 119). This endorsement had a section titled "Spouse's Survivor Death Benefit" that required the following spousal benefit "only to the extent required" by the Internal Revenue Code ("IRC") or ERISA:

> If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of one-half of the portion of the Accumulation.

(Exh. C/ECF 51-2 at 119-120).

6.      Rosso's CREF Annuity Certificate was also issued in 1988, with Rosso and CREF as the parties to the Certificate. (Exh. C/ECF 51-2 at 128, 130). Rosso's Annuity Starting Date under the CREF Annuity Certificate was November 1, 2018, and the CREF Annuity Certificate provided that if Rosso were to die before his Annuity Starting Date, a Death Benefit would be paid to his Beneficiary. (Exh. C/ECF 51-2 at 128, 154).

7.      Rosso's CREF Annuity Certificate had a number of endorsements that amended the Annuity Certificate. (Exh. C/ECF 51-2 at 150). One such endorsement was issued to conform to the requirements of REA. (Exh. C/ECF 51-2 at 150). This endorsement had a section titled "Spouse's Survivor Death Benefit" that required the following spousal benefit "only to the extent required by the IRC or ERISA":

> If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of one-half of the portion of the Accumulation.

(Exh. C/ECF 51-2 at 150).

8.      In January 1988, Rosso completed and signed a TIAA-CREF beneficiary designation form for his 403(b) Plan retirement benefit. (Exh. B/EBAC 71-73). This beneficiary designation was for both the TIAA Annuity Contract and the CREF Annuity Certificate. (Exh. B/EBAC 71-73). Rosso named his sister,

Lucille Rosso, as the sole beneficiary for his 403(b) Plan benefit. (Exh. B/EBAC 71). Rosso married in 2004, and so, was not married at the time of this beneficiary designation, i.e., there was no spouse in 1988. (Exh. B/EBAC 597, 603).

9.     While Rosso left his employment with ETS in 1993, his Individual Agreements continued as his retirement benefit under the 403(b) Plan, and he continued to receive quarterly statements from TIAA-CREF until he died on April 11, 2014. (Exh. B/EBAC 594). In 1996, Rosso elected to transfer his account under the TIAA Annuity Contract to his CREF Annuity Certificate -- which took place over a ten-year period due to restrictions in the TIAA Contract. (Exh. B/EBAC 595). By July 2006, all of Rosso's retirement benefit under the 403(b) Plan was in his CREF Annuity Certificate. (Exh. B/EBAC 595).

10.    In 1993, ETS issued a Summary Plan Description ("SPD") to all 403(b) Plan Participants that explained the retirement benefit under the 403(b) Plan as restated effective January 1, 1985 (i.e., the 403(b) Plan in effect when Rosso enrolled). (Exh. B/1887). The 1993 SPD had a Section titled "**Spousal Rights**" that provided that "all **married** participants in the 403(b) Plan are subject to the following provisions" (emphasis in original):

> If you die before your annuity income begins, your spouse must receive a benefit that is at least 50 percent of the full current value of your annuity accumulation (i.e., the pre-retirement death benefit) under any of the payment options available.

…

> The period during which you and your spouse may elect to waive the pre-retirement survivor death benefit begins on the first day of the plan year in which you attain age 35 and continues until the earlier of your death or the date you start receiving annuity income. If you die before attaining age 35 -- i.e., before you have had the option to make a waiver -- at least 50 percent of the full current value of the annuity accumulation is payable automatically to your surviving spouse. If you terminate employment before age 35, the period for waiving the pre-retirement death benefit begins no later than the date of termination. The waiver may also be revoked during the same period.

(Exh. B/EBAC 1887).

11.    In connection with his election in 1996 to transfer his TIAA Annuity Contract account under the 403(b) Plan to his CREF Annuity Certificate, Rosso had to complete a form titled "Request for a TIAA Traditional Transfer Payout," which form included a beneficiary designation for the transferred funds. (Exh. B/EBAC 146-148). Rosso designated his sister, Lucille Rosso, as the sole beneficiary for this 403(b) Plan benefit, and he signed this beneficiary designation on May 24, 1996. (Exh. B/EBAC 146-148). There was no spouse at the time of this 1996 beneficiary designation, and Rosso checked a box on this form that he was exempt from federal spousal rights to survivor benefits, and he signed a statement that he was not married. (Exh. B/EBAC 146, 148). Above Rosso's signature, this beneficiary designation form had a section for spousal waiver of the spousal death benefit that was 50% of the amount of the Contract. (Exh. B/EBAC 148). This

section above Rosso's signature was titled "Spouse's Consent to Waiver of Survivor Annuity Benefits." (Exh. B/EBAC 148). This section stated that a spouse (if there was one) has "the right to receive a survivor benefit worth at least 50% of the amount in this TPA [Transfer Payout Annuity] contract at the time of your spouse's death if your spouse dies before you," and that as a result, the spouse had to consent to "naming a beneficiary other than you for more than 50% of the death benefit." (Exh. B/EBAC 148).

12.    Rosso was never married until 2004 when he married Luciano. (ECF 3 at 13/¶¶39-40).

13.    Rosso did not change his beneficiary designation under the 403(b) Plan in 2004 when he got married or at any time before he died in April 2014. (Exh. B/EBAC 617).

14.    At the time of his death in 2014, Rosso's benefit under the 403(b) Plan was in the above-referenced CREF Annuity Certificate, and his designated beneficiary for the 403(b) Plan death benefit was his sister, Lucille Rosso. (Exh. B/EBAC 595).

## III.    THE 403(b) PLAN TERMS[4]

### A.    The Freezing of the Annuity Contracts

15.    The 403(b) Plan is an ERISA defined contribution retirement plan, also known under ERISA as an individual account plan.  The 403(b) Plan states that "[t]he purpose of the Plan is to provide retirement income benefits for Participants through annuity contracts and custodial accounts." (Exh. A/EBAC 2071).

16.    "Annuity Contract" is defined in Section 1.4 of the 403(b) Plan as a "nontransferable annuity contract… established for a Participant" by ETS. (Exh. A/EBAC 2072).  The annuity contract between the insurer of the annuity contract and the Participant is referenced in the 403(b) Plan as an "Individual Agreement."  (Exh. A/EBAC 2076/Section 1.27 and EBAC 2077/Section 1.38).

17.    The 403(b) Plan no longer allowed new contributions to be placed into annuity contracts as of June 29, 2007, and so referred to the annuity contracts as "frozen":

> The Plan also identifies those Section 403(b) annuity contracts and custodial accounts which historically have served as Funding Vehicles under the Plan but which are no longer eligible to receive new contributions made under the Plan (the "Frozen Contracts").

---

[4] In the administrative claim process, Luciano submitted that the July 1, 2007 Restatement of the 403(b) Plan is the governing document, and in the claim denial, TIAA-CREF referenced the 2007 Plan provisions. (Exh. B/EBAC 622).  Therefore, reference herein to the 403(b) Plan is to the July 1, 2007 Restatement.

(Exh. A/EBAC 2071).

18.     Under the 403(b) Plan, "all contributions made on and after June 29, 2007 shall be made to Code Section 403(b) custodial accounts established under the Custodial Account Agreement with Fidelity," with those accounts having "mutual fund investment alternatives."  (Exh. A/EBAC 2071).  The referenced "Custodial Account Agreement" between ETS and Fidelity was dated July 2, 2007. (Exh. A/EBAC 2074).  Section 4.1 of the 403(b) Plan is titled "Application of Contributions" and states that "[o]n and after June 29, 2007, the Funding Vehicle to which all such contributions shall be made is the Custodial Account established for a Participant under the Custodial Account Agreement … dated July 2, 2007." (Exh. A/EBAC 2082).

19.     This change in 2007 in new contribution options did not apply to Rosso, who was by then no longer employed at ETS and had no new contributions to make to his 403(b) Plan account. (Exh. B/EBAC 620).  Rosso's 403(b) Plan benefits remained solely in his CREF Annuity Certificate, i.e., a Frozen Contract. (Exh. A/EBAC 2071; Exh. B/EBAC 595, 620).

B.     The Incorporation Of TIAA-CREF Annuity Contracts Into The 403(b) Plan

20.     Although "frozen" for new contributions as of June 29, 2007, the existing annuity contracts remained in effect and were incorporated into the 403(b) Plan through Section 14.10. (Exh. A/EBAC 2107).  Titled "Incorporation of

Individual Agreements," Section 14.10 states that "[t]erms and conditions of the Individual Agreements are hereby incorporated by reference into the Plan, excluding those terms that are inconsistent with the Plan or Code Section 403(b)."  (Exh. A/EBAC 2107).

      21.    Section 13.8 of the 403(b) Plan (titled "Rules and Decisions") addresses claims decisions by the EBAC and states that "[t]his Plan shall be subject to the terms and conditions of … the Annuity Contracts" and that the "Annuity Contracts are listed in Appendix A and are incorporated herein by this reference." (Exh. A/EBAC 2104).  Section 13.8 states that an Annuity Contract term should be ignored if contrary to other Plan terms.  (Exh. A/EBAC 2104).

      22.    Appendix A of the 403(b) Plan identifies the annuity contracts that are incorporated into the Plan as follows:

> The terms of the following … annuity contracts are hereby incorporated in this Plan … Teachers Insurance and Annuity Association Retirement Contract [and] College Retirement Equities Fund Retirement Unit-Annuity Certificate.

(Exh. A/EBAC 2109).  Appendix A refers to the TIAA Retirement Annuity Contract and the CREF Retirement Unit-Annuity Certificate as "Frozen Contracts."  (Exh. A/EBAC 2109).

C.    <u>The Incorporated TIAA-CREF Annuity Contracts</u>

23.    The incorporated "Individual Agreements" for Rosso under the 403(b) Plan were the above-quoted TIAA Annuity Contract No. B6499160 and CREF Annuity Certificate No. Q6499167. (Exh. B/EBAC 595).  The difference between the TIAA Annuity Contract and the CREF Annuity Certificate is in the underlying investments supporting the annuity, with the TIAA Annuity Contract having liquidity restrictions. (Exh. B/EBAC 595).

24.    In early 2007 (<u>i.e.</u>, right before the July 1, 2007 Restatement of the 403(b) Plan), the standardized TIAA Annuity Contract and CREF Annuity Certificate issued to ETS 403(b) Plan Participants contained the same spousal death benefit as in Rosso's Individual Agreements with TIAA and CREF. (Exh. E/Dreyer Declaration at ¶2 and Exh. 1).  Section 57 of the 2007 TIAA Annuity Contract provided that "only to the extent required by the IRC or ERISA," if the party to the Contract dies before his/her annuity starting date and has a surviving spouse, "the payment of the death benefit to your named beneficiary is subject to your spouse's right to receive a death benefit of one-half of any part of your accumulation attributable to contributions under a plan subject to ERISA." (Exh. E/Dreyer Declaration at Exh. 1).  The 2007 CREF Annuity Certificate had the same language for a "spouse's survivor death benefit" under which the death benefit to a named beneficiary is subject to a surviving spouse's right to receive 50% of the retirement

benefit if the participant of an ERISA plan dies before his/her retirement annuity start date. (Exh. E/Dreyer Declaration at Exh. 1).

    D.   <u>Beneficiaries</u>

    25.   Section 1.6 of the 403(b) Plan defines "Beneficiary" as the designated person who is entitled to receive benefits under the Plan after the death of a Participant. (Exh. A/EBAC 2073).

    26.   Section 7.2 of the 403(b) Plan provides that when a Participant dies before his/her retirement benefit has commenced, the death benefit is payable to the Beneficiary. (Exh. A/EBAC 2091).

    27.   Section 7.4 of the 403(b) Plan provides that "[e]ach Participant shall designate one or more direct or contingent Beneficiaries" in a written form approved by the Plan Administrator and by the Custodian (<u>e.g.</u>, TIAA-CREF for Rosso). (Exh. A/EBAC 2091-2092). Section 7.4 provides that a "Participant may change such designation at any time by filing a new or revised form with the Plan Administrator and the Custodian." (Exh. A/EBAC 2092).

    28.   There is no term in the 403(b) Plan that invalidates a beneficiary designation made by an unmarried Plan Participant when that Plan Participant later becomes married. (Exh. A).

29.     There is no term in the 403(b) Plan that requires an affirmative change of a pre-marital beneficiary designation upon marriage or that requires later spousal consent to a pre-marital beneficiary designation.  (Exh. A).

E.     The Qualified Preretirement Survivor Annuity

30.     Section 8 of the 403(b) Plan is titled "Qualified Joint and Survivor Annuity Requirements and Qualified Preretirement Survivor Annuities" and presents different sections on spousal benefits in accord with REA.[5]  (Exh. A/EBAC 2066-2109).

31.     Section 8.1 of the 403(b) Plan states that except for the "Safe Harbor Rules" of Section 8.2, Section 8 applies to participants who elected a life annuity form of benefit.  (Exh. A/EBAC 2092).

32.     Section 8.2 is titled "Safe Harbor Rules" and was added to the 403(b) Plan in the July 1, 2007 Restatement.  (Exh. A/EBAC 2092).  As presented

---

[5] As will be explained in the ETS Defendants' Memorandum of Law, Section 8 tracks in large part the REA provisions on a mandatory spousal benefit.  ERISA Section 205 is the REA statutory provision on spousal benefits and requires:  (1) if a participant of an individual account plan dies before the annuity starting date, the surviving spouse must receive a QPSA defined to be 50% of the participant's nonforfeitable benefit, 29 U.S.C. §§1055(a)(2) and 1055(c)(2); (2) for a plan participant who has no annuity form of benefit to elect, the surviving spouse must receive the full retirement benefit, 29 U.S.C. §1055(b)(1)(c); and (3) the plan must provide a written explanation of the spousal rights to a QPSA to each plan participant at least once after the later of when the participant is between 32-35 years old or a reasonable period after the individual becomes a participant.  29 U.S.C. §1055(c)(3) (B).

above, the main change in the 2007 403(b) Plan was the elimination of annuities for all new contributions after June 30, 2007, which would encompass all new Participants on or after June 30, 2007. (Exh. A/EBAC 620, 2071). In compliance with ERISA §205(b)(1)(c) (a REA provision requiring payment of the full benefit to a surviving spouse if a life annuity is not offered or is not elected by the participant), Section 8.2 states that the death benefit will be paid to the surviving spouse upon the death of the Participant. (Exh. A/EBAC 2092). This Plan Section 8.2 "Safe Harbor" thus allows for REA compliance for those 403(b) Plan Participants who could not elect an annuity form of payment. (Exh. A/EBAC 620).[6]

33.    Rosso's 403(b) Plan death benefit under his CREF Annuity Certificate (which had his entire 403(b) Plan benefit as of July 2006) only allowed for an annuity form of payment of the death benefit with different annuity options – as did his TIAA Annuity Contract that held some of his 403(b) Plan benefit until July 2006. (Exh. C/ECF 51-2 at 124, 155). Thus, the Plan Section 8.2 "Safe Harbor Rules" did not apply to Rosso. (Exh. B/EBAC 620).

34.    Section 8.4 of the 403(b) Plan provides that if "a married Participant dies before benefits have commenced, the Surviving Spouse may elect

---

[6] *See, e.g., Gifford v. Barton*, 2022 WL 3702266 at *3 (S.D.W.Va. Aug. 26, 2022) (refers to a provision of the entire death benefit to the surviving spouse as falling within the "safe harbor" for those plan participants who cannot elect a life annuity form of benefit). The Court in *Gifford* cited the Internal Revenue Code provision that is parallel to ERISA Section 205. 26 U.S.C. §401(a)(11)(B)(iii).

to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ("Qualified Preretirement Survivor Annuity") unless any other Beneficiary has been designated pursuant to a Qualified Election."  (Exh. A/EBAC 2092).

35.     Section 8.5 of the 403(b) Plan contains definitions of a Qualified Election; of a Qualified Joint and Survivor Annuity; and of a Qualified Optional Survivor Annuity.  (Exh. A/EBAC 2092-2093).  There is no definition of a QPSA in Section 8.5 of the 403(b) Plan.  (Exh. A/EBAC 2092-2093).

36.     "Qualified Election" of a QPSA is defined in Section 8.5(a) as a witnessed written consent by the spouse that acknowledges the "effect of such waiver."  (Exh. A/EBAC 2093).  Section 8.5(a) adds that "notwithstanding this consent requirement," a "waiver will be deemed a Qualified Election" if "such written consent may not be obtained, because (i) there is **no Spouse**, (ii) the Participant and his Spouse are legally separated, (iii) the Spouse has abandoned the Participant, as demonstrated by a court order to that effect, **or** (iv) the Participant cannot locate his Spouse and has no reasonable way to obtain knowledge of the Spouse's whereabouts."  (Exh. A/EBAC 2093) (emphasis added).

37.     Section 8.6 of the 403(b) Plan is titled "Notice Requirements," and Section 8.6(b) requires that the Plan Administrator provide "each Participant with a written explanation of the Qualified Preretirement Survivor Annuity at least

once during the three-year period beginning on January 1 of the year the Participant attains age 32, and at such other times as may be required by applicable law or as the Administrator shall determine." (Exh. A/EBAC 2093). This written explanation under Section 8.6(b) must present, among other things, the spouse's rights. (Exh. A/EBAC 2093).

38.    Rosso attained age 32 in 1985. (Exh. B/EBAC 71). That same year, a written explanation of a spouse's rights to annuity death benefits in the post-REA period was issued to 403(b) Plan Participants. (Exh. D/Baseshore Declaration, ECF 86 at 6-7 and ECF 86-1 at 98). This document was titled "Notice of Spouse's Right to Annuity Death Benefits" and stated as follows:

> **IF YOU ARE NOT MARRIED NOW** and are not married at your death, then the law does not affect your annuity death benefits. They will be paid to the person(s) you have named in your beneficiary designation.
>
> **IF YOU ARE MARRIED NOW,** then 50% of your annuity death benefits covered by the law will be payable to your spouse, if he or she survives you, and the remainder of your annuity death benefits will be paid to the person(s) you have named in your beneficiary designation.
>
> **IF YOU ARE NOT MARRIED NOW BUT YOU ARE MARRIED AT YOUR DEATH**, then 50% of your annuity death benefits covered by the law will be payable to the person to whom you are married at the time of your death and the remainder will be payable to the person(s) you have named in your beneficiary designation.

(Exh. D/Baseshore Declaration, ECF 86-1 at 98).

39.    A written explanation of a spouse's rights to annuity death benefit was issued to 403(b) Plan Participants annually after the above-quoted Notice. (Exh. E/Dreyer Declaration at ¶3). For example, in 2008 (i.e., the year after the effective date of the 2007 Restatement of the 403(b) Plan), Participants in the Plan received a Notice titled "Preretirement Survivor Benefits" that stated as follows:

> Anyone can be your beneficiary, **but if you're married, the law requires us to pay 50% of your benefits to your surviving spouse.** The other 50% can go to any beneficiary you choose.

(Exh. E/Dreyer Declaration at ¶3 and Exh. 2) (emphasis in original). This 2008 Notice also explained how a spouse's rights can be waived and how the Plan Participant can revoke a spousal waiver through the completion of a new beneficiary designation form -- an explanation just as directed by Section 8.6 of the 403(b) Plan. (Exh. E/Dreyer Declaration at ¶3 and Exh. 2). This Notice provided a toll-free 800 number to call for more information and also directed the Plan Participants to log in to the secure part of the TIAA-CREF website for more information. (Exh. E/Dreyer Declaration at Exh. 2).

F.    The Plan Administrator's Discretionary Authority To Interpret The Plan And Decide Claims

40.    Section 1.3 of the 403(b) Plan defines "Administrator" and "Plan Administrator" as the "ETS Retirement Plans Working Committee and any other

committee, person or organization as from time to time may be appointed or established by ETS for the purpose of serving as the 'administrator.'" (Exh. A/EBAC 2072). For Luciano's administrative claim under the 403(b) Plan, the EBAC was the Plan Administrator. (Exh. B/EBAC 620, 2072; Exh. D/Baseshore Declaration, ECF 86 at 1).

41. Section 13.7(a) of the 403(b) Plan states that the Administrator shall have the power "to construe and interpret the Plan, and to decide all questions of eligibility for any benefits hereunder." (Exh. A/EBAC 2103).

42. Section 13.13 of the 403(b) Plan presents the Plan Administrator's discretionary authority to interpret the 403(b) Plan and decide claims as follows:

> The Plan shall be interpreted by the Administrator in accordance with the terms of the Plan and their **intended meanings**. However, the Administrator shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the **discretion** to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion it deems to be appropriate in its sole judgment. The validity of any such finding of fact, interpretation, construction, or decision shall not be given <u>de novo</u> review if challenged in court, by arbitration or in any other forum, and shall be upheld unless found to be arbitrary or capricious …. All actions taken and all determinations made in good faith by the Administrator shall be final and binding upon all persons claiming any interest under the Plan.

(Exh. A/EBAC 2104) (emphasis added).

G.    The Administrative Claims Process

43.    Section 13.5 of the 403(b) Plan is titled "Claims Procedure" and allows for the filing of a "written claims for a Plan benefit" by "any Participant or Beneficiary." (Exh. A/EBAC 2101-2102).  A denial of a claim must be accompanied by a written statement of reasons.  (Exh. A/EBAC 2102).

44.    The claimant may appeal a denied claim and may submit written comments and documents to the Plan Administrator.  (Exh. A/EBAC 2102).  The Plan Administrator must issue a written decision on the appeal and provide reasons and references to the Plan provisions on which the appeal decision was based.  (Exh. A/EBAC 2102).

IV.    **LUCIANO'S ADMINISTRATIVE CLAIM AND APPEAL**

A.    The Claim

45.    Upon being informed that she was entitled to a 50% QPSA as her death benefit under the 403(b) Plan, Luciano presented a claim for the full death benefit in letters from her lawyer dated June 11, 2014 and June 18, 2014.  (Exh. B/EBAC 489-495).  After stating that she was married to Rosso on February 27, 2004, and that Rosso died on April 11, 2014, Luciano (through her lawyer) stated that she had not executed a waiver of any part of the death benefit and that "[u]nder

the applicable provisions of ERISA, a surviving spouse is entitled to the decedent spouse's plan assets."[7]  (Exh. B/EBAC 489).

46.   In both of her administrative claim letters, Luciano acknowledged that Rosso's beneficiary designation under the 403(b) Plan had not been revised after Rosso married her.  (Exh. B/EBAC 489, 491).

B.   The Claim Denial

47.   On March 13, 2015, TIAA-CREF, with the authority delegated to it by the EBAC to make the initial claim determination, issued a denial of Luciano's claim to the full death benefit under the 403(b) Plan.[8]  (Exh. B/EBAC 593-601)  In the claim denial letter, TIAA-CREF presented Luciano's claim as an assertion that the absence of her written post-marital consent to the pre-marital beneficiary designation "operate[d] to retroactively invalidate the designation made when he was not married" and that despite the ERISA requirement for only a 50% QPSA, Luciano was "entitled to 100% of his account without regard to the annuity contract provisions or the beneficiary designation Mr. Rosso established."  (Exh. B/EBAC 597).

---

[7] As will be presented in the ETS Defendants' brief, Luciano's statement of ERISA requirements in her claim is wrong.  Section 205(a)(2) and 205(e)(2) provide that a surviving spouse is entitled to a 50% QPSA from "any individual account plan."  29 U.S.C. §§ 1055(a)(2) and 1055(e)(2).

[8] This claim denial letter and the subsequent EBAC appeal denial also addressed Luciano's claim under the ETS 401(a) Plan -- which is not at issue in this summary judgment motion.

48.    In the claim denial letter, TIAA-CREF presented the history of Rosso enrolling in the 403(b) Plan in 1988, "naming his sister as beneficiary"; of Rosso leaving ETS in 1993 with paid-up individual TIAA-CREF annuity contracts for his 403(b) Plan benefit; and of Rosso continuing to engage "with TIAA-CREF in investing and exercising ownership options, and receiving quarterly statements from TIAA-CREF until his death on April 11, 2014." (Exh. B/EBAC 594).  In this letter, TIAA-CREF specifically identified the TIAA Annuity Contract No. B6499160 and the CREF annuity certificate No. Q6499167 issued for Rosso's 403(b) Plan benefit[9] -- with the TIAA contract being a "fixed-type retirement annuity contract" with liquidity restrictions and the CREF annuity certificate being a variable-type certificate allowing for some "non-guaranteed (equity-type) investments." (Exh. B/EBAC 595).

49.    In this claim denial letter, TIAA-CREF presented Rosso's election in 1996 to transfer his TIAA annuity contract account to his CREF annuity certificate account -- an inter-fund transfer that "took place gradually over a ten-year period" so that by 2006, all of Rosso's 403(b) Plan account was in the CREF annuity certificate that had a date of death value of $55,423.90.  (Exh. B/EBAC 595).  This letter also explained that as part of his elected transfer of funds in 1996, Rosso had

---

[9] The relevant parts of both of these individual annuity agreements are quoted above in paragraphs 4-7.

to designate a beneficiary for a TIAA Transfer Payout Annuity Contract, and he designated his sister as beneficiary. (Exh. B/EBAC 595).

50.    In denying Luciano's claim, TIAA-CREF reasoned that: (a) Rosso's individual annuity contracts were incorporated into the 403(b) Plan and provided for a 50% QPSA to Luciano, not a 100% death benefit; (b) Section 8.2 of the 403(b) Plan ("Safe Harbor") was a new provision added to the Plan to address "the change in funding vehicles from the individual annuity contracts offered before June 29, 2007 (all of which then became frozen to any further contributions) to the Fidelity group custodial account into which all new contributions were required to be made" -- with the rule for new contributions in Section 8.2 "not applicable to benefits funded through Mr. Rosso's TIAA-CREF contracts"; (c) Section 8.4 of the 403(b) Plan does not state that the "full" benefit must be paid to the surviving spouse; and (d) ERISA (through REA) does not require anything more than a 50% QPSA be paid to Luciano. (Exh. B/EBAC 598-599).

C.    <u>The Appeal</u>

51.    On May 12, 2015, Luciano, through a letter from her lawyer, submitted to the EBAC her appeal of the claim denial. (Exh. B/EBAC 602-606).

52.    In her appeal, Luciano presented the following facts as "uncontested" -- (a) Rosso married Luciano on February 27, 2004, and was never married before; (b) Rosso died on April 11, 2014 when he was 50 years old, <u>i.e.</u>, a

"pre-retirement death"; (c) Rosso was an ETS employee from 1979-1993; (d) Rosso was a participant in the 403(b) Plan and his 403(b) Plan account was "invested via TIAA-CREF contracts as described in the attached Denial of Claim;" (e) Rosso had designated his sister Lucille Rosso as beneficiary, and "[i]n 1996, Jim [Rosso] re-designated his sister, Lucille, as his beneficiary when he switched investment vehicles for the account;" and (f) the 1996 beneficiary designation was the last beneficiary designation made by Rosso "in connection with the TIAA-CREF assets;" and Rosso was not married at the time of his last beneficiary designation. (Exh. B/EBAC 602-603).

53.     In her appeal, Luciano cited the 2007 403(b) Plan as the "applicable Plan."  (EBAC 603).  Luciano quoted 403(b) Plan Section 8.2 (Safe Harbor) and Section 8.4 (Qualified Pre-retirement Survivor Annuity) as support for her appeal and did not quote or address any other section of the 403(b) Plan.  (Exh. B/EBAC 604).  Luciano argued that she was entitled to a 100% benefit because she never executed a Qualified Election to waive any part of the benefit and because ERISA requires "not less than 50 percent" of the pre-retirement death benefit be paid to a surviving spouse, i.e., a plan can provide more than 50%.  (Exh. B/EBAC 604).

54.     Without any record evidence, Luciano described the TIAA-CREF annuity contracts as "purport[ing] to describe the Retirement Equity Act of 1984," and on that basis, discounted the annuity contracts as a "mis-reading" of

ERISA. (EBAC 606). In her appeal, Luciano argued that the Plan controls, thereby allowing (in her view) for the TIAA-CREF annuity contracts to be disregarded. (EBAC 606). Luciano did not state or acknowledge in her appeal that the individual TIAA-CREF annuity contracts were incorporated into the 403(b) Plan. (Exh. B/EBAC 602-606).

### D.    Lucille Rosso's Submission

55.    As the designated beneficiary, Lucille Rosso intervened in Luciano's administrative appeal with a written statement of her position as submitted by her lawyer. (Exh. B/EBAC 611-615). In her written position, Lucille Rosso presented the facts that she was the designated beneficiary from the date that Rosso enrolled in the 403(b) Plan; that she was the designated beneficiary for the TIAA Transfer Payout Annuity that was part of the inter-fund transfer done by Rosso in 1996; and that Rosso never filed any subsequent beneficiary designation with TIAA-CREF and never named Luciano as a designated beneficiary. (Exh. B/EBAC 612, 614).

56.    In her written position, Lucille Rosso relied on the language of the CREF annuity certificate (which held the 403(b) Plan account at the time of death) as a contract incorporated into the 403(b) Plan through Plan Section 14.10 and as providing a 50% QPSA to the surviving spouse with the "remainder [__] to be distributed to the participant's named beneficiary." (Exh. B/EBAC 613-614).

57. In her written position, Lucille Rosso submitted that Section 8.4 of the 403(b) Plan "does not state that the full balance is to be paid a surviving spouse." (Exh. B/EBAC 614).

E.    The EBAC Denial Of Luciano's Appeal

58. In deciding Luciano's appeal of the TIAA denial of her claim, the EBAC reviewed and considered the administrative record that included the 403(b) Plan; Luciano's appeal; the TIAA written claim denial and exhibits; and Lucille Rosso's submission. (Exh. B/EBAC 616).

59. On July 18, 2015, the EBAC, after "careful review" of Luciano's appeal and exhibits, issued its Decision denying Luciano's appeal. (Exh. B/EBAC 616-622). The EBAC noted that it treated the 2007 Restatement of the 403(b) Plan as the governing Plan for Luciano's appeal "[b]ecause both Ms. Luciano and TIAA have treated the July 1, 2007 Plan restatement as the applicable Plan." (Exh. B/EBAC 620).

60. In its Decision, the EBAC noted that the following facts are undisputed:

(a)    Rosso was a participant in the 403(b) Plan, and his retirement benefit was funded through employer deposits and employee contributions into TIAA-CREF annuity contracts.

(b)    Rosso's benefit under the 403(b) Plan could only be paid in the form of a life annuity.

(c)    The TIAA and CREF annuity contracts are incorporated into the 403(b) Plan through "the Preliminary Statement, Sections 13.8 and 14.10" of the Plan (excluding any term inconsistent with the Plan or Code Section 403(b)).

(d)    Each TIAA annuity contract and each CREF annuity certificate delivered to Rosso provided a pre-retirement spousal death benefit of "the actuarial equivalent of one-half of the portion of the Accumulation."

(e)    The SPDs "issued through the years" reinforced the 50% QPSA surviving spouse benefit under the 403(b) Plan.

(f)    Rosso had "valid beneficiary designations on file with TIAA-CREF" for his 403(b) Plan benefit that named his sister, Lucille Rosso. "Each beneficiary designation had been filed prior to the date he married Ms. Luciano in 2004, and Mr. Rosso never filed any later beneficiary designation." Rosso named his sister as beneficiary for his 403(b) Plan benefit at the time he began participating in the Plan in 1988 and then again in 1996 as part of the transfer of all funds to the CREF annuity certificate. The beneficiary designation form signed by Rosso in 1996 (when he was not married) had a provision for spousal consent for waiver of the surviving spouse pre-retirement benefit that was a 50% QPSA -- which provision was above Rosso's signature.

(g)     Throughout Rosso's life, "TIAA was in regular contact with Mr. Rosso, sending him quarterly reports of his current balance and investment results under each Plan.  He had continuous access to TIAA and could have changed his beneficiary designation … at any time.  He never did so."  (Exh. B/EBAC 616-618 and 620).

61.     In interpreting the 403(b) Plan for Luciano's appeal, the EBAC focused on the direction in Section 13 of the Plan for the EBAC to interpret the Plan "in accordance with the terms of the Plan and their <u>intended meanings</u>."  (Exh. B/EBAC 620) (emphasis added by EBAC).  In its Decision, the EBAC stated that "[t]he reference to 'intended meanings' is so strong that everything points in terms of approving TIAA's interpretation that 50% of the participant's benefit is to be paid to the spouse."  (Exh. B/EBAC 620).

62.     In its Decision, the EBAC identified the "relevant provisions" of the 403(b) Plan as including Section 13.7 and Section 14.10, as those provisions incorporated the individual annuity contracts into the 403(b) Plan.  (Exh. B/EBAC 620).  Based on its review of those incorporated annuity contracts, the EBAC "conclude[d] that it is clear that the contracts specify that the payment is 50% to the surviving spouse and 50% to the named beneficiary unless there has been spousal consent to waiver of the 50% spousal death benefit."  (Exh. B/EBAC 620).

63.    The EBAC next addressed Section 8.2 ("Safe Harbor Rules") which Luciano had cited in her appeal and specifically the Section 8.2 statement that the "Participant's Account Balance shall be paid to the Participant's Surviving Spouse." (Exh. B/EBAC 620-621). In interpreting Section 8.2 that was newly added to the 403(b) Plan in 2007, the EBAC addressed the context of the main change in the 2007 Plan of freezing annuity contracts and not allowing the annuity option for new contributions going forward. (Exh. B/EBAC 620). As the EBAC explained, that 2007 change in contribution options triggered ERISA Section 205(b)(1)(C) (a REA provision) that requires a 100% spousal death benefit in the event that a plan participant cannot elect an annuity form of benefit, i.e., triggered Section 8.2 in the Plan. (Exh. B/EBAC 620). The EBAC explained the ERISA Section 205(b)(1)(C) basis for Plan Section 8.2 as follows:

> [A] plan that does not provide for a life annuity as a form in which benefits may be paid, can comply with ERISA's spousal protection law if it meets the safe harbor set out in ERISA §205(b)(1)(C), which the "Safe Harbor Rules" described in Section 8.2 were designed to meet.

(Exh. B/EBAC 620).

64.    The EBAC reasoned that since ERISA Section 205(b)(1)(C) is limited to plan participants with no annuity option, the Section 205(b)(1)(C) "Safe Harbor Rules" did not apply to Rosso whose entire 403(b) Plan benefit was in the CREF annuity. (Exh. B/EBAC 620). The EBAC concluded that it would not make

sense to "construe Section 8.2 as applying to participants like Mr. Rosso when the very 'Safe Harbor Rules' set out in Section 8.2 could never apply to him." (Exh. B/EBAC 621). The EBAC interpreted Plan Section 8.2 as follows:

> We construe Section 8.2 in accordance with its "intended meaning" as being limited in application to participants other than those whose entire benefit is held in the TIAA-CREF individual annuity contracts.

(Exh. B/EBAC 621).

65.    The EBAC next addressed Section 8.4 of the 403(b) Plan which Luciano had relied upon in her appeal. (Exh. B/EBAC 621). The EBAC specifically addressed the statement in Plan Section 8.4 that a surviving spouse "may elect to have the Participant's Account Balance converted into an Annuity Contract … unless any other Beneficiary has been designated pursuant to a Qualified Election." (Exh. B/EBAC 621). The EBAC determined that this Section 8.4 language was ambiguous -- just as it found Section 8.2 to be ambiguous (Exh. B/EBAC 621) (in interpreting Section 8.4 right after Section 8.2, the EBAC commented that "so again, there is ambiguity").

66.    In accord with the Plan direction to interpret Section 8.4 in accord with the "intended meaning," the EBAC looked to the incorporated individual annuity contracts as reflecting an intent by ETS to provide a 50% spousal benefit. (Exh. B/EBAC 621). The EBAC also looked to communications to Plan Participants in the SPDs and in the language of the beneficiary designation forms as

being "consistent with the [annuity] contracts" and thereby further reflecting an intent to provide a 50% spousal death benefit under the 403(b) Plan.  (Exh. B/EBAC 621).

67.    In its Decision, the EBAC also noted that Rosso had filed beneficiary designations for retirement benefits multiple times and so was charged with the knowledge of needing to submit a new beneficiary designation form upon marriage if he wanted Luciano to receive a 100% spousal death benefit -- an action that Rosso did not take.  (Exh. B/EBAC 621-622).

68.    In its Decision, the EBAC concluded that with the language of Rosso's individual annuity contracts, the language of Rosso's executed beneficiary designation and the language of Plan communications (through, for example, SPDs), Rosso's expectation would be that "50% of his benefit would go to his surviving spouse, not 100%."  (Exh. B/EBAC 621).

69.    The EBAC denied Luciano's appeal and decided as a matter of Plan interpretation that Luciano was entitled to a 50% spousal benefit, not a 100% spousal benefit.  (Exh. B/EBAC 621-622).

70.    In the appeal denial letter, the EBAC informed Luciano of her "right to bring a civil action under ERISA 502(a)" regarding her claims for a 100% death benefit under the 403(b) Plan.  (Exh. B/EBAC 622).

Respectfully submitted,

/s/ *Raymond A. Kresge*
JEFFREY I. PASEK
RAYMOND A. KRESGE
Cozen O'Connor
1010 Kings Highway South
Cherry Hill, NJ 08034

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2024, a true and correct copy of the foregoing ETS' Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment (including cited Exhibits) was served upon all counsel of record via e-mail.


/s/ Raymond A. Kresge
RAYMOND A. KRESGE


LEGAL\74023023\1