EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated,<br><br>       *Plaintiff,*<br><br>    v.<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT EQUITIES FUND, et al.,<br><br>       *Defendants.* | Civil Action No.:<br><br>3:15-cv-06726-RK-JBD |

## DECLARATION OF RAYMOND A. KRESGE IN SUPPORT OF THE ETS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND STATEMENT OF FACTS

I, Raymond A. Kresge, state and declare as follows:

1. I am an attorney with the law firm Cozen O'Connor. I represent Defendants Educational Testing Service ("ETS") and Educational Testing Service Employee Benefits Administration Committee (collectively, the "ETS Defendants") in the above-captioned case. I have personal knowledge of the documents that are attached to this Declaration. I submit this Declaration in

support of the ETS Defendants' Motion for Summary Judgment and Statement of Facts.

2.      Attached as Exhibit A is a true and correct copy of the ETS 403(b) Plan (July 1, 2007 Restatement) that is Bates-stamped EBAC 2066-2109.

3.      Attached as Exhibit B is a true and correct copy of the parts of the administrative record for Plaintiff Luciano's administrative claim and appeal that are cited in the ETS Defendants' Statement of Facts.  These pages in Exhibit B all have an EBAC Bates-stamped number, showing that the documents were produced in discovery in this case.

4.      Attached as Exhibit C is a true and correct copy of other parts of the administrative record for this case that were part of a prior ECF filing at ECF 51-2 to 51-6.  Only the cited pages from that ECF filing are attached in Exhibit C.

5.      Attached as Exhibit D is a true and correct copy of the cited parts of the Declaration of John Baseshore that was previously filed in this case at ECF 86.

6.      Attached as Exhibit E is a true and correct copy of the Declaration of Andrea Dreyer, the Associate General Counsel for Teachers Insurance and Annuity Association of America, along with the exhibits accompanying that Declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th of November 2024 in Philadelphia, PA.

RAYMOND A. KRESGE

EXHIBIT A

**EDUCATIONAL TESTING SERVICE 403(b) MATCH PLAN**

**(As amended and restated effective July 1, 2007)**

ME1 7461360v.11

EBAC-02066

Table of Contents

Page

Preliminary Statement ..................................................................................1
SECTION 1    Definition of Terms Used ..............................................................1
    1.1    Account ....................................................................................1
    1.2    Account Balance ........................................................................2
    1.3    Administrator or Plan Administrator ................................................2
    1.4    Annuity Contract ........................................................................2
    1.5    Base Salary ..............................................................................2
    1.6    Beneficiary ..............................................................................3
    1.7    Cash-Out Limit ..........................................................................3
    1.8    Code ......................................................................................3
    1.9    Committee ................................................................................3
    1.10   Compensation ............................................................................3
    1.11   Custodial Account and Mutual Fund Custodial Account ..........................3
    1.12   Custodial Account Agreement ........................................................4
    1.13   Custodian or Mutual Fund Custodian ................................................4
    1.14   Disabled Participant ....................................................................4
    1.15   Elective Deferral or 403(b) Elective Deferral ....................................4
    1.16   Eligible Employee ......................................................................4
    1.17   Employee ..................................................................................4
    1.18   Employee After-Tax Contribution ....................................................5
    1.19   Employer ..................................................................................5
    1.20   Employer Matching Contribution ....................................................5
    1.21   ERISA ....................................................................................5
    1.22   Frozen Contract ........................................................................5
    1.23   Funding Vehicles ......................................................................5
    1.24   Hour of Service ........................................................................5
    1.25   Inactive Participant ....................................................................6
    1.26   Includible Compensation ..............................................................6
    1.27   Individual Agreement ..................................................................6
    1.28   Insurer ..................................................................................6
    1.29   Limitation Year ........................................................................6
    1.30   Participant ..............................................................................6
    1.31   Plan ......................................................................................6
    1.32   Plan Year ................................................................................6
    1.33   Qualified Military Service ............................................................6
    1.34   Related Employer ......................................................................6
    1.35   2004 Restatement ......................................................................7
    1.36   Severance from Employment ..........................................................7
    1.37   Spouse or Surviving Spouse ..........................................................7
    1.38   Vendor ....................................................................................7
    1.39   Valuation Date ..........................................................................7

i

EBAC-02067

Table of Contents
(continued)

Page

SECTION 2    Eligibility and Participation ...............................................................7

   2.1    Eligibility ........................................................................................7
   2.2    Salary Reduction Election.............................................................8
   2.3    Information Provided by the Employee..........................................9
   2.4    Change in Participation Election ...................................................9
   2.5    Rehired Participants ......................................................................9

SECTION 3    Contributions and Limitations ..........................................................9

   3.1    Elective Deferrals and Employee After-Tax Contributions............9
   3.2    Basic Annual Limitation ................................................................9
   3.3    Age 50 Catch-up Elective Deferral Contributions.........................9
   3.4    Special Rule for a Participant Covered by Another Section 403(b) Plan ...........10
   3.5    Correction of Excess Elective Deferrals .....................................10
   3.6    Employer Matching Contributions ...............................................10
   3.7    Special Rule for Disabled Participants ........................................10
   3.8    Return of Contribution Made in Error ..........................................10
   3.9    Maximum Contributions ..............................................................11
   3.10   Correction of Excess Contributions ...........................................11
   3.11   Nondiscrimination Requirements ................................................11
   3.12   Leave of Absence.......................................................................12
   3.13   Protection of Persons Who Serve in a Uniformed Service ...........12
   3.14   Vesting Requirements .................................................................12

SECTION 4    Application of Contributions and Participant Accounts .....................12

   4.1    Application of Contributions ........................................................12
   4.2    Terms and Conditions of Annuity Contracts and Custodial Accounts ...............13
   4.3    Establishment of Accounts ..........................................................13
   4.4    Frozen Contracts .........................................................................13

SECTION 5    Withdrawals and Loans.....................................................................13

   5.1    Withdrawals ................................................................................13
   5.2    Loans...........................................................................................14

SECTION 6    Distribution of Benefits.....................................................................17

   6.1    Method of Payment......................................................................17
   6.2    Time of Payment..........................................................................18
   6.3    Direct Rollovers to Other Plans ...................................................20
   6.4    Distribution Under Qualified Domestic Relations Orders...............21

SECTION 7    Benefits Payable Upon Death ...........................................................21

   7.1    Amount of Death Benefits ............................................................21
   7.2    Death Before Commencement of Benefits ...................................21
   7.3    Death After Benefit Commencement ...........................................21
   7.4    Beneficiary Designation................................................................21

MEI 7461360v.11

ETS 403(b) Match Plan

EBAC-02068

Table of Contents
(continued)

Page

SECTION 8    Qualified Joint and Survivor Annuity Requirements and Qualified
             Preretirement Survivor Annuities ................................................................22
    8.1      Applicability of Article ..............................................................................22
    8.2      Safe Harbor Rules.......................................................................................22
    8.3      Qualified Joint and Survivor Annuity.........................................................22
    8.4      Qualified Preretirement Survivor Annuity...................................................22
    8.5      Definitions...................................................................................................22
    8.6      Notice Requirements....................................................................................23
    8.7      ....................................................................................................................24

SECTION 9    Minimum Distribution Requirements ...........................................................24
    9.1      Minimum Distribution Requirements ...........................................................24

SECTION 10   Rollovers to the Plan....................................................................................28
    10.1     Rollover Contributions.................................................................................28
    10.2     ....................................................................................................................29

SECTION 11   Contract and Custodial Account Exchanges...................................................29
    11.1     Contract and Custodial Account Exchanges...................................................29
    11.2     ....................................................................................................................30

SECTION 12   Amendment and Plan Termination .................................................................30
    12.1     Amendments Generally ................................................................................30
    12.2     Action by ETS..............................................................................................30
    12.3     Successor Employer......................................................................................30
    12.4     Plan Assets...................................................................................................30
    12.5     Right to Terminate the Plan .........................................................................31

SECTION 13   Administration ..............................................................................................31
    13.1     Duties and Responsibilities of Fiduciaries; Allocation of
             Responsibility Among Fiduciaries...............................................................31
    13.2     Delegation of Duties and Responsibilities.....................................................31
    13.3     Administrator ...............................................................................................31
    13.4     Expenses ......................................................................................................31
    13.5     Claims Procedure .........................................................................................31
    13.6     Records and Reports.....................................................................................33
    13.7     Other Powers and Duties ..............................................................................33
    13.8     Rules and Decisions......................................................................................34
    13.9     Authorization of Benefit Payments...............................................................34
    13.10    Application and Forms for Benefits...............................................................34
    13.11    Facility of Payment......................................................................................34
    13.12    Liabilities ....................................................................................................34
    13.13    Effect of Administrator's Action ..................................................................34

MEI 7461360v.11

ETS 403(b) Match Plan

EBAC-02069

Table of Contents
(continued)

|  |  |  | Page |
|---|---|---|---|
| SECTION 14 | Miscellaneous | ...................................................................................... | 35 |
| 14.1 | Spendthrift Provisions | .............................................................. | 35 |
| 14.2 | IRS Levy | .................................................................................. | 36 |
| 14.3 | Tax Withholding | ....................................................................... | 36 |
| 14.4 | Limitation of Rights and Benefits | ............................................ | 36 |
| 14.5 | Benefits Subject to Adequacy of Funds | .................................... | 36 |
| 14.6 | Plan for Exclusive Benefit of Employees | ................................ | 36 |
| 14.7 | Responsibility of Parties | ......................................................... | 36 |
| 14.8 | Mistaken Contributions | ........................................................... | 36 |
| 14.9 | Procedure When Distributee Cannot Be Located | ..................... | 37 |
| 14.10 | Incorporation of Individual Agreements | .................................. | 37 |
| 14.11 | Governing Law | ......................................................................... | 37 |
| 14.12 | Headings | .................................................................................. | 37 |
| 14.13 | Gender | ..................................................................................... | 37 |
| Appendix A | | ............................................................................................ | 39 |

MEI 7461360v.11                                         ETS 403(b) Match Plan

EBAC-02070

**Educational Testing Service 403(b) Match Plan**
**(As amended and restated effective July 1, 2007)**

**Preliminary Statement**

Educational Testing Service ("ETS") has established the Educational Testing Service Section 403(b) Match and Supplemental Retirement Plan ("Plan") for the benefit of its eligible Employees. The Plan has been amended and restated from time to time, most recently effective as of October 1, 2004 (the "2004 Restatement"). The purpose of the Plan is to provide retirement income benefits for Participants through annuity contracts and custodial accounts that satisfy the requirements of Sections 403(b)(1) and 403(b)(7) of the Internal Revenue Code of 1986, as amended (the "Code").

The Plan is being restated as set forth herein to reflect various Plan design changes made effective as of July 1, 2007, including that all contributions made on and after June 29, 2007, shall be made to Code Section 403(b) custodial accounts established under the Custodial Account Agreement with Fidelity Management Trust Company as Custodian, dated July 2, 2007, pursuant to which Participants may direct the investment of the funds held in their Custodial Accounts among the mutual fund investment alternatives made available under that agreement, or any successor Funding Vehicle that may be selected from time to time by ETS for use under this Plan. The Plan is subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and is intended to comply with the requirements of ERISA Section 404(c).

The Plan also identifies those Section 403(b) annuity contracts and custodial accounts which historically have served as Funding Vehicles under the Plan but which are no longer eligible to receive new contributions made under the Plan (the "Frozen Contracts"). Subject to the terms of the Frozen Contract, a Participant with funds held in any Frozen Contract may elect to transfer those funds to his Custodial Account established hereunder, but no exchange of funds may be made from his Custodial Account to any Frozen Contract. No Plan loans or hardship withdrawals may be made from amounts held in a Frozen Contract. Plan loans and hardship withdrawals are available under the Plan only with respect to amounts held in the Participant's Custodial Account established hereunder. In the event of any conflict between the provisions of a Frozen Contract and the provisions of this Plan, the provisions of this Plan shall control.

Although this restatement is generally effective as of July 1, 2007, certain provisions reflecting final Treasury Regulations issued under Code Section 403(b) are effective as of January 1, 2009, and certain other dates set forth herein. Except as otherwise provided herein, the provisions of this restated Plan shall apply to any Participant, Beneficiary or alternate payee with an Account under the Plan as of July 1, 2007.

The Plan is hereby renamed the Educational Testing Service 403(b) Match Plan.

**SECTION 1**
**Definition of Terms Used**

The following words and terms, when used in the Plan, have the meaning set forth below unless the context clearly requires otherwise.

  1.1 **"Account."** The account or accumulation maintained for the benefit of any Participant or Beneficiary under an Annuity Contract and/or a Custodial Account or Mutual Fund Custodial Account.

EBAC-02071

1.2    **"Account Balance."**  The bookkeeping account maintained for each Participant which reflects the aggregate amount credited to the Participant under all Accounts, including the Participant's Elective Deferrals, the earnings or loss of each Annuity Contract or a Custodial Account (net of expenses) allocable to the Participant, any transfers for the Participant's benefit, and any distribution made to the Participant or the Participant's Beneficiary.  The Account Balance includes any account established under Section 4.3 for rollover contributions made for a Participant, the account established for a Beneficiary after a Participant's death, and any account or accounts established for an alternate payee (as defined in Code Section 414(p)(8)).

1.3    **"Administrator" or "Plan Administrator."**  The ETS Retirement Plans Working Committee and any other committee, person or organization as from time to time may be appointed or established by ETS for the purpose of serving as the "administrator" (as defined in ERISA Section 3(16)(A)) of the Plan.  Where the context requires, the term shall also include any person (including any third-party administrator, Vendor, Custodian, service provider or record-keeper) to whom the Administrator may delegate any of its duties hereunder.

1.4    **"Annuity Contract."**  A nontransferable annuity contract as defined in Code Section 403(b)(1), established for a Participant by the Employer, that is issued by an insurance company qualified to issue annuities in a State that includes payment in the form of an annuity.

1.5    **"Base Salary."**  The total amount of wages, salary, and other compensation paid to an Employee during a payroll period, exclusive of overtime pay, premium pay, and discretionary pay such as awards and bonuses including but not limited to Performance Sharing Plan awards, Presidential awards, spot awards, STIC (short term incentive compensation) and Officers' Incentive Program payments, but including amounts that are not includible in the gross income of the Employee for federal income tax purposes pursuant to Code Sections 125, 132(f), 401(k), 403(b), or 457(b) (including an election made to reduce pay in order to have Elective Deferrals made to the Plan).

For purposes of Section 3.1, 3.3 and 3.6, Base Salary shall include compensation paid to a former Employee within the later of 2 1/2 months after his Severance from Employment or the end of the Limitation Year that includes the date of his Severance from Employment, if:

(A)    the payment is regular compensation for services during the Employee's regular working hours and, absent a Severance from Employment, the payments would have been paid to the Employee while the Employee continued in employment with the Employer; or,

(B)    the payment is for unused accrued bona fide sick, vacation or other leave that the Employee would have been able to use if employment had continued; or

(C)    the payment is received by the Employee pursuant to a nonqualified unfunded deferred compensation plan and would have been paid at the same time if employment had continued, but only to the extent includible in gross income.

Any compensation not described above shall not be considered Base Salary if paid after Severance from Employment, even if paid by the later of 2 1/2 months after the date of Severance from Employment or the end of the Limitation Year that includes the date of Severance from Employment, except, (1) payments to an individual who does not currently perform services for the Employer by reason of qualified military service (within the meaning of Code Section 414(u)(1)) to the extent these payments do not exceed the amounts the individual would have received if the individual had continued to perform services for the Employer rather than entering qualified military service; or (2) compensation paid to a Participant who is permanently and totally disabled, as defined in Code Section 22(e)(3), provided, salary

2

EBAC-02072

continuation applies to all Participants who are permanently and totally disabled for a fixed or determinable period, or the Participant was not a Highly Compensated Employee immediately before becoming disabled, and provided further, that such compensation shall be taken into account as Base Pay hereunder only for purposes of Section 3.7, and not for purposes of Section 3.1, 3.3 or 3.6. For a Participant referred to in clause (2) of the preceding sentence (permanently and totally disabled), who was not a Highly Compensated Employee (within the meaning of Code Section 414(q)) immediately before becoming disabled, or for all Participants referred to in (2) if the Plan provides for the continuation of contributions on behalf of all Participants who are permanently and totally disabled for a fixed or determinable period, Base Pay shall be deemed to be the compensation the Participant would have received for the year if the Participant was paid at the rate paid immediately before he became permanently and totally disabled, if such compensation is greater than the Participant's compensation determined under this Section 1.7 without regard to the rule set forth in this sentence.

The annual Base Salary taken into account for determining benefits provided under the Plan for any Plan Year shall not exceed the Code Section 401(a)(17) Compensation Limit in effect for that Plan Year. Effective for Plan Years beginning on and after January 1, 2002, the "Code Section 401(a)(17) Compensation Limit" is $200,000, as adjusted by the Commissioner for increases in the cost of living in accordance with Code Section 401(a)(17)(B) ($225,000 for 2007).

      1.6    "**Beneficiary.**"  The designated person who is entitled to receive benefits under the Plan after the death of a Participant.

      1.7    "**Cash-Out Limit**" shall mean $5,000 or such other maximum dollar amount as may be set forth in Code Section 411(a)(11) from time to time. For purposes of applying the Cash-Out Limit, the value of the Participant's account balance shall be determined by including that portion of the account balance that is attributable to rollover contributions (and earnings allocable thereto) within the meaning of Code Sections 402(c), 403(a)(4), 403(b)(8), 408(d)(3)(A)(ii), and 457(e)(16).

      1.8    "**Code.**"  The Internal Revenue Code of 1986, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

      1.9    "**Committee.**"  The ETS Officers' Retirement Committee, which is a "named fiduciary" (as defined in ERISA Section 402(a)(2)) of the Plan, whose functions include selecting mutual fund investment options and other investment alternatives to be offered under the Custodial Agreement or such other Funding Vehicle as shall be established under the Plan.

      1.10    "**Compensation.**"  All cash compensation for services to the Employer, including salary, wages, fees, commissions, bonuses, and overtime pay, that is includible in the Employee's gross income for the calendar year, plus amounts that would be cash compensation for services to the Employer includible in the Employee's gross income for the calendar year but for a compensation reduction election under Code Section 125, 132(f), 401(k), 403(b), or 457(b) (including an election under Section 2 made to reduce Base Salary in order to have Elective Deferrals made under the Plan).

      1.11    "**Custodial Account**" and "**Mutual Fund Custodial Account.**"  The custodial account or accounts, as defined in Code Section 403(b)(7), established for each Participant by the Employer, to hold assets of the Plan. The term "Custodial Account" refers to the custodial account established for each Participant pursuant to the Custodial Account Agreement with Fidelity Management Trust Company as Custodian, dated July 2, 2007, which is the Funding Vehicle selected to receive future contributions made pursuant to the Plan in the period on and after June 29, 2007, and where the context requires, also refers to the terms and conditions of that Custodial Account Agreement. Within each Participant's Custodial

3

EBAC-02073

Account, the following separate sub-accounts shall be maintained: an Employee Pre-tax Account, Employer Matching Contribution Account, Employee After-Tax Account, Rollover Contribution Account, and such other sub-accounts as may be established from time to time.

Except where the context otherwise requires, the term "Mutual Fund Custodial Account" refers to any custodial account that has been previously established for a Participant by the Employer, that holds assets under the Plan but which has been frozen to future contributions.

1.12    **"Custodial Account Agreement."** The Custodial Account Agreement between ETS and Fidelity Management Trust Company as Custodian, dated July 2, 2007, as amended from time to time, which is the Funding Vehicle selected to receive all contributions made under Section 3 of the Plan on and after June 29, 2007.

1.13    **"Custodian" or "Mutual Fund Custodian."** A bank or other entity satisfying the requirements of Code Section 401(f) selected by the Employer to invest amounts in regulated investment company stock to be held in a Custodial Account.

1.14    **"Disabled Participant."** A Participant who prior to January 1, 2004, became totally disabled and who was making "Qualifying Contributions" (as defined in Article II of the Plan as in effect prior to July 1, 2007) at the time he was approved for long term disability benefits by ETS' Long Term Disability carrier and who continues to receive those benefits from ETS' Long Term Disability Plan. For purposes of this Plan, such a Disabled Participant shall be considered to be on a leave of absence which shall be deemed to continue so long as he continues to be entitled to receive disability payments under ETS' Long Term Disability Plan. If immediately following the end of the period during which such Participant is entitled to receive disability payments he is neither an Employee in active service nor on leave of absence, he shall be deemed to have a Severance from Employment at such time for all purposes under the Plan.

1.15    **"Elective Deferral" or "403(b) Elective Deferral."** The Employer contributions made to the Plan at the election of the Participant in lieu of receiving a percentage of his Base Salary as cash compensation. Elective Deferrals are made on a pre-tax salary reduction basis.

1.16    **"Eligible Employee."** An Employee eligible to participate in the Plan and make 403(b) Elective Deferrals as described in Section 2.1.

1.17    **"Employee."** Each person who is a common law employee of ETS performing services for ETS as an employee of ETS. The term "Employee" does not include (a) any former Employee of ETS, (b) any non-resident alien described in Code Section 410(b)(3)(C), (c) any person who is a "leased employee" within the meaning of Code Section 414(n), or (d) any person performing services for ETS as an independent contractor and whom ETS treats for federal tax purposes as an independent contractor. If any such independent contractor is subsequently determined to be a common law employee of ETS by the Internal Revenue Service or any other federal, state or local governmental agency or competent court of authority, he will become included in the term "Employee" on the date that this determination is finally adjudicated or otherwise accepted by ETS as long as he meets the other requirements of this Section 1.17. Such person shall not, under any circumstances, be included in the term "Employee" for the period of time during which ETS treated him as an independent contractor for federal tax purposes even if the determination of employee status has retroactive effect.

In addition, for periods prior to the later of (x) January 1, 2009, or (y) the earlier of (A) the termination date of any collective bargaining agreement that covers employees of ETS on July 26, 2007 (determined without regard to any extension thereof after July 26, 2007) or (B) July 26, 2010, the term "Employee"

4

EBAC-02074

shall not include any person whose terms and conditions of employment are determined through collective bargaining if the issue of retirement benefits has been a bona fide subject of collective bargaining, unless the collective bargaining agreement provides for the inclusion of such person as a Participant in this Plan. For periods commencing with the later of the dates set forth in (x) or (y) above, the term "Employee" shall include any common law employee of ETS whose terms and conditions of employment are determined through collective bargaining (a "Represented Employee"), but except as otherwise required under the collective bargaining agreement, the participation of such Represented Employees in the Plan is limited to making Elective Deferrals and such Employees are not eligible to make Employee After-Tax Contributions or receive Employer Matching Contributions.

1.18    **"Employee After-Tax Contribution."** The amount a Participant elects to have deducted on an after-tax basis from his Base Salary and contributed to the Plan on his behalf as a voluntary non-deductible employee contribution.

1.19    **"Employer."** Educational Testing Service or ETS, a not-for-profit corporation exempt from federal income tax under Code Section 501(c)(3).

1.20    **"Employer Matching Contribution."** Employer contributions to the Account of a Participant made for the benefit of the Participant on account of the Participant's Elective Deferrals and Employee After-Tax Contributions.

1.21    **"ERISA."** The Employee Retirement Income Security Act of 1974, as amended.

1.22    **"Frozen Contract."** Any Annuity Contract or Mutual Fund Custodial Account that was approved by the Employer for use as a Funding Vehicle with respect to periods prior to June 29, 2007, and with respect to which no future contributions under Section 3 of this Plan are permitted to be made.

1.23    **"Funding Vehicles."** The Annuity Contracts or Custodial Accounts issued for funding amounts held under the Plan and specifically approved by the Employer for use under the Plan.

1.24    **"Hour of Service."** For purposes of Section 2.1(a), an "Hour of Service" means:

(a)    Each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Employer. Hours under this paragraph (a) shall be credited to the Employee for the computation period in which the duties are performed;

(b)    Each hour for which an Employee is paid, or entitled to payment, by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. No more than 501 Hours of Service shall be credited under this paragraph (b) for any single continuous period (whether or not such period occurs in a single computation period). Hours under this paragraph (b) shall be calculated and credited pursuant to Section 2530.200b-2(b) and (c) of the Department of Labor Regulations, which are incorporated herein by this reference;

(c)    Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. The same Hours of Service shall not be credited both under paragraph (a) or paragraph (b), as the case may be, and under this paragraph (c). Hours under this paragraph shall be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made.

5

EBAC-02075

(d)     Hours of Service shall be credited for any individual considered an "employee" for purposes of the Plan under Code Section 414(n) or 414(o). Hours of Service shall include employment in a prior or subsequent job classification, employment with any predecessor employer who maintained the Plan, and employment with any affiliated service group under Code Section 414(m) or with a member of a controlled group of corporations or trades or businesses under common control under Code Section 414(b) or (c) or Treasury Regulations §1.414(c)-5 of which the Employer is a member, or any other entity required to be aggregated with the Employer under Code Section 414(o).

(e)     The Administrator shall have the authority to adopt any of the following equivalency methods for counting Hours of Service that are permissible under regulations issued by the Department of Labor: (1) Working Time; (2) Period of Employment; (3) Earnings; (4) Elapsed Time.

1.25    **"Inactive Participant."** Any former Employee who is receiving or is eligible to receive benefits under the Plan.

1.26    **"Includible Compensation."** An Employee's actual wages in box 1 of Form W-2 for the most recent period that is a year of service with the Employer (as determined in accordance with Treasury Regulation §§1.403(b)-2(b)(21) and 1.403(b)-4(e)), but subject to a maximum of $200,000 (or such higher maximum as may apply under Code Section 401(a)(17)), and increased (up to the dollar maximum) by any compensation reduction election under Code Section 125, 132(f), 401(k), 403(b), or 457(b) (including any Elective Deferrals under the Plan). The amount of Includible Compensation is determined without regard to any community property laws.

As permitted under Treasury Regulation §1.403(b)-3(b)(4), compensation that is described in Treasury Regulation §§1.415(c)-2(e)(3)(i), 2(e)(4), 2(g)(4) and 2(g)(7) (relating to certain compensation paid to a former Employee within the later of 2 1/2 months after Severance from Employment or the end of the Limitation Year that includes the date of Severance from Employment, or compensation paid to Participants who are permanently and totally disabled, or relating to qualified military service under Code Section 414(u)) shall be included in Includible Compensation.

1.27    **"Individual Agreement."** The agreements between a Vendor and the Employer or a Participant that constitutes or governs a Custodial Account or an Annuity Contract.

1.28    **"Insurer."** The insurance company selected by Administrator to provide benefits, either through annuities or otherwise, under the Plan.

1.29    **"Limitation Year."** The calendar year.

1.30    **"Participant."** Any Employee who has met the eligibility requirements and has become a Participant in accordance with Section 2.

1.31    **"Plan."** The Educational Testing Service 403(b) Match Plan.

1.32    **"Plan Year."** The calendar year. The calendar year is also the Limitation Year.

1.33    **"Qualified Military Service."** Service of an Employee with the uniformed services of the United States (as defined in Chapter 43 of Title 38, United States Code), provided that the Employee returns to service with ETS within the time provided by law.

1.34    **"Related Employer."** Any employer which is included as a member with ETS in a controlled group of corporations, or which is a trade or business (whether or not incorporated) included

6

EBAC-02076

with ETS in a brother-sister group or combined group of trades or businesses under common control, or which is a member of an affiliated service group in which ETS is a member, determined in each instance in accordance with the appropriate sections of the Code and Treasury Regulations, including Treasury Regulation §1.414(c)-5.

1.35    **"2004 Restatement."** The Plan as amended and restated effective as of October 1, 2004.

1.36    **"Severance from Employment."** For purpose of the Plan, Severance from Employment means ceasing employment with ETS and any Related Employer that qualifies as a Code Section 501(c)(3) organization. An Employee whose employment is transferred to a Related Employer that qualifies as a Code Section 501(c)(3) organization will not experience a Severance from Employment for purposes of this Plan as a result of that transfer. An Employee whose employment is transferred to a Related Employer that is a for-profit entity will experience a Severance from Employment for purposes of this Plan as a result of that transfer.

1.37    **"Spouse" or "Surviving Spouse."** The Spouse or Surviving Spouse of the Participant (as determined by the laws of the State of which the Participant is (or was at the time of death) a resident), provided that a former Spouse will be treated as the Spouse or Surviving Spouse to the extent provided under a qualified domestic relations order, as described in ERISA Section 206(d) and Code Section 414(p).

1.38    **"Vendor."** The Insurer of an Annuity Contract or the Mutual Fund Custodian of a Custodial Account that is the Funding Vehicle under the Plan.

1.39    **"Valuation Date."** Each business day.

### SECTION 2
### Eligibility and Participation

2.1    **Eligibility.** Each Employee on July 1, 2007, who was a Participant on June 30, 2007, shall continue as a Participant under the provisions of the restated Plan without further application. Each former Employee who was a Participant on June 30, 2007, and who continues to have an Account under the Plan as of July 1, 2007, shall continue as a Participant under the provisions of the restated Plan without further application. Each other Eligible Employee may enroll as a Participant immediately upon the date his employment with ETS commences, or if he is not an Eligible Employee on that date, upon the date that he becomes an Eligible Employee (for example, upon transferring to an employment classification that is eligible to participate in the Plan), and upon receipt of any personal identification number or other access code necessary to make an effective salary reduction election as described in Section 2.2, which shall be provided as soon as administratively possible.

(a)    All Employees of ETS are eligible to participate in the Plan, except that Employees who normally work fewer than 20 hours per week are excluded from eligibility to participate in the Plan, provided that notwithstanding such exclusion, any Employee who completes at least 1,000 Hours of Service in the 12-month period beginning on the date the Employee's employment commenced (or any Plan Year ending after the first anniversary of that date) shall be eligible to participate in the Plan, effective as of the end of such 12-month period or Plan Year. Upon satisfying any applicable eligibility condition, an Employee shall become an Eligible Employee.

(b)    Notwithstanding any other provision of this Plan, to the extent permitted under ERISA and the Code, an Employee who is classified either as a Visiting Scholar, Summer Intern, Pre- or Post-Doctoral Fellow, Reader/Rater/Scorer, Research Consultant, Proctor, Test Center Personnel, Item

7

EBAC-02077

Writer, IT Contractor, or CSR Temporary, as determined by ETS, and who meets the eligibility requirement of normally working 20 or more hours per week as set out in Section 2.1(a) above, shall be eligible to make Elective Deferrals and Employee After-Tax Contributions to the Plan but shall not be eligible to receive Employer Matching Contributions. In addition, a Represented Employee who meets the eligibility requirement of normally working 20 or more hours per week as set out in Section 2.1(a) above, shall be eligible to make Elective Deferrals and Employee After-Tax Contributions to the Plan but shall not be eligible to receive Employer Matching Contributions except as may be otherwise specifically required under the collective bargaining agreement covering the Employee.

2.2    **Salary Reduction Election.**

(a)    **General Rule.** An Eligible Employee may enroll as a Participant by electing to enter into a salary reduction agreement (in accordance with the rules and procedures established by the Plan Administrator) to reduce his Base Salary by a specified percentage per payroll period equal to a whole number multiple of one percent (1%) and have the percentage amount contributed to the Plan on his behalf as (i) Elective Deferrals, (ii) Employee After-Tax Contributions, or (iii) a combination of the two (where the pre-tax and after-tax contribution amounts are each expressed as a whole number multiple of one percent (1%)). Alternatively, where $200 is less than one percent (1%) of an Eligible Employee's annual Base Salary, the Employee may enroll as a Participant by electing to enter into a salary reduction agreement (in accordance with the rules and procedures established by the Plan Administrator) to reduce his Base Salary for a year by a fixed dollar amount expressed in multiples of $1.00, from a minimum of $200 to whatever dollar amount equates to one percent (1%) of his Base Salary for the year, and have the amount contributed to the Plan on his behalf as Elective Deferrals. An election that amounts be contributed as Elective Deferrals must qualify as a "cash or deferred election" (within the meaning of Treasury Regulation §1.401(k)-1(a)(3)) and shall apply only with respect to compensation not currently available to the Employee on the date of the election. An election shall become effective as soon as administratively practicable, but no earlier than the first day of the first payroll period for which the Employer can reasonably process the election, and once made, shall be legally binding and irrevocable with respect to any amount of Base Salary earned while the election is in effect.

(b)    **Special Rule for New Employees.**

(1)    **Automatic Enrollment.** For purposes of applying this Section 2.2, a new Employee eligible to participate in the Plan is deemed to have elected to enroll as a Participant and have his Base Salary reduced by three percent (3%) (and contributed to the Plan on his behalf as an Elective Deferral) at the time of hire (or if later, at the time he qualifies as an Eligible Employee) and to have agreed to be bound by all the terms and conditions of the Plan. Contributions made under this automatic participation provision shall be made to the Custodial Account established for this purpose by the Administrator and invested in the mutual fund investment alternative chosen by the Committee as the default investment alternative under the Plan until such time as the Participant provides a change in investment instructions. An Employee who automatically becomes a Participant under this Section 2.2(b) shall file a designation of Beneficiary with the Plan Administrator.

(2)    **Right to File a Different Election; Notice to Employee.** This Section 2.2(b) shall not apply to the extent an Employee files an election for a different percentage reduction or elects to have no salary reduction. Prior to the date an Employee first receives any Base Salary that is subject to reduction hereunder, the Employer shall provide the Employee with a notice explaining the automatic reduction in his Base Salary and his right to elect either a different percentage reduction amount or no reduction. The notice shall describe how the

8

EBAC-02078

Employee can make such an election and the period in which such an election must be made, and how the contributions under this Section 2.2(b) will be invested.

2.3    **Information Provided by the Employee.** Each Employee enrolling in the Plan shall provide to the Administrator at the time of initial enrollment, and later if there are any changes, any information necessary or advisable for the Plan Administrator to administer the Plan, including an election as to the manner in which the funds held in his Account shall be invested among the investment alternatives made available from time to time under the Custodial Agreement, and designation of a Beneficiary.

2.4    **Change in Participation Election.** Subject to rules and procedures established by the Plan Administrator, an Employee may at any time revise his participation election, including changing the percentage amount of Base Salary he is electing to reduce and have contributed to the Plan on a pre-tax or after-tax basis, changing investment elections, and changing his designated Beneficiary. Any change in investment elections shall take effect as of the date provided by the Plan Administrator on a uniform basis for all Participants. A change in the Beneficiary designation shall take effect when the Beneficiary designation is accepted by the Plan Administrator. A change in the Participant's salary reduction election (including an election to cease salary reduction altogether) shall become effective as soon as administratively feasible but no earlier than the first day of the first payroll period for which the Employer can reasonably process the election.

2.5    **Rehired Participants.** Upon his Severance from Employment with ETS, a Participant who has an Account or otherwise is entitled to a benefit under the Plan shall become an Inactive Participant. An Inactive Participant who is reemployed as an Eligible Employee may resume active participation by making a new election in accordance with Section 2.2.

## SECTION 3
## Contributions and Limitations

3.1    **Elective Deferrals and Employee After-Tax Contributions.** For each payroll period with respect to which a Participant has elected (in accordance with Section 2) to have his Base Salary reduced, the Employer shall contribute the amount of Elective Deferrals and/or Employee After-Tax Contributions that the Participant has elected, to the Participant's Custodial Account under the Plan. The contribution shall be made as soon as administratively practicable but no later than within 15 business days following the end of the month in which the amounts would otherwise have been paid to the Participant. The Administrator may limit Elective Deferrals and/or Employee After-Tax Contributions in order to ensure compliance with all applicable limitations (for example, Code Sections 403(b)(1), 402(g), 415(c) and 401(m)).

3.2    **Basic Annual Limitation.** Except as provided in Section 3.3, the maximum amount of a Participant's Elective Deferrals under the Plan for any calendar year shall not exceed the limitation on elective deferrals provided at Code Section 402(g), as adjusted for increases in the cost of living ($15,500 for 2007) or, if lesser, 100% of the Participant's Includible Compensation for the calendar year.

3.3    **Age 50 Catch-up Elective Deferral Contributions.** An Employee who is a Participant who will attain age 50 or more by the end of the calendar year is permitted to elect an additional amount of Elective Deferrals, up to the maximum age 50 catch-up Elective Deferrals for the year. The maximum dollar amount of the age 50 catch-up Elective Deferrals for a year is $5,000 for 2007, and is adjusted for cost-of-living after 2007 to the extent provided under the Code. However, in no event can the amount of the Elective Deferrals for a year be more than the Participant's Compensation for the year.

9

ETS 403(b) Match Plan

EBAC-02079

3.4 **Special Rule for a Participant Covered by Another Section 403(b) Plan.** For purposes of this Section 3, if the Participant is or has been a participant in one or more other plans under Code Section 403(b) or any other plan that permits elective deferrals under Code Section 402(g)(3), then this Plan and all such other plans shall be considered as one plan for purposes of applying the limitations of Section 3.2 and 3.3. For this purpose, the Plan Administrator shall take into account any other such plan maintained by any Related Employer and shall also take into account any other such plan for which the Plan Administrator receives from the Participant sufficient timely written notification regarding his participation in such other plan.

3.5 **Correction of Excess Elective Deferrals.** If the Elective Deferrals made on behalf of a Participant for any calendar year exceeds the limitations described above, or the Elective Deferrals made on behalf of a Participant for any calendar year exceeds the limitations described above when combined with other amounts deferred by the Participant under another plan of the Employer under Code Section 403(b) or any other plan that permits elective deferrals under Code Section 402(g) for which the Participant provides sufficient timely written notification that is accepted by the Plan Administrator, then the Elective Deferrals, to the extent in excess of the applicable limitation (adjusted for any income or loss in value, if any, allocable thereto, but effective beginning in 2008, only through the end of the year in which the excess elective deferrals were made), shall be distributed to the Participant not later than the first April 15 following the close of the year, provided that where the excess elective deferrals are due to contributions made to a plan or plans other than this Plan or another plan maintained by a Related Employer, the Participant must provide written notification to the Plan Administrator not later than the first March 1 following the close of the year stating that he has made elective deferrals in excess of the dollar limitation under Code Section 402(g) and stating the amount of such excess he has allocated to this Plan.

3.6 **Employer Matching Contributions.** The Employer shall make Matching Contributions to the Plan on behalf of each Participant (other than ineligible Participants under Section 2.1(b)) equal to 100% of the Participant's Elective Deferrals and/or Employee After-Tax Contributions for the Plan Year, limited to the first 3% of the Participant's Base Salary for the Plan Year. All Matching Contributions for a Plan Year shall be credited to Participants' Accounts and made to the Plan by no later than the 15th day of the tenth calendar month following the end of the Plan Year. No Matching Contributions shall be made with respect to Elective Deferrals and Employee After-Tax Contributions that exceed the limits described in Sections 3.2 or 3.9 (Code Sections 402(g) and 415(c)).

3.7 **Special Rule for Disabled Participants.** For purposes of Section 3.1 and Section 3.6, a Disabled Participant shall be deemed to have a continuing election in effect to have his Base Salary (as in effect on the date on which his total disability commenced) reduced by three percent (3%) and contributed to the Plan on his behalf as an Elective Deferral, provided that in no event shall the amount contributed exceed the limits imposed under Code Section 403(b) or 415(c). The Disabled Participant's election shall terminate and all Contributions on his behalf to this Plan shall cease once the Participant no longer receives payments under ETS' Long Term Disability Plan. No contribution shall be made under this Section 3.7 on behalf of any Participant whose approval for long term disability benefits by ETS' Long Term Disability Plan carrier occurs after December 31, 2003, and such a Participant is treated for all purposes of this Plan as having a Severance from Employment at the time he was approved for long term disability benefits by ETS' Long Term Disability carrier.

3.8 **Return of Contribution Made in Error.** If any Employer contribution on behalf of a Participant under Section 3.1, 3.3, 3.6 or 3.7 is made because of a mistake of fact, and if demand therefor is made by the Employer, such contribution may be returned to the Employer during the one-year period beginning on the date such contribution is made.

10

EBAC-02080

3.9    **Maximum Contributions.** Notwithstanding any other provision of the Plan, the total contributions made with respect to any Participant under Sections 3.1, 3.6 and 3.7 for a Limitation Year shall not exceed the Defined Contribution Limit applicable under Code Section 415(c), as set out below. Age 50 catch-up Elective Deferrals and rollover contributions are not taken into account in applying the Defined Contribution Limit to any other contributions made under the Plan.

(a)    **Defined Contribution Limit.** The "Defined Contribution Limit" for any Limitation Year of a Participant shall be an amount equal to the lesser of $40,000, as adjusted for increases in the cost-of-living under Code Section 415(d) ($45,000 for 2007), or 100 percent of the Participant's Includible Compensation.

3.10    **Correction of Excess Contributions.** If a contribution is made to the Plan that exceeds the Defined Contribution Limit, such excess shall be held in a separate account (which constitutes a separate account for purposes of Code Section 72) pursuant to Treasury Regulation § 1.403(b)-4(f)(2) and shall be distributed to the Participant as soon as administratively practical if permitted under Treasury Regulation § 1.403(b)-4(f)(3).

3.11    **Nondiscrimination Requirements.** With respect to all contributions (other than rollover contributions and Elective Deferrals), the Plan shall meet the nondiscrimination requirements of Code Section 401(a)(4) (taking Code Section 401(a)(5) into account), Code Section 401(a)(17), Code Section 401(m) and Code Section 410(b) in the same manner as if the Plan were described in Code Section 401(a), to the extent required by and in accordance with Code Section 403(b)(12). Except as may be otherwise permitted under the applicable Code Section, compliance shall be tested using an Employee's compensation as defined in Code Section 414(s) (and without regard to Code Section 415(c)(3)(E)).

(a)    **Code Section 401(m) Limitations.** To the extent that Employee After-Tax Contributions and Matching Contributions exceed the limitations of Code Section 401(m), they are Excess Aggregate Contributions. Notwithstanding any other provision of this Plan, to the extent needed to satisfy Code Section 401(m), the Employer may:

(1)    distribute Excess Aggregate Contributions, adjusted to reflect investment experience, but effective beginning in 2008, only through the end of the year in which the Excess Aggregate Contributions arose, to a Participant no later than 12 months following the end of the Plan Year in which the Excess Aggregate Contributions arose; provided that if Excess Aggregate Contributions are distributed no later than 2 1/2 months after the last day of the Plan Year in which such excess amounts arose, no 10% excise tax will be imposed on the Employer with respect to those amounts;

(2)    make Qualified Nonelective Contributions (as defined in Code Section 401(m)(4)(c));

(3)    include Elective Deferrals and Qualified Nonelective Contributions under this Plan or any other plan of the Employer in computing the contribution percentage under Code Section 401(m)(3); or

(4)    limit or discontinue Employee After-Tax Contributions and/or Matching Contributions for Highly Compensated Employees, if it is determined that continuation of contributions in accordance with the provisions of this Plan will cause the Plan to exceed the limitations of Code Section 401(m).

11

ETS 403(b) Match Plan

EBAC-02081

In determining whether Employee After-Tax Contributions and Matching Contributions exceed the Code Section 401(m) limitations in any year, the Plan shall use the prior year testing method.

3.12    **Leave of Absence.** Unless an election is otherwise revised, if a Participant is absent from work by leave of absence, Elective Deferrals and/or Employee After-Tax Contributions and Matching Contributions under the Plan shall continue to the extent that the Participant's Base Salary continues.

3.13    **Protection of Persons Who Serve in a Uniformed Service.** Any Participant whose employment is interrupted by Qualified Military Service under Code Section 414(u) or who is on a leave of absence for Qualified Military Service under Code Section 414(u) may elect to make additional Elective Deferrals and/or Employee After-Tax Contributions upon resumption of employment with the Employer equal to the maximum Elective Deferrals and/or Employee After-Tax Contributions that the Participant could have elected during that period if his employment with the Employer had continued without the interruption or leave, reduced by the Elective Deferrals and/or Employee After-Tax Contributions, if any, actually made for the Participant during the period of the interruption or leave. Except to the extent provided under Code Section 414(u), this right applies for five years following the resumption of employment (or, if sooner, for a period equal to three times the period of the interruption or leave). To the extent the Participant makes any such additional Elective Deferrals and/or Employee After-Tax Contributions in a timely manner, the Employer shall make the Matching Contributions that it would have made under Section 3.6 but for his absence. Solely for the purpose of determining whether the limitations of Sections 3.2 and 3.9 have been satisfied, any make-up contributions under this Section 3.16 will be deemed to have been made when they would have been made but for the Participant's absence on account of Qualified Military Service. For purposes of this Section 3.16, a Participant shall be treated as receiving Base Salary during a period of Qualified Military Service equal to the Base Salary such Participant would have received but for the absence on Qualified Military Service, or, if the Base Salary the Participant would have received during such period is not reasonably certain, the Participant's average Base Salary during the 12-month period immediately preceding the Qualified Military Service (or, if shorter, the period of employment immediately preceding the Qualified Military Service).

3.14    **Vesting Requirements.** Participants shall be 100% vested in all contributions made on their behalf under this Plan.

**SECTION 4**
**Application of Contributions**
**and Participant Accounts**

4.1    **Application of Contributions.** The Employer shall select the Insurer of the Annuity Contract or the Mutual Fund Custodian of the Custodial Account that shall serve as the Funding Vehicle to which contributions are made under the Plan from time to time. The Employer is responsible for determining the amount of contributions for each Participant and forwarding contributions to the Insurer or Mutual Fund Custodian of the Funding Vehicle. On and after June 29, 2007, the Funding Vehicle to which all such contributions shall be made is the Custodial Account established for a Participant under the Custodial Account Agreement entered into between the Employer and the Custodian, dated July 2, 2007, as amended from time to time, pursuant to which the Participant and Beneficiary may direct the investment of the funds held in his Custodial Account among the mutual fund investment options made available under that agreement or any successor agreement. Each Participant and Beneficiary shall direct the investment of his Custodial Account among the investment options made available in accordance with the terms of the Custodial Account Agreement. Except to the extent a Participant and Beneficiary exercises control over the investment of funds held in his Custodial Account (and in any other Funding Vehicle made available from time to time under the Plan) as provided under ERISA Section 404(c), the

12

EBAC-02082

Insurers or Mutual Fund Custodians are responsible for control and investment of all funds and provision of all benefits under the Plan.

    4.2    **Terms and Conditions of Annuity Contracts and Custodial Accounts.** All Annuity Contracts and Custodial Accounts issued pursuant to the Plan shall be nonforfeitable and shall contain such other terms as may be required by Code Section 403(b). Each Custodial Account shall provide for it to be impossible, prior to the satisfaction of all liabilities with respect to Participants and their Beneficiaries, for any part of the assets and income of the Custodial Account to be used for, or diverted to, purposes other than for the exclusive benefit of Participants and their Beneficiaries.

    4.3    **Establishment of Accounts.** In accordance with the terms of the Custodial Account Agreement, the Custodian shall establish for each Participant: (a) an Employee Pre-tax Account to be credited with the Participant's Elective Deferrals made under Section 3.1, (b) an Employee After-tax Account to be credited with the Participant's Employee After-Tax Contributions made under Section 3.1, (c) an Employer Matching Contribution Account to be credited with the Participant's share of Employer Matching Contributions made by the Employer under Section 3.6, and, if applicable, (c) a Rollover Contribution Account to which shall be credited any rollover contributions made to the Plan by the Participant pursuant to Section 10.1. The Custodian shall also establish and maintain such other accounts for each Participant as may be required to carry out the provisions of the Plan. All payments of benefits to a Participant or his Beneficiary shall be charged against the respective accounts of the Participant.

    4.4    **Frozen Contracts.** Certain amounts attributable to contributions made to the Plan in periods prior to June 29, 2007, are held under Annuity Contracts and Mutual Fund Custodial Accounts that are no longer eligible to receive Elective Deferrals, Employee After-Tax Contributions, and Matching Contributions made on and after June 29, 2007 ("Frozen Contracts" with discontinued Vendors). Subject to the provisions of Section 11 (to the extent applicable), any amounts (once invested) may be transferred among any of the Frozen Contracts, or transferred from a Frozen Contract to the Participant's Custodial Account hereunder, at the option of the Participant in accordance with procedures determined by the Administrator, the Insurer, or the Mutual Fund Custodians; provided, however, that any transfers shall be subject to the restrictions described in the applicable Annuity Contracts or Custodial Agreements; and provided further that any transfer will be subject to any fee described in any Custodial Agreement or Annuity Contract, as listed in Appendix A. Amounts held in a Participant's Custodial Account hereunder (the current Funding Vehicle) may not be transferred to any Frozen Contract. No loan or financial hardship withdrawal may be made with respect to the funds held in a Frozen Contract and those funds shall not be taken into account for purposes of determining the amount of any loan available hereunder with respect to funds held in the Participant's Custodial Account.

**SECTION 5**
**Withdrawals and Loans**

    5.1    **Withdrawals.** A Participant may receive a distribution of all or any portion of his Employee After-tax Account or Rollover Contribution Account held in the Participant's Custodial Account, with Spousal consent (if applicable), at any time. In addition, a Participant may receive a distribution at any time of all or any portion of amounts attributable to Elective Deferrals or Employee After-Tax Contributions the Participant made in any year prior to 1989 that were in excess of 3 percent of his Base Pay for the year, that are held in a Frozen Annuity Contract (the Participant's "Pre-1989 Supplemental Contributions" as that term is defined in the 2004 restatement of the Plan), with Spousal consent (if applicable). In addition, upon attaining age 59½, a Participant may receive a distribution of all or any portion of amounts attributable to Elective Deferrals or Employee After-Tax Contributions the Participant made in any year (whether before or after 1989) that were in excess of 3 percent of his Base Pay for that year, that are held in a Frozen Annuity Contract (the Participant's "Supplemental

13

        

EBAC-02083

Contributions" as that term is defined in the 2004 restatement of the Plan), with Spousal consent, if applicable. Except as set forth above and as may be otherwise permitted under Section 3.5 (relating to excess Elective Deferrals) and Section 12.5 (relating to termination of the Plan), a Participant (or, if applicable, a Beneficiary) may not receive a distribution of all or any portion of the amounts held in his Employee Pre-tax Account or Employer Matching Contribution Account under the Plan before the earliest to occur of the following, each a "Distributable Event":

(a)    attainment of age 59½ by the Participant;

(b)    Severance from Employment by the Participant;

(c)    death of the Participant; or

(d)    Financial hardship of the Participant (as determined pursuant to Section 6.2(b)(1), but financial hardship shall only be a Distributable Event with respect to a Participant's Employee Pre-tax Account).

5.2    **Loans.** Subject to the following limitations, a Participant (as defined herein) may apply for a loan from the funds held in his Custodial Account under the Plan. For purposes of this Section 5.2, the term "Participant" means a Participant or Beneficiary who is also an Employee or a "party in interest" as defined in ERISA Section 3(14). Loans shall be made available to all Participants on a reasonably equivalent basis. Loans shall not be made available to Participants who are Highly Compensated Employees (as defined in Code Section 414(q)) in an amount greater than the amount made available to other Participants. A Participant may not borrow from funds held in his Frozen Accounts, nor will amounts held in any Frozen Account be taken into account in determining the maximum amount of a loan available to the Participant from the funds in his Custodial Account at any time. Amounts that a Participant transfers from any Frozen Account to his Custodial Account shall be taken into account in determining the amount of any loan available hereunder. Each loan made to a Participant will be treated as an investment of the Participant's Custodial Account.

(a)    **Loan Procedures.** The Plan Administrator may establish loan procedures (which are hereby incorporated by reference) that limit the number of loans a Participant may receive (no more than two loans may be outstanding at any time), require payment of loan processing fees by the Participant (either directly or out of his Custodial Account) or establish any other requirements the Plan Administrator determines to be necessary or desirable. A Participant who wishes to borrow money from the Plan shall file a written loan application with the Plan Administrator in accordance with these procedures. The Plan Administrator, in its sole discretion, may approve or deny the loan. The Plan Administrator may deny a loan application if it believes that the loan would not be repaid (e.g., if the borrower has failed to repay a prior loan on time) or for any other reason if denial would be in the best interests of the Plan or the Participant. No loan shall be granted unless the following requirements are met:

(1)    **Limitation on Loan Amount.** The loan must be for an amount equal to at least $1,000.00, but no loan may exceed the lesser of:

a.    $50,000, reduced by the greater of (i) the outstanding balance on any loan from the Plan to the Participant on the date the loan is made or (ii) the highest outstanding balance on loans from the Plan to the Participant during the one-year period ending on the day before the date the loan is approved by the Administrator

14

EBAC-02084

(not taking into account any payments made during such one-year period); or

  b.  one-half the value of the Participant's Custodial Account (as of the Valuation Date immediately preceding the date on which such loan is approved by the Administrator).

For purposes of the above limitation, any loan from any other plan maintained by the Employer and any Related Employer shall be treated as if it were a loan made from the Plan, and the Participant's vested interest under any such other plan shall be considered a vested interest under this Plan; provided , however, that the provisions of this paragraph shall not be applied so as to allow the amount of a loan to exceed the amount that would otherwise be permitted in the absence of this paragraph.

  (2)  **Enforceable Agreement.**  The loan must be evidenced by a legally enforceable agreement, as required by the Administrator, that specifies the amount of the loan, the term of the loan and the repayment schedule, that is executed by the Participant, through his endorsement of the loan proceeds check or otherwise.

  (3)  **Interest Rate.**  The loan shall bear a reasonable rate of interest as determined by the Plan Administrator based on the prevailing interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances.

  (4)  **Repayment Term and Level Amortization.**  The loan must be repaid by deductions from the Participant's bi-weekly or other periodic payroll checks and must be repaid in full over a period not exceeding five years from the date of the loan.  Notwithstanding the foregoing, a loan made for the purpose of purchasing the principal residence of the Participant may be repaid over a period of up to 15 years, provided that such repayment period is reasonable. Repayment of a loan must begin no later than two weeks (14 days) from the date of the loan and will be made in substantially level payments.  Notwithstanding the foregoing, the amortization requirement may be waived for a period not exceeding one year during which a Participant is on a leave of absence from employment with the Employer and any Related Employer either without pay or at a rate of pay which, after withholding for employment and income taxes, is less than the amount of the installment payments required under the terms of the loan.  Installment payments must resume after such leave of absence ends or, if earlier, after the first year of such leave of absence, in an amount that is not less than the amount of the installment payments required under the terms of the original loan.  No waiver of the amortization requirements shall extend the period of the loan beyond five years from the date of the loan, unless the loan is for purchase of the Participant's principal residence.  Notwithstanding any provision in the Plan to the contrary, loan repayments will be suspended under this Plan as permitted under Code Section 414(u)(4) during a Participant's period of military service.

  (5)  **Prepayment.**  A Participant may prepay the entire outstanding loan balance with respect to any loan at any time without penalty.

  (6)  **Security and Spousal Consent.**  Loans must be secured by the Participant's interest in his Custodial Account under the Plan.  A Participant must obtain the consent of his Spouse, if any, to use his interest in his Custodial Account as security for the loan. Spousal consent shall be obtained no earlier than the beginning of the 90-day period that ends on the date on which the loan is to be so secured. The consent must be in writing, must acknowledge the effect of the loan, and must be witnessed by a Plan representative or notary public.  Such

15

ETS 403(b) Match Plan

EBAC-02085

consent shall thereafter be binding with respect to the consenting Spouse or any subsequent Spouse with respect to that loan.  A new consent shall be required for each new loan or modification of any loan. Notwithstanding the above, Spousal consent shall not be required if any of the three following conditions are met:

    a.    The Participant and his Spouse are legally separated;

    b.    The Spouse has abandoned the Participant, as demonstrated by a court order to that effect;

    c.    The Participant cannot locate his Spouse and has no reasonable way to obtain knowledge of the Spouse's whereabouts, and the Participant has submitted a sworn statement to that effect.

    (b)    **Default.**  The Administrator shall treat a loan as in default if (1) any scheduled repayment remains unpaid at the end of any cure period (that may be specified in separate loan procedures) which cure period cannot extend beyond the last date of the calendar quarter following the calendar quarter in which the repayment was due (unless payment is not made due to a waiver of the amortization schedule for a Participant who is on a leave of absence, as described in Section 5.2(a)(4)), or (2) there is an outstanding principal balance existing on a loan after the last scheduled repayment date. Upon default, the entire outstanding principal and accrued interest shall be immediately due and payable. If a distributable event (as defined by the Code) has occurred, the Administrator shall direct the Custodian to foreclose on the promissory note and offset the Participant's interest in his Custodial Account by the outstanding balance of the loan.  If a distributable event has not occurred, the Administrator shall direct the Custodian to foreclose on the promissory note and offset the Participant's interest in his Custodial Account as soon as a distributable event occurs.

    (c)    **Effect of Severance from Employment Where Participant has Outstanding Loan Balance.**  If a Participant has an outstanding loan balance at the time of his Severance from Employment, the entire outstanding principal and accrued interest shall be immediately due and payable at that time.  Any outstanding loan amounts that are immediately due and payable hereunder shall be treated in accordance with the provisions of Sections 5.2(b) and 5.2(d) as if the Participant had defaulted on the outstanding loan.

    (d)    **Deemed Distributions Under Code Section 72(p).**  Notwithstanding the provisions of Section 5.2(b), if a Participant's loan is in default, the Participant shall be treated as having received a taxable "deemed distribution" for purposes of Code Section 72(p), whether or not a distributable event has occurred.  The amount of a loan that is a deemed distribution ceases to be an outstanding loan for purposes of Code Section 72, except as otherwise specifically provided herein, and a Participant shall not be treated as having received a taxable distribution when the Participant's Custodial Account is offset by the outstanding balance of the loan amount as provided in Section 5.2(b).  In addition, interest that accrues on a loan after it is deemed distributed shall not be treated as an additional loan to the Participant and shall not be included in the income of the Participant as a deemed distribution. Notwithstanding the foregoing, unless a Participant repays a loan that has been deemed distributed, with interest thereon, the amount of such loan, with interest, shall be considered an outstanding loan under Code Section 72(p) for purposes of determining the applicable limitation on subsequent loans under Section 5.2(a)(1).  If a Participant makes payments on a loan that has been deemed distributed, payments made on the loan after the date it was deemed distributed shall be treated as Employee After-Tax Contributions to the Plan for purposes of increasing the Participant's tax basis in his Custodial Account, but shall not be treated as Employee After-Tax Contributions for any other purpose under the Plan,

16

EBAC-02086

including application of the Code Section 401(m) limitations described in Section 3.11(a) and application of the Code Section 415 limitations described in Section 3.9.

(e)    **Determination of Account Value Upon Distribution Where Plan Loan is Outstanding.**  Notwithstanding any other provision of the Plan, the portion of a Participant's interest in his Custodial Account that is held by the Plan as security for a loan outstanding to the Participant in accordance with the provisions of this Section 5.2 shall reduce the amount of the Custodial Account payable at the time of death or distribution, but only if the reduction is used as repayment of the loan. If less than 100 percent of a Participant's Custodial Account (determined without regard to the preceding sentence) is payable to the Participant's surviving Spouse or other Beneficiary, then the Account shall be adjusted by first reducing the Participant's interest in his Custodial Account by the amount of the security used as repayment of the loan, and then determining the benefit payable to the surviving Spouse or other Beneficiary.

## SECTION 6
### Distribution of Benefits

6.1    **Method of Payment.**  Except for amounts held in a Participant's Employee After-tax Account or Rollover Contribution Account (which amounts may be withdrawn, with Spousal consent, at any time), benefits shall be payable under the Plan only upon the occurrence of a Distributable Event, as defined in Section 5.1 of the Plan.

(a)    **Severance from Employment, Attainment of Age 59½ and Financial Hardship.**  Any benefits payable under the Plan to a Participant who has had a Severance from Employment or requested an in-service distribution upon attaining age 59½ or suffering financial hardship (as defined in Section 6.2(b)(1)) shall be distributed to the Participant as follows:

(1)    If, upon Severance from Employment (for any reason other than death), his Account Balance under the Plan does not exceed the Cash-Out Limit, the distribution shall be in a lump sum payment. Notwithstanding the preceding sentence, if his Account Balance under the Plan exceeds $1,000 but does not exceed the Cash-Out Limit, and if the Participant does not elect to have such distribution paid directly to an Eligible Retirement Plan specified by the Participant in a Direct Rollover (as defined herein) or to receive the distribution directly, then the amounts will be paid in a Direct Rollover to an individual retirement plan designated by the Plan Administrator; and

(2)    If, upon Severance from Employment (for any reason other than death), his Account Balance under the Plan exceeds the Cash-Out Limit, and where in-service distribution occurs due to financial hardship or attainment of age 59½, the distribution shall, at the election of the Participant, and with Spousal consent, be in any one or a combination of the methods of payment set forth below, subject to the terms of the Custodial Account Agreement and any Frozen Contract from which distributions are to be made:

a.    By lump sum payment.

b.    By the purchase of a non-transferable annuity payable over the lifetime of the Participant or the joint lifetime of the Participant and a designated beneficiary.

17

EBAC-02087

       c.      By the payment of installments according to the options offered by the Custodian, over a period certain not extending beyond the life expectancy of the Participant.

If the Participant's Spouse is not designated to receive any benefits under a method of distribution elected above, such method must assure that more than fifty percent (50%) of the present value of the amount available for distribution is paid within the life expectancy of the Participant. Each Participant shall complete such forms and furnish such proofs as shall be required by the Plan Administrator and Custodian. The consent requirements described above shall not apply in the following circumstances: after the Participant's death; on or after the Participant has attained Normal Retirement Age (age 65); to the extent that a distribution is required under Section 9 hereof; or to the extent that a distribution is required under an order determined to be a qualified domestic relations order within the meaning of Code Section 414(p).

    (b)    **Death.** Death benefits shall be payable in accordance with Sections 7 and 8.

**6.2**    **Time of Payment.**

    (a)    **General Rule.** Any benefits payable to a Participant pursuant to this Section 6 shall commence as soon as administratively practicable after the occurrence of the Distributable Event and the approval of the distribution by the Plan Administrator.

    (b)    **Special Rules.**

        (1)    **Financial Hardship.** In the case of "financial hardship," a Participant who is in the employ of the Employer may request the withdrawal of all or a portion of his Employee Pre-tax Account (but excluding any interest or earnings credited to any such account) by filing a written request with the Plan Administrator at least 30 days (or such shorter period as may be prescribed by the Plan Administrator) before the proposed withdrawal date. A "financial hardship" withdrawal with respect to the Participant's Employee Pre-tax Account is limited to the aggregate dollar amount of the Participant's Elective Deferrals (not including any income thereon), reduced by the aggregate dollar amount of the distributions previously made to the Participant from that account. For purposes of this Section, "financial hardship" is defined as an immediate and heavy financial need of the Participant where the Participant lacks other available resources. The following are the only financial needs considered immediate and heavy:

           a.    To pay all or a portion of costs directly related to the purchase (excluding mortgage payments) of a principal residence for the Participant;

           b.    To pay all or a portion of the tuition, related educational fees, and room and board expenses, for up to the next 12 months of post-secondary education for the Participant, the Participant's Spouse, children or dependents (as defined in Code Section 152, without regard to Code Sections 152(b)(1), (b)(2) and (d)(1)(B));

           c.    To pay all or a portion of any expenses for (or necessary to obtain) medical care that would be deductible under Code Section 213(d) (determined without regard to whether the expenses exceed 7.5% of adjusted gross income);

18

EBAC-02088

d.   To prevent the eviction of the Participant from, or a foreclosure on the mortgage of, the Participant's principal residence;

e.   To pay for burial or funeral expenses for the Participant's deceased parent, spouse, children or dependents (as defined in Code Section 152 without regard to 152(d)(1)(B));

f.   To pay for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under Code Section 165 (determined without regard to whether the loss exceeds 10% of adjusted gross income); or

g.   To meet any financial need approved by the IRS in revenue ruling, notice or other document of general applicability.

Any withdrawal on account of financial hardship shall be approved by the Plan Administrator only if the Plan Administrator determines that such withdrawal (1) does not exceed the amount required to meet such financial need, and (2) that funds are not reasonably available from other resources of the Participant to meet such financial needs. Such determination shall be made by the Plan Administrator and shall comply with applicable Treasury Regulations promulgated under the Code. The Employer shall be deemed to have met the requirements of this paragraph if all of the following requirements are met:

a.   The distribution is not in excess of the amount of the immediate and heavy financial need of the Participant (including amounts necessary to pay any Federal, state or local income taxes or penalties reasonably anticipated to result from the distribution);

b.   The Participant has obtained all distributions and all nontaxable (at the time of the loan) loans currently available under this Plan and any other plan maintained by the Employer or any Related Employer; and

c.   The Employer prohibits the Participant from making Elective Deferrals and Employee After-Tax Contributions to the Plan and Employee pre-tax and after-tax contributions to all other plans maintained by the Employer for a period of 6 months after receipt of the hardship distribution. For this purpose the phrase "all other plans maintained by the Employer" means all qualified and nonqualified plans of deferred compensation maintained by the Employer. The phrase does not include the mandatory employee contribution portion of a defined benefit plan or any plan that is a health or welfare benefit plan.

(2)   **In-Service Withdrawal after Attainment of Age 59½.** A Participant who is in the employ of the Employer may request all or a portion of his Employee Pre-tax Account and his Employer Matching Contribution Account, by filing a written request with the Plan Administrator at least 30 days (or such shorter period as may be prescribed by the Plan Administrator) before the proposed withdrawal date.

19

ETS 403(b) Match Plan

EBAC-02089

(3)    **Latest Date for Commencement of Benefits.**    Notwithstanding anything contained in this Plan to the contrary, except as provided below, distribution of benefits shall begin no later than the 60th day after the latest of the close of the Plan Year in which

    a.    the Participant attains Normal Retirement Age (age 65);

    b.    occurs the 10th anniversary of the year in which the Participant commenced participation in the Plan; or

    c.    the Participant terminates service with the Employer.

Notwithstanding the preceding sentence, a Participant whose Account Balance exceeds the Cash-Out Limit may elect to defer commencement of his benefit beyond the applicable date set forth in the preceding sentence, but in no event beyond his Required Beginning Date (as defined in Section 9.1(d)(5).

6.3    **Direct Rollovers to Other Plans.**    Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the Distributee in a Direct Rollover.

    (a)    **Definitions:**

        (1)    **Direct Rollover.**    A Direct Rollover is a payment by the Plan to the Eligible Retirement Plan specified by the Distributee.

        (2)    **Distributee.**    A Distributee includes an Employee or former Employee. In addition, the Employee's or former Employee's Surviving Spouse and the Employee's or former Employee's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in ERISA Section 206(d) and Code Section 414(p), are Distributees with regard to the interest of the Spouse or former Spouse.

        (3)    **Eligible Retirement Plan.**    An Eligible Retirement Plan shall mean a plan that accepts the Distributee's Eligible Rollover Distribution and that is either an individual retirement account or annuity described in Code Section 408(a) or 408(b); an annuity contract described in Code Section 403(b); or, effective January 1, 2002, a qualified plan described in Code Section 401(a) or 403(b) or an eligible plan under Code Section 457(b) which is maintained by a state, a political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan.    Effective for distributions made after December 31, 2007, an "eligible retirement plan" shall also include a Roth IRA described in Code Section 408A(b).

        (4)    **Eligible Rollover Distribution.**    An Eligible Rollover Distribution is any distribution of all or any portion of the balance to the credit of the Distributee, except that an Eligible Rollover Distribution does not include: any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Distributee or the joint lives (or joint life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent that such distribution is required under Code Section 401(a)(9) (relating to required minimum distributions under Section 9); any distribution on account of financial

EBAC-02090

hardship; and, effective before January 1, 2002, the portion of any distribution that is not includible in gross income. Effective January 1, 2002, the portion of a distribution shall not fail to be an Eligible Rollover Distribution merely because the portion consists of Employee After-Tax Contributions which are not included in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code Section 408(a) or (b), or to an annuity contract described in Code Section 403(b) (or effective January 1, 2007, to a qualified plan described in Code Section 401(a)) that agrees to separately account for amounts so transferred (and earnings thereon), including separate accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

6.4    **Distribution Under Qualified Domestic Relations Orders.** The Plan shall make distributions to an alternate payee pursuant to a qualified domestic relations order even if the affected Participant has not terminated his Employment and has not reached his earliest retirement age. For purposes of this Section, the terms "alternate payee," "qualified domestic relations order," and "earliest retirement age" shall have the meanings ascribed to such terms in Code Section 414(p).

## SECTION 7
### Benefits Payable Upon Death

7.1    **Amount of Death Benefits.** The death benefits payable under the Plan with respect to a Participant who dies prior to commencement of benefits shall be the total amount of his Account Balance under the Plan and shall be payable pursuant to Section 7.2. Such amount shall be determined as of the date distribution of such death benefits commences. The death benefits payable under the Plan for a Participant who dies after commencement of benefits shall be such amounts as may be payable pursuant to Section 7.3.

7.2    **Death Before Commencement of Benefits.** If a Participant dies before distribution of his benefits commences and the value of his death benefit payable under this Section 7 is not greater than the Cash-Out Limit, his death benefit shall be paid to his Beneficiary in a lump sum as soon as administratively practicable following the Participant's death. If the value of such death benefit is greater than the Cash-Out Limit, subject to the terms of the Custodial Account, his death benefit shall be paid to the Beneficiary as follows: (1) If the Participant has designated, with the approval of the Plan Administrator, a method of payment for such death benefit pursuant to Section 7.4, then such method shall be followed. (2) If the Participant has not designated a method of payment, then such death benefit shall be paid in a lump sum on the first day of the month next following the Participant's death or as soon as administratively practicable thereafter; or shall be paid in such other method as the Beneficiary may elect with the approval of the Plan Administrator.

7.3    **Death After Benefit Commencement.** The death benefit payable under the Plan in the event of the death of a Participant after distribution of benefits commences shall be such amounts as may be payable under the method or form of distribution then in effect for him under the Custodial Account and any Frozen Contract from which distributions are being received. Such benefit shall continue to be distributed at least as rapidly as under the method of distribution being used as of the Participant's death.

7.4    **Beneficiary Designation.** Each Participant shall designate one or more direct or contingent Beneficiaries to receive any amounts which may become payable under the Plan upon his death (other than survivorship benefits payable under any form of annuity); provided, however, that no Beneficiary designation other than the Spouse shall be effective unless the Participant's Spouse consents to such designation in the manner required under Section 8.2. The Participant may (but need not) designate the method of payment for such death benefits with the approval of the Plan Administrator. A

21

EBAC-02091

Participant's designation of a Beneficiary and designation of a method of payment (if any) shall be in writing and filed with the Plan Administrator and the Custodian on a form prescribed by each. A Participant may change such designation at any time by filing a new or revised form with the Plan Administrator and the Custodian. If no effective Beneficiary designation is made by the Participant, or if no designated Beneficiary survives the Participant, the Participant's Beneficiary shall be the Participant's estate. If a designated Beneficiary dies after the Participant but before receiving the Beneficiary's entire interest under the Plan, the Beneficiary's remaining interest shall be paid to such Beneficiary or Beneficiaries the deceased Beneficiary has designated as his successor Beneficiary in a form and manner acceptable to and filed with the Plan Administrator and the Custodian; and if no proper designation has been made by the deceased Beneficiary, his remaining interest under the Plan shall be paid to the Beneficiary's estate.

## SECTION 8
### Qualified Joint and Survivor Annuity Requirements and Qualified Preretirement Survivor Annuities

8.1    **Applicability of Article.** Except as provided in Section 8.2 below, the provisions of this Section 8 shall apply only to a Participant who, pursuant to Section 6.1(a)(2)b. hereof, elects to receive his Account Balance in the form of a life annuity. All purchases of annuity contracts under this Section 8 and under other provisions of this Plan shall be accomplished by the Custodian transferring the requested amount of the Participant's Account to the insurance company from which the annuity is being purchased. The Participant shall select the identity of the annuity provider on such forms as the Plan Administrator or Custodian may provide.

8.2    **Safe Harbor Rules.** This Section 8.2 applies to all Participants. Upon the death of a Participant, the Participant's Account Balance shall be paid to the Participant's Surviving Spouse, but if there is no Surviving Spouse, or if the Surviving Spouse has consented in a Qualified Election under Section 8.5(a) to the Participant's waiver of the Spousal death benefit and the designation of another Beneficiary, then to the Participant's designated Beneficiary. The Surviving Spouse may elect to have distribution of the Account Balance commence within the 90-day period following the date of the Participant's death. The Account Balance shall be adjusted for gains or losses occurring after the Participant's death in accordance with the provisions of the Plan governing the adjustment of account balances for other types of distributions. A Participant may waive the Spousal death benefit described in this Section 8.2 at any time; provided, however, that no such waiver shall be effective unless it satisfies the Spousal consent requirements described in Section 8.5(a).

8.3    **Qualified Joint and Survivor Annuity.** If a married Participant elects to receive his Account Balance in the form of a life annuity as set forth in Section 6.1(a)(2)(B) and the Participant's Spouse is not the designated Beneficiary, such election shall not be valid unless there has been a Qualified Election within the 90-day period ending on the date benefit payments are to commence. If no such election has occurred, the Participant's Account Balance shall be paid in the form of a Qualified Joint and Survivor Annuity.

8.4    **Qualified Preretirement Survivor Annuity.** If a married Participant dies before benefits have commenced, the Surviving Spouse of the Participant may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ("Qualified Preretirement Survivor Annuity"), unless any other Beneficiary has been designated pursuant to a Qualified Election.

8.5    **Definitions.**

22

EBAC-02092

(a)    **Qualified Election:**  A waiver of a Qualified Joint and Survivor Annuity or a Qualified Preretirement Survivor Annuity, or a waiver of the Surviving Spouse's right to receive the Account Balance upon the death of the Participant (as set forth in Section 8.2) must be in writing and must be consented to by the Participant's Spouse. The Spouse's consent to a waiver must acknowledge the effect of such waiver and must be witnessed by a Plan representative or notary public. Notwithstanding this consent requirement, if the Participant establishes to the satisfaction of a Plan representative that such written consent may not be obtained because (i) there is no Spouse, (ii) the Participant and his Spouse are legally separated, (iii) the Spouse has abandoned the Participant, as demonstrated by a court order to that effect, or (iv) the Participant cannot locate his Spouse and has no reasonable way to obtain knowledge of the Spouse's whereabouts, and the Participant has submitted a sworn statement to that effect, a waiver will be deemed a Qualified Election. Any consent necessary under this provision will be valid only with respect to the Spouse to whom the consent applies. Additionally, a revocation of a prior waiver may be made by a Participant without the consent of the Spouse at any time before the commencement of benefits. The number of revocations shall not be limited. A Spouse's consent to a waiver may be revoked by the Spouse without the consent of the Participant at any time prior to commencement of benefits. A waiver of the Qualified Joint and Survivor Annuity may be made only during the 90-day period before benefit payments commence. A waiver of the Qualified Preretirement Survivor Annuity may be made only between January 1 of the year in which the Participant attains age 35 and the date of the Participant's death.

(b)    **Qualified Joint and Survivor Annuity:**  An annuity for the life of the Participant with a survivor annuity for the life of the Spouse that is not less than 50 percent and not more than 100 percent of the amount of the annuity payable during the joint lives of the Participant and the Spouse and that is the amount of benefit which can be purchased with the Participant's Account Balance.

(c)    **Qualified Optional Survivor Annuity:**  Effective for Plan Years beginning on and after January 1, 2008, an annuity for the life of the Participant with a survivor annuity for the life of the Spouse that is 75 percent of the amount of the annuity payable during the joint lives of the Participant and the Spouse and that is the amount of benefit which can be purchased with the Participant's Account Balance.

8.6    **Notice Requirements.**

(a)    In the case of a Qualified Joint and Survivor Annuity as described in Section 8.3, the Plan Administrator shall provide each Participant within a reasonable period prior to the commencement of benefits, a written explanation of: (i) the terms and conditions of a Qualified Joint and Survivor Annuity; (ii) the Participant's right to make, and the effect of an election to waive, the Qualified Joint and Survivor Annuity form of benefit; (iii) the rights of a Participant's Spouse; and (iv) the right to make, and the effect of a revocation of, a previous election to waive the Qualified Joint and Survivor Annuity. Effective for Plan Years beginning on and after January 1, 2008, to the extent required under Code Section 417(a)(1) as amended by Section 1004 of the Pension Protection Act of 2006, a Participant who elects to waive the Qualified Joint and Survivor Annuity form of benefit shall be entitled to elect the Qualified Optional Survivor Annuity form of benefit at any time during the applicable election period, and the written explanation shall include the terms and conditions of a Qualified Optional Survivor Annuity.

(b)    The Plan Administrator shall provide each Participant with a written explanation of the Qualified Preretirement Survivor Annuity at least once during the three-year period beginning on January 1 of the year the Participant attains age 32, and at such other times as may be required by applicable law or as the Administrator shall determine. Such written explanation shall be comparable in content to the explanation described in Section 8.6(a).

23

ETS 403(b) Match Plan

EBAC-02093

(c)     If a distribution is one to which Code Sections 401(a)(11) and 417 do not apply, such distribution may commence less than 30 days after the notice required under Treasury Regulations §1.411(a)-11(c) is given, provided that:

(1)     the Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2)     the Participant, after receiving the notice affirmatively elects a distribution.

8.7     If a distribution is one to which Code Sections 401(a)(11) and 417 apply, the Participant's benefits may commence less than 30 days after the explanation is provided if: (1) the Participant is given notice of his right to a 30-day period in which to consider whether to waive the annuity form of benefit and elect an optional form and, to the extent applicable, consent to the distribution; (2) the Participant affirmatively elects a distribution and form of benefit and the Spouse, if necessary, consents to the form of benefit elected; (3) the Participant is permitted to revoke his affirmative election at any time prior to the commencement of benefits or, if later, the expiration of a 7-day period beginning on the day after the explanation is provided to the Participant; (4) the Participant's benefits commence after the explanation is provided to the Participant; and (5) distribution does not begin before the expiration of the 7-day period described above.

**SECTION 9**
**Minimum Distribution Requirements**

9.1     **Minimum Distribution Requirements.** The provisions of this Section 9 will apply for purposes of determining required minimum distributions for calendar years beginning with the 2003 calendar year. The requirements of this Section shall apply to any distribution of a Participant's Account Balance and will take precedence over any inconsistent provisions of this Plan. Distributions in all cases will be made in accordance with Code Section 401(a)(9) and the regulations promulgated thereunder.

(a)     **Time and Manner of Distribution.**

(1)     Required Beginning Date. The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's required beginning date.

(2)     Death of Participant Before Distribution Begins. If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

a.     Spouse Designated Beneficiary. If the Participant's Surviving Spouse is the Participant's sole designated Beneficiary, then distributions to the Surviving Spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant dies, or by December 31 of the calendar year in which the Participant would have attained age 70 1/2, if later.

b.     Non-Spouse Designated Beneficiary. If the Participant's Surviving Spouse is not the Participant's sole designated

24

EBAC-02094

Beneficiary, then distributions to the designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

c.    No Designated Beneficiary. If there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

d.    Death of Spouse. If the Participant's Surviving Spouse is the Participant's sole designated Beneficiary and the Surviving Spouse dies after the Participant but before distributions to the Surviving Spouse begin, this Section 9.1(a)(2) other than Section 9.1(a)(2)a., will apply as if the surviving spouse were the Participant. For purposes of this Section 9.1(a)(2) and Section 9.1(c), unless Section 9.1(a)(2)d. applies, distributions are considered to begin on the Participant's required beginning date. If Section 9.1(a)(2)d. applies, distributions are considered to begin on the date distributions are required to begin to the surviving spouse under Section 9.1(a)(2)a. If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's required beginning date (or to the Participant's Surviving Spouse before the date distributions are required to begin to the Surviving Spouse under Section 9.1(a)(2)a.), the date distributions are considered to begin is the date distributions actually commence.

(3)    Forms of Distribution. Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Sections 9.1(b) and (c). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code Section 401(a)(9) and the Treasury Regulations.

(b)    **Required Minimum Distributions during Participant's Lifetime.**

(1)    Amount of Required Minimum Distribution for Each Distribution Calendar Year. During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

a.    Uniform Lifetime Table. The quotient obtained by dividing the Participant's Account Balance by the number in the Uniform Lifetime Table set forth in Treasury Regulation §1.401(a)(9)-9, using the Participant's attained age as of the Participant's birthday in the distribution calendar year; or

b.    Younger Spouse. If the Participant's sole designated Beneficiary for the distribution calendar year is the Participant's Spouse, the quotient obtained by dividing the Participant's Account Balance by the number in the Joint and Last Survivor Table set forth in

25

EBAC-02095

Treasury Regulation §1.401(a)(9)-9, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the distribution calendar year.

(2)    Lifetime Required Minimum Distributions Continue Through Year of Participant's Death.  Required minimum distributions will be determined under this Section 9.1(b) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

(c)    **Required Minimum Distributions after Participant's Death.**

(1)    Death On or After Distributions Begin.

a.    Participant Survived by Designated Beneficiary.    If the Participant dies on or after the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated Beneficiary, determined as follows:

i.    Participant's Life Expectancy.    The Participant's remaining life expectancy is calculated using the attained age of the Participant as of the Participant's birthday in the calendar year of death, reduced by one for each subsequent calendar year.

ii.    Spouse's Life Expectancy.  If the Participant's Surviving Spouse is the Participant's sole designated Beneficiary, the remaining life expectancy of the Surviving Spouse is calculated for each distribution calendar year after the year of the Participant's death using the Surviving Spouse's age as of the Spouse's birthday in that year. For distribution calendar years after the year of the Surviving Spouse's death, the remaining life expectancy of the Surviving Spouse is calculated using the attained age of the Surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death, reduced by one for each subsequent calendar year.

iii.    Non-Spouse's Life Expectancy.  If the Participant's Surviving Spouse is not the Participant's sole designated Beneficiary, the designated Beneficiary's remaining life expectancy is calculated using the attained age of the Beneficiary as of the Beneficiary's birthday in the calendar year following the calendar year of the Participant's death, reduced by one for each subsequent calendar year.

26

EBAC-02096

      b.     No Designated Beneficiary. If the Participant dies on or after the date distributions begin and there is no designated Beneficiary as of September 30 of the calendar year after the calendar year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the calendar year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the Participant's remaining life expectancy calculated using the attained age of the Participant as of the Participant's birthday in the calendar year of death, reduced by one for each subsequent calendar year.

    (2)    Death before Date Distributions Begin.

      a.     Participant Survived by Designated Beneficiary. If the Participant dies before the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's Account Balance by the remaining life expectancy of the Participant's designated Beneficiary, determined as provided in Section 9.1(c)(1).

      b.     No Designated Beneficiary. If the Participant dies before the date distributions begin and there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

      c.     Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin. If the Participant dies before the date distributions begin, the Participant's Surviving Spouse is the Participant's sole designated Beneficiary, and the Surviving Spouse dies before distributions are required to begin to the Surviving Spouse under Section 9.1(a)(2)a., this Section 9.1(c)(2) will apply as if the Surviving Spouse were the Participant.

   (d)    **Definitions.**

      (1)    Designated Beneficiary. The individual who is designated as the Beneficiary under the Plan and is the designated beneficiary under Code Section 401(a)(9) and Treasury Regulation §1.401(a)(9)-1, Q&A-4.

      (2)    Distribution calendar year. A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which the distributions are required to begin under Section 9.1(a)(2). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's

27

                                                     ETS 403(b) Match Plan

EBAC-02097

required beginning date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's required beginning date occurs, will be made on or before December 31 of that distribution calendar year.

(3)    Life expectancy. Life expectancy as computed by use of the Single Life Table in Treasury Regulation §1.401(a)(9)-9.

(4)    Participant's Account Balance. The Account Balance as of the last Valuation Date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the Account Balance as of dates in the valuation calendar year after the Valuation Date and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any Rollover Contributions or Transfers to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

(5)    Required beginning date. A Participant's required beginning date is the April 1 of the calendar year following the later of: (1) the calendar year in which the Participant attains age 70 1/2 or (2) the calendar year in which the Participant retires or such other date under Code Section 401(a)(9) by which required minimum distributions must commence.

## SECTION 10
## Rollovers to the Plan

10.1    **Rollover Contributions.** An Employee who is a Participant who is entitled to receive an eligible rollover distribution (as defined in Code Section 402(c)(4)) from another eligible retirement plan may request to have all or a portion of the eligible rollover distribution paid to the Plan as described in Section 10.1(a) and (b) below. Such rollover contributions shall be made in the form of cash only. The Administrator may require such documentation from the distributing plan as it deems necessary to effectuate the rollover in accordance with Code Section 402 and to confirm that such plan is an eligible retirement plan within the meaning of Code Section 402(c)(8)(B). The Custodian shall establish and maintain for the Participant a separate account for any eligible rollover distribution paid to the Plan.

(a)    **Direct Rollovers:** The Plan may accept a direct rollover of an eligible rollover distribution from: (1) a qualified plan described in Code Sections 401(a) or 403(a); (2) an annuity contract described in Code Section 403(b); and (3) an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state. Effective May 19, 2008, a direct rollover from a qualified plan or an annuity contract described in clauses (1) and (2) above may include amounts not includible in the Employee's gross income, such as after-tax contributions (other than designated Roth contributions), provided that the Custodian separately accounts for the amounts.

(b)    **Participant Rollover Contributions from Other Plans and Conduit IRAs:** The Plan may accept a Participant contribution of an eligible rollover distribution from: (1) a qualified plan described in Code Sections 401(a) or 403(a); (2) an annuity contract described in Code Section 403(b); and (3) an eligible plan under Code Section 457(b) which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state. In addition, the Plan may accept a Participant rollover contribution of the portion of a distribution from an individual retirement account or annuity described in Code Section 408(a) or (b) that is eligible to be rolled over and would otherwise be includible in gross income, where no amount in the account and no part of the value

28

EBAC-02098

of the annuity is attributable to any source other than a rollover contribution from an employee's trust described in Code Section 401(a) which is exempt from tax under Code Section 501(a) or from an annuity plan described in Code Section 403(a) or from an annuity contract described in Code Section 403(b) (and any earnings on such contribution), provided, however, that the Plan will in no event accept a Participant rollover contribution consisting of nondeductible individual retirement account or annuity contributions. In addition, in no event does the Plan accept a rollover contribution from a Roth elective deferral account under an applicable retirement plan described in Code Section 402A(e)(1) or a Roth IRA described in Code Section 408A.

10.2    No rollover contributions may be made to the Plan until approved by the Administrator. All rollover contributions made to the Plan shall be held in a separate account. If a rollover contribution made under this Section 10 is later determined by the Administrator not to have met the requirements of this Section or of the Code or Treasury regulations, the Custodian shall, within a reasonable time after such determination is made, and on instructions from the Administrator, distribute to the Employee the amounts then held in his Account attributable to such rollover contribution. A Participant's Rollover Contribution Account shall be subject to the terms of the Plan. Notwithstanding any other provision of this Section 10, the Employer may direct the Custodian not to accept a rollover contribution.

## SECTION 11
## Contract and Custodial Account Exchanges

11.1    **Contract and Custodial Account Exchanges.**    (a)    A Participant or Beneficiary is permitted to change the investment of his Account Balance among the Vendors under the Plan, subject to the terms of the Individual Agreements. However, an investment change that includes an investment with a Vendor that is not eligible to receive contributions under Section 3 (referred to below as an "exchange") is not permitted unless the conditions in paragraphs (b) through (d) of this Section 11.1 are satisfied.

(b)    The Participant or Beneficiary must have an Account Balance immediately after the exchange that is at least equal to the Account Balance of that Participant or Beneficiary immediately before the exchange (taking into account the Account Balance of that Participant or Beneficiary under both Section 403(b) contracts or custodial accounts immediately before the exchange).

(c)    The Individual Agreement with the receiving Vendor has distribution restrictions with respect to the Participant that are not less stringent than those imposed on the investment being exchanged.

(d)    The Employer enters into an agreement with the receiving Vendor for the other annuity contract or custodial account under which the Employer and the Vendor will from time to time in the future provide each other with the following information:

(1)    Information necessary for the resulting contract or custodial account, or any other contract or custodial accounts to which contributions have been made by the Employer, to satisfy Code Section 403(b), including the following: (i) the Employer providing information as to whether the Participant's employment with the Employer is continuing, and notifying the Vendor when the Participant has had a Severance from Employment (for purposes of the distribution restrictions in Section 5.1); (ii) the Vendor notifying the Employer of any hardship withdrawal under Section 6.2(b)(1) if the withdrawal results in a 6-month suspension of the Participant's right to make Elective Deferrals under the Plan; and (iii) the

29

ETS 403(b) Match Plan

EBAC-02099

Vendor providing information to the Employer or other Vendors concerning the Participant's or Beneficiary's Section 403(b) contracts or custodial accounts or qualified employer plan benefits (to enable a Vendor to determine the amount of any plan loans and any rollover accounts that are available to the Participant under the Plan in order to satisfy the financial need under the hardship withdrawal rules of Section 6.2(b)(1)); and

(2)     Information necessary in order for the resulting contract or custodial account and any other contract or custodial account to which contributions have been made for the Participant by the Employer to satisfy other tax requirements, including the following: (i) the amount of any plan loan that is outstanding to the Participant in order for a Vendor to determine whether an additional plan loan satisfies the loan limitations of Section 5.2(a)(1), so that any such additional loan is not a deemed distribution under Code Section 72(p)(l); and (ii) information concerning the Participant's or Beneficiary's after-tax employee contributions in order for a Vendor to determine the extent to which a distribution is includible in gross income.

(e)     If any Vendor ceases to be eligible to receive Elective Deferrals under the Plan, the Employer will enter into an information sharing agreement as described in Section 11.1(d) to the extent the Employer's contract with the Vendor does not provide for the exchange of information described in Section 11.1(d)(1) and (2).

11.2     This Section shall not apply to a Section 403(b) annuity contract or custodial account received in an exchange occurring on or before September 24, 2007, provided that the exchange (including the contract received in the exchange) satisfies such rules as prescribed by Treasury guidance of general applicability at the time of the exchange.

## SECTION 12
## Amendment and Plan Termination

12.1     **Amendments Generally.** ETS reserves the right to make from time to time any amendment or amendments to this Plan which do not cause any part of the Plan assets to be used for, or diverted to, any purpose other than the exclusive benefit of Participants or their Beneficiaries; provided, however, that ETS may make any amendment it determines necessary or desirable, with or without retroactive effect, to comply with past or future legislation affecting this Plan.

12.2     **Action by ETS.** Any action by ETS under this Plan shall be by a duly adopted resolution of its Board of Trustees, or by any person or persons or committee duly authorized by a duly adopted resolution of that Board to take such action.

12.3     **Successor Employer.** In the event of the dissolution, merger, consolidation or reorganization of ETS, provision may be made by which the Plan will be continued by the successor; and, in that event, such successor shall be substituted for ETS under the Plan. The substitution of the successor shall constitute an assumption of Plan liabilities by the successor, and the successor shall have all of the powers, duties and responsibilities of ETS under the Plan.

12.4     **Plan Assets.** There shall be no merger or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to, any other Plan of deferred compensation maintained or to be established

30

EBAC-02100

for the benefit of all or some of the Participants of the Plan, unless (i) all of the requirements set out in Treasury Regulation §1.403(b)-10(b)(3) are met, (ii) each Participant would (if either this Plan or the other Plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation or transfer (if this Plan had then terminated), and (iii) a duly adopted resolution of the Board of Trustees of ETS authorizes such merger, consolidation or transfer of assets.

12.5 **Right to Terminate the Plan.** ETS may terminate the Plan at any time in whole or in part. In the event of the dissolution, merger, consolidation or reorganization of ETS, the Plan shall terminate unless the Plan is continued by a successor to ETS in accordance with Section 12.3. Upon the completion or partial termination of the Plan, the Accounts of all Participants affected thereby shall remain fully vested and nonforfeitable, and subject to any restrictions contained in the Individual Agreements, shall be distributed to the Participants and Beneficiaries as soon as administratively possible. Notwithstanding the foregoing, the right to terminate the Plan and distribute all accumulated benefits as soon as administratively practicable is subject in all events to the provisions of Treasury Regulation §1.403(b)-10(a)(1).

**SECTION 13**
**Administration**

13.1 **Duties and Responsibilities of Fiduciaries; Allocation of Responsibility Among Fiduciaries.** A Fiduciary shall have only those specific powers, duties, responsibilities and obligations as are specifically given him under this Plan. In general, ETS shall have the sole responsibility for making the contributions provided for under Section 3. The Administrator shall have the sole responsibility for the administration of this Plan, which responsibility is specifically described in this Plan.

The Insurer and the Mutual Fund Custodians or any other entity designated by the Administrator, shall have the sole responsibility for the administration and the management of the assets held under the Plan, and the timely payment of benefits under the Plan. It is intended that each Fiduciary shall be responsible for the proper exercise of his own powers, duties, responsibilities and obligations under this Plan and generally shall not be responsible for any act or failure to act of another Fiduciary.

13.2 **Delegation of Duties and Responsibilities.** The Administrator, by a properly executed written instrument, may designate persons other than the Administrator to carry out any of the Administrator's duties and responsibilities. Any duties and responsibilities thus delegated must be described in the written instrument. If any person other than an Employee of ETS is so designated, such person must acknowledge in writing his acceptance of the duties and responsibilities thus allocated to him. All such instruments shall be attached to, and shall be made a part of, the Plan.

13.3 **Administrator.** The Plan shall be administered by ETS under the direction of the ETS Retirement Plans Working Committee and any other committee, person or organization as from time to time may be appointed or established by ETS for the purpose of serving as the "administrator" (as defined in ERISA Section 3(16)(A)) of the Plan.

13.4 **Expenses.** All expenses incurred by the Administrator in the administration of the Plan shall be paid from Plan assets except to the extent paid by ETS.

13.5 **Claims Procedure.**

31

EBAC-02101

(a)    **Filing of Claim.** Any Participant or Beneficiary under the Plan ("Claimant"), may file a written claim for a Plan benefit with the Administrator or with a person named by the Administrator to receive claims under the Plan.

(b)    **Notification of Denial of Claim.** In the event of a denial or limitation of any benefit or payment due to or requested by any Claimant, he shall be given a written notification containing specific reasons for the denial or limitation of his benefits. The written notification shall contain specific reference to the pertinent Plan provisions on which the denial or limitation of benefits is based. In addition, it shall contain a description of any additional material or information necessary for the Claimant to perfect a claim and an explanation of why such material or information is necessary. Further, the notification shall provide appropriate information as to the steps to be taken if the Claimant wishes to submit his claim for review. This written notification shall be given to a Claimant within 90 days after receipt of his claim by the Administrator unless special circumstances require an extension of time for process of the claim. If such an extension of time for processing is required, written notice of the extension shall be furnished to the Claimant prior to the termination of said 90 day period and such notice shall indicate the special circumstances which make the postponement appropriate.

(c)    **Appeals from Denial of Claims.** A Claimant who wishes to appeal a claim denial must do so within 60 days after the date his claim is denied, or if earlier, the date by which the decision on the claim was due. If a Claimant files a timely appeal, the Claimant or his representative may review pertinent documents and submit issues and comments in writing to the Administrator. The decision of the Administrator shall be made promptly, and not later than 60 days after the Administrator's receipt of the request for review, unless special circumstances require an extension of time for processing, in which case the Claimant shall be so notified and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. The Claimant shall be given a copy of the decision promptly. The decision shall be in writing and shall include specific reasons for the decision (written in a manner calculated to be understood by the Claimant) and specified references to the pertinent Plan provisions on which the decision is based.

(d)    The provisions stated in the previous subsections of this Section 13.5 shall, in general, apply to claims made involving a determination as to disability (under Sections 1.14 or 3.7) under this Plan. However, the following exceptions apply:

(1)    If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion, or a statement of such rule, guideline, protocol or other similar criterion relied upon in making the adverse determination, and a copy of the rule, guideline, protocol, or other similar criterion will be provided free of charge to the Claimant upon request.

(2)    With respect to the notices sent to the Claimant:

a.    The Administrator must notify the Claimant of the initial determination not later than 45 days after the initial application. This period may be extended by up to 30 days if the Administrator determines that the extension is necessary due to matters beyond the control of the Administrator and the Administrator notifies the Claimant, prior to the expiration of the first 45-day period, of the circumstances requiring the extension and the expected date of the decision. The reply period may be extended for an additional 30 days by following the same procedures as stated in the immediately preceding sentence with notification of the Claimant prior to the expiration of the first 30-day period. In the case of

32

ME1 7461360v.11

ETS 403(b) Match Plan

EBAC-02102

any extension, the written notice of the extension shall specifically explain the standards upon which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the Claimant shall be afforded at least 45 days within which to provide the specified information.

(3)     The Administrator must respond to the Claimant regarding an appeal determination not later than 45 days after the request for an appeal determination. This period may be extended by up to 45 days if the Administrator determines that the extension is necessary due to matters beyond the control of the Administrator and the Administrator notifies the Claimant, prior to the expiration of the first 45-day period, of the circumstances requiring the extension and the expected date of decision.

13.6    **Records and Reports.**    The Administrator shall exercise such authority and responsibility as it deems appropriate in order to comply with ERISA and governmental regulations issued thereunder relating to records regarding service rendered by Employees; benefits accrued annuity credits under the Plan; notifications to Participants; and annual reports and annual registration with the Internal Revenue Service.

13.7    **Other Powers and Duties.**    The Administrator shall have such duties and powers as may be necessary to discharge its duties hereunder, including, but not by way of limitation, the following:

(a)     to construe and interpret the Plan, and to decide all questions of eligibility for any benefits hereunder;

(b)     to prepare and distribute information explaining the Plan;

(c)     to receive from ETS and from Participants such information as shall be necessary for the proper administration of the Plan;

(d)     to furnish ETS, upon request, such annual reports with respect to the administration of the Plan as are reasonable and appropriate;

(e)     to receive, review and keep on file (as it deems convenient or proper) reports of the financial condition, and of the receipts and disbursements, of the Plan assets from the Insurer or Mutual Fund Custodian;

(f)     to appoint or employ advisors including legal and actuarial counsel to render advice with regard to any responsibility of the Administrator under the Plan or to assist in the administration of the Plan;

The Administrator shall have no power to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a benefit under the Plan.

Except as otherwise specifically provided herein or by applicable law, the Insurer or Mutual Fund Custodian shall determine the amount, manner and time of benefits payable from the Plan, and shall prescribe procedures to be followed by Participants and Beneficiaries filing applications for benefits.

33

EBAC-02103

13.8    **Rules and Decisions.** The Administrator may adopt such rules as it deems necessary, desirable, or appropriate. All rules and decisions of the Administrator shall be uniformly and consistently applied to all Participants or Beneficiaries in similar circumstances. When making a determination or calculation, the Administrator shall be entitled to rely upon information furnished by a Participant or Beneficiary, ETS personnel, the legal counsel of ETS, or the Insurer or Mutual Fund Custodian.

This Plan shall be subject to the terms and conditions of the custodial agreements of which the Mutual Fund Custodians are a party as well as the Annuity Contracts. These custodial agreements and Annuity Contracts are listed in Appendix A and are incorporated herein by this reference, provided however, that any term of any such custodial agreement or Annuity Contract shall be ignored to the extent it is contrary to the other terms of the Plan. The terms of each such custodial agreement or Annuity Contract shall apply only with respect to accounts invested with the issuer of such custodial agreement or Annuity Contract.

13.9    **Authorization of Benefit Payments.** The Administrator shall provide necessary information to the Insurer and Mutual Fund Custodians so that all benefits which are paid from the Plan are paid in full accord with the provisions of the Plan.

13.10    **Application and Forms for Benefits.** The Insurer or Mutual Fund Custodian may require a Participant or Beneficiary to complete and file an application for a benefit, and to furnish all pertinent information requested. The Insurer or Mutual Fund Custodian may rely upon all such information so furnished including the Participant's or Beneficiary's current mailing address.

13.11    **Facility of Payment.** Whenever, in the Administrator's opinion, a Participant or Beneficiary hereunder is under a legal disability or is incapacitated in any way so as to be unable to manage his financial affairs, the Administrator may direct the Insurer or Mutual Fund Custodian to apply the payment for the benefit of such person in such manner as it considers advisable. Such payments shall be considered a payment to such Participant or Beneficiary and shall, to the extent made, be deemed a complete discharge of any liability for such payments under the Plan.

13.12    **Liabilities.** The Administrator and each person to whom duties and responsibilities have been allocated with regard to Plan administration may be indemnified and held harmless by ETS to the extent determined by ETS' Board of Trustees with respect to any breach of alleged responsibilities performed or to be performed hereunder.

13.13    **Effect of Administrator's Action.** The Plan shall be interpreted by the Administrator in accordance with the terms of the Plan and their intended meanings. However, the Administrator shall have the discretion to make any findings of fact needed in the administration of the Plan, and shall have the discretion to interpret or construe ambiguous, unclear or implied (but omitted) terms in any fashion it deems to be appropriate in its sole judgment. The validity of any such finding of fact, interpretation, construction, or decision shall not be given de novo review if challenged in court, by arbitration or in any other forum, and shall be upheld unless found to be arbitrary or capricious. To the extent the Administrator has been granted discretionary authority under the Plan, the Administrator's prior exercise of such authority shall not obligate it to exercise its authority in a like fashion thereafter. This Section 13.14 may not be invoked by any person to require the Plan to be interpreted in a manner which is inconsistent with its interpretation by the Administrator. All actions taken and all determinations made in good faith by the Administrator shall be final and binding upon all persons claiming any interest in or under the Plan.

34

EBAC-02104

## SECTION 14
### Miscellaneous

14.1    **Spendthrift Provisions.**  The rights of any Participant or his Beneficiary to any benefit or to any payment under the Plan shall not be subject to alienation, assignment, attachment, transfer, garnishment or other legal or equitable process, and no Participant or his Beneficiary shall have any right to alienate, anticipate, commute, pledge, encumber or assign any such benefit or payment, either voluntarily or involuntarily.  The preceding sentence shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a "qualified domestic relations order", as defined in Code Section 414(p).  A domestic relations order entered before January 1, 1985 will be treated as a qualified domestic relations order if payment of benefits pursuant to the order has commenced as of such date, and may be treated by the Plan Administrator as a qualified domestic relations order if payment of benefits has not commenced as of such date, even though the order does not satisfy the requirements of Code Section 414(p).  The Plan Administrator shall develop a procedure to determine the status of a domestic relations order as a qualified domestic relations order and to administer Plan distributions in accordance with qualified domestic relations orders.

The prohibitions set forth in this Section 14.1 shall not apply to any offset of a Participant's benefits provided under the Plan against an amount that the Participant is ordered or required to pay to the Plan if

(a)    the order or requirement to pay arises under a judgment of conviction for a crime involving the Plan, under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation or alleged violation) of part 4 of subtitle B of title I of ERISA ("Part 4 violation"), or pursuant to a settlement agreement between the Secretary of the United States Department of Labor and the Participant, or a settlement agreement between the Pension Benefit Guaranty Corporation and the Participant, in connection with a Part 4 violation by a fiduciary or any other person;

(b)    the judgment, order, decree, or settlement agreement expressly provides for the offset of all or part of the amount ordered or required to be paid to the Plan against the Participant's benefits provided under the Plan; and

(c)    in a case in which the survivor annuity requirements of ERISA Section 205 apply with respect to distributions from the Plan to the Participant, if the Participant has a Spouse at the time in which the offset is to be made,

(1)    either such Spouse has consented in writing to such offset and such consent is witnessed by a notary public or a representative of the Plan (or is established to the satisfaction of a Plan representative that such consent may not be obtained by reason of circumstances described in ERISA Section 205(c)(2)(B)), or an election to waive the right of the Spouse to either a Qualified Joint and Survivor Annuity or a Qualified Pre-Retirement Survivor Annuity is in effect in accordance with the requirements of ERISA Section 205(c);

(2)    such Spouse is ordered or required in such judgment, order, decree, or settlement to pay an amount to the Plan in connection with a Part 4 violation or;

(3)    in such judgment, order, decree, or settlement, such Spouse retains the right to receive the survivor annuity under a Qualified Joint and Survivor Annuity provided pursuant to ERISA Section 205(a)(1) and under a Qualified Pre-Retirement Survivor Annuity provided pursuant to ERISA Section 205(a)(2). For purposes subparagraph (iii) of this clause (c),

35

EBAC-02105

the survivor annuity shall be determined as if the Participant terminated employment on the date of the offset, there was no offset, the Plan permitted commencement of benefits only on or after Normal Retirement Age, the Plan provided only the Qualified Joint and Survivor Annuity which is the actuarial equivalent of the Participant's accrued benefit and under which the survivor annuity is 50% of the amount of the annuity which is payable during the joint lives of the Participant and the Spouse ("Minimum-Required Qualified Joint and Survivor Annuity"), and the amount of the Qualified Pre-Retirement Survivor Annuity under the Plan is equal to the amount of the survivor annuity payable under the Minimum-Required Qualified Joint and Survivor Annuity.

14.2    **IRS Levy.**    Notwithstanding Section 14.1, the Administrator may pay from a Participant's or Beneficiary's Account Balance the amount that the Administrator finds is lawfully demanded under a levy issued by the Internal Revenue Service with respect to that Participant or Beneficiary or is sought to be collected by the United States Government under a judgment resulting from an unpaid tax assessment against the Participant or Beneficiary.

14.3    **Tax Withholding.**    Contributions to the Plan are subject to applicable employment taxes (including, if applicable, Federal Insurance Contributions Act (FICA) taxes with respect to Elective Deferrals, which constitute wages under Code Section 3121). Any benefit payment made under the Plan is subject to applicable income tax withholding requirements (including Code Section 3401 and the Employment Tax Regulations thereunder). A payee shall provide such information as the Administrator or Insurer or Mutual Fund Custodian may need to satisfy income tax withholding obligations, and any other information that may be required by guidance issued under the Code.

14.4    **Limitation of Rights and Benefits.**    Nothing appearing in or done pursuant to the Plan shall be held or construed to create a contract of employment with the Employer, to obligate the Employer to continue the services of any Employee, or to affect or modify any Employee's terms of employment in any way, or to give any person any legal or equitable right or interest in the funds under the Plan or any part thereof or distribution therefrom, or against the Employer, except as expressly provided herein.

14.5    **Benefits Subject to Adequacy of Funds.**    Benefits payable under the Plan shall be paid or provided from the Annuity Contract and/or Custodial Account maintained for each Participant and the Employer assumes no liability or responsibility therefor. The Employer is under no legal obligation to make any contribution to the Plan and no action or suit shall be brought by a Participant or his Beneficiary or by the Plan Administrator, against the Employer for any such contribution.

14.6    **Plan for Exclusive Benefit of Employees.**    Except as provided in Section 3.8, no part of the funds under the Plan shall revert to the Employer, and no part of the funds, other than such part as is required to pay taxes, if any, or administrative expenses chargeable against the Accounts, shall be used for any purpose other than the exclusive benefit of Participants and their Beneficiaries, pursuant to the provisions of the Plan.

14.7    **Responsibility of Parties.**    All parties to this Plan and all persons claiming any interest whatsoever hereunder agree to perform any and all acts and execute any and all documents or papers which may be necessary or desirable for carrying out any of the provisions of this Plan or of any amendments to this Plan or for complying with any Federal or State disclosure laws.

14.8    **Mistaken Contributions.**    If any contribution (or any portion of a contribution) is made to the Plan by a good faith mistake of fact, then within one year after the payment of the contribution, and upon receipt in good order of a proper request approved by the Administrator, the amount of the mistaken

36

EBAC-02106

contribution (adjusted for any income or loss in value, if any, allocable thereto) shall be returned directly to the Participant or, to the extent required or permitted by the Administrator, to the Employer.

14.9 **Procedure When Distributee Cannot Be Located.** The Administrator shall make all reasonable attempts to determine the identity and address of a Participant or a Beneficiary entitled to benefits under the Plan. For this purpose, a reasonable attempt means (a) the mailing by certified mail of a notice to the last known address shown on ETS' or the Administrator's records, (b) notification sent to the Social Security Administration or the Pension Benefit Guaranty Corporation (under their program to identify payees under retirement plans), and (c) the payee has not responded within 6 months. If the Administrator is unable to locate such a person entitled to benefits hereunder, or if there has been no claim made for such benefits, the Funding Vehicle shall continue to hold the benefits due such person.

14.10 **Incorporation of Individual Agreements.** The Plan, together with the Individual Agreements, is intended to satisfy the requirements of Code Section 403(b) and the Income Tax Regulations thereunder. Terms and conditions of the Individual Agreements are hereby incorporated by reference into the Plan, excluding those terms that are inconsistent with the Plan or Code Section 403(b).

14.11 **Governing Law.** The Plan will be construed, administered and enforced according to the Code and the laws of the State in which the Employer has its principal place of business.

14.12 **Headings.** Headings of the Plan have been inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

14.13 **Gender.** Pronouns used in the Plan in the masculine or feminine gender include both genders unless the context clearly indicates otherwise.

MEI 7461360v.11  ETS 403(b) Match Plan

EBAC-02107

IN WITNESS WHEREOF, ETS has caused its duly authorized officer to execute this 403(b) Match Plan Restatement.

**Educational Testing Service**

By: _Jolu G. Maxfield_

Name: John A. Maxfield

Title: Strategic Advisor

Dated: December 30, 2009

MEI 7461360v.11

38

EBAC-02108

## Appendix A

### Custodial Agreements and Annuity Contracts

The terms of the following standardized custodial agreements and annuity contracts are hereby incorporated in this Plan as long as the issuer of such agreements are Mutual Fund Custodians or Insurers or Custodians under this Plan, except to the extent that such terms conflict with other terms of this Plan. The terms of the following custodial agreements and annuity contracts shall apply only with respect to accounts invested with the issuers of such custodial agreements or annuity contracts.

**A.    Frozen Contracts**

1.    Fidelity Investments Section 403(b)(7) Individual Custodial Account Agreement (I.403B-CA-394).

2.    Vanguard Section 403(b)(7) Custodial Account Agreement (VIPCA-0593.)

3.    Dreyfus 403(b)(7) Retirement Plan and Custodial Agreement (NP/EMPYcust3-925).

4.    Scudder 403(b) Custodial Agreement.

5.    The Variable Annuity Life Insurance Company Annuity Contract.

6.    Teachers Insurance and Annuity Association Retirement Annuity Contract.

7.    College Retirement Equities Fund Retirement Unit – Annuity Certificate.

**B.    Current Contracts**

1.    Custodial Account Agreement with Fidelity Management Trust Company as Custodian, dated July 2, 2007, as amended from time to time.

MEI 7461360v.11

ETS 403(b) Match Plan

EBAC-02109

EXHIBIT B

Poor Quality



EBAC-00071

Poor Quality



## Record of Age

**IMPORTANT:** The records listed under "A" are more satisfactory to verify your date of birth than those listed under "B" and so should be furnished if at all possible. One of any of the records listed under "A" should be sufficient. Otherwise, any two records listed under "B" may be furnished if both are at least 6 months old. Any record must give YOUR AGE or YOUR DATE OF BIRTH. Records submitted for TIAA will be used for CREF.

**A.**

**BIRTH CERTIFICATE**
A certified copy can be obtained from the Bureau of Vital Statistics of the city or county in which you were born.

**BAPTISMAL CERTIFICATE**
A copy can be obtained from the church where you were baptized. It should give both date as well as baptismal date.

**FAMILY BIBLE**
A statement by a college official or notary public stating (a) that the Bible has been certified (b) the name of the person presumed to have made the entry in which the entry is presumed to have been made, and (c) your name and date of birth as shown in the entry.

**LIFE INSURANCE POLICY** (if at least 2 years old)
The policy may be in TIAA or another life insurance company, indicating in the contract is not an acceptable record of age.

**SCHOOL OR COLLEGE RECORD** (at least 2 years old)
Such records may have originated while you were attending school or college.

**MILITARY DISCHARGE PAPER**
This should be the official discharge paper rather than a copy which may be a duplicate or other evidence.

**U.S. PASSPORT**
The passport may be submitted or a statement may be furnished of the passport and data giving the necessary information.

**NATURALIZATION RECORD**

**B.**

- Affidavit of parent
- Birth certificate of child
- Census record
- Church or Sunday School record
- Club or lodge record
- Draft exemption record
- Diary
- Driver's license
- Employment record
- Immigration record
- Family doctor's record
- Fraternal organization record
- Insurance card
- Marriage record
- Military/service discharge card
- Professional registration card
- School Record card
- Selective Service Registration
- Statement of physical examination
- Union card

**HOW TO FURNISH RECORDS TO TIAA-CREF**
The records can be reviewed by a college official or a notary public or a statement on a separate sheet if preferred...

DO NOT FILL IN THE BLANKS BELOW THIS LINE

3991    3-14-88

Poor Quality



Poor Quality



1 8 4 3 0 7

**Request for a TIAA Traditional Transfer Payout Annuity to TIAA Real Estate and/or CREF**

**P**

| 1 | PERSONAL INFORMATION | Name |
|---|---|---|
| | | James Thomas Rosen |

| Daytime Telephone | Social Security Number |
|---|---|
| 215-943-1384 | ▮▮▮▮▮▮ |

| TIAA Number | CREF Number |
|---|---|
| Q649916-0 | Q649916-7 |

**2 TOTAL TRANSFER AMOUNT**

The total available accumulation you want to transfer to your TPA is (please spell out)  7,144.71

How should we apply the funds being transferred?

| | Allocation | |
|---|---|---|
| TIAA Real Estate* | | % |
| CREF Stock | 100 | % |
| CREF Money Market | | % |
| CREF Social Choice* | | % |
| CREF Bond Market* | | % |
| CREF Global Equities* | | % |
| CREF Growth* | | % |
| CREF Equity Index* | | % |
| | 100% | |

*If available under your institution's retirement plan.

**3 EXEMPTION FROM SPOUSAL RIGHTS TO SURVIVOR BENEFITS REQUIREMENTS**

If you participated only in the retirement plan of a publicly supported institution, such as a state university system, or in certain church plans, you are exempt from federal spousal survivor benefits requirements. If you did not participate in the plan of a private employer since August 23, 1984, you are also exempt. If you are in either category, please check the box and skip Section 4.

☑ *Yes, I am exempt from federal spousal rights to survivor benefits requirements.*

TA-TF
10909 (09/2004)
-04

05/28

EBAC-00146



Poor Quality

**4 CHOOSING YOUR BENEFICIARY**

Tell us who should receive any payments due after you have died.

| Primary Beneficiary | Social Security Number | Relationship to You | Date(s) of Birth |
|---|---|---|---|
| Lucille A. Rosso | | SISTER | 59 |

Provide primary beneficiaries here

| Contingent Beneficiary | Social Security Number | Relationship to You | Date(s) of Birth |
|---|---|---|---|

Provide contingent beneficiaries here.

**5 YOUR AUTHORIZATION**
*Read this before signing.*

Once your TPA has been issued, it can be neither revoked nor the amount changed.

By accepting the initial transfer to TIAA Real Estate and/or CREF when your TPA is issued, you won't be eligible to choose the Retirement Transition Benefit if you convert your TPA to lifetime income.

By signing, you agree that you don't need to return your contract with this request. However, if you transfer the full value of your account, you understand that the contract will then be of no value.

YOUR SIGNATURE    Your Signature    Date 05·24·96

F6406 (09/30/95) OFF

2

Poor Quality

**P**

B649916-0

| 6 SPOUSE'S WAIVER | A. Spouse's Consent to Waiver of Survivor Annuity Benefits |
|---|---|

**6 SPOUSE'S WAIVER**

*This section must be completed unless you answered "Yes" in Section 3.*

**A. Spouse's Consent to Waiver of Survivor Annuity Benefits**
(To be read and signed by the spouse of the annuity owner.)

Under federal law, you have the right to receive a survivor benefit worth at least 50% of the amount in this TPA contract at the time of your spouse's death if your spouse dies before you. As a result, your spouse must have your written consent before naming a beneficiary other than you for more than 50% of th~ death benefit. If you consent to the beneficiary designation(s) in Section 4, please rea. and sign the statement below, and have your signature witnessed.

*As spouse, you sign here. The date you sign must be the same or a later date than the date your spouse authorizes the transfer and must be within 90 days of the transfer.*

*I agree to the naming of beneficiaries as requested in Section 4. I understand and agree that I'm giving up my right to receive a survivor benefit payment from TIAA for the amount being transferred from TIAA contract B649916-0 to this TPA. I release TIAA from all liability for making this transfer.*

Spouse's Signature _____   Date _____

Spouse's Signature Witnessed by Plan Representative for *(name of institution)*

_____

Authorized Signature _____   Title _____   Date _____

OR

Spouse's Signature Witnessed by Notary Public

State of _____ )
                      : ss
County of _____ )

On _____, 19 ____, before me personally appeared

_____, to me known and known to me to be the individual who signed the above spousal consent and acknowledged to me that he/she executed the same.

_____
Notary Public

| UNMARRIED DETERMINATION | B. Establishing Your Unmarried Status |
|---|---|

**UNMARRIED DETERMINATION**

**B. Establishing Your Unmarried Status**
(To be completed by the annuity owner if applicable.)

*I'm not married. If I'm employed, my employer's plan representative must establish my unmarried status to his/her satisfaction and sign below.*

Your Signature _____   Date 05·24·96

Established by Plan Representative for *(name of institution)*

Authorized Signature _____   Title _____   Date _____

**TA-TF**
F(9AR (09/20/06)
CT1

a

FAX CX01814798__140611_1404_0002

THE LAW OFFICE
OF
DAVID R. DEMAREE, LLC
475 WALL STREET
PRINCETON, NEW JERSEY 08540

*David R. Demaree, Esquire*                                                    david@demareelaw.com
*LL.M. Taxation*
*R. 1:40 Court Qualified Mediator*

*T 609.466.7919*          *www.demareelaw.com*          *F 609.466.6993*

June 11, 2014

**Via Facsimile and Regular and Certified Mail, ERRR**

Jeannine Edmonds, Specialist
TIAA-CREF
8500 Andrew Carnegie Boulevard
Charlotte, North Carolina
28262

    Re :    Estate of James T. Rosso
             **SSN: XXX-XX-X560**

Dear Ms. Edmonds.

    I am counsel to Lorraine Luciano in connection with the estate of her late husband, James T. Rosso.

    I understand that the decedent has at least one ERISA-qualified account with your institution from his employment with ETS between 1979 and 1993. I understand that the beneficiary designations for the decedent's accounts were not revised after his departure from ETS.

    Please be advised that the decedent and my client were married on February 27, 2004 and remained married until the decedent's death on April 11, 2014. Under the applicable provisions of ERISA, a surviving spouse is entitled to the decedent spouse's plan assets, unless the surviving spouse has "waived" such rights in writing. My client did not execute any such waiver.

    Provided that you cannot produce any such waiver, any distribution of the assets or funds to anyone other than my client, including any individual who may have been designated prior to the decedent's marriage to my client, would be a violation of the applicable provisions of ERISA.

    If any such distribution is made, I intend to recommend that my client take appropriate legal action against your institution.

    Kindly correct your records as soon as possible and forward the documentation necessary to transfer the assets and funds of the decedent's accounts to my client to my attention at the address above.

Page 2 of 3 received on 6/11/2014 2:03:29 PM [Eastern Daylight Time] From as IMG539861EA0EDB on CHAPDC3MFAX91

EBAC-00489

**FAX CX01814798__140611_1404_0003**

Jeannine Edmonds, Specialist
June 11, 2014
Page 2

Please also provide me with the "date of death" value of any and all accounts as well as IRS Form 712 if appropriate, so that I may prepare the decedent's estate tax return.

Thank you in advance for your attention to this matter  With best regards,

THE LAW OFFICE OF
DAVID R. DEMAREE, LLC

By:

David R. Demaree
Member

cc:    Lorraine Luciano, Executrix

THE LAW OFFICE OF DAVID R. DEMAREE, LLC

Page 3 of 3 received on 6/11/2014 2:03:29 PM [Eastern Daylight Time] From: as IMG539861EA0EDB on CHAPDC3IMFAX01

EBAC-00490

FAX CX01822250__140618_1640_0002

THE LAW OFFICE
OF
DAVID R. DEMAREE, LLC
475 WALL STREET
PRINCETON, NEW JERSEY 08540

David R. Demaree, Esquire
LL.M. Taxation                                                    david@demareelaw.com
R. 1:40 Court Qualified Mediator

    T 609.466.7919          www.demareelaw.com          F 609.466.6993

June 18, 2014

**Via Facsimile and Certified Mail, RRRR**

Jeannine Edmonds, Specialist
TIAA-CREF
8500 Andrew Carnegie Boulevard
Charlotte, North Carolina
28262

    Re:    Estate of James T. Rosso

Dear Ms. Edmonds:

    Attached please find the completed and executed Marital Status Verification form which you provided with your correspondence, dated June 4, 2014 (copy provided), along with my client's statement regarding her intention to claim the death benefits in connection with her late husband's accounts.

    As I indicated in my previous letter to you dated, June 11, 2014 (copy provided), it is our position that my client - as the surviving spouse - is entitled to all death benefits related to the decedent's accounts (*not one-half of such benefits*) despite the fact that beneficiary designation were not corrected after the decedent's departure from his employment with ETS to reflect his subsequent marriage, as my client did not execute a written waiver consenting to any alternate distribution of the death benefits.

    I trust you will not make any distribution to either of the individuals named on the beneficiary designations the decedent completed prior to his marriage to my client until this matter has been clarified.

    In the event that any such distributions have been made, I expect (1) that you will advise me immediately; (2) that you inform the recipients that the distribution was made in error; and (3) that they are holding any such funds in constructive trust for the benefit of my client.

    Thank you in advance for your attention to this matter.  With best regards.

Page 2 of 10 received on 6/18/2014 4:37:57 PM [Eastern Daylight Time] From as IMG53A1C0FC2DC6 on CHAPDC3IMFAX01

EBAC-00491

**FAX CX01822250__140618_1640_0003**

Jeannine Edmonds, Specialist
June 18, 2014
Page 2

THE LAW OFFICE OF
DAVID R. DEMAREE, LLC

By: _____

David R. Demaree
Member

cc:    Lorraine Luciano, Executrix

THE LAW OFFICE OF DAVID R. DEMAREE, LLC

Page 3 of 10 received on 6/18/2014 4:37:57 PM [Eastern Daylight Time] From  as IMG53A1C0FC2DC6 on CHAPDC3IMFAX01

EBAC-00492



Page 1 of 2

FAX CX01822250__140618_1640_0004

# MARITAL STATUS
## Verification

 **IMPORTANT INFORMATION**

PLEASE **READ BEFORE** FILLING OUT FORM

QUESTIONS? For account information, to check the status of your request or any other questions, call: 888 380-6428, Monday - Friday, 8 AM - 7 PM ET.

The Employee Retirement Income Security Act of 1974 (ERISA) provides certain rights to the spouse of a participant in a retirement plan subject to the law. Plans subject to ERISA are those of private employers; plans not subject to ERISA are those of public institutions and those of certain churches.

If a participant of a retirement plan subject to ERISA dies before receiving retirement income, his or her surviving spouse (if any) is entitled to a death benefit equal to at least one-half of the annuity accumulation(s) subject to the law. Before paying death benefits, TIAA-CREF must determine if any benefits are payable to a participant's surviving spouse. TIAA-CREF requires this form to be completed by all beneficiaries.

Each beneficiary must sign their own Marital Status Verification as they settle their own entitlements and the form must be included in their own package.

PLEASE PRINT IN ALL CAPITAL LETTERS USING BLACK OR DARK BLUE INK.

**STEP ONE**

**DECEDENT INFORMATION**

Name James Thomas Rosso

SSN ███████████

PIN
FOR TIAA-CREF USE ONLY     1843077

**STEP TWO**

**SURVIVING SPOUSE INFORMATION**

Was the participant married as of the date of death?

X Yes    No

Name LORAINE    H    LUCIANI

Street 145 MOUNTAIN RD

City RINGOES    State N.J.    Zip Code 08551

Primary Phone # 908-391-1314    Alternative Phone # 609-393-0773

EBAC-00493



Page 1 of 2

**FAX CX01822250__140618_1640_0005**

# MARITAL STATUS
## Verification

**STEP THREE SIGNATURE**

Please sign here if you are the beneficiary or authorized representative.

I have read the information on this form and agree to its accuracy

Relationship to Original Participant    SPOUSE

Print Name    LORRAINE    H    LUCIANO

Your Signature    Lorraine H. Luciano

Today's Date    06/13/2014

TA_DD

EBAC-00494

**FAX CX01822250__140618_1640_0006**

Lorraine H. Luciano
c/o The Law Office of David R. Demaree, LLC
475 Wall Street
Princeton, New Jersey 08540

June 18, 2014

**Via Facsimile and Certified Mail, ERRR**

Jeannine Edmonds, Specialist
TIAA-CREF
8500 Andrew Carnegie Boulevard
Charlotte, North Carolina
28262

      Re:    <u>Estate of James T. Rosso</u>

Dear Ms. Edmonds:

      In response to your correspondence, dated June 4, 2014, please accept this letter as the statement of my intent that you requested that I intend to claim ONE HUNDRED PERCENT (100%) - <u>not ONE-HALF (1/2)</u> as indicated in your correspondence - of the death benefits of my late husband's accounts to which I am entitled as his surviving spouse.

      Kindly forward any and all correspondence in connection with this matter to my attention at the address indicated above.

      Should you have any questions with respect to this matter, please contact David R. Demaree, Esquire, at 609-466-7919. Thank you in advance for your cooperation.

                      Sincerely,

                      *Lorraine H. Luciano*

                      Lorraine H. Luciano

EBAC-00495


**TIAA CREF**
Financial Services

Margaret M. Byrne
Dir., Associate General Counsel
TIAA-CREF
730 Third Avenue
New York, NY 10017
mbyrne@tiaa-cref.org
Tel: (212) 916-4657
Fax: (212) 916-6740

March 13, 2015

**VIA EMAIL AND UPS**

David R. Demaree, Esq.                Anne L. H. Studholme, Esq.
The Law Office of David R. Demaree,   Post, Polak, Goodsell, MacNeill &
LLC                                   Strauchler, P.A.
475 Wall Street                       425 Eagle Rock Avenue, Suite 200
Princeton, NJ 08540                   Roseland, New Jersey 07068-1717

         Re:   Claim of Lorraine H. Luciano to 100% of the Plan
               Accumulations of James T. Rosso

Dear Mr. Demaree and Ms. Studholme:

We understand that you are the authorized representatives of Lorraine H. Luciano, the widow of
James T. Rosso, a participant in the following two retirement plans sponsored by Educational Testing
Service (ETS) for its employees: Plan A, the ETS Retirement 401(a) Plan, and Plan B, the ETS
403(b) Plan.[1] TIAA-CREF as the issuer of the individual annuity contracts funding Mr. Rosso's
benefit under both plans, is the plan vendor to whom the plan administrator (the ETS Employee
Benefits Administration Committee) has delegated the duty to review claims for benefits under the
plans and make initial benefit determinations. As directed in the proceedings captioned <u>In the Matter
of the Estate of James T. Rosso, Deceased</u>, Docket No. 48133, currently pending in the New Jersey
Superior Court, Chancery Division, Probate Part (the "Rosso Litigation"), TIAA-CREF is now
treating your June 11, 2014 and June 18, 2014 letters addressed to Jeannine Edmonds at TIAA-
CREF, as Ms. Luciano's full claim for 100% of the retirement annuity proceeds payable under the
two plans referenced above, claims adverse to the claims asserted by the beneficiaries established by
the deceased.[2]

---

[1] As used here, the terms "you" or "your" refer to Mr. Demaree and Ms. Studholme as co-counsel representing Ms.
Luciano in this matter. "We" or "us" refers to TIAA-CREF.

[2] Your letters are attached as Exhibits A and B to the Verified Complaint filed in the Rosso Litigation. Your June 18,
2014 letter enclosed (1) a completed Marital Status Verification form signed by the Claimant verifying that she is the
surviving spouse of the participant, and (2) a letter from the Claimant also dated June 18, 2014 and addressed to Ms.
Edmonds, stating that it is the Claimant's intent to claim "one hundred percent (100%) – not one-half (1/2) as indicated in
your correspondence – of the death benefits of my late husband's accounts to which I am entitled as his surviving
spouse."

EBAC-00593

For the reasons set forth below, we conclude that neither the TIAA-CREF annuity contracts, nor the beneficiary designations established by the deceased, nor the communications in the deceased's file, nor the other plan documents support Ms. Luciano's assertion that ERISA mandates that the spousal portion of the pre-retirement death benefits funded by the contracts must be 100% of the account balance rather than 50% to the surviving spouse and 50% to the beneficiaries of record, and decline Ms. Luciano's claim to more than 50% of the death benefit. We have consolidated the analysis where the issues raised as to the two plans are substantially similar and separated the issues where the plans have different relevant provisions.

## Background as to plan design and Mr. Rosso's enrollment in the plans funded solely through TIAA-CREF annuity contracts

By way of background, ETS is a not-for-profit educational assessment institution described in Internal Revenue Code ("IRC") §501(c)(3) that is exempt from taxation under IRC §501(a), that, like many other tax-exempt educational institutions, provides retirement benefits for its employees through use of the TIAA-CREF retirement system. ETS separately established the two plans in question updating them periodically to avail employees of changes in the IRC and investment alternatives available to fund benefits for plan participants. The 401(a) Plan is a money purchase pension plan subject to ERISA, including the ERISA funding requirements. The 403(b) Plan is a "section 403(b) annuity plan" that is also subject to ERISA. ERISA was amended by the Retirement Equity Act of 1984 (REACT) to require most ERISA-covered plans to provide a qualified preretirement survivor annuity to a participant's surviving spouse where the participant dies prior to his annuity starting date.

At employment in 1980, Mr. Rosso enrolled in Plan A, the ETS Retirement 401(a) Plan, naming his parents as beneficiaries (see Ex. 6); subsequently in 1988 he enrolled in Plan B, the ETS 403(b) Plan, naming his sister as beneficiary (see Ex. 7). When he left ETS in 1993, the TIAA-CREF annuity contracts used to fund his benefits[3] were placed on a paid-up basis, and he then continued to participate in the plans as a former employee, engaging contractually with TIAA-CREF in investing and exercising ownership options, and receiving quarterly statements from TIAA-CREF until his death on April 11, 2014.

All contributions made on Mr. Rosso's behalf to the plans were remitted to TIAA-CREF and applied to purchase accumulation units in the individual annuity contracts issued to him; further, the TIAA-CREF contract language is incorporated into the plan documents.[4] All of Mr. Rosso's benefit accumulations under both plans are subject to the REACT requirement that a qualified preretirement survivor annuity be provided to his surviving spouse in the event that he died prior to commencing to

---

[3] Starting in 2007 all future contributions to the 403(b) plan were required to be made to a group custodial account established with Fidelity Management Trust Company, a fact that necessitated changes being made to the plan document that do not relate to Mr. Rosso, as his participation never included the Fidelity custodial account.

[4] The 401(a) Plan states: "For periods prior to July 1, 2007, the assets of the Plan have been invested in individual annuity contracts issued to the Participants in the Plan, *the terms of which are considered to be an integral part of the Plan* (emphasis added)." See Ex. 4, p. 1 (Article I). The 403(b) Plan defines an "Individual Agreement" as including the TIAA-CREF annuity contracts and provides that *"Terms and conditions of the Individual Agreements are hereby incorporated by reference into the Plan,"* excluding those terms that are inconsistent with the Plan or Code Section 403(b) (emphasis added)." See Ex. 5, pp. 37, 6 (§§1.27, 14.10).

receive the life annuity benefit payable to him under both plans and his TIAA-CREF annuity contracts.

**Mr. Rosso's TIAA-CREF annuity contract beneficiary designation history**

Upon enrollment in the plans Mr. Rosso applied for and was issued annuity contracts. This process included the designation of beneficiaries, which were reflected in the contracts issued:

> Plan A - ETS Retirement 401(a) Plan – enrolled July 1980 - TIAA-CREF contracts B1407192/Q1407199 issued – date of death value $183,082.76 – beneficiaries of record being Mr. Rosso's parents.

> Plan B – ETS 403(b) Plan -- enrolled January 1988 -- TIAA-CREF contracts B6499160/Q6499167 issued – date of death value $55,423.90 – beneficiary of record being Mr. Rosso's sister.

The "B" and "Q" contract numbers above refer to alternatives for funding the plan benefits through TIAA fixed-type retirement annuity contracts or CREF variable-type certificates whose characteristics differ reflecting the underlying investments in guaranteed or non-guaranteed (equity-type) investments and the fact that the TIAA contracts contain liquidity restrictions.

In 1996, several years after having left ETS, Mr. Rosso elected to transfer the portion of his plan accounts held in his TIAA fixed-type retirement annuity contracts with the prefix "B" to his CREF retirement-unit annuity certificates prefixed with the letter "Q" as shown above. Due to TIAA contract liquidity restrictions, those inter fund transfers took place gradually over a ten-year period via a TIAA Traditional Transfer Payout Annuity issued to Mr. Rosso. The process involved Mr. Rosso's applying for and being issued two new TIAA contracts and his designating beneficiaries for those contracts. He designated his sister as beneficiary for both TIAA Transfer Payout Annuity contracts IF358460 and IF358780. The inter fund transfers were completed in July 2006.

As a result, at the time of Mr. Rosso's death on April 11, 2014, his entire interest under both plans was held in his CREF retirement unit-annuity certificates Q6499167 and Q1407199. The total value of his accounts under both plans as of April 11, 2014 was $238,506.66 -- his parents were beneficiaries for the portion held in contract Q1407199 ($183,082.76); and his sister was beneficiary for the portion held in Q6499167 ($55,423.90). At death, he was survived both by his father (who has since died) and his sister. Each was sent materials to apply for the benefits under the contracts for which they were designated beneficiary.

Part of the application process included a request for the deceased participant's marital status verification. Upon learning that Mr. Rosso was married at death, we advised the beneficiaries of record and Ms. Luciano that the spouse could claim a surviving spousal benefit of 50% of the account balance in each plan. When advised that Ms. Luciano asserted a claim to the entire proceeds, we inquired whether the designated beneficiaries would renounce the 50% we understood to be due to them as designated beneficiaries. They reviewed the matter with their counsel and have pursued entitlement to 50% of the account balance in each plan in the proceedings captioned above. TIAA-CREF advised of our understanding that the surviving spouse preretirement death benefit was limited to 50%, referring counsel to the plan documents and annuity contracts and advising of the plan

provisions on benefits determinations, requesting that Ms. Luciano submit any additional materials or authority she wished reviewed. The claimants pursued their claims in the proceedings referenced above. TIAA-CREF sought interpleader stakeholder relief, and the court referred the matter to the plan claims determination process.

## The TIAA-CREF Annuity Contract Provisions

All the TIAA and CREF contracts issued to Mr. Rosso contain provisions under which the participant may name beneficiaries to whom his plan benefit will be paid if he dies, as Mr. Rosso died, prior to his annuity starting date. These provisions clearly require that a participant name his beneficiary "in form satisfactory to TIAA" and "in form satisfactory to CREF" (see Ex. 2, 3, TIAA Contracts §§9, 19, CREF Contracts §§9, 21). The contracts also contain provisions under which a participant is permitted to change his named beneficiary "by giving written notice to TIAA in form and wording satisfactory to TIAA" and "by filing written notice with CREF in form and wording satisfactory to CREF" (see Ex. 2, 3, TIAA Contracts §§9, 19, CREF Contracts §§18, 32). As discussed more fully below, Mr. Rosso did in fact file several sets of beneficiary designations with TIAA-CREF and received confirmations of the designations when recorded by TIAA-CREF to their records.

Each contract also provides that any beneficiary's interest will be subject to any spouse at death's right to receive an annuity "which is the actuarial equivalent of one-half" of the account as the qualified preretirement survivor annuity payable to the spouse where the participant dies prior to his annuity starting date, leaving the remainder of the account to be distributed to the participant's named beneficiaries.[5] Thus, CREF Retirement Unit-Annuity Certificate (Contract Q6499167) states:

> **Spouse's Survivor Death Benefit.** If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of one-half of the portion of the Accumulation, if any, attributable to contributions made under a plan subject to ERISA, provided a plan contribution has been paid after August 22, 1984. See Ex. 3.

Each annuity contract also provides that the qualified preretirement survivor annuity (referred to as the "Spouse's Survivor Death Benefit") can be waived if the participant's spouse consents in writing to the participant's naming a non-spouse beneficiary for more than 50% of his account. Again, CREF Retirement Unit-Annuity Certificate (Contract Q6499167) states:

> Your spouse's right to a Survivor Death Benefit may be waived, in form satisfactory to CREF, with your spouse's written consent or verification that your spouse cannot be located. See Ex. 3.

---

[5] As discussed below at pp. 5-6, both plans require that a participant's account be applied to provide a "qualified preretirement survivor annuity" to his surviving spouse where the participant's benefits are payable in the form of a life annuity (as the decedent's benefits here are). However, neither plan states that the "full" account or "100%" of the account must be applied to provide the qualified preretirement survivor annuity, nor otherwise specifies a percentage to be applied to provide the spouse's survivor death benefit, instead leaving that to be supplied by the annuity contracts incorporated by reference, which, as noted above, specify that "one-half" (50%) of the account is to be applied to provide the benefit.

As a practical matter, spousal consent can be obtained either when the beneficiary designation is established or at the participant's death -- the right belongs to the spouse at death given that the contractual relationship is expected to endure. As annuities exist for extended periods where the participant's marital status is unknown and/or subject to change, the REACT regulations contemplate that spousal consent can be captured prior to a distribution which would affect the defined portion required to be paid as the Spouse's Survivor Death Benefit. For example, the beneficiary designations Mr. Rosso signed on May 24, 1996, with respect to his TIAA Traditional Transfer Payout Annuities, clearly sets out the rules requiring spousal consent to his naming a non-spouse beneficiary for more than 50% of his Plan account, stating in pertinent part:

> **Spouse's Consent to Waiver of Survivor Annuity Benefits.** (To be read and signed by the spouse of the annuity owner.) Under federal law, you have the right to receive a survivor benefit worth at least 50% of the amount in this TPA contract at the time of your spouse's death if your spouse dies before you. As a result, your spouse must have your written consent before naming a beneficiary other than you for more than 50% of the death benefit. If you consent to the beneficiary designation(s) in Section 4, please read and sign the statement below, and have your signature witnessed. See Ex. 8, 9.

Despite receiving quarterly statements from TIAA-CREF advising of the benefit accumulations together with service facilities which could be accessed essentially "24/7" as the technology evolved, at no time did Mr. Rosso ever inform TIAA-CREF of his 2004 marriage to Ms. Luciano. Nor at any time after completing another two sets of forms establishing beneficiary designations for his TIAA-CREF annuity contracts in 1996, did Mr. Rosso file any subsequent beneficiary designation with TIAA-CREF covering either plan's benefits or inquire about same.

**Ms. Luciano's Claims**

As we understand it Ms. Luciano asserts that Mr. Rosso's failure to obtain her written consent to the beneficiary designations he established operates to retroactively invalidate the designation made when he was not married to anyone or entitles her to 100% of the benefits, arguing that even though REACT permits the qualified preretirement survivor annuity to be funded with only 50% of Mr. Rosso's account, Ms. Luciano is entitled to 100% of his account without regard to the annuity contract provisions or the beneficiary designations Mr. Rosso established.

As noted above, the annuity contracts provide that Ms. Luciano (as surviving spouse) has the right to receive a benefit "which is the actuarial equivalent of one-half " (50%) of Mr. Rosso's account balance. Despite the clear wording of this contractual provision, Ms. Luciano asserts entitlement to 100% of her husband's plan account balances essentially saying that regardless of what the annuity contracts provide, the plan documents "choose to provide the full account balance – not merely part of it – to fund the annuity for the surviving spouse." Studholme Certification ¶28. We do not agree with these assertions.

**Section 7.3 of the 401(a) Plan and Section 8.4 of the 403(b) Plan do not provide for the "full" account to be applied to provide the Qualified Preretirement Survivor Benefit.**

The sole provision of the 401(a) Plan cited as support for the claim that the "full" account balance is to be applied to provide the qualified preretirement survivor annuity is Section 7.3 which states that if

EBAC-00597

a married participant dies before benefits have commenced, "then the Participant's Account Balance shall be applied toward the purchase of an annuity (or other form of benefit determined by the Administrator) for the life of the Surviving Spouse (a 'Qualified Preretirement Survivor Annuity') unless any other Beneficiary has been designated pursuant to a Qualified Election." See Ex. 4, pp. 20-21. Section 7.3 plainly does not state that a "Participant's full Account Balance" or "entire Account Balance" or "100% of the Participant's Account Balance" shall be applied toward the purchase of an annuity for the spouse, and it is unreasonable to construe Section 7.3 as if it did contain those words (entire, full, 100%) when the plan elsewhere provides that the terms of the contracts are "an integral part of the Plan" (see Ex. 4, p. 1), and the contract explicitly states that "one-half" (50%) of the account balance is to be applied toward the purchase of the annuity for the spouse, not "100%" or the "full" account balance. Indeed, given the plain statement in Article I of the 401(a) Plan that the contracts are an "integral part" of the plan, the only reasonable interpretation is that Mr. Rosso's account is to be applied to provide the specific qualified preretirement survivor annuity called for *and defined by* the express terms of the contract, namely, a spousal survivor annuity funded with "one-half" (50%) of the account.

Section 8.4 of the 403(b) Plan also does not support Ms. Luciano's claim that the "full" account balance is payable to her under that plan. Section 8.4 states:

> **Qualified Preretirement Survivor Annuity.** If a married Participant dies before benefits have commenced, the Surviving Spouse of the Participant may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ("Qualified Preretirement Survivor Annuity"), unless any other Beneficiary has been designated pursuant to a Qualified Election. See Ex. 5, p. 22.

This does not state that the "Participant's full Account Balance" is to be applied to provide the qualified preretirement survivor annuity, and it would be unreasonable to construe Section 8.4 as if it included the word "full" when Section 14.10 operates to incorporate the participant's CREF contract by reference and that contract specifies that "one-half" (50%) of the account applies to provide the qualified preretirement survivor annuity.[6] It cannot be asserted REACT requires that more than 50% of the participant's account be applied to provide the qualified preretirement survivor annuity – all it requires is that at least 50% of the account be applied to provide the survivor annuity. Indeed, you have admitted that fact. Studholme Certification, ¶16.

**Section 8.2 of the Plan does not apply to benefits funded through TIAA-CREF annuity contracts-but rather to Plan benefits funded through alternative investment vehicles offered by Fidelity which Mr. Rosso did not hold.**

---

[6] Section 14.10 of the 403(b) Plan states that the "Plan, together with the Individual Agreements, is intended to satisfy the requirements of Code Section 403(b) and the Income Tax Regulations thereunder. Terms and conditions of the Individual Agreements are hereby incorporated by reference into the Plan, excluding those terms that are inconsistent with the Plan or Code Section 403(b)." Section 1.27 defines the term "Individual Agreement" as including the "agreement between a Vendor [TIAA-CREF] and … a Participant that constitutes or governs … an Annuity Contract." See Ex. 5, pp. 37, 6. There is no inconsistency between Section 8.4 and the CREF contract as the plan merely states that the "Participant's Account Balance" is to be applied to provide the specific qualified preretirement survivor annuity called for and defined by the CREF contract, that is, a spousal survivor annuity funded with "one-half" (50%) of the participant's account. In addition, there is no inconsistency between any provision in the CREF contract and IRC §403(b).

Mr. Rosso terminated employment in 1993 and no further contributions were made to his 403(b) Plan account, including after the plan was amended 16 years later in 2009. Section 8.2 was a new provision added in 2009 when the plan was restated to reflect the change in funding vehicles from the individual annuity contracts offered before June 29, 2007 (all of which then became frozen to any further contributions) to the Fidelity group custodial account into which all new contributions were required to be made.[7] The TIAA-CREF annuity contracts funding Mr. Rosso's benefits provide life annuity payout options – the Fidelity group custodial account did not provide a life annuity option and the amendment (specifically, Section 8.2) sought to deal with the new funding alternative and is not applicable to benefits funded through Mr. Rosso's TIAA-CREF contracts.

Section 8.1 (specifically, the statement that "the provisions of this Section 8 shall apply only to a Participant who ... elects to receive his Account Balance in the form of a life annuity") and Sections 8.3 through 8.7 apply to Mr. Rosso and, when read together with Section 14.10 and the CREF contract, compel the conclusion that Ms. Luciano is entitled to a qualified preretirement survivor annuity funded with "one-half" (50%) of Mr. Rosso's account, not 100% of the account. Again, for purposes of Section 8, Mr. Rosso must be treated as having elected to have his benefit be paid in the form of a life annuity, because that is the only payment method contractually available to him under the TIAA/CREF annuity contracts, as a participant in the Plan.

---

[7]  The Plan restatement adopted in 2009 was generally effective July 1, 2007, and in addition to reflecting the new funding structure which shifted all future contributions to the Fidelity group custodial account and away from the TIAA/CREF contracts and other similar funding vehicles providing life annuity benefits – also reflected the "sea change" in the law governing section 403(b) annuity plans that occurred when the IRS completely rewrote applicable Treasury regulations in 2007. Section 8 of the July 1, 2007 restatement provides in part:

**8.1    Applicability of Article.**  *Except as provided in Section 8.2 below, the provisions of this Section 8 shall apply only to a Participant who, pursuant to Section 6.1(a)(2)b. hereof, elects to receive his Account Balance in the form of a life annuity.*  All purchases of annuity contracts under this Section 8 and under other provisions of this Plan shall be accomplished by the Custodian transferring the requested amount of the Participant's Account to the insurance company from which the annuity is being purchased. The Participant shall select the identity of the annuity provider on such forms as the Plan Administrator or Custodian may provide.

**8.2    Safe Harbor Rules.**  This Section 8.2 applies to all Participants.  Upon the death of a Participant, the Participant's Account Balance shall be paid to the Participant's Surviving Spouse, but if there is no Surviving Spouse, or if the Surviving Spouse has consented in a Qualified Election under Section 8.5(a) to the Participant's waiver of the Spousal death benefit and the designation of another Beneficiary, then to the Participant's designated Beneficiary. The Surviving Spouse may elect to have distribution of the Account Balance commence within the 90-day period following the date of the Participant's death.  The Account Balance shall be adjusted for gains or losses occurring after the Participant's death in accordance with the provisions of the Plan governing the adjustment of account balances for other types of distributions.  A Participant may waive the Spousal death benefit described in this Section 8.2 at any time; provided, however, that no such waiver shall be effective unless it satisfies the Spousal consent requirements described in Section 8.5(a).

**8.3    Qualified Joint and Survivor Annuity.**  If a married Participant elects to receive his Account Balance in the form of a life annuity as set forth in Section 6.1(a)(2)(B) and the Participant's Spouse is not the designated Beneficiary, such election shall not be valid unless there has been a Qualified Election within the 90-day period ending on the date benefit payments are to commence.  If no such election has occurred, the Participant's Account Balance shall be paid in the form of a Qualified Joint and Survivor Annuity.

**8.4    Qualified Preretirement Survivor Annuity.**  If a married Participant dies before benefits have commenced, the Surviving Spouse of the Participant may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ("Qualified Preretirement Survivor Annuity"), unless any other Beneficiary has been designated pursuant to a Qualified Election.  (Emphasis added.)  See Ex. 5, pp. 22-24.

EBAC-00599

**The Summary Plan Descriptions provided participants.**

As distinct from the formal Plan Document for each plan which deals with the overall administration of the plan and is provided on request, each plan participant is furnished with a Summary Plan Description or SPD containing a summary of the plan elements participants are most interested in. Our interpretation is entirely consistent with both the summary plan descriptions provided to the plan participants here. Thus, the 401(a) Plan's SPD states that "If you [the participant] are married on the date of your death and you die before payment of your benefit is scheduled to start, then your spouse will receive the survivor portion of a 50 percent joint and survivor annuity that is based on the vested value of your entire benefit under the plan." See Ex. 10, p. 21. It also states "If you [the participant] die before payment of your benefit is scheduled to start and there is no valid beneficiary designation, payment will be made as follows: If you leave a surviving spouse, your spouse will receive a survivor benefit under one of the preceding payment methods, equal to the 'actuarial equivalent' of one-half of the total value ... of your interest under the plan." See Ex. 10, pp. 22-23.

Similarly, the 403(b) Plan's SPD states that "if you [the participant] should die before your benefit payments begin, under applicable law, your spouse generally is a 'default' beneficiary to whom *some or all* of your benefit will automatically be paid (the 'spousal preretirement death benefit') ... (emphasis added)" (see Ex. 11, p. 25). For Mr. Rosso and other participants like him, whose entire benefit is held in the frozen annuity contracts, the portion of the summary that states that "some ... of your benefit" will be paid to your spouse as the preretirement death benefit, generally applies. For the cohort of new participants hired after June 28, 2007, the portion of the summary that states that "all of your benefit" will be paid to the spouse as the preretirement death benefit, generally applies. The beneficiary designation forms Mr. Rosso signed in May 1996 provided even more specificity informing him in no uncertain terms that under federal law, his spouse will have "the right to receive a survivor benefit worth at least 50% of the amount in this TPA contract at the time of ... [his] death if ... [he] dies before" his spouse. See Ex. 8, 9.

**In conclusion**

We conclude that neither the contracts, nor the beneficiary designations established by the deceased, nor the communications in the deceased's file, nor the other plan documents support Ms. Luciano's assertion that ERISA mandates that the spousal portion of the pre-retirement death benefits funded by TIAA-CREF annuity contracts must be 100% of the account balance rather than the 50% to the surviving spouse and 50% to the beneficiaries of record previously tendered. Accordingly, Ms. Luciano's claim is denied.

**Review Procedures under each Plan**

A review procedure is available under each plan. If Ms. Luciano wishes to appeal the initial benefit determinations set forth in this letter, you have 60 days from the date of this letter to file a written appeal with the ETS Employee Benefits Administration Committee (the "Committee") which is the plan administrator. If you file a timely appeal, you may review relevant documents and submit issues and comments in writing to the Committee. The decision of the Committee shall be made promptly, and not later than 60 days after the Committee's receipt of your request for review, unless special circumstances require an extension of time for processing, in which case the Committee shall notify you of that fact and a decision shall be rendered as soon as possible, but not later than 120 days after

EBAC-00600

receipt of your request for review. You will be provided with a copy of the Committee's decision. The decision will be in writing and include specific reasons for the decision and references to the pertinent plan provisions on which the decision is based.

**Further Remedies**

As has been previously delineated, if, after review by the Committee, Ms. Luciano's claim is again denied, the plans have distinct provisions. Under Plan A, ETS Retirement 401(a) Plan (TIAA-CREF contracts B1407192/Q1407199-date of death value-$183,082.76), you must submit your claim to final and binding arbitration in accordance with the provisions set out in Section 9.5(c) of the plan. Please refer to Section 9.5 of the plan for more information regarding your appeal rights.

Under Plan B, ETS 403(b) Plan (TIAA-CREF contracts B6499160/Q6499167-date of death value-$55,423.90), you may bring a civil action under ERISA §502(a), 29 U.S.C. §1132(a). Please refer to Section 13.5 of the plan for more information.

Very Truly Yours

By:

Margaret M. Byrne
TIAA-CREF

POST, POLAK, GOODSELL, MACNEILL & STRAUCHLER, P.A.

COUNSELLORS AT LAW

JOHN N. POST
FAY SCOTT MACNEILL *
FREDERICK B. POLAK *
ROBERT A. GOODSELL
PAUL D. STRAUCHLER *
DAVID E. EPSTEIN
LAURUS KOELLER O'NEILL † *
STEVEN C. ROTHER
LORETTA B. CRICCHIA *
DOUGLAS E. SHERMAN *
THOMAS J. PAUL, JR. *

PATRICIA M. WILSON ▲
ROBERT P. SPIZLER *
MICHAEL MARTELO *
KATHRYN BURRITT ROCKWOOD *
SIOBHAN BURKE P.

425 EAGLE ROCK AVENUE   SUITE 200
ROSELAND, NEW JERSEY 07068-1717

(973) 228-9900 Ext. 247
FAX (973) 994-1705

www.ppgms.com
Writer's Email: AHS@ppgms.com

PRINCETON OFFICE
DENNISON STREET
PRINCETON, NJ 08542

609-683-9511

NEW YORK OFFICE
SUITE 1506
5 CAMDEN AVENUE
NEW YORK, NY 10022

212-786-1459

MARY B. POST
STEPHEN ROSENBERG *
ELLEN J. KFL *
JERRY FISCHER
MICHAEL H. PORTNOI
ANNE L.H. STUDHOLME † *, 252
CLYDE L. OTIS III
OF COUNSEL

* CERTIFIED CIVIL TRIAL ATTORNEY
▲ N.J. + PENN. BAR
† N.J. + N.Y. BAR
* N.J. + N.Y. + PENN. BAR
* N.J. + N.Y. + D.C. BAR
▶ NY PA. BAR

†REPLY TO PRINCETON OFFICE

May 12, 2015

**Via e-mail and via overnight delivery**

Michael Randall, Esq.
Educational Testing Service
ETS Retirement Plans Working Committee
ETS Corporate Headquarters
660 Rosedale Road
Princeton, NJ 08541

RE:   **James T. Rosso, Deceased, ETS Retirement Plans Participant--Death Benefits**

Dear Michael:

David R. Demaree, Esq., and the undersigned, represent Lorraine Luciano, who is the widow of your deceased former employee, James T. Rosso. This appeal concerns the matter which you and I discussed and corresponded about, in November, 2014. On March 14, 2015, we received the enclosed Denial of Claim in this matter, from TIAA-CREF.

Please accept this letter as notice of Ms. Luciano's appeal of the denial of her claim to 100% of Mr. Rosso's retirement account balances, as detailed, herein. Please advise me of any other information or documentation ETS may require, in acting upon this appeal of denial of benefits. Ms. Luciano submits this appeal without waiving her right to contest the obligation to do so, as set forth in her prior correspondence and legal briefs to TIAA-CREF.

**FACTUAL AND PROCEDURAL HISTORY:**

James T. Rosso (also herein, "Jim" or the "Decedent") died on April 11, 2014. Lorraine Luciano ("Lorraine") is Jim's surviving spouse. Lorraine and Jim were married on February 27, 2004 and remained married until Jim's death. Jim had never been married before he married Lorraine, and Jim has no children or descendants.

Between 1979 and 1993, Jim was an employee of Educational Testing Service ("ETS"). He was a participant in ETS's retirement plans: the "Educational Testing Service Section 403(b) Match and Supplemental Retirement Plan" and the "Educational Testing Service Retirement

{00547446.1}

EBAC-00602

May 12, 2015
Page 2

Plan." It is our understanding that ETS designated TIAA-CREF to manage the plan assets, and that both of Jim's ETS accounts were invested via TIAA-CREF contracts, as described in the attached Denial of Claim (hereinafter, "the TIAA-CREF assets.")

Jim's now deceased father and mother, Joseph Rosso and Grace Rosso, and Jim's sister, Lucille Rosso, were named as the beneficiaries of Jim's TIAA-CREF accounts at the time Jim began work at ETS in 1980. At that time, Jim was 26 years old. Joseph Rosso and Lucille Rosso (both now deceased) were still designated beneficiaries as of the time Jim left his employment at ETS, in 1993. In 1996, Jim re-designated his sister, Lucille, as his beneficiary when he switched investment vehicles for the accounts. The 1996 beneficiary designation is the last Jim ever made in connection with the TIAA-CREF Assets. At that time, Jim was not, and never had been, married.

Jim worked for ETS from the time he was 25 years old until age 39. Jim was fully vested in the ETS retirement plans. Jim married Lorraine when he was 50 years of age. Unfortunately, Jim contracted cancer and died at the age of 60. At his death, Jim was on medical leave, but had not retired from employment.

**To our knowledge, none of these facts are contested, including that Jim's death counts as a "pre-retirement death" under the Employee Retirement Security Act ("ERISA"), and that Lorraine is Jim's "surviving spouse," under ERISA, as they were married at the time of his death and had been married for more than one year, and that Jim was fully vested in the ETS accounts.**

On or about June 11, 2014, Lorraine, through counsel, formally advised TIAA-CREF that she was the Jim's surviving spouse, that she claimed his ETS retirement accounts as a pre-retirement death benefit, and that she had never executed any written waiver to the TIAA-CREF Assets, nor had she intended at any time to do so, nor had Jim ever done so or intended to.

On or about June 18, 2014, as requested by TIAA-CREF, Lorraine provided TIAA-CREF with a "Marriage Verification Form," a repeated statement of her claim, and instructions not to pay out to any party other than to her, Lorraine Luciano.

On or about July 3, 2014, Lorraine received a packet from TIAA-CREF, dated June 30, 2014, informing Lorraine that she was entitled to "$119,253.33." TIAA-CREF's June 30th letter failed to state that $119,253.33 represents only 50% of the TIAA-CREF Assets and therefore understates—by more than $119,000—Lorraine's rights and interest in the TIAA-CREF Assets.

Under the controlling Plan documents, as described below, Lorraine is entitled to 100% of the TIAA-CREF Assets, or $238,506.66, as of the date of her husband's death. TIAA-CREF provided the enclosed Denial of Claim on March 14, 2015.

**APPLICABLE PLAN DOCUMENT PROVISIONS:**

**A.    Educational Testing Service Section 403(b) Match and Supplemental Retirement Plan (As amended and restated effective July 1, 2007); date of death value $55,423.90**

EBAC-00603

May 12, 2015
Page 3

The Educational Testing Service Section 403(b) Match and Supplemental Retirement Plan (As amended and restated effective July 1, 2007) provides that, absent a Qualified Election, the participant's account balance shall be paid to the surviving spouse:

> 8.2.   Safe Harbor Rules:   This Section 8.2 applies to all Participants. Upon the death of a Participant, the Participant's Account Balance shall be paid to the Participant's Surviving Spouse, but if there is no Surviving Spouse, or **if the Surviving Spouse has consented to a Qualified Election under Section 8.5(a) to the Participant's waiver of the Spousal death benefit** and the designation of another Beneficiary, then to the Participant's designated Beneficiary. [emphasis added]
>
> [...]
>
> 8.4   Qualified Preretirement Survivor Annuity.   If a married Participant dies before benefits have commenced, the Surviving Spouse of the Participant may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse (a "Qualified Preretirement Survivor Annuity") unless any other Beneficiary has been designated **pursuant to a Qualified Election. [emphasis added]**

In other words, the surviving spouse, in this case, Lorraine, is entitled to have the full account balance annuitized and paid to her, regardless of whether any other beneficiary is designated. Unless she has provided her written consent to a waiver of her rights—that is, a Qualified Election—no other beneficiary may receive any portion of the account balance. **TIAA-CREF has confirmed that Jim and Lorraine never executed a Qualified Election.**

This provision is in accord with the applicable provisions of ERISA, which provides that the surviving spouse of a plan participant who dies, pre-retirement, is entitled to receive "**not less than 50 percent,**" of the decedent's account, to fund what is called a "QPSA," or Qualified Preretirement Spousal Annuity. 29 USC 1055(e)(2); 26 USC 417(c)(2). ERISA leaves it up to the Plan as to whether the QPSA will be funded with **more than** 50% (up to 100%) of the decedent's account balances.

ERISA requires waiver of these rights to be in writing, by the spouse, and either notarized or witnessed by a Plan representative. In order to constitute an ERISA-qualified plan, 26 U.S.C.A. Section 401(a) requires, among other things, that:

> A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section
>
> [...]
>
> (11)   Requirement of joint and survivor annuity and preretirement survivor annuity.

EBAC-00604

May 12, 2015
Page 4

> (A)  In general.— In the case of any plan to which this paragraph applies, . . . a trust forming part of such plan shall not constitute a qualified trust under this section unless . . . (ii) in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity is provided to the surviving spouse of such participant.

26 U.S.C.A. Section 417(a)(1) further requires, in relevant part, that:

> A plan meets the requirements of section 401 (a)(11) only if—
>
> (A) under the plan, each participant—
>
> (i) may elect at any time during the applicable election period to waive the qualified joint and survivor annuity form of benefit or the qualified preretirement survivor annuity form of benefit (or both), [...] and
>
> (B) the plan meets the requirements of paragraph [...] (2) [...] of this subsection.

26 U.S.C.A. Section 417(a)(2) states, in its entirety, as follows:

> Each plan shall provide that an election under paragraph (1)(A)(i) shall **not** take effect **unless (A)(i) the spouse of the participant consents in writing to such election,** (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is **witnessed by a plan representative or a notary public. [emphasis added]**

**B.    Educational Testing Service Retirement Plan – 2009 Amendment and Restatement; date of death value $183,082.36**

The "Educational Testing Service Retirement Plan – 2009 Amendment and Restatement" likewise provides:

> 7.3  Qualified Preretirement Survivor Annuity.  If a married Participant dies before benefits have commenced the Participant's Account Balance shall be applied toward the purchase of an annuity (or other form of benefit determined by the Administrator) for the life of the Surviving Spouse (a "Qualified Preretirement Survivor Annuity") unless any other beneficiary has been designated **pursuant to a Qualified Election. [emphasis added]**

Again, TIAA-CREF has confirmed that neither Jim nor Lorraine ever executed a Qualified Election. The provisions of ERISA, quoted above, likewise apply.

May 12, 2015
Page 5

**C.      TIAA-CREF's Position**

TIAA-CREF asserts that, instead, 50% of the account balances will be paid to the named beneficiary despite the Plan's straightforward provision that the surviving spouse will be paid the account balances absent a Qualifying Election. TIAA-CREF cites form endorsements it attached to all of its contracts in 1985, which purport to describe the Retirement Equity Act of 1984, or "REACT"—the very amendment to ERISA that entitles a surviving spouse to an annuity funded with "no less than" 50% of the accounts. The form endorsements state that the QPSA is limited, under ERISA, to "one half" of the decedent's accounts.  **This mis-reading of the statute--setting 50% as a ceiling, rather than a floor--is at odds with the ETS Plan provisions.**

**D.      Lorraine's Right to the Full Account Balances**

As described above, the ETS plans meet the statutory requirements. The statutory scheme "is built around reliance on the face of written plan documents . . . 'Every employee benefit plan shall be established and maintained pursuant to a written instrument,' 29 U.S.C. § 1102(a)(1), and an administrator must act 'in accordance with the documents and instruments governing the plan' insofar as they accord with the statute, 29 U.S.C. § 1104(a)(1)(D). The plan, in short, is at the center of ERISA." US Airways v. McCutchen, 133 S.Ct. 1537, 1548 (2013).

Here, the provisions in the ETS Plan Documents comply with the statute, by granting a QPSA of "not less than 50%"—in fact, the full account value—and by providing the mechanism to waive the QPSA, which Jim Rosso and Lorraine Luciano did not do. TIAA-CREF's position is that its own boilerplate, apparently applied to all TIAA-CREF plans, not only those of ETS, contravenes the express Plan language.  ETS is obligated to fulfill its legal mandate, reject TIAA-CREF's self-serving position, and direct TIAA-CREF to provide Lorraine with the QPSA to which she is entitled under the ETS Plan Documents; $238,506.66, as of the date of Jim Rosso's death.

Sincerely,

Anne L. H. Studholme

Enclosures
Cc:
David R. Demaree, Esq.
Mark Daniele, Esq.
Jeffrey Hoffmann, Esq.

{00547446 1}

EBAC-00606

Jeffrey Hoffmann, Esquire
The Law Office of Jeffrey Hoffmann
2681 Quakerbridge Road
Hamilton, NJ 08619
Tel: (609) 838-9800
Fax: (609) 838-9801
*Attorney for Lucille Rosso*

----------------------------------------------------

IN THE MATTER OF THE ESTATE OF    :

JAMES T. RUSSO,    :

    :

DECEASED.    :

----------------------------------------------------

**Attention: Employee Benefits Administration Committee**

Dear Committee Members,

Please accept this memo on behalf of my client, Lucille Rosso, in opposition to Ms. Luciano's appeal of the denial of her claim, which she submitted to TIAA-CREF.

**Brief Facts**

   Mr. Rosso, the decedent, was employed by Educational Testing Service ("ETS") from 1973 to 1993. From 1988 until his death in 2014, he participated in an ETS Retirement 403(b) Plan which is funded by annuity contracts issued by TIAA-CREF. At the time of his enrollment and during the entire course of his enrollment, Mr. Rosso had his sister, Lucille Rosso, designated as the beneficiary. Mr. Rosso married Lorraine Luciano on or about February 27, 2004, but did not name her as a designated beneficiary. Mr. Russo dies on or about April 11, 2014. In or about June 2014, TIAA-CREF notified Ms. Luciano that she may be entitled to death benefits from the annuity contracts as the surviving spouse of Mr. Rosso. Ms. Luciano contends she is entitled to 100% of the death benefits rather than the 50% provided under the Plan.

**Background and Mr. Rosso's enrollment in TIAA-CREF funded annuity contracts**

1

EBAC-00611

In 1988, Mr. Rosso enrolled in an ETS Retirement 403(b) Plan and named his sister as his beneficiary. This plan, a section 403(b) annuity plan, is subject to ERISA. Mr. Rosso left ETS in 1993, but chose to participate in the plan as a former employee, engaging contractually with TIAA-CREF until his death on April 11, 2014.

The benefit accumulations under this plan are subject to the Retirement Equity Act of 1984 (REACT) requirement that a qualified preretirement survivor annuity be provided to his surviving spouse in the event that he died prior to the annuity starting date. Upon his enrollment, Mr. Rosso applied for and was issued an annuity contract which included the designation of beneficiaries. This designation was as follows:

> Plan B – ETS Retirement 403(b) Plan – enrolled January 1988 – TIAA-CREF contracts B6499160/Q6499167 - date of death value $55,423.90 – beneficiary of record being Mr. Rosso's sister

In 1996, Mr. Rosso elected to transfer the portion of his plan account held in his TIAA fixed-type annuity contracts to his CREF retirement-unit annuity certificates. This process involved Mr. Rosso applying for and being issued new TIAA contracts; a process which also involved the designation of beneficiaries for those contracts. He named his sister as the beneficiary for both TIAA Transfer Payout Annuity contracts and the inter-fund transfers were completed in July 2006.

At the time of Mr. Rosso's death on April 11, 2014, the total value of contract Q6499167 was $55,423.90 and his sister was the named beneficiary. She was sent materials in order to apply for the benefits. Part of this process included a request for the deceased's martial status. TIAA-CREF learned that Mr. Rosso was married during this process and advised Mr. Rosso's sister as well as Ms. Luciano that the spouse could claim a surviving spousal benefit of 50% of the account balance. TIAA-CREF inquired into whether Mr. Rosso's sister would renounce her 50%, as she was understood to be the designated beneficiary, upon learning Mr. Luciano had asserted a claim for the entire balance.

**Ms. Luciano's Claims**

2

Ms. Luciano posits that her husband's failure to obtain her written consent to the designation of his sister as the named beneficiary invalidated the designation he made when he was not married. She further asserts that as a result she is entitled to 100% of the benefits even though REACT only provides for the qualified preretirement survivor annuity to be funded with only 50% of Mr. Rosso's account. This assertion is made in spite of the contractual provisions which state that a spouse has the right to receive a benefit which is the actuarial equivalent of 50% of Mr. Rosso's account.

**TIAA-CREF Annuity Contract Provisions not support Ms. Luciano's claim**

The TIAA-CREF contract issued to Mr. Rosso contains provisions allowing him to name beneficiaries to whom his plan benefit will be paid to if he dies prior to the annuity starting date. These provisions require Mr. Rosso to name his beneficiary, which he did. Further, these provisions provide Mr. Rosso the ability to change the named beneficiary by giving written notice to both TIAA and CREF and in a form and wording satisfactory to both. Mr. Rosso did file several sets of designations with TIAA-CREF and at no time did he ever inform them of his marriage to Ms. Luciano or name her as a designated beneficiary. Rather, his sister remained the named beneficiary.

The contract provisions provide that any beneficiary's interest will be subject to any spouse at death's right to receive an annuity which is the actuarial equivalent of one-half of the account's qualified preretirement survivor annuity payable at the time of the participant's death if it occurs prior to the annuity starting date. The remainder is to be distributed to the participant's named beneficiary, in this case Mr. Rosso's sister. The CREF Retirement Unit-Annuity Certificate for Contract Q6499167 states "If you die before the Annuity Starting Date and you are married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity *which is the actuarial equivalent of one-half of the portion of the accumulation.*" (emphasis added). This contract allowed the "Spouse's Survivor Death Benefit" to be waived by the participant's spouse consent in writing. This was not done by Ms. Luciano.

3

EBAC-00613

Mr. Rosso was aware that under the 403(b) Plan his spouse, Ms. Luciano, would be entitled to the spousal preretirement death benefit. The Summary Plan Description for the 403(b) Plan states, "if you [the participant] should die before your benefit payments begin, under applicable law, you spouse generally is a 'default' beneficiary to whom some or all of your benefit will automatically be paid" See Exh. 11, p. 25. Additionally, on the beneficiary forms Mr. Rosso signed in 1996 contained information informing him that his spouse will have "the right to receive a survivor benefit worth at least 50% of the amount" of his contract "at the time of his death."

At no time did Mr. Rosso inform TIAA-CREF of his marriage to Ms. Luciano, an event which occurred in 2004. Nor did Mr. Rosso name Ms. Luciano as a designated beneficiary. Further, he did not file any subsequent beneficiary designation with TIAA-CREF and therefore his sister is the lawfully designated beneficiary entitled to 50% of the payout and Ms. Luciano's claim for 100% must fail.

**Ms. Luciano's reliance on Section 8.4 of the 403(b) Plan is misguided and does not provide her the relief she seeks.**

Ms. Luciano relies on Section 8.4 of the 403(b) plan to support her assertion that the full account balance is payable to her. However, Section 8.4 does not support this assertion as it states:

> **Qualified Preretirement Survivor Annuity.** If a married Participant dies before benefits have commenced, the Surviving Spouse of the Participant may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ("Qualified Preretirement Survivor Annuity"), unless any other Beneficiary has been designated pursuant to a Qualified Election.

This Section does not state that the full balance is to be paid to a surviving spouse. In fact, the term "full" does not appear anywhere within the Section. Nor would a reasonable interpretation of this Section include the finding that the Participant's full Account Balance be applied to provide the qualified preretirement survivor annuity. Further, Section 14.10 of the 403(b) Plan operates in a manner which incorporates Mr. Rosso's CREF contract and it is clear that contract specifies that 50% of the account applies to provide the qualified preretirement survivor annuity.

4

EBAC-00614

**Ms. Luciano's Claim must fail**

In conclusion, neither the contract, nor the beneficiary designations naming Mr. Rosso's sister and not Ms. Luciano, nor any Sections of the Plan support Ms. Luciano's claim to 100% of the payout. From the time of his enrollment in 1988 to his death in 2014, Mr. Rosso had his sister named as the designated beneficiary. At no time did he inform TIAA-CREF of his marriage to Ms. Luciano and at no time did he designate her as a beneficiary. The Sections of the 403(b) Plan do not provide for 100% of the payout to go to Ms. Luciano in the event of Mr. Rosso's death prior to his benefits commencing. For all of the above reasons, Ms. Luciano's claim must fail and 50% of the account balance must be paid to her and the remaining 50% to his sister, the named designated beneficiary.

Sincerely,

Jeffrey D. Hoffmann, Esq.

EBAC-00615

EDUCATIONAL TESTING SERVICE
EMPLOYEE BENEFITS ADMINISTRATION COMMITTEE

NOTICE OF DECISION ON REVIEW

TO:      Anne L. H. Studholme, Esq., Attorney for Lorraine H. Luciano

FROM:    Educational Testing Service
         Employee Benefits Administration Committee

DATE:    July 8, 2015

RE:      Review of the denial of the claim filed by Lorraine H. Luciano, surviving
         spouse of James T. Rosso, to 100% of the benefits payable under the
         Educational Testing Service Retirement Plan and the Educational Testing
         Service 403(b) Plan with respect to Mr. Rosso

---

We are in receipt of your letter dated May 12, 2015, appealing the written decision of TIAA-CREF denying the claim of your client Lorraine H. Luciano, the surviving spouse of the decedent James T. Rosso, to 100% of the survivor benefits payable under both the Educational Testing Service Retirement Plan and the Educational Testing Service 403(b) Plan with respect to Mr. Rosso. [1]

We have carefully reviewed your appeal and exhibits, TIAA's written decision dated March 13, 2015, and its exhibits, and the memorandum submitted on June 24, 2015, by Jeffrey Hoffmann, Esq., on behalf of Lucille A. Rosso, Mr. Rosso's sister and his named beneficiary under each Plan. We have also reviewed each Plan and various summary plan descriptions issued under each Plan.

This letter is the written notification of the Committee's decision on review as required by 29 CFR §2560.503-1(j) and Section 11.4 of the 401(a) Plan and Section 13.5 of the 403(b) Plan. For the specific reasons discussed below, we have determined that the decision of TIAA-CREF denying Ms. Luciano's claim to 100% of the benefits payable under the 401(a) Plan and the 403(b) Plan with respect to Mr. Rosso, must be affirmed.

**Factual Background**

There is no dispute regarding the facts at issue here, most of which are set out in detail in TIAA-CREF's written decision. Briefly, James T. Rosso became an ETS employee in 1979 and remained continuously employed by ETS until he left in 1993. While employed at ETS, Mr.

---

[1] "TIAA" refers to both TIAA and TIAA-CREF. "401(a) Plan" refers to the Educational Testing Service Retirement Plan, "403(b) Plan" refers to the Educational Testing Service 403(b) Plan, and "Plan" refers to either or both the 401(a) Plan and the 403(b) Plan, as context permits. "Code" refers to the Internal Revenue Code of 1986, as amended. "Ex." refers to the exhibits to TIAA's decision.

Rosso was a participant in both the 401(a) Plan and the 403(b) Plan. His entire benefit under each Plan was funded through deposits of employer and employee contributions into individual annuity contracts issued to him by TIAA and CREF.

Each contract required that if Mr. Rosso survived until retirement, his benefits would be paid as a form of life annuity, either as a annuity payable for his single life or payable over the joint lives of Mr. Rosso and his survivor annuitant, or another type of life annuity. None of the contracts issued to Mr. Rosso permitted him to be paid in a form other than as a life annuity.

Mr. Rosso died in April 2014, prior to commencing to receive benefits under either Plan. His widow Lorraine H. Luciano was not Mr. Rosso's named beneficiary under either Plan. She was his surviving spouse, however.

At the time of his death, Mr. Rosso had valid beneficiary designations on file with TIAA-CREF for each Plan. Each beneficiary designation had been filed prior to the date he married Ms. Luciano in 2004, and Mr. Rosso never filed any later beneficiary designation. Mr. Rosso was aware of the procedures he needed to follow if he wanted to change his beneficiary designations. He had gone through the process on three occasions before marrying Ms. Luciano, twice before at the times he began participating in each Plan and a third time, when he named his sister Lucille as his sole beneficiary for each of the transfer payout annuities issued when he moved his funds in each Plan from TIAA contracts to CREF contracts.

Mr. Rosso knew that he had to file his beneficiary designations with TIAA and that he had to use TIAA's beneficiary designation forms. While Mr. Rosso remained alive, TIAA was in regular contact with Mr. Rosso, sending him quarterly reports of his current balance and investment results under each Plan. He had continuous access to TIAA and could have changed his beneficiary designations for either Plan at any time. He never did so.

The final beneficiary designation forms Mr. Rosso signed contain a clear communication located on the same page as and directly above Mr. Rosso's signature, that his spouse (at the time of his death) has the right to a survivor benefit worth at least 50% of the annuity contract, and that if he desired his beneficiary to receive more than 50% of the contract, his spouse would have to consent by signing the form.

Each TIAA contract and each CREF contract delivered to Mr. Rosso reiterates the point made in each beneficiary designation form, that if Mr. Rosso is married at the time of his death and he dies before his annuity benefits start, his surviving spouse will receive an annuity "which is the actuarial equivalent of one-half" of his account.

> **Spouse's Survivor Death Benefit.** If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of one-half of the portion of the Accumulation, if any, attributable to contributions made under a plan subject to ERISA, provided a plan contribution has been paid after August 22, 1984. ... Your spouse's right to a Survivor Death Benefit may be waived, in form satisfactory to

EBAC-00617

> CREF, with your spouse's written consent or verification that your
> spouse cannot be located. See Exs. 2, 3.

Other Plan communications with participants reinforced these rules including summary plan
descriptions issued through the years. For example, the summary plan description for the 401(a)
Plan issued in 2005 states:

> If you are married on the date of your death and you die before payment
> of your benefit is scheduled to start, your spouse will receive the survivor
> portion of a 50 percent joint and survivor annuity that is based on the
> value of your TIAA and CREF accounts as of the date of your death.

Similarly, the summary plan description for the 403(b) Plan issued in 2005 states:

> If you die before payment of your annuity begins, your spouse must
> receive a benefit that is at least 50 percent of the full value of your
> annuity (the "preretirement death benefit") under any of the plan's
> available payment options. In addition, your spouse must receive at least
> 50 percent of the value related to a retirement transition benefit,
> repurchase, or interest only payment option.

**Ms. Luciano's Appeal**

Ms. Luciano asserts that each Plan requires the "full account value" to be applied to provide her
with a qualified preretirement survivor annuity where, as here, she never consented to her
husband's designation of a non-spouse beneficiary. She says that the TIAA-CREF contract
requirement that "one-half of the portion of the Accumulation, if any, attributable to
contributions made under a plan subject to ERISA" be applied to provide the qualified
preretirement survivor annuity, is boilerplate, that the Plan documents conflict with the TIAA-
CREF boilerplate, and that the Plan documents must control.

We do not agree and our specific reasons with reference to specific provisions of each Plan, are
set out below. For clarity, we discuss the pertinent provisions of each Plan separately.

**The 401(a) Plan [2]**

The first important provision in the 2009 Plan restatement is the fourth sentence in Article I,
which states:

> For periods prior to July 1, 2007, the assets of the Plan have been
> invested in individual annuity contracts issued to the Participants in the
> Plan, the terms of which are considered an <u>integral part</u> of the Plan
> (emphasis added).

---

[2] In deciding the claim, TIAA-CREF applied the provisions of the 401(a) Plan as restated effective January 1, 2009.
For the record, we note that in compliance with IRS rules, the 401(a) Plan was restated effective January 1, 2014, to
reflect all amendments adopted since 2009 and certain other changes and clarifications. Because both Ms. Luciano
and TIAA-CREF have treated the 2009 Plan restatement as the applicable Plan, however, we will do the same.

3

EBAC-00618

We have reviewed the TIAA and CREF individual annuity contracts issued to Mr. Rosso and we conclude that it is clear that the contracts specify that the payment is 50% to the surviving spouse and 50% to the named beneficiary unless there has been spousal consent to waiver of the 50% spousal death benefit.

The next provision is Section 7.3 which both TIAA and Ms. Luciano quote in support of their positions, but each side reads differently. Section 7.3 states:

> If a married Participant dies before his annuity starting date, then the Participant's Account Balance shall be applied toward the purchase of an annuity (or other form of benefit determined by the Administrator) for the life of the Surviving Spouse (a "Qualified Preretirement Survivor Annuity") unless any other Beneficiary has been designated pursuant to a Qualified Election.

We find Section 7.3 ambiguous, as it can be read as Ms. Luciano contends, to refer to 100% of the account being applied to provide the spousal death benefit and not just 50%. However, if read in this fashion, Section 7.3 is in conflict with the individual annuity contracts and there is an internal inconsistency to resolve.

The next provision is Section 9.1, specifically the first sentence of the third paragraph, which states that:

> The Plan shall be interpreted by the Board and the Fiduciaries in accordance with the terms of the Plan and their <u>intended meanings</u> (emphasis added).

This is the most important provision in the Plan. As it is, there is ambiguity. If we thought it proper to read Section 7.3 in isolation from the remainder of the Plan and the individual annuity contracts, we might give greater weight to Ms. Luciano's interpretation of that section. But we do not find it proper to read Section 7.3 in that fashion. Under well-settled principles of contract construction that apply in interpreting ERISA plan documents, Section 7.3 must be read together with all the other provisions of the Plan, including the terms of the individual annuity contracts that are an "integral part" of the Plan, and interpreted as part of an integrated whole, to the end that all of the provisions may be given effect if possible. Clearly, the "intended meaning" of Section 7.3, when read together with and in light of the individual annuity contracts, the beneficiary designation forms, and the summary plan descriptions, is that the spousal death benefit is 50%, not 100%.

So there is an ambiguity which we resolve by looking to the ancillary documents and the totality of the circumstances, including TIAA's consistent interpretation of Section 7.3 throughout many years of Plan administration, its position as articulated in its written decision, the summary plan descriptions and beneficiary designation forms, all of which establish that the reasonable expectation of Mr. Rosso and other participants like him, would be that 50% of the account will go to his surviving spouse, not 100%.

4

EBAC-00619

**The 403(b) Plan** [3]

Relevant provisions of the 2007 restatement of the 403(b) Plan include the Preliminary
Statement, Sections 13.8 and 14.10, all of which provide that the terms of the individual annuity
contracts are incorporated by reference in the Plan, excluding any terms that are inconsistent
with the Plan or with Code Section 403(b). As noted above, we have reviewed the TIAA and
CREF individual annuity contracts issued to Mr. Rosso and we conclude that it is clear that the
contracts specify that the payment is 50% to the surviving spouse and 50% to the named
beneficiary unless there has been spousal consent to waiver of the 50% spousal death benefit.

Section 8 is the next relevant provision. Section 8.2 is entitled "Safe Harbor Rules" and states
that it "applies to all Participants" and that upon a participant's death, his "Account Balance shall
be paid to the Surviving Spouse" unless the spouse has consented to the designation of another
beneficiary. Read in isolation, this wording could be read to favor Ms. Luciano's position.

Section 13.7(a) is the next relevant provision, and it vests the Committee with the power "to
construe and interpret the Plan, and to decide all questions of eligibility for any benefits." But
the controlling provision is Section 13.13 which vests the Committee with discretion to interpret
or construe "ambiguous, unclear or implied (but omitted) terms in any fashion it deems
appropriate in its sole judgment" and provides that the "Plan shall be interpreted … in
accordance with the terms of the Plan and their <u>intended meanings</u> (emphasis added)."

The reference here to "intended meanings" is so strong that everything points in terms of
approving TIAA's interpretation that 50% of the participant's benefit is to be paid to the spouse.
Section 8.2 on its face says that 100% goes to the spouse. However, the only way in which
Section 8.2 can be construed as applying to a participant whose entire benefit is held in TIAA
contracts is if the section is read entirely out of context and in complete disregard of ERISA
§205(b)(1)(C), the underlying law ETS must have had in mind when adding Section 8.2 to the
Plan (codified at 29 USC §1055(b)(1)(C)).

Thus, we must construe Section 8.2 in light of the Plan design change it reflects, namely, the
freezing on July 1, 2007, of all contributions to the TIAA-CREF contracts and shifting of future
contributions to mutual funds offered through a group custodial account in a manner emulating a
401(k) profit-sharing plan. A 401(k) plan that does not provide for a life annuity as a form in
which benefits may be paid, can comply with ERISA's spousal protection law if it meets the safe
harbor set out in ERISA §205(b)(1)(C), which the "Safe Harbor Rules" described in Section 8.2
were designed to meet. So while all participants joining the Plan on and after June 30, 2007,
could meet the ERISA-imposed conditions to fit within the "Safe Harbor Rules," no earlier
participant like Mr. Rosso whose benefits are held entirely in TIAA-CREF contracts could ever
meet those conditions. This is because the only form in which TIAA-CREF would ever pay
benefits to Mr. Rosso is as a life annuity and ERISA §205(b)(1)(C)(ii) plainly limits the safe
harbor to participants who will not be paid a life annuity.

---

[3] In deciding the claim, TIAA applied the provisions of the 403(b) Plan as restated effective July 1, 2007. Again,
for the record, the 403(b) Plan was amended at various times since the December 30, 2009 adoption of the 2007
restatement. Because both Ms. Luciano and TIAA have treated the July 1, 2007 Plan restatement as the applicable
Plan, however, we will do the same.

5

EBAC-00620

In its written decision TIAA recognized that it would be nonsensical to construe Section 8.2 as applying to participants like Mr. Rosso when the very "Safe Harbor Rules" set out in Section 8.2 could never apply to him. We agree. We construe Section 8.2 in accordance with its "intended meaning" as being limited in application to participants other than those whose entire benefit is held in the TIAA-CREF individual annuity contracts.

Both Ms. Luciano and TIAA also quote Section 8.4 in support of their positions, but each side reads that section differently. Section 8.4 states that a surviving spouse "may elect to have the Participant's Account Balance converted into an Annuity Contract for the life of the Surviving Spouse ('Qualified Preretirement Surviving Annuity'), unless any other Beneficiary has been designated pursuant to a Qualified Election." Ms. Luciano says this section should be read as if the word "full" were included in the phrase "the Participant's [full] Account Balance," while TIAA takes the opposite stance, that the section was purposefully worded in a vague and indefinite fashion leaving it to the TIAA contracts to fill in the details regarding the exact percentage of the account to be applied to provide the qualified preretirement survivor annuity. So again there is ambiguity as we believe neither TIAA's nor Ms. Luciano's construction is unreasonable.

Applying the principle that Section 8.4 must be construed in accordance with its "intended meaning," we determine ETS' intent by looking to the ancillary documents and the totality of the circumstances, including TIAA's consistent administrative practice throughout many years of Plan administration, its position as articulated in its written decision, the summary plan descriptions and beneficiary designation forms, and the individual annuity contracts themselves, all of which establish that the reasonable expectation of Mr. Rosso and other participants like him, would be that 50% of his benefit will go to his surviving spouse, not 100%.

Section 8.4 or a provision like it has been in the Plan for 30 years as it reflects the REACT amendments to ERISA requiring the spousal survivor benefit. Throughout three decades TIAA has interpreted Section 8.4 and applied its annuity contracts the same to all participants to provide 50% to the surviving spouse, not 100%. In light of TIAA's consistent administrative practice as reflected in the participant communications including the beneficiary designation forms and summary plan descriptions, it strains credulity to conclude that any participant would think that the surviving spouse is entitled to 100%.

Thus, ultimately we arrive at the same result as TIAA as we conclude, based on the individual annuity contracts and the beneficiary designation forms and summary plan descriptions being consistent with the contracts, that it was ETS' intent that the surviving spouse receive 50%, not 100%, and that the participants including Mr. Rosso would have seen it that way.

## Conclusion

In addition to the above specific reasons, we base our decision on the fact that the documents Mr. Rosso and other participants received *and must be deemed to have acted in reliance upon*, were clear that 50% would go to the surviving spouse, not 100%. In this regard we find it highly significant that Mr. Rosso had gone through the process of filing beneficiary designations three times before he married Ms. Luciano and was well-versed in the steps he needed to take if he wanted to provide for Ms. Luciano to receive 100% of his benefit under each Plan. He knew he

6

EBAC-00621

had to file a new beneficiary designation and that he had to file that designation with TIAA using its form. He never took the steps required to effect that result.

Accordingly, we affirm TIAA-CREF's denial of the claim filed by Ms. Luciano to 100% of the benefit payable under each Plan.

As noted above, because both Ms. Luciano and TIAA treated the 2009 restatement of the 401(a) Plan and the 2007 restatement of the 403(b) Plan as the applicable Plan documents, we have limited our review to those Plan documents and have not considered the effect of any subsequent amendments to either Plan. This was done in the interests of expediting the review process. However, by proceeding in this manner, the Committee does not intend to bind ETS in any way and the Committee's decision in this regard should not be construed by the claimant or any other person as a waiver, admission or concession. Our decision would remain the same even if the most recent version of each Plan document were applied.

**Further Remedies**

Please note that Ms. Luciano is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information that is relevant (within the meaning of 29 CFR §2560.503-1(m)(8)) to her claim for benefits, subject to applicable federal and state law.

With respect to her claim to 100% of the benefits payable under the 403(b) Plan, Ms. Luciano has the right to bring a civil action under ERISA §502(a). Please refer to Section 13.5 of the 403(b) Plan for more information.

With respect to the claim to 100% of the benefits payable under the 401(a) Plan, Ms. Luciano has the right to submit her claim to final and binding arbitration in accordance with the provisions set out in Section 9.5(c) of the Plan. Either ETS or Ms. Luciano may bring an action in any court of appropriate jurisdiction to compel arbitration under the Plan and to enforce an arbitration award. Please refer to Section 9.5 of the 401(a) Plan for more information.

Very truly yours,

Educational Testing Service
Employee Benefits Administration Committee

By: _____
     T.J. Elliott, Chairperson

7



# ETS 403(b) Match and Supplemental Plan

## Summary Plan Description



*Personal Choice*

Ⓔ Educational Testing Service

EBAC-01876

Educational Testing Service is an affirmative action/equal opportunity employer.

Copyright © 1993 by Educational Testing Service. All rights reserved.

EBAC-01877



## Spousal Rights

Unless the waiver and written consent described below are properly filed, all **married** participants in the 403(b) plan are subject to the following provisions.

At your death, your surviving spouse must receive an income that is at least 50 percent of the annuity income payable during the joint lives of you and your spouse. As a result, you must select one of the joint annuity options at the time you begin your annuity income. If you die before your annuity income begins, your spouse must receive a benefit that is at least 50 percent of the full current value of your annuity accumulation (i.e., the pre-retirement death benefit) under any of the payment options available. Also, your spouse must receive 50 percent of the proceeds from a Retirement Transition Benefit, Repurchase, or Interest Payment Retirement Option benefit.

Married participants and their spouses may waive the spousal entitlement to a joint annuity or a preretirement death benefit only if a **written waiver** of the benefits is filed with the 403(b) plan custodians, along with a written consent to the waiver signed by the spouse. The custodians will provide you with the necessary forms.

For postretirement survivor benefits (joint annuity), the waiver may be made only during the 90-day period before benefits begin. The waiver may also be revoked during the same period, although it may not be revoked after annuity income begins.

The period during which you and your spouse may elect to waive the preretirement survivor death benefit begins on the first day of the plan year in which you attain age 35 and continues until the earlier of your death or the date you start receiving annuity income. If you die before attaining age 35 — i.e., before you have had the option to make a waiver — at least 50 percent of the full current value of the annuity accumulation is payable automatically to your surviving spouse. If you terminate employment before age 35, the period for waiving the preretirement death benefit begins no later than the date of termination. The waiver may also be revoked during the same period.

In the event that a judgment, decree or order establishes the rights of another person (the "alternative payee") to your benefits under this 403(b) plan and where such order, hereafter called a "qualified domestic relations order," is for the purpose of providing child support, alimony, or other marital property payments, payments will be made in accordance with that order. If a court issues a qualified domestic relations order, the order preempts the usual requirements that your spouse be considered your primary beneficiary for a portion of the accumulation.

## Taxation of Benefits

All retirement benefits resulting from employer and tax-deferred contributions (such as ETS's 403(b) plan) are subject to federal income tax when you actually receive the benefits. The money will then be taxed at your ordinary tax rate at that time.

If you take payments in periodic installments, you pay taxes only on the amount you receive each year. If you elect to receive an entire 403(b) plan account balance in one lump sum, you must declare the entire amount as ordinary income in the year it is received.

Federal law requires that the custodians of ETS's 403(b) plan withhold income taxes from retirement income benefits, repurchased annuity benefits, benefits received under the Retirement Transition Benefit, and death benefits. If you do not wish these taxes to be withheld, you must notify the custodians of your 403(b) plan accounts.

Beginning January 1, 1993, a new federal law, the Unemployment Compensation Act of 1992, goes into effect. Under this law, retirement plan administrators are required to withhold 20 percent from lump sum distributions, partial distributions, or fixed payments for less than 10 years, unless that money is rolled *directly* into an Individual Retirement Account (IRA) or another employer's retirement plan.

The word *directly* is key. If a distribution is paid to you, rather than directly to an IRA or another employer's retirement plan, 20 percent must be withheld whether you intend to spend the money or roll it over yourself into an IRA or another retirement plan.



  

## Custodian Toll-Free Numbers

### TIAA-CREF

For general inquiries . . . . . . . . .     1-800-842-2733

For the latest TIAA interest
rate or for CREF account
value updates . . . . . . . . . . . . .     1-800-223-1290

To change allocation
premiums or to
transfer accumulations . . . . . . .     1-800-842-2252

To request a CREF prospectus
or any other TIAA-CREF
publication . . . . . . . . . . . . . . .     1-800-842-2733
(extension 5509)

### Fidelity

For account status or to transfer
accumulations or change
allocation premiums . . . . . . . . .     1-800-343-0860

To request a Fidelity
prospectus . . . . . . . . . . . . . . .     1-800-544-8888

### Dreyfus

For all inquiries . . . . . . . . . . . .     1-800-358-5566

### Scudder

For general inquiries . . . . . . . . .     1-800-323-6105

To change allocations premiums or
to transfer accumulations . . . . .     1-800-225-5163

To request a Scudder
prospectus . . . . . . . . . . . . . . .     1-800-225-2470

### Vanguard

For general inquiries . . . . . . . .     1-800-662-7447

To request a Vanguard
prospectus . . . . . . . . . . . . . . .     1-800-523-1188

### VALIC

For general
inquiries . . . . . . . . . . . . . . . . .     1-800-22-VALIC

To request a VALIC prospectus
or any other materials . . . . . . . .     1-800-448-2542

---

Plan Name: . . . . . . .     Section 403(b) Annuity Plan
of Educational Testing Service

Plan Sponsor and
Administrator: . . . . .     Educational Testing Service
Rosedale Road
Princeton, NJ 08541-0001

Agent for Service of
Legal Process: . . . . .     Educational Testing Service

Type of Plan: . . . . . .     Retirement
Plan Number: . . . . . .     002

Employer
Identification Number: . . . .     21-0634479

Plan Year: . . . . . . . . .     January 1 to December 31

Fiduciary: . . . . . . . . .     Educational Testing Service

Carriers: . . . . . . . .     Teachers Insurance
and Annuity Association
College Retirement
Equities Fund
730 Third Avenue
New York, NY 10017

The Dreyfus Corporation
200 Park Avenue
New York, NY 10166

Fidelity Investments
Tax-Exempt Services
Company
Fidelity Distributors Corporation
82 Devonshire Street
Boston, MA 02109

Scudder Investor Services, Inc.
175 Federal Street
Boston, MA 02110-2267

The Vanguard Group of
Investment Companies
Vanguard Financial Center
P. O. Box 2900
Valley Forge, PA 19482

The Variable Annuity Life
Insurance Company
(VALIC)
Houston, TX

Effective Date of Plan: . .     Amended and restated
effective January 1, 1985



EBAC-01889

EXHIBIT C

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 95 of 267
Case 3:15-cv-06726-RK-JBD    Document 68-3    Filed 03/28/16    Page 90 of 157 PageID: 1073
PageID: 6849

# Teachers Insurance and Annuity Association

### NEW YORK, N. Y.

## RETIREMENT ANNUITY CONTRACT

| Contract Number | Date of Issue Mo. Day Yr. | Date of Birth Mo. Day Yr. | Annuity Starting Date Mo. Day Yr. |
|---|---|---|---|

Annuitant

### THIS INFORMATION APPEARS ON PAGE 3.



This is a contract between you, as its owner (Annuitant), and TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA ("TIAA"). No other person or institution is a party to this contract.

This page refers briefly to some of the features of your contract. The next pages set forth in detail the rights and obligations of both TIAA and you under the contract. *PLEASE READ YOUR CONTRACT. IT IS IMPORTANT.*

## GENERAL DESCRIPTION

Each premium paid to TIAA for your annuity buys a definite amount of lifetime income for you. If you die before starting to receive this income, the accumulated funds will provide a benefit for your beneficiary under one of the methods described in your contract. The benefit amounts purchased by each premium are determined by the Rate Schedule in effect for this contract at the time the premium is paid. Benefits over and above those guaranteed in your contract are bought by any Additional Amounts, which may be credited to your contract by TIAA from time to time.

Once each year we will report to you on the amount of premiums paid and the current value of your contract.

When you are ready to start receiving your lifetime income, you choose the income option you want from among those described in your contract. All options provide a lifetime income for you, and all but one also have some provision for another person, to be named by you.

*This contract cannot be assigned nor does it provide for cash surrender or loans.*

*Chairman and*
*Chief Executive Officer*

1000.23
Ed. 2-87

INDEX ON NEXT PAGE

0A

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 96 of 267
Case 3:15-cv-06726-RK-JBD    Document 12    PageID: 6850    03/28/16    Page 91 of 157 PageID:
1074

# INDEX OF PROVISIONS

| | Section |
|---|---|
| Accumulation — Definition | 1 |
| Additional Amounts — Definition | 2 |
| Annuity Starting Date — Change of | 13 |
|   — Definition | 3 |
| Assignment — Void and of no effect | 27 |
| Benefits Based on Incorrect Data | 33 |
| Cash Surrender — No provision for | 28 |
| Claims of Creditors — Protection against | 29 |
| Commuted Value — Definition | 8 |
| Consideration | 9 |
| Contract — Consists of | 9 |
| Correspondence with us | 36 |
| Death Benefit | 18 |
|   — Amount of payments | 24 |
|   — Beneficiary | 19 |
|   — Changing the Beneficiary | 20 |
|   — Definition | 6 |
|   — Methods of Payment | 22 |
|   — Payment of | 21 |
|   — Payments after death of Beneficiary | 23 |
| Elections and Changes — Procedure | 30 |
| Income Benefit — Amount of payments | 17 |
|   — Definition | 4 |
|   — Options | 15 |
|   — Payments during guaranteed periods | 16 |
|   — Starting payments | 14 |
| Lapse or Forfeiture — Protection against | 11 |
| Loans — No provision for | 28 |
| Non-Forfeiture of Benefits | 35 |
| Ownership of Contract | 26 |
| Payment to an Estate, Trustee, etc. | 31 |
| Premiums — Discontinuing and Resuming | 12 |
|   — Limits on amounts | 10 |
|   — Payment of | 9 |
| Proof of Survival | 34 |
| Rate Schedule | 38 |
|   — Change of | 37 |
|   — Definition | 7 |
| Report of Premiums and Accumulation | 25 |
| Request for Benefits | 36 |
| Second Annuitant | 5 |
| Service of Process upon TIAA | 32 |

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 97 of 267
Case 3:15-cv-06726-RK-JBD   Document 2: 685  Filed 03/28/16   Page 92 of 157 PageID:
1075

TEACHERS INSURANCE AND ANNUTIY ASSOCIATION

| CONTRACT NUMBER B-649916-0 | DATE OF ISSUE 02 01 1988 | DATE OF BIRTH ████ | ANNUITY STARTING DATE 11 01 2018 |
|---|---|---|---|

ANNUITANT - ROSSO, JAMES T

SOCIAL SECURITY – XXX XX ████

THIS CONTRACT IS MADE AND DELIVERED IN AND IS TO BE PERFORMED IN THE STATE OF NEW JERSEY. THE VALIDITY AND EFFECT OF THE POLICYTYPE ARE GOVERNED BY THE LAWS THERE IN FORCE.

1000.23A

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA
(TIAA)
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your TIAA Deferred Annuity Contract**

Effective Date: Later of Date of Issue or December 29, 2011

This endorsement is part of your contract with TIAA. Please read this endorsement and attach it to your contract.

*The definition of valuation day is replaced with the following:*

A **valuation day** is any day that the New York Stock Exchange is open for trading. Valuation days end as of the close of all U.S. national exchanges where securities or other investments of the Separate Account(s) are principally traded. A **valuation period** is the time from the end of a valuation day to the end of the next valuation day.

*Your contract is modified as follows:*

Notwithstanding any other provision in your contract, no transaction available to you may be made effective on a day that is not a business day, except as follows: when a business day is the last day of a calendar month, annuity income payments and annuity death benefit payment methods may begin on the next day even when it is a non-business day.

Roger W. Ferguson, Jr.

*President and*
*Chief Executive Officer*

T-DAIC-ME-E1                                                                    Page E1

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 99 of 267
Case 3:15-cv-06726-RK-JBD    Document 65-2    Filed 03/28/16    Page 94 of 157 PageID:
1077

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA**
**(TIAA)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your TIAA Deferred Annuity Contract**

Effective Date: July 2, 2012

This endorsement is part of your contract with TIAA. It adds a provision to your contract, as follows:

An **internal funding vehicle transfer** is the movement of accumulations among or between any of the following:

|      |                                                                                                                       |
|------|-----------------------------------------------------------------------------------------------------------------------|
| i.   | your Traditional Annuity accumulation                                                                                 |
| ii.  | your Real Estate Account accumulation                                                                                 |
| iii. | your Investment Account accumulation                                                                                  |
| iv.  | your companion CREF certificate                                                                                       |
| v.   | any other funding vehicle accumulation you may have which is administered by TIAA or CREF on the same record-keeping system as this contract. |

However, an internal funding vehicle transfer does not include any of the following:

- Systematic withdrawals and transfers (SWATs)
- Automatic rebalances
- Any transaction arising from a TIAA sponsored advice product or service
- Transfer Payout Annuity (TPA) payments directed to the Real Estate Account.

You may not apply internal funding vehicle transfers to your Real Estate Account accumulation if after giving effect to such transfer the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you would exceed a threshold amount of $150,000. Any internal funding vehicle transfer which cannot be applied pursuant to this rule will be rejected in its entirety and we will communicate such rejection to you. If, as of the effective date of this endorsement, the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you already exceeds the threshold amount, you will not be required to reduce such accumulation to a level at or below the threshold.

The Real Estate Account accumulation unit values used in applying this provision will be those calculated as of the valuation day preceding the day on which the proposed transfer is to be effective. For the purpose of this provision, the total value of your Real Estate Account accumulation will include the value of any pending internal funding vehicle transfers into your Real Estate Account accumulation under any TIAA annuity contracts or certificates issued to you.

TIAA reserves the right in the future to increase or decrease the threshold dollar amount associated with this provision. However, the threshold amount will never be less than $100,000. If, as of the

---

T-DA-REA-E1                                                                                        Page E1

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 100 of 267
Case 3:15-cv-06726-RK-JBD    Document 50-12    Filed 03/28/16    Page 95 of 157 PageID:
1078

**Endorsement to Your TIAA Contract**

effective date of such a change in the threshold amount, the total value of your Real Estate Account
accumulation under this contract and any other TIAA annuity contract or certificate issued to you
already exceeds the new threshold amount, you will not be required to reduce such accumulation to a
level at or below the new threshold. TIAA also reserves the right in the future to include among the
restricted transactions any of the categories currently excluded above or to include any categories of
transactions associated with services that may be introduced in the future. Any such future changes
will only affect transactions with effective dates on or after the effective date of such change. You
will be given at least two months advance written notice of any such change.

Nothing in this endorsement shall be construed to limit TIAA's right to stop accepting premiums
and/or internal transfers at any time.

Roger W. Ferguson, Jr.
*President and*
*Chief Executive Officer*

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 101 of 267
Case 3:15-cv-06726-RK-JBD    Document   Filed 03/28/16    Page 96 of 157 PageID:
PageID: 6855
1079

## TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA (TIAA)
### 730 Third Avenue, New York, NY 10017-3206

### Endorsement to Your TIAA Retirement Annuity Contract

This endorsement changes some of the provisions of your contract and becomes part of it. The primary purpose of this endorsement is to make changes resulting from the Economic Growth and Tax Relief Reconciliation Act of 2001. For your convenience, we have reprinted each of the modified provisions in its entirety. Please read this endorsement and attach it to your contract.

*The Right to a Tax-Free Rollover provision is replaced with the following:*

**Right to a Tax-Free Rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your contract which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan. An eligible retirement plan is, to the extent permitted by law, a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408, and to the extent that the plan sponsor is a state or local government, Section 457(b).

Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your contract will be governed by the laws and regulations then applicable.

*The Premium Amount provision is replaced with the following:*

**Premium Amount.** Premiums for this contract may be paid in any amount not less than $25 each. You may change the amount or frequency of future premiums at any time. TIAA reserves the right to limit to $25,000 in any twelve-month period the total premiums paid on this and any other TIAA annuity contract on your life. Premiums will be credited to your contract as of the first of the month in which they are received; TIAA will accept them any time before the Annuity Starting Date or your prior death.

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in section 402(g) of the IRC, or as otherwise permitted by law. TIAA will refund the accumulated value of all excess premiums made to this contract, as required by law.

Your right to apply distributions from other plans to this contract as direct rollovers under the IRC may be limited by the terms of the employer plan under which premiums are remitted to this contract.

EGG-001-RA-NJ

## Endorsement to Your TIAA Retirement Annuity Contract

*The Methods of Payment of the Death Benefit provision is replaced with the following:*

**Methods of Payment.** The Death Benefit will be paid to your beneficiary under one of the Methods shown below.

**Single Life Annuity.** A payment will be made to your beneficiary each month for life. All payments will cease at his or her death. This Method provides nothing for anyone after the death of your beneficiary.

**Life Annuity with 10-, 15- or 20-Year Guaranteed Period.** A payment will be made to your beneficiary each month for life. If he or she dies before the end of the guaranteed period chosen, the monthly payments will continue to the end of that period, as explained in the *Payments after the Death of a Beneficiary* section.

**Payments for a Fixed Period.** A payment of principal and interest will be made to your beneficiary each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen all the principal and interest credited will have been paid out. If your beneficiary dies before the end of the period chosen, the monthly payments will continue to the end of that period as explained in the *Payments after the Death of a Beneficiary* section.

**Interest Payments.** A payment of interest on the Death Benefit will be made to your beneficiary each month for a chosen period of not less than two nor more than thirty years. At the end of the period chosen, TIAA will pay the Death Benefit to your beneficiary. If your beneficiary dies while any part of the Death Benefit is held by TIAA, that amount will be payable as explained in the *Payments after the Death of a Beneficiary* section.

   Instead of a chosen period, interest payments may be made for 'the lifetime of the beneficiary,' with payment of the Death Benefit made after the death of your beneficiary as explained in the *Payments after the Death of a Beneficiary* section.

   The value of the Death Benefit placed under this Method must be at least $5,000.

**Single-sum Payment.** The Death Benefit will be paid to your Beneficiary in one sum.

**Minimum Distribution Annuity.** This Method of Payment is designed to enable your Beneficiary to meet the minimum distribution requirements under federal tax law. A payment will be made for each year that a distribution is required until your Accumulation is entirely paid out, or until the prior death of your Beneficiary. This method may not provide a lifetime income in all situations.

   If your Beneficiary dies before your Accumulation has been entirely paid out, the remaining Accumulation will be paid in one sum to the payee named to receive it.

EGG-001-RA-NJ

## Endorsement to Your TIAA Retirement Annuity Contract

If any Method chosen, except Interest Payments, would result in payments of less than $25 a month, TIAA will have the right to require a change in choice that will result in payments of not less than $25 a month.

In accordance with federal tax law requirements, a fixed or guaranteed period chosen under any Method of Payment may not exceed your Beneficiary's life expectancy. The distribution of the death benefit under a method of payment must be made in such a form and begin at such date as meets the requirements of the IRC and the regulations thereunder. If such method of payment has not been chosen to begin by that date, we will elect a method of payment in accordance with the requirements of the IRC and any regulations thereunder.

*Herbert M. Allison*

*Chairman, President, and Chief Executive Officer*

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 104 of 267
Case 3:15-cv-06726-RK-JBD   Document 68-58 Filed 03/28/16   Page 99 of 157 PageID:
PageID: 6858
1082

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

RATE SCHEDULE TO BE EFFECTIVE ON JULY 1, 2001
FOR ALL TIAA RETIREMENT ANNUITY CONTRACTS

*You are hereby advised of a change in the Rate Schedule. The new Rate Schedule will replace the
one now in effect on your contract and will take effect on July 1, 2001. All TIAA Retirement
Annuity contracts issued on or after April 1, 2001 are hereby amended so that this Rate Schedule
is effective on the Date of Issue, or July 1, 2001 if later. This Rate Schedule will be used from the
effective date, until it is replaced, to compute benefits purchased by any premiums, Additional
Amounts and Internal Transfers applied to the Traditional Annuity while it is in effect.*

Rate Schedule. The benefits bought by premiums allocated to the Traditional Annuity
while this Rate Schedule is in effect will be computed on this basis:

    (1)   no deduction for expenses or contingencies;

    (2)   interest at the effective annual rate of 3% from the first day of the month in
        which the premium is received to the Annuity Starting Date or your prior death,
        and at the effective annual rate of 2½% thereafter; and

    (3)   mortality according to the Annuity 2000 Mortality Table (TIAA Merged Gender
        Mod A).

The benefits bought by any Additional Amounts credited and Internal Transfers made to
the Traditional Annuity while this Rate Schedule is in effect will be computed on the same
basis as for premiums, except that interest will be credited from the day the Additional
Amount or Internal Transfer is received.

When Traditional Annuity payments start to you, or to your beneficiary, under an
income method involving life contingencies, we will compute any benefits provided by the
portion of the Traditional Annuity Accumulation resulting from amounts applied to the
Traditional Annuity while this Rate Schedule is in effect on whichever of these bases
produces the larger payments:

    (1)   the applicable interest rate and mortality table, as stated above; or
    (2)   the interest rate and mortality table in use by TIAA for any individual single
        premium immediate annuities being offered when the payments start.

-- Attach This Schedule to Your Contract --
Over for Sample Rates

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 105 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-859 Filed 03/28/16    Page 100 of 157
PageID: 1083

Rate Schedule for All TIAA Retirement Annuity Contracts Effective July 1, 2001

### Guaranteed Annual Amount of Income Benefits under the Single Life Annuity with 10 Year Guaranteed Period option Purchased by a Single Premium of $100
One-twelfth of the amount shown is payable each month

| Age Attained When Premium is Paid* | Annuity Beginning at | | | Age Attained When Premium is Paid* | Annuity Beginning at | | | Age Attained When Premium is Paid* | Annuity Beginning at | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Age 60 | Age 65 | Age 70 | | Age 60 | Age 65 | Age 70 | | Age 60 | Age 65 | Age 70 |
| 20 | $14.51 | $18.46 | $23.84 | 37 | $8.78 | $11.17 | $14.42 | 54 | $5.31 | $6.76 | $8.73 |
| 21 | 14.09 | 17.92 | 23.15 | 38 | 8.52 | 10.84 | 14.00 | 55 | 5.16 | 6.56 | 8.47 |
| 22 | 13.68 | 17.40 | 22.47 | 39 | 8.28 | 10.52 | 13.60 | 56 | 5.01 | 6.37 | 8.23 |
| 23 | 13.28 | 16.89 | 21.82 | 40 | 8.03 | 10.22 | 13.20 | 57 | 4.86 | 6.18 | 7.99 |
| 24 | 12.89 | 16.40 | 21.18 | 41 | 7.80 | 9.92 | 12.82 | 58 | 4.72 | 6.00 | 7.75 |
| 25 | 12.52 | 15.92 | 20.57 | 42 | 7.57 | 9.63 | 12.44 | 59 | 4.58 | 5.83 | 7.53 |
| 26 | 12.15 | 15.46 | 19.97 | 43 | 7.35 | 9.35 | 12.08 | 60 | 4.45 | 5.66 | 7.31 |
| 27 | 11.80 | 15.01 | 19.39 | 44 | 7.14 | 9.08 | 11.73 | 61 | | 5.49 | 7.10 |
| 28 | 11.46 | 14.57 | 18.82 | 45 | 6.93 | 8.81 | 11.39 | 62 | | 5.33 | 6.89 |
| 29 | 11.12 | 14.14 | 18.27 | 46 | 6.73 | 8.56 | 11.06 | 63 | | 5.18 | 6.69 |
| 30 | 10.80 | 13.73 | 17.74 | 47 | 6.53 | 8.31 | 10.73 | 64 | | 5.03 | 6.49 |
| 31 | 10.48 | 13.33 | 17.22 | 48 | 6.34 | 8.07 | 10.42 | 65 | | 4.88 | 6.30 |
| 32 | 10.18 | 12.94 | 16.72 | 49 | 6.16 | 7.83 | 10.12 | 66 | | | 6.12 |
| 33 | 9.88 | 12.57 | 16.24 | 50 | 5.98 | 7.60 | 9.82 | 67 | | | 5.94 |
| 34 | 9.59 | 12.20 | 15.76 | 51 | 5.80 | 7.38 | 9.54 | 68 | | | 5.77 |
| 35 | 9.31 | 11.85 | 15.30 | 52 | 5.64 | 7.17 | 9.26 | 69 | | | 5.60 |
| 36 | 9.04 | 11.50 | 14.86 | 53 | 5.47 | 6.96 | 8.99 | 70 | | | 5.44 |

The yearly payments shown above are those that result from a premium of $100 paid or credited when you have reached an age shown in the "Age Attained" column, but have not passed that birthday by as much as one month. All ages used in computing benefits are calculated in completed years and months. Payments at ages other than those shown, and under other income methods, are computed on the basis stated in the Rate Schedule for benefits bought by premiums. For premiums other than $100, payments will be proportionate.

* Premiums are considered to be paid, and will be credited to your contract, as of the first day of the month in which they are received.

*John H. Biggs*

Chairman, President and
Chief Executive Officer

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 106 of 267
Case 3:15-cv-06726-RK-JBD    Document 316860Filed 03/28/16    Page 101 of 157
PageID: 1084

15.005

## TEACHERS INSURANCE AND ANNUITY ASSOCIATION
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

### Endorsement to your TIAA Retirement Annuity Contract

#### Effective Date: November 1, 1997

This document, called an "endorsement," changes some of the provisions of your TIAA Retirement Annuity contract and becomes part of it. It does not take away any of the rights established under your current contract. It is important that you read the endorsement, and attach it to your current contract.

The purpose of this endorsement is to make changes to the latest Annuity Starting Date and Premium Amount provisions as required by federal legislation enacted in 1996. We have also added a provision describing tax-free rollovers and clarified the provisions on transfers within the TIAA-CREF system.

From now on, unless we indicate otherwise, any references in your contract to the term "transfer" should be understood to refer to the term "Internal Transfer" described below.

*The following terms are added to the Terms Used In This Contract:*

Your Companion CREF Certificate is the Retirement Unit-Annuity certificate, if any, issued to you on the same date this contract was issued. CREF is a companion organization to TIAA.

Your Required Beginning Date is the latest date on which you can begin to receive your Accumulation in accordance with the minimum distribution rules of the IRC, without being subject to a federal excise tax. Generally, it is the April 1 following the calendar year in which you attain 70½ or, if later, the April 1 following the calendar year in which you retire.

A Lump-sum Benefit from the Real Estate Account is a withdrawal in a single sum of all or part of your Real Estate Account Accumulation. A withdrawal may be paid to you, to a TIAA Rollover Individual Retirement Annuity Contract, or to a Funding Vehicle not offered by TIAA or CREF. The provisions concerning Lump-sum Benefits are set forth in your contract. Lump-sum Benefits are not available from your Traditional Annuity Accumulation.

An Internal Transfer is the movement of accumulations between the Real Estate Account and your Traditional Annuity Accumulation, or between this contract and your Companion CREF Certificate. Internal Transfers from your Traditional Annuity Accumulation are made only over a 10-year period through a Transfer Payout Annuity. The provisions concerning Internal Transfers are set forth in your contract.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 107 of 267
Case 3:15-cv-06726-RK-JBD    Document 16861 Filed 03/28/16    Page 102 of 157
PageID: 1085

## Endorsement to your TIAA Retirement Annuity Contract

*The following is added to the Premium Amount provision:*

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in Section 402(g) of the IRC. TIAA will refund the accumulated value of all excess premiums made to this contract, as required by law.

*The last sentence of the Allocation of Premiums provision is replaced with the following:*

TIAA may stop accepting premiums and/or transfers to the Real Estate Account at any time.

*The following provision is added to Part B: Contract and Premiums:*

Crediting Internal Transfers.    Internal Transfers to your Traditional Annuity Accumulation are received by the General Account as of the beginning of the day following the effective date of the Internal Transfer. Internal Transfers to your Real Estate Account Accumulation purchase Accumulation Units as of the end of the effective date of the Internal Transfer.    TIAA may stop accepting Internal Transfers to the Real Estate Account at any time.

*The provisions concerning Annuity Starting Date, Changing Your Annuity Starting Date, and Starting Your Income Benefit are modified by the following:*

Your Annuity Starting Date is the first date on which you receive benefits from your Traditional Annuity Accumulation under this contract. Any time before the Annuity Starting Date, you may change your Annuity Starting Date to a date after the change, but not later than your Required Beginning Date.

If the requirements for starting your income have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to a date after these requirements have been completed or, if earlier, to your Required Beginning Date.

The latest Annuity Starting Date on which you may choose an Income Option that is contingent on your life is the first day of the month in which you attain age 90.

*The Traditional Annuity Transfers provision is renamed Internal Transfers from the Traditional Annuity.*

*The Real Estate Account Transfers provision is replaced with the following provisions on Internal Transfers and Lump-sum Benefits from the Real Estate Account:*

Internal Transfers from the Real Estate Account.  You may transfer all of your Real Estate Account Accumulation, or any part thereof not less than $1,000, to your TIAA Traditional Annuity Accumulation or your Companion CREF Certificate. Any Internal Transfer to CREF is subject to the terms of your Companion CREF Certificate and CREF's

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 108 of 267
Case 3:15-cv-06726-RK-JBD    Document 3-16862 Filed 03/28/16    Page 103 of 157
PageID: 1086

## Endorsement to your TIAA Retirement Annuity Contract

Rules of the Fund, TIAA may limit Internal Transfers from the Real Estate Account to not more than one in a calendar quarter.

An Internal Transfer will be effective as of the end of the Business Day in which TIAA receives, in a form acceptable to TIAA, your request for an Internal Transfer. You may defer the effective date of the Internal Transfer until any Valuation Day following the date on which we receive your request. TIAA will determine all values as of the end of the effective date. You cannot revoke a request for an Internal Transfer after its effective date.

**Availability of the Real Estate Account Lump-sum Benefit.** You may, subject to the limits described below, withdraw as a Lump-sum Benefit all of your Real Estate Account Accumulation, or any part thereof not less than $1,000. TIAA may limit Lump-sum Benefits to not more than one in a calendar quarter. Your Lump-sum Benefit may be paid to:

    A) you as a cash withdrawal;
    B) another Funding Vehicle as a direct transfer under the federal tax law; or
    C) a TIAA Rollover Individual Retirement Annuity contract or another Funding Vehicle as a tax-free rollover as described below.

For Real Estate Account Accumulation Units purchased by premiums remitted under a Retirement Plan, the plan may limit your right to a Lump-sum Benefit.

If you are married and some or all of your Real Estate Account Accumulation is subject to ERISA, your right to receive a Lump-sum Benefit is subject to the rights of your spouse as described in your contract.

Federal tax law may restrict distributions before age 59½, as described in your contract.

**Payment of the Real Estate Account Lump-sum Benefit.** A Lump-sum Benefit will be effective as of the Business Day we receive, in a form acceptable to TIAA:

    A) your request for a Lump-sum Benefit;
    B) verification of your eligibility for a Lump-sum Benefit for those Real Estate Account Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan; and
    C) if your Real Estate Account Accumulation is subject to the ERISA requirements described in your contract, a Waiver of Spouse's Rights or proof that you aren't married.

You may defer the effective date of the Lump-sum Benefit until any Valuation Day following the date on which we receive the above requirements. TIAA will determine all values as of the end of the effective date. You cannot revoke a request for a Lump-sum Benefit after its effective date.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 109 of 267
Case 3:15-cv-06726-RK-JBD    Document 316863Filed 03/28/16    Page 104 of 157
PageID: 1087

**Endorsement to your TIAA Retirement Annuity Contract**

*The Spouse's Rights to Benefits and Waiver of Spouse's Rights provisions are modified by the following:*

If your Real Estate Account Accumulation is subject to the ERISA requirements described in your contract, your spouse must consent to a waiver of his or her right to survivor benefits before you can choose a Lump-sum Benefit from the Real Estate Account.

*The following provision is added to the General Provisions:*

**Right to a Tax-Free Rollover.** If you (or your surviving spouse or alternate payee under a qualified domestic relations order) receive a distribution from your contract which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), you (or your surviving spouse or alternate payee under a qualified domestic relations order) may elect to have any portion of it paid as a direct rollover to an eligible retirement plan, as described below.

An eligible retirement plan is:

    A) an individual retirement account or annuity described in IRC Section 408;

    B) if your contract is part of a tax deferred annuity plan described in IRC Section 403(b), another such tax deferred annuity plan that accepts the eligible rollover distribution; or

    C) if your contract is part of a qualified plan described in IRC Section 401(a) or 403(a), another such qualified plan that accepts the eligible rollover distribution.

An eligible retirement plan for a surviving spouse is only an individual retirement account or annuity described in IRC Section 408.

*John H. Biggs*

Chairman and
Chief Executive Officer

993.1-DA
TIAA DA

Page E4
Ed. 11-97

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 110 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-864 Filed 03/28/16    Page 105 of 157
PageID: 1088

Page 1 of 10

## TEACHERS INSURANCE AND ANNUITY ASSOCIATION
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

### Endorsement to Your TIAA Retirement Annuity Contract

Effective Date: Date of Issue

This document, called an "endorsement," changes some of the provisions of your TIAA Retirement Annuity Contract and becomes part of it. **It does not take away any of the rights established under your current contract.** It is important that you read the endorsement, and attach it to your current contract.

In addition to the fixed-dollar Traditional Annuity previously provided under your Retirement Annuity contract, TIAA now offers you the option of accumulating funds in the Real Estate Account. The Real Estate Account is a Separate Account of TIAA and is available as of the effective date of this endorsement. Its investment objective is a favorable rate of return over the long term primarily through rental income and capital appreciation of real estate investments owned by the Account. The Real Estate Account holds mainly income-producing real estate properties and other real estate-related investments. The annual charge for the Real Estate Account will never exceed 2.50% of the Account's average net assets.

From now on, unless we indicate otherwise, any references in your contract to your TIAA "Accumulation" should be understood to mean the <u>total</u> amount you have in the Traditional Annuity and the Real Estate Account combined. When we're referring to one or the other, we'll specify it as your "Traditional Annuity Accumulation" or your "Real Estate Account Accumulation".

You can allocate your future TIAA premiums to either the Traditional Annuity or the Real Estate Account as described in this endorsement. When you apply a premium to your Real Estate Account Accumulation, you'll purchase a number of Accumulation Units representing a share in the Real Estate Account's investment portfolio. You can transfer or withdraw some or all of your Real Estate Account Accumulation subject to the limitations described in this endorsement.

Your Traditional Annuity Accumulation will continue to be credited with a guaranteed interest rate and any Additional Amounts declared by the TIAA Board of Trustees. **The earnings on your Real Estate Account Accumulation, if any, will vary depending on investment results. Neither earnings nor the value of your invested principal in the Real Estate Account are guaranteed, and the value of the units you own may at any time be more or less than you paid for them.**

**If you have any questions about this contract or need help to resolve a problem, you can contact us at the address or phone number above.**

*Roger W. Ferguson, Jr.*

*President and
Chief Executive Officer*

993-DA
TIAA DA

Page E1
Ed. 5-2014

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 111 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6 865 Filed 03/28/16    Page 106 of 157
PageID: 1089

**Endorsement to Your TIAA**
**Retirement Annuity Contract** _____    **Page 2 of 10**

## INDEX OF IMPORTANT TERMS AND PROVISIONS

Page

Accumulations
    Real Estate Account...........................E5
    Traditional Annuity............................E3
Accumulation Units
    Number of........................................E5
    Definition .......................................E5
Additional Amounts.......................................E4
Business Day ...............................................E3
Compliance with Laws and Regulations ......E8
Death Benefit
    Amount of ........................................E7
    Payment of ......................................E6
Funding Vehicle............................................E3
General Account ...........................................E3
Income Benefit - Amount of.........................E6
Income Options............................................E6
Interest Payment and Retirement Annuity....E6
Net Investment Factor...................................E5

Page

Premiums - Allocation of .............................E4
Rate Schedule
    Benefits bought under......................E9
    Change of.........................................E9
    Definition.........................................E4
Retirement Plan ...........................................E3
Separate Account
    Charge..............................................E5
    Definition..........................................E3
    Deletion of........................................E8
    Insulation of......................................E8
Transfers
    Real Estate Account ........................E7
    Traditional Annuity .........................E7
Valuation Day and Valuation Period ...........E3
Spouse's Rights............................................E8

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 112 of 267
Case 3:15-cv-06726-RK-JBD    Document 16866Filed 03/28/16    Page 107 of 157
                              PageID: 1090

**Endorsement to Your TIAA
Retirement Annuity Contract**

**Page 3 of 10**

---

*The term Accumulation is replaced with the following two terms:*

Your **Accumulation** is equal to the sum of your Traditional Annuity Accumulation and your Real Estate Account Accumulation. Your Traditional Annuity Accumulation is guaranteed to earn interest at the rates described in your contract's Rate Schedule. Your Real Estate Account Accumulation is not guaranteed and you bear its investment risk. Your Accumulation will provide the benefits described in your contract.

Your **Traditional Annuity Accumulation** is the sum of:

A)  all premiums allocated to the Traditional Annuity under your contract; plus
B)  interest credited to the Traditional Annuity under the terms of your contract; plus
C)  any Additional Amounts credited to the Traditional Annuity under your contract; plus
D)  any Transfers to the Traditional Annuity under your contract; less
E)  the amount of any Traditional Annuity Accumulation moved to a Transfer Payout Annuity; less
F)  any charge for expenses and contingencies set forth in the Rate Schedule.

*The following **Terms Used in This Contract** are added:*

The **General Account** consists of all of TIAA's assets other than those in Separate Accounts.

**Separate Account.** All premiums credited to the Real Estate Account become part of a Separate Account. The Real Estate Separate Account is designated as VA-2 and was established by TIAA in accordance with New York law to provide benefits under this and other contracts. The assets and liabilities of Separate Account VA-2 are segregated from the assets and liabilities of the General Account.

A **Business Day** is any day that the New York Stock Exchange is open for trading. A Business Day ends at 4:00 p.m. Eastern time, or when trading closes on the New York Stock Exchange, if earlier.

A **Valuation Day** is any business day, as well as the last calendar day of each month. A **Valuation Period** is the time from the end of a valuation day to the end of the next valuation day.

A **Retirement Plan** is an employer's plan, qualifying under IRC Section 401(a), 403(a), or 403(b) for providing retirement benefits for employees.

A **Funding Vehicle** is an annuity or an investment fund established to provide retirement benefits from monies remitted under a Retirement Plan.

---

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 113 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6867 Filed 03/28/16    Page 108 of 157
PageID: 1091

**Endorsement to Your TIAA**
**Retirement Annuity Contract**                                    **Page 4 of 10**

*The Additional Amounts provision is replaced with the following:*

**Additional Amounts.** TIAA may credit Additional Amounts to the Traditional Annuity under your contract. TIAA does not guarantee that there will be Additional Amounts. TIAA will determine at least annually if Additional Amounts will be credited.

Any Additional Amounts credited to your Traditional Annuity Accumulation will buy benefits for you based on the Rate Schedule in effect on the day the Additional Amounts are credited. Additional Amounts may also be paid with any Traditional Annuity benefits payable to you or your beneficiary.

Any Additional Amounts will be credited under a schedule of Additional Amount rates declared by TIAA. For a Traditional Annuity Accumulation in force as of the effective date of such a schedule, the Additional Amount rates will not be modified for a period of twelve months following the schedule's effective date. For any premiums, any Additional Amounts, and any transfers applied to the Traditional Annuity during the twelve-month period described in the preceding sentence, TIAA may declare Additional Amounts at rates which remain in effect through the end of such twelve-month period. Thereafter, any Additional Amount rates declared for such premiums, Additional Amounts and transfers will remain in effect for periods of twelve months or more.

*The term Rate Schedule is replaced with the following:*

The **Rate Schedule** is the part of the contract that sets forth the bases for computing the Traditional Annuity Accumulation and the Income and Death Benefits arising from it. To the extent permitted by law, TIAA may change the Rate Schedule, after no less than three months' notice to you, for any premiums, Additional Amounts, or transfers applied to the Traditional Annuity after the change. No change of Rate Schedule will affect benefits bought by premiums, Additional Amounts, or transfers applied to the Traditional Annuity prior to the change.

*A provision on Allocation of Premiums is added:*

**Allocation of Premiums.** You can allocate premiums to either the Traditional Annuity or the Real Estate Account. If you allocate premiums to the Traditional Annuity they increase your Traditional Annuity Accumulation. If you allocate premiums to the Real Estate Account they purchase Accumulation Units in the Real Estate Account. You may change your allocation at any time. TIAA will allocate premiums according to the most recent valid instructions we have received from you in an acceptable form.

A Retirement Plan may limit your right to allocate premiums remitted under that plan to the Real Estate Account.

TIAA may stop accepting premiums and transfers to the Real Estate Account at any time.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 114 of 267
Case 3:15-cv-06726-RK-JBD    Document 16868 Filed 03/28/16    Page 109 of 157
PageID: 1092

**Endorsement to Your TIAA
Retirement Annuity Contract**

*Part B-2: Real Estate Account Accumulations and Units is added to your contract:*

## PART B-2: REAL ESTATE ACCOUNT ACCUMULATIONS AND UNITS

**Accumulation Unit.** The value of one Accumulation Unit is calculated at the end of each Valuation Day. The value of an Accumulation Unit is equal to the previous day's value multiplied by the Net Investment Factor for the Real Estate Account.

Your **Real Estate Account Accumulation** is equal to the number of Accumulation Units you own multiplied by the value of one Accumulation Unit. Real Estate Account Accumulations are variable and are not guaranteed. They may increase or decrease depending on investment results.

**Net Investment Factor.** The net investment factor for the Real Estate Account for a valuation period is based on the amount of accrued real estate net operating income, dividends, interest and other income accrued during the current period, a deduction of expense charges, and both realized and unrealized capital gains and losses incurred during the current period. The precise formula for the net investment factor is A divided by B, as follows:

A: The value of the Real Estate Account's net assets at the end of the current valuation period, less any premiums received during the current period.

B: The value of the Real Estate Account's net assets at the end of the previous valuation period, plus the net effect of transactions (e.g. transfers, benefit payments) made by the start of the current valuation period.

The **Separate Account Charge** covers mortality and expense risk, liquidity risk, and administrative and investment advisory services. TIAA, at its discretion, can increase or decrease the Separate Account Charge. The Separate Account Charge is guaranteed not to exceed 2.50% per year of net assets. The Separate Account Charge as of the effective date of this endorsement will be 0.870% per year of the Real Estate Account's average net assets.

**Number of Accumulation Units.** Each premium and each transfer applied to the Real Estate Account on your behalf buys a number of Accumulation Units equal to the amount of the premium or transfer divided by the value of one Accumulation Unit as of the end of the Business Day in which the premium or transfer is credited. The number of Accumulation Units under your contract will be decreased by the application of any Accumulation Units to any benefits or transfers paid from the Real Estate Account Accumulation under your contract. Such transactions will decrease the number of Accumulation Units under your contract by an amount equal to the dollar value of the transaction divided by the value of one Accumulation Unit as of the end of the Valuation Day on which the transaction becomes effective.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 115 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6869 Filed 03/28/16    Page 110 of 157
PageID: 1093

**Endorsement to Your TIAA**
**Retirement Annuity Contract**                                    <u>Page 6 of 10</u>

*The following is added to the* ***Income Options*** *provision:*

The income options described in your contract are available from your Traditional Annuity Accumulation only. You can transfer some or all of your Real Estate Account Accumulation to your Traditional Annuity Accumulation to receive income benefits under these options.

*The* ***Interest Payment and Retirement Annuity*** *provision of the* ***Income Options*** *section is replaced with the following:*

**Interest Payment and Retirement Annuity.** A payment will be made to you each month until you die or convert to another Income Option. The amount of the payment will be equal to the interest that TIAA would otherwise credit to your Traditional Annuity Accumulation.

You must convert to another Income Option no later than the date on which your Accumulation becomes subject to any applicable minimum distribution requirements of the federal tax law.

If you die before converting, a Death Benefit equal to your Accumulation plus any accrued interest on your Traditional Annuity Accumulation since the last payment will be paid to the Beneficiary you name when electing this option.

This option is only available if you are at least age 55, but not older than age 69 1/2. The value of the Traditional Annuity Accumulation placed under this option must be at least $10,000.

*Items A) and B) of the* ***Amount of Your Monthly Income Benefit*** *provision are replaced respectively with the following:*

A)   the amount of your Traditional Annuity Accumulation at that time;
B)   the Rate Schedule or Schedules under which premiums, any Additional Amounts, and any Transfers were applied to your Traditional Annuity Accumulation;

*The first sentence of the* ***Payment of the Death Benefit*** *provision is replaced with the following:*

If you die before the Annuity Starting Date, TIAA will pay the Traditional Annuity Accumulation portion of the Death Benefit to your Beneficiary under one of the Methods of Payment set forth in the **Methods of Payment** provision of your contract. The Single-sum payment method is the only method available for payment of the Real Estate Account Accumulation portion of your Death Benefit. Your beneficiary can, however, transfer some or all of your Real Estate Account Accumulation to the Traditional Annuity in order to receive that portion of the Death Benefit under a Method of Payment available from the Traditional Annuity. Your beneficiary can also transfer some or all of your Real Estate Account Accumulation to CREF in order to receive that portion of the Death Benefit under a Method of Payment offered by CREF.

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 116 of 267
Case 3:15-cv-06726-RK-JBD   Document 51-2870 Filed 03/28/16   Page 111 of 157
PageID: 1094

*Items A) and B) of the **Amount of Death Benefit Payments** provision are replaced respectively with the following:*

- A)   the amount of your Traditional Annuity Accumulation as of the date of your death;
- B)   the Rate Schedule or Schedules under which premiums, any Additional Amounts, and any Transfers were applied to your Traditional Annuity Accumulation;

*The provision on **Transfers** is replaced with the following two provisions:*

**Traditional Annuity Transfers.** You can choose to transfer your Traditional Annuity Accumulation to CREF or to the Real Estate Account under a Transfer Payout Annuity. For the portion of your Traditional Annuity Accumulation purchased by premiums remitted under a Retirement Plan, the Plan may limit your right to transfer to the Real Estate Account.

Transfer Payout Annuity payments to your CREF Retirement Unit-Annuity certificate or to your Real Estate Account Accumulation will be made over a ten year period. The amount of each annuity payment will be determined as of the Annuity Starting Date by:

- A)   the amount of your Traditional Annuity Accumulation; and
- B)   the interest rate(s) in the Rate Schedule(s) under which premiums, any Additional Amounts, and any Transfers were credited to the Traditional Annuity Accumulation.

Your request for a Transfer Payout Annuity must be made by written notice to TIAA. If you die before all annuity payments have been made, any remaining payments will continue to the beneficiary you name when electing this option. Alternatively, a death benefit equal to the commuted value of any remaining annuity payments may be elected.

Each payment to CREF is subject to the terms of your CREF certificate and CREF's Rules of the Fund.

**Real Estate Account Transfers.** You can choose to transfer some or all of your Real Estate Account Accumulation Units: (a) to purchase Accumulation Units in one of the CREF Accounts, (b) to your TIAA Traditional Annuity Accumulation, (c) to provide a cash withdrawal, or (d) to a Funding Vehicle not offered by TIAA or CREF. Any transfer to CREF is subject to the terms of your CREF certificate and CREF's Rules of the Fund.

For Real Estate Account Accumulation Units purchased by premiums remitted under a Retirement Plan, the plan may limit your right to a cash withdrawal or to transfer to a Funding Vehicle not offered by TIAA or CREF.

If you are married and your Real Estate Account Accumulation is subject to ERISA, your right to receive a cash withdrawal is subject to the rights of your spouse as described in your contract. Federal tax law may restrict distributions before age 59 1/2, as described in the Restrictions on Distribution of Accumulation Arising from Elective Deferrals provision of your contract.

If you choose to transfer from your Real Estate Account Accumulation, the minimum amount you may transfer is $1,000, or the entire Real Estate Account Accumulation eligible for transfer, if it is less than $1,000. TIAA will determine all values as of the end of the Business Day on which we receive, in an acceptable form:

- A)   your request for a transfer; and

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 117 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-871 Filed 03/28/16    Page 112 of 157
PageID: 1095

**Endorsement to Your TIAA**
**Retirement Annuity Contract**                                          **Page 8 of 10**

- B) verification of your eligibility for a cash withdrawal or transfer to a Funding Vehicle not offered by TIAA or CREF for those Real Estate Account Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan; and
- C) if your Real Estate Account Accumulation is subject to the ERISA requirements described in the Spouse's Right to Benefits provision in your contract, a Waiver of Spouse's Rights or proof that you aren't married.

You can choose to defer the effective date of the transfer until any Valuation Day following the date on which we receive the above requirements. TIAA will determine all values as of the end of such effective date. You cannot revoke a request for a transfer after its effective date. TIAA reserves the right to limit transfers from the Real Estate Account to not more than one in a calendar quarter.

*The following is added to the **Spouse's Rights to Benefits** provision:*

If your Real Estate Account Accumulation is subject to the provisions of the IRC and ERISA, your spouse must consent to a waiver of his or her right to survivor benefits before you can choose:

- A) a Real Estate Account Transfer to provide a cash withdrawal; or
- B) to the extent required by law, a transfer to a Funding Vehicle not offered by TIAA or CREF.

*The following **General Provisions** are added:*

**Deletion of the Separate Account.** TIAA reserves the right to delete the Real Estate Account. If you own Accumulation Units in the Real Estate Account and it is deleted, you must transfer them to CREF or to your Traditional Annuity Accumulation.

**Insulation of Separate Account.** TIAA owns the assets in Separate Account VA-2. To the extent permitted by law, the assets of the Separate Account will not be charged with liabilities arising out of any other business TIAA may conduct. All income, gains and losses, whether or not realized, of the Separate Account will be credited to or charged against only that Account without regard to TIAA's other income, gains or losses.

*The first paragraph of the **Compliance with Laws and Regulations** provision is replaced with the following:*

TIAA will administer your contract to comply with the restrictions of all laws and regulations pertaining to the terms and conditions of your contract. You cannot elect any benefit or exercise any right under your contract if the election of that benefit or exercise of that right is prohibited under an applicable state or federal law or regulation.

Page E8                                                                      993-DA
Ed. 5-2014                                                                   TIAA DA

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 118 of 267
Case 3:15-cv-06726-RK-JBD   Document 51-3   Filed 03/28/16   Page 113 of 157
PageID: 1096

| Page 9 of 10 | **Endorsement to Your TIAA**<br>**Retirement Annuity Contract** |
|---|---|

*The Change of Rate Schedule provision is replaced with the following:*

**Change of Rate Schedule.** We may, at any time and from time to time, substitute a new Rate Schedule for the one in your current contract. A new Rate Schedule will apply only to benefits arising from any premiums, Additional Amounts, and transfers applied to the Traditional Annuity while such Rate Schedule is in effect. Any change in the Rate Schedule will not affect the amount of benefits purchased prior to the change by any premiums, Additional Amounts, and transfers applied to the Traditional Annuity. A change in the Rate Schedule will be made only after we have given you three months' written notice of the change. Any such change will also be made to all other Retirement Annuity contracts of this form. Any change in the interest rate credited before the Annuity Starting Date or your prior death is subject to the minimum rate specified in the applicable state nonforfeiture law, if any, or if none, the applicable National Association of Insurance Commissioners model nonforfeiture law. Any change in the charge for expenses or contingencies must comply with any applicable state nonforfeiture law.

Any new Rate Schedule will specify:

A)   the charges for expenses and contingencies; and

B)   the interest rates and the mortality bases used for determining benefits arising from amounts applied to the Traditional Annuity.

*Amounts applied to the Traditional Annuity (including your Traditional Annuity Accumulation as of the effective date of this endorsement) continue to receive the same guarantees specified by the Rate Schedule in effect prior to the effective date of this endorsement. The text of the Rate Schedule provision is replaced with the following.*

**Rate Schedule. The benefits bought by premiums** allocated to the Traditional Annuity while this Rate Schedule is in effect will be computed on this basis:

(1)   no deduction for expenses or contingencies;

(2)   interest at the effective annual rate of 3% from the first day of the month in which the premium is paid to the Annuity Starting Date or your prior death, and at the effective annual rate of 2 1/2% thereafter; and

(3)   mortality according to 1983 Table *a* (TIAA Merged Gender Mod A).

**The benefits bought by Additional Amounts** credited to the Traditional Annuity while this Rate Schedule is in effect will be computed on the same basis as for premiums.

**The benefits bought by transfers** from CREF or the Real Estate Account to the Traditional Annuity will be computed on the same basis as for premiums except that interest will be credited from the day TIAA's General Account receives the funds transferred which is the day following the date the funds are transferred out of CREF or the Real Estate Account.

**When Traditional Annuity payments start** to you, or to your beneficiary under an income method involving life contingencies, we will compute any benefits provided by the portion of the Traditional Annuity Accumulation resulting from amounts applied to the Traditional

Case 3:15-cv-06726-RK-JBD     Document 255-3     Filed 04/17/25     Page 119 of 267
Case 3:15-cv-06726-RK-JBD     Document 55-3873 Filed 03/28/16     Page 114 of 157
PageID: 1097

**Endorsement to Your TIAA**

**Retirement Annuity Contract**                                    **Page 10 of 10**

Annuity while this Rate Schedule is in effect on whichever of these bases produces the larger payments:

(1)   the applicable interest rate and mortality tables as stated above; or
(2)   the interest rate and mortality table in use by TIAA for any individual single premium immediate annuities being offered when the payments start.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 120 of 267
Case 3:15-cv-06726-RK-JBD    Document 316874 Filed 03/28/16    Page 115 of 157
PageID: 1098

Endorsement to Your TIAA
**Retirement Annuity Contract**                                       Page 1 of 3

## TEACHERS INSURANCE AND ANNUITY ASSOCIATION
### (TIAA)
730 Third Avenue, New York, New York 10017-3206

### Endorsement to TIAA Retirement Annuity Contracts

### Effective Date: July 1, 1994

This endorsement is part of your agreement with TIAA, which also includes any prior endorsements. The purpose of an endorsement is to make changes to the provisions of your contract. Please read this endorsement, then attach it to your contract.

The following is added to the Additional Amounts provision:

Additional Amounts, if any, will be credited under a schedule of Additional Amount rates declared by TIAA. For an Accumulation in force as of the effective date of such a schedule, the Additional Amount rates will not be modified for a period of twelve months following the schedule's effective date. For premiums received, any Additional Amounts credited, and any Transfers from CREF credited during the twelve-month period described in the preceding sentence, TIAA may declare Additional Amounts at rates which are effective for less than twelve months, but which remain in effect through the end of such twelve-month period. Thereafter, any Additional Amount rates declared for such premiums, Additional Amounts, and Transfers from CREF will remain in effect for periods of twelve months or more.

The Annuity Starting Date provision is modified by the following:

The Annuity Starting Date is the date your Income Benefit or your Transfer Payout Annuity begins. You may not start annuity benefits any later than the April first following the calendar year in which you reach age 70 ½. At any time before you begin To receive your Income Benefit or your Transfer Payout Annuity, you may change your Annuity Starting Date to the first of any month after the change, as described in your Contract, as long as the new date satisfies the preceding condition.

The new options are added to the Income Options provision. The first option, the Interest Payment and Retirement Annuity, does not provide a lifetime income for you, and the second option, the Minimum Distribution Annuity, may not provide a lifetime income in all situations. However, both of these options may be converted to options that provide a lifetime income, subject to federal tax law limitations.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 121 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-875 Filed 03/28/16    Page 116 of 157
PageID: 1099

**Endorsement to Your TIAA**
**Retirement Annuity Contract**                                    **Page 2 of 3**

Interest Payment and Retirement Annuity. A payment will be made to you each month until you die or convert to another Income Option. The amount of the payment will be equal to the interest that TIAA would otherwise credit to your Accumulation.

You must convert to another Income Option no later than the April first following The calendar year in which you reach age 70 ½.

If you die before converting, a Death Benefit equal to your Accumulation plus any accrued interest since the last payment will be paid to the Beneficiary you name when electing this option.

This option is only available if you are at least age 55, but not older than age 69 ½. The value of the Accumulation placed under this option must be at least $10,000.

Minimum Distribution Annuity. This Income Option is designed to enable you to meet the minimum distribution requirements under federal tax law. A payment will be made to you each year until your Accumulation is entirely paid out, or until your prior death. If required to meet the minimum distribution requirements, an initial payment will be made on the Annuity Starting Date, generally on or before the April 1 following the calendar year in which you reach age 70 ½.

If you die before the Accumulation has been entirely paid out, a death benefit equal to the remaining Accumulation will be paid to the Beneficiary you name when electing this option.

This option is only available when you must begin receiving income in order to avoid penalties under federal tax law.

Two new methods are added to the Methods of Payment of the Death Benefit provision:

Single-sum Payment. The Death Benefit will be paid to your Beneficiary in one sum.

Minimum Distribution Annuity. This Method of Payment is designed to enable your Beneficiary to meet the minimum distribution requirements under federal tax law. A payment will be made for each year that a distribution is required until your Accumulation is entirely paid out, or until the prior death of your Beneficiary. This method may not provide a lifetime income in all situations.

If your Beneficiary dies before your Accumulation has been entirely paid out, the remaining Accumulation will be paid in one sum to the payee named to receive it.

A provision on Transfers is added:

Transfers. You may choose to transfer your Accumulation to CREF under a Transfer Payout Annuity. Annuity payments will be made over a ten year period to your CREF Retirement Unit-Annuity certificate. The amount of each annuity payment will be determined as of the Annuity Starting Date by:

A)    the amount of your Accumulation; and
B)    the interest rate(s) in the Rate Schedule(s) under which premiums, any Additional Amounts, and any Transfers from CREF were credited.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 122 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6876 Filed 03/28/16    Page 117 of 157
PageID: 1100

**Endorsement to Your TIAA**
**Retirement Annuity Contract**                              Page 3 of 3

Each payment to CREF is subject to the terms of your CREF certificate and
CREF's Rules of the Fund. Your request for a Transfer Payout Annuity must be made
by written notice to TIAA.

If you die before all annuity payments have been made, and remaining payments
will continue to the Beneficiary you name when electing this option. Alternatively, a
death benefit equal to the commuted value of any remaining annuity payments may be
elected.

The following is added to the Change of Rate Schedule provision:

Any change in the interest rate credited before the Annuity Starting Date or your prior
death is subject to the minimum rate specified in the applicable state nonforfeiture law,
if any, or if none, the applicable National Association of Insurance Commissioners model
nonforfeiture law. Any change in the charge for expenses or contingencies must comply
with any applicable state nonforfeiture law.

The Rate Schedule provision is modified as follows:

Transfers from CREF are credited to your contract as of the day TIAA receives the
funds, which is the day following the date the funds are transferred out of CREF.

*John H. Biggs*

Chairman and
Chief Executive Officer

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 123 of 267
PageID: 6877
Case 3:15-cv-06726-RK-JBD   Document 51-2   Filed 03/28/16   Page 118 of 157
PageID: 1101

TEACHERS INSURANCE AND ANNUITY ASSOCIATION
(TIAA)
730 Third Avenue, New York, New York 10017

**Endorsement to TIAA Retirement Annuity Contract**

This endorsement adds the following to the corresponding provisions of your contract and/or adds the following provisions to your contract. This endorsement is to be read in conjunction with your contract.

## RESTRICTIONS ON DISTRIBUTION
## OF ACCUMULATION ARISING FROM ELECTIVE DEFERRALS

This contract may be used as part of a tax-deferred annuity plan as specified under IRC Section 403(b). IRC Section 403(b) prohibits the distribution to you of the portion, if any, of your Accumulation equal to:

A) amounts attributable to funds transferred to this contract from a custodial account established under IRC Section 403(b)(7); plus

B) amounts attributable to premiums paid to an IRC Section 403(b)(1) annuity contract as elective deferrals under a salary reduction agreement (within the meaning of IRC Section 403(b)(11)); less

C) the value, if any, of the amounts described in (B) determined as of December 31, 1988;

until you:

    (1) attain age 59 1/2;

    (2) separate from service of the employer under whose plan the aforementioned portion is attributable;

    (3) die; or

    (4) become disabled within the meaning of IRC Section 72(m)(7).

Any request for an early withdrawal due to disability must be submitted with evidence of the disability on forms satisfactory to TIAA and not inconsistent with applicable law. An individual shall be considered to be disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

## COMPLIANCE WITH LAWS AND REGULATIONS

TIAA will administer this contract to comply with all laws and regulations pertaining to the terms and conditions of this contract. If this contract conflicts with any applicable law or regulation, such law or regulation will prevail.

*John H. Biggs*

*Chairman and*
*Chief Executive Officer*

995-DA
TIAA-DA

Ed. 1-93

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 124 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-2878 Filed 03/28/16    Page 119 of 157
PageID: 1102

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION**
730 Third Avenue, New York, New York 10017

**ENDORSEMENT ATTACHED TO RETIREMENT ANNUITY CONTRACT**

In order to conform to the requirements of the Tax Reform Act of 1984 and the Retirement Equity Act of 1984, this TIAA contract is subject to the following conditions notwithstanding any statements to the contrary which may appear within the contract:

### (1) CHOICE OF INCOME OPTIONS AND METHODS OF PAYMENT OF THE DEATH BENEFIT

The availability of the Income Option and Methods of Payment of the Death Benefit set forth in the contract is subject to the applicable restrictions and distribution requirements of the Internal Revenue Code of 1954 ("IRC"), as amended, and the rulings and regulations issued thereunder, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, and the rulings and regulations issued thereunder.

### (2) ANNUITY STARTING DATE

Your Annuity Starting Date may not be deferred beyond April 1 of the calendar year following the calendar year in which you attain age 70 ½.

### (3) SPOUSE'S RIGHT TO BENEFITS

If all or part of your Accumulation is attributable to contributions made under a retirement plan or tax-deferred annuity plan subject to ERISA and a plan contribution has been paid on your behalf after August 22, 1984; then, only to the extent required by the IRC or ERISA, your rights to choose an Income Option and to name a beneficiary for the Death Benefit are subject to your spouse's right, if any, to benefits as follows:

Spouse's Survivor Annuity Income. If you are married on the Annuity Starting Date, your Income Benefit must be paid under a Survivor Annuity Option with your spouse as Second Annuitant unless we receive, in form satisfactory to TIAA, a waiver of your spouse's right to a Survivor Annuity Income with your spouse's written consent or verification that your spouse cannot be located.

Spouse's Survivor Death Benefit. If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of an annuity which is the actuarial equivalent of one-half of the portion of the Accumulation, if any, attributable to contributions made under a plan subject to ERISA, provided a plan contribution has been paid after August 22, 1984. Your spouse's right to a Survivor Death Benefit may be waived, in form satisfactory to TIAA, with your spouse's written consent or verification that your spouse cannot be located. A waiver of the Survivor Death Benefit may not be made prior to the year in which you attain age 35, or, if earlier, your termination of employment with the institution then remitting premiums for this contract.

Verification of your marital status may be required, in form satisfactory to TIAA, for purposes of establishing your spouse's right to benefits or a waiver of these rights. You may revoke a waiver of your spouse's right to benefits at any time during your lifetime and before the Annuity Starting Date. Your spouse may not revoke a consent after the consent has been given.

1050.2
Ed. 2-87

TIAA-DA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 125 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-2879 Filed 03/28/16    Page 120 of 157
PageID: 1103

(4) **AUTOMATIC BENEFICIARY DESIGNATION**

If you die before the Annuity Starting Date never having named a beneficiary, your estate and your surviving spouse become the beneficiaries as follows:

(a) If you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

(b) If you leave a surviving spouse, your spouse will receive a Death Benefit, payable under one of the Methods of Payment of the Death Benefit; which is the actuarial equivalent of one-half of the Accumulation with the remainder of the Accumulation being paid to your estate in one sum.

(5) **METHOD OF PAYMENT OF THE DEATH BENEFIT**

The distribution of the Death Benefit under any Method of Payment must be made over the lifetime of your beneficiary or over a period not exceeding your beneficiary's life expectancy. The Death Benefit must be applied under a chosen Method of Payment within one year of the date of your death; otherwise payments will be made to your beneficiary beginning on the first day of the month in which the first anniversary of your date of death occurs under the Payments for a Fixed Period Method for a period of five years with payments made annually.

(6) **LIABILITY OF TIAA**

Any action taken by TIAA in good faith before receiving written notice of a waiver of rights included in this amendment, or of revocation of such waiver, will not subject TIAA to liability because our acts were contrary to what was stated in such waiver or revocation.

The provisions of this amendment are effective January 1, 1985.

*Chairman and*
*Chief Executive Officer*

J055.2
Ed. 2-87

TIAA-DA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 126 of 267
Case 3:15-cv-06726-RK-JBD    Document 9-16880Filed 03/28/16    Page 121 of 157
PageID: 1104
PageID: 6880

## PART A: TERMS USED IN THIS CONTRACT

1. The Accumulation is the sum of:
    A) all premiums paid to your contract; plus
    B) any Additional Amounts credited to your contract; plus
    C) any Transfers of funds from the College Retirement Equities Fund ("CREF")
       credited to your contract; less
    D) the contract's charge for expenses and contingencies; plus
    E) interest credited under the terms of your contract.
Your Accumulation will provide the benefits described in this contract.

2. Additional Amounts may be credited to your contract by TIAA. Those credited before the Annuity Starting Date or your prior death buy benefits for you, above the benefits bought by premiums, based on the Rate Schedule in effect when the Additional Amount is credited. Any Additional Amounts credited after the Annuity Starting Date or your death will be paid in addition to the Income or Death Benefit then payable. TIAA does not guarantee that there will be Additional Amounts.

3. The Annuity Starting Date shown on Page 3 is the date your lifetime income is scheduled to begin. The Date may be changed as explained in Sections 13 and 14.

4. The Income Benefit is the monthly amount payable to you under one of the options set forth in Part C. These payments will first be payable on the Annuity Starting Date.

5. The Second Annuitant is the person you name, when starting to receive your income under a Survivor Annuity Option, to receive a life income if he or she survives you. You may name your spouse, or any other person eligible under TIAA's practices then in effect, to be a Second Annuitant.

6. The Death Benefit is the current value of your Accumulation. It will be used to pay your beneficiary an income under one of the methods set forth in Part D if you die before the Annuity Starting Date.

7. The Rate Schedule is the part of your contract that sets forth the bases for computing the Accumulation and the Income and Death Benefits. TIAA may change the Rate Schedule, after no less than three months' notice to you, for premiums paid, Additional Amounts credited and Transfers from CREF made after the change. No change of Rate Schedule will affect benefits bought by premiums, Additional Amounts or Transfers from CREF prior to the change.

8. Commuted Value. The commuted (discounted) value is a one-sum amount paid in lieu of a series of payments. It is less than the total of those payments because future interest, included when computing the series of payments, will not be earned if payment is to be made in one sum. The commuted value of future payments is therefore the sum of those payments less the interest from the date of commutation to the date each payment would have been made. The same interest rate or rates used in computing the benefit payments will be used to determine the commuted value.

## PART B: CONTRACT AND PREMIUMS

9. The Contract. This document is the entire contract between you and TIAA. We have issued it in return for your completed application and the first premium. Any endorsement or amendment of this contract, waiver of any of its provisions, or change in Rate Schedule will be valid only if in writing and signed by an Executive Officer or Registrar of TIAA. All premiums and benefits are payable at TIAA's home office in New York, NY.

10. Premium Amount. Premiums for this contract may be paid in any amount not less than $25 each. You may change the amount or frequency of future premiums at any time. TIAA reserves the right to limit to $25,000 in any twelve-month period the total premiums paid on this and any other TIAA annuity contract on your life. Premiums will be credited to your contract as of the first of the month in which they are received; TIAA will accept them any time before the Annuity Starting Date or your prior death.

11. Unconditional Protection Against Lapse or Forfeiture. Your contract will not lapse after the first premium has been paid. If premiums cease, you continue to own all benefits bought by premiums paid, any Additional Amounts credited and any Transfers from CREF.

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 127 of 267
Case 3:15-cv-06726-RK-JBD   Document 51-6881 Filed 03/28/16   Page 122 of 157
PageID: 1105

12. **Discontinuing and Resuming Premiums.**

   A) **By You.** Premiums may be stopped at any time without notice to TIAA. Premiums may be resumed before the Annuity Starting Date without payment of any past due premiums or penalty of any kind; or payments may be applied to a replacement contract as set forth in the next paragraph.

   B) **By TIAA.** We cannot terminate the right to pay premiums to a TIAA annuity contract. However, TIAA does reserve the right, after at least three months' written notice to you, to stop accepting premiums for this contract, but only if:

   (1) at the same time we stop accepting premiums to all other TIAA contracts issued with the same original Rate Schedule as yours and delivered in this State; and

   (2) premiums are accepted for a new TIAA deferred annuity contract issued without an application, to be effective with the first premium paid for it; and

   (3) the new contract has the same Annuity Starting Date, beneficiary and methods of benefit payment as those under this contract at the time of replacement.

## PART C: YOUR INCOME BENEFIT

13. **Changing Your Annuity Starting Date.** Any time before you start to receive your Income Benefit, you may change the Annuity Starting Date to the first of any month after the change, but not to a month later than the one following your seventy-first birthday. If you have not chosen an Annuity Starting Date prior to your sixty-fifth birthday, the Date will be the first of the month following that birthday.

14. **Starting Your Income Benefit.** Payment of your Income Benefit will begin as of the Annuity Starting Date you have chosen, if you are then living and:

   A) you have sent us this contract;

   B) you have chosen one of the Income Options set forth in Section 15; and

   C) we have received due proof of your age and, if you choose a Survivor Annuity Option, the age of your Second Annuitant.

If A, B and C of this Section have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to the first of the month after A, B and C have been completed or to the first of the month following your seventy-first birthday, whichever comes first.

15. **Income Options** are the ways in which you may have your Income Benefit paid to you. Any time before the Annuity Starting Date you may choose the Option you want. You may change your choice any time before payments begin, but once they have begun no change can be made.

**Automatic Election Provision.** If on the Annuity Starting Date determined in accordance with Sections 13 and 14, you have not chosen an Income Option, you will be deemed to have chosen the 'Life Annuity with 10-Year Guaranteed Period' Option if you are then single, or the 'Half Benefit to Second Annuitant with 10-Year Guaranteed Period' Option if you are then married.

These are the Income Options from which you will choose. All of them provide a lifetime income for you, some provide that payments will continue for the lifetime of a Second Annuitant and some provide that payments will continue in any event during a guaranteed period as explained in Section 16:

**Single Life Annuity.** A payment will be made to you each month as long as you live. All payments will cease at your death. This Option provides nothing for anyone after your death.

**Life Annuity with 10-, 15- or 20-Year Guaranteed Period.** A payment will be made to you each month as long as you live. If you die before the end of the guaranteed period you have chosen, the monthly payments will continue to the end of that period.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 128 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6882 Filed 03/28/16    Page 123 of 157
PageID: 1106

**Survivor Annuity Options.** Under each of these Options a payment will be made to you each month as long as you live, and will be continued for life to the Second Annuitant you have named if he or she survives you. After payments begin, you cannot change your choice of Second Annuitant. The monthly amount paid to you or a surviving Second Annuitant depends on which of these Options you choose:

**Full Benefit to Survivor with or without a 10-, 15- or 20-Year Guaranteed Period.** At the death of either you or your Second Annuitant the monthly benefits that continue to the survivor will be the full amount that would have been paid if both had lived. If you choose a guaranteed period and you and your Second Annuitant both die before the end of the period chosen, the Full Benefit monthly payments will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Annuitant.

**Two-thirds Benefit to Survivor with or without a 10-, 15- or 20-Year Guaranteed Period.** At the death of either you or your Second Annuitant the monthly payments that continue to the survivor will be two-thirds of the amount that would have been paid if both had lived. If you choose a guaranteed period and you and your Second Annuitant both die before the end of the period chosen, the Two-thirds Benefit monthly payments will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Annuitant.

**Half Benefit to Second Annuitant with or without a 10-, 15- or 20-Year Guaranteed Period.** The full monthly income will continue as long as you live. If your Second Annuitant survives you, he or she will receive payments each month of one-half the amount you would have received if you had lived. If you choose a guaranteed period and you and your Second Annuitant both die before the end of the period chosen, the Half Benefit monthly payments will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Annuitant.

16. **Payments to the End of a Guaranteed Period.** At the time you choose an Income Option, you name the person or persons to receive these payments. You may later change the named persons and, if you chose a Survivor Annuity, after your death your surviving Second Annuitant may change the named persons unless you direct otherwise.

At the death of the last survivor of you and your Second Annuitant before the end of a guaranteed period you have chosen under one of the Survivor Annuity Options, or at your death before the end of a guaranteed period under one of the other Income Options, the monthly payments due for the remainder of the guaranteed period will continue to the surviving person or persons named to receive them. The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is then living, the Commuted Value will be paid in one sum to the estate of the last survivor of you and your Second Annuitant if you chose a Survivor Annuity Option, or to your estate if you chose one of the other Income Options.

If a person receiving these payments dies before the end of the guaranteed period, the Commuted Value of any payments still due that person will be paid to any other person or persons named to receive it. If no one has been so named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

17. **The Amount of Your Monthly Income Benefit** will be determined as of the Annuity Starting Date by: A) the amount of your Accumulation at that time; B) the Rate Schedule or Schedules under which premiums have been paid, any Additional Amounts have been credited and any Transfers from CREF have been made; C) the Income Option you choose; D) your age; E) if you choose one of the Survivor Annuity Options, your Second Annuitant's age; and F) if any applicable Rate Schedule provides for the use of sex-distinct mortality, your sex and that of any Second Annuitant. Any Additional Amount credited to you after the Annuity Starting Date will be paid in addition to the Income Benefit then payable. If your Income Benefit would be less than $25 a month, TIAA will have the right to change to quarterly, semi-annual or annual payments, whichever will result in payments of $25 or more and the shortest interval between payments.

## PART D: DEATH BENEFIT

18. **Payment of the Death Benefit.** If you die before the Annuity Starting Date, TIAA will pay the Death Benefit to your beneficiary under one of the Methods of Payment set forth in Section 22. You may choose the Method during your lifetime as explained in Section 30. If you do not so choose, your beneficiary will make the

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 129 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-883 Filed 03/28/16    Page 124 of 157
PageID: 1107

choice when he or she becomes entitled to payments. You may change the Method at any time before payments begin. After your death, your beneficiary may change the Method chosen by you, if you so provide. Any choice of Method or change of such choice must be made in writing as explained in Section 30.

19. **Naming Your Beneficiary.** Beneficiaries are persons you name, in form satisfactory to TIAA, to receive the Death Benefit if you die before the Annuity Starting Date. You may designate different classes of beneficiaries, such as primary (first) and contingent (secondary). These classes set the order of payment. If a class contains more than one person, the Death Benefit will be paid to the then living persons in the class in equal shares, unless you provide otherwise. For example, if you die before the Annuity Starting Date, having named your spouse as primary beneficiary and 'children' as equal contingent beneficiaries, your spouse would receive the Death Benefit if he or she survived you. But if your spouse did not survive you, then your children would receive equal shares of the Death Benefit.

The terms 'children' or 'my children' may be used to name a class of beneficiaries, either primary or contingent. Unless you specify otherwise, these terms will mean all children born of your marriage or marriages and any children legally adopted by you. The term 'children' also has the same inclusive meaning when used to name as beneficiaries the children of your spouse, your child, your brother or your sister.

If you name your estate as beneficiary, or if none of the beneficiaries you have named is alive at the time of your death, the Death Benefit will be paid to your estate in one sum.

If you die prior to the Annuity Starting Date never having named a beneficiary, your estate and your surviving spouse, if any, become the beneficiaries as follows:

A) if you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

B) if you leave a surviving spouse, your spouse will receive lifetime monthly payments of the amount he or she would have received as Second Annuitant if you had started to receive your Income Benefit as of the first day of the month in which you die, having chosen the 'Half Benefit to Second Annuitant with 10-Year Guaranteed Period' Option. The part of the Death Benefit not needed to provide this income to your spouse will be paid to your estate in one sum.

20. **Changing Your Beneficiary.** At any time before the Annuity Starting Date you may change your beneficiary or add or delete beneficiaries, as explained in Section 30.

21. **Starting Payment of the Death Benefit.** Payment of the Death Benefit under one of the Methods set forth in Section 22 will start as of the first day of the month after we have received:

A) this contract;

B) due proof of your death;

C) the choice of a Method of Payment as provided in Section 22; and

D) due proof of the beneficiary's age if the Method chosen pays a lifetime income.

22. **Methods of Payment.** The Death Benefit will be paid to your beneficiary under one of the Methods shown below.

**Single Life Annuity.** A payment will be made to your beneficiary each month for life. All payments will cease at his or her death. This Method provides nothing for anyone after the death of your beneficiary.

**Life Annuity with 10-, 15- or 20-Year Guaranteed Period.** A payment will be made to your beneficiary each month for life. If he or she dies before the end of the guaranteed period chosen, the monthly payments will continue to the end of that period as explained in Section 23.

**Payments for a Fixed Period.** A payment of principal and interest will be made to your beneficiary each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen all the principal and interest credited will have been paid out. If your beneficiary dies before the end of the period chosen, the monthly payments will continue to the end of that period as explained in Section 23.

**Interest Payments.** A payment of interest on the Death Benefit will be made to your beneficiary each month for a chosen period of not less than two nor more than thirty years. At the end of the period chosen, TIAA will pay the Death Benefit to your beneficiary. If your beneficiary dies while any part of the Death Benefit is held by TIAA, that amount will be payable as explained in Section 23.

Instead of a chosen period, interest payments may be made for 'the lifetime of the beneficiary,' with payment of the Death Benefit made after the death of your beneficiary as explained in Section 23.

The value of the Death Benefit placed under this Method must be at least $5,000.

1000.23
Ed. 1-88

Case 3:15-cv-06726-RK-JBD     Document 255-3     Filed 04/17/25     Page 130 of 267
Case 3:15-cv-06726-RK-JBD     Document 16884 Filed 03/28/16     Page 125 of 157
PageID: 1108

If any Method chosen, except Interest Payments, would result in payments of less than $25 a month, TIAA will have the right to require a change in choice that will result in payments of not less than $25 a month.

23. Payments after the Death of a Beneficiary. Any monthly payments still due at the death of your beneficiary during a guaranteed or fixed period will be continued to the person or persons named by you or your beneficiary to receive them. The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is living at the death of your beneficiary, the Commuted Value of these payments will be paid in one sum to your beneficiary's estate.

If a person receiving these payments dies before the end of the guaranteed or fixed period, the Commuted Value of any payments still due that person will be paid to any other persons named to receive it. If no one has been so named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

If your beneficiary dies while all or part of the Death Benefit is held by TIAA under the Interest Payments Method, that amount will be paid in one sum to the person or persons you or your beneficiary have named to receive it. If no such person survives your beneficiary, the Death Benefit will be paid in one sum to your beneficiary's estate.

24. The Amount of Death Benefit Payments will be determined by: A) the amount of your Accumulation as of the date of your death; B) the Rate Schedule or Schedules under which your premiums, any Additional Amounts and any Transfers from CREF were credited; C) the Method of Payment chosen for the Death Benefit; and D) if the Method chosen pays a lifetime income, the age of your beneficiary and, if any applicable Rate Schedule provides for the use of sex-distinct mortality, his or her sex. Any Additional Amount credited to you after the Annuity Starting Date will be paid in addition to the Income Benefit then payable.


## PART E: GENERAL PROVISIONS

25. Report of Premiums and Accumulation. Once each year until the Annuity Starting Date, we will mail you a report for the calendar year just ended. It will show the amount of premiums paid during the year and the value of your Accumulation (Death Benefit) as of the end of the year.

26. Ownership of Contract. You own this contract. During your lifetime, you may, to the extent permitted by law, exercise every right given by it without the consent of any other person.

27. No Assignment. Neither you nor any other person may assign, pledge, or transfer ownership of this contract or any benefits under its terms. Any such action will be void and of no effect.

28. No Cash Surrender or Loans. This contract does not provide for cash surrender or loans.

29. Protection Against Claims of Creditors. The benefits and rights accruing to you or any other person under this contract are exempt from the claims of creditors or legal process to the fullest extent permitted by law.

30. Procedure for Elections and Changes. You, or your Second Annuitant or beneficiary having the right to do so, may elect or change, in accordance with the terms of your contract, any of the following by written notice satisfactory to TIAA sent to its home office in New York, NY:

   A) the Annuity Starting Date;
   B) an Income Option;
   C) a Method of Payment for the Death Benefit; or
   D) a beneficiary or any person named to receive payments remaining due.

No such notice will take effect unless it is received by TIAA. When received it will take effect as of the date it was signed, whether or not the signer is living at the time we receive it. Any action taken by TIAA in good faith before receiving the notice will not subject TIAA to liability because our acts were contrary to what was stated in the notice.

31. Payment to an Estate, Guardian, Trustee, etc. TIAA reserves the right to pay in one sum the Commuted Value of any benefits due an estate, corporation, partnership, trustee or other entity not a natural person. TIAA will not be responsible for the acts or neglects of any executor, trustee, guardian, or other third party to whom payment is made.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 131 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-1885 Filed 03/28/16    Page 126 of 157
PageID: 1109

32. **Service of Process upon TIAA.** We will accept service of process in any action or suit against us on this contract in any court of competent jurisdiction in the United States, Puerto Rico or Canada, provided such process is properly made. We will also accept such process sent to us by registered mail if the plaintiff is a resident of the state, district, territory, or province in which the action or suit is brought. This Section does not waive any of our rights, including the right to remove such action or suit to another court.

33. **Benefits Based on Incorrect Data.** If the amount of benefits is determined by data as to a person's age or sex that is incorrect, benefits will be recalculated on the basis of the correct data. Any amounts underpaid by TIAA on the basis of the incorrect data will be paid at the time the correction is made. Any amounts overpaid by TIAA on the basis of the incorrect data will be charged against the payments due after the correction is made. Any amounts so paid or charged will include compound interest at the effective rate of 6% per year.

34. **Proof of Survival.** TIAA reserves the right to require satisfactory proof that anyone named to receive benefits under the terms of your contract is alive on the date any benefit payment is due. If this proof is not received after requested in writing, TIAA will have the right to make reduced payments or to withhold payments entirely until such proof is received. If under a Survivor Annuity Option TIAA has overpaid benefits because of a death of which we were not notified, subsequent payments will be reduced or withheld until the amount of the overpayment has been recovered.

35. **Non-Forfeiture of Benefits.** Amounts payable under this contract will not be less than the minimum required as of the Date of Issue by any statute of the State in which this contract is delivered. Any benefits purchased cannot be forfeited under this contract.

36. **Correspondence and Requests for Benefits.** No notice, application, form, premium payment, or request for benefits will be deemed to be received by us unless it is received at our home office. All benefits are payable at our home office. Any questions about this contract or inquiries about our service should be directed to us at our address:

> TIAA
> 730 Third Avenue
> New York, NY 10017

37. **Change of Rate Schedule.** We may, at any time and from time to time, substitute a new Rate Schedule for the one in Section 38. A new Rate Schedule will apply only to benefits arising from premiums paid, Additional Amounts credited and Transfers from CREF made while that Schedule is in effect. Any such change will also be made to all other Retirement Annuity Contracts of this form. A change in the Rate Schedule will be made only after we have given you three months' written notice of the change. Any such change will not affect the amount of benefits purchased by premiums paid, Additional Amounts credited and Transfers from CREF made prior to the change. Any new Rate Schedule will specify the charges for expenses and contingencies, the interest rates and the mortality bases used for determining benefits arising from: A) premiums paid while such Rate Schedule is in effect; B) Additional Amounts credited while such Rate Schedule is in effect; and C) Transfers from CREF made while such Rate Schedule is in effect.

1000.23
Ed. 1-86

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 132 of 267
Case 3:15-cv-06726-RK-JBD    Document 15-886 Filed 03/28/16    Page 127 of 157
PageID: 1110

## 38. RATE SCHEDULE

The benefits bought by premiums paid while this Rate Schedule is in effect will be computed on this basis:
(1) no deduction for expenses or contingencies;
(2) interest at the effective annual rate of 3% from the first day of the month in which the premium is paid to the Annuity Starting Date or your prior death, and at the effective annual rate of 2½% thereafter; and
(3) mortality according to the 1983 Table *a* (TIAA Merged Gender Mod A).

The benefits bought by Additional Amounts credited while this Rate Schedule is in effect will be computed on the same basis as for premiums.

The benefits bought by Transfer from CREF made while this Rate Schedule is in effect will be computed on the same basis as for premiums except that interest will be credited from the day TIAA receives the funds transferred.

When payments start to you, or to your beneficiary under an income method involving life contingencies, we will compute any benefits provided by the portion of the Accumulation resulting from premiums paid, Additional Amounts credited and Transfers from CREF made while this Rate Schedule is in effect on whichever of these bases produces the larger payments:
(1) the applicable interest rate and mortality tables, as stated above; or
(2) the interest rate and mortality table in use by TIAA for any individual single premium immediate annuities being offered when the payments start.

| Amount of Yearly Life Annuity with 10-Year Guarantee Purchasable by a Single Premium of $100 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| One-twelfth of the amount shown is payable each month | | | | | | | | | | | | |
| Age Attained When Premium is Due | Annuity Beginning at | | | Age Attained When Premium is Due | Annuity Beginning at | | | Age Attained When Premium is Due | Annuity Beginning at | | |
| | Age 60 | Age 65 | Age 70 | | Age 60 | Age 65 | Age 70 | | Age 60 | Age 65 | Age 70 |
| 20 | $15.01 | $19.17 | $24.87 | 37 | $9.08 | $11.60 | $15.05 | 54 | $5.49 | $7.01 | $9.10 |
| 21 | 14.58 | 18.61 | 24.15 | 38 | 8.82 | 11.26 | 14.61 | 55 | 5.33 | 6.81 | 8.84 |
| 22 | 14.15 | 18.07 | 23.44 | 39 | 8.56 | 10.93 | 14.18 | 56 | 5.18 | 6.61 | 8.58 |
| 23 | 13.74 | 17.54 | 22.76 | 40 | 8.31 | 10.61 | 13.77 | 57 | 5.03 | 6.42 | 8.33 |
| 24 | 13.34 | 17.03 | 22.10 | 41 | 8.07 | 10.30 | 13.37 | 58 | 4.88 | 6.23 | 8.09 |
| 25 | 12.95 | 16.54 | 21.45 | 42 | 7.83 | 10.00 | 12.98 | 59 | 4.74 | 6.05 | 7.85 |
| 26 | 12.57 | 16.05 | 20.83 | 43 | 7.60 | 9.71 | 12.60 | 60 | 4.60 | 5.87 | 7.62 |
| 27 | 12.21 | 15.59 | 20.22 | 44 | 7.38 | 9.43 | 12.23 | 61 | | 5.70 | 7.40 |
| 28 | 11.85 | 15.13 | 19.63 | 45 | 7.17 | 9.15 | 11.88 | 62 | | 5.54 | 7.18 |
| 29 | 11.51 | 14.69 | 19.06 | 46 | 6.96 | 8.89 | 11.53 | 63 | | 5.37 | 6.97 |
| 30 | 11.17 | 14.26 | 18.50 | 47 | 6.76 | 8.63 | 11.19 | 64 | | 5.22 | 6.77 |
| 31 | 10.84 | 13.85 | 17.97 | 48 | 6.56 | 8.38 | 10.87 | 65 | | 5.07 | 6.57 |
| 32 | 10.53 | 13.44 | 17.44 | 49 | 6.37 | 8.13 | 10.55 | 66 | | | 6.38 |
| 33 | 10.22 | 13.05 | 16.93 | 50 | 6.18 | 7.90 | 10.24 | 67 | | | 6.20 |
| 34 | 9.92 | 12.67 | 16.44 | 51 | 6.00 | 7.67 | 9.94 | 68 | | | 6.01 |
| 35 | 9.63 | 12.30 | 15.96 | 52 | 5.83 | 7.44 | 9.66 | 69 | | | 5.84 |
| 36 | 9.35 | 11.95 | 15.50 | 53 | 5.66 | 7.22 | 9.37 | 70 | | | 5.67 |

The yearly payments shown above are those that result from a premium of $100 paid or credited when you have reached an age shown in the "Age Attained" column, but have not passed that birthday by as much as one month. All ages used in computing benefits are calculated in completed years and months. Payments at ages other than those shown, and under other income methods are computed on the basis stated in the Rate Schedule for benefits bought by premiums. For premiums other than $100, payments will be proportionate.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 133 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-8 87 Filed 03/28/16    Page 128 of 157
PageID: 1111

# College Retirement Equities Fund

### NEW YORK, N.Y.

## RETIREMENT UNIT-ANNUITY CERTIFICATE

| Certificate Number | Date of Issue Mo. Day Yr. | Date of Birth Mo. Day Yr. | Annuity Starting Date Mo. Day Yr. |
|---|---|---|---|

**Participant**          THIS INFORMATION APPEARS ON PAGE 3.



This is to certify that you, as the owner (Participant) of this certificate, are entitled to share in the benefits of COLLEGE RETIREMENT EQUITIES FUND ("CREF"). No other person or institution is a party to this certificate.

This page refers briefly to some of the features of your certificate. The next pages set forth in detail the rights and obligations of both CREF and you under the certificate. *PLEASE READ YOUR CERTIFICATE. IT IS IMPORTANT.*

### GENERAL DESCRIPTION

Each premium paid to CREF purchases a number of Accumulation Units representing your share in CREF. You may convert these into a lifetime income of Annuity Units. If you die before starting to receive this income the Accumulation Units will provide a benefit for your beneficiary under one of the methods described in your certificate.

Once each year we will report to you on the amount of premiums paid and the current value of your Accumulation Units.

When you are ready to start receiving your lifetime income, you choose the income option you want from among those described in your certificate. All options provide a lifetime income for you, and all but one also have some provision for another person, to be named by you.

You, or your beneficiary at your death, may have CREF pay the value of some or all of your Accumulation Units to Teachers Insurance and Annuity Association of America ("TIAA") for the purchase of a fixed dollar contract, as explained in your certificate.

*This certificate cannot be assigned nor does it provide for cash surrender or loans.*

*Chairman and*
*Chief Executive Officer*

*This certificate does not guarantee any fixed dollar amount of benefits.*

C1000.10
Ed. 2-87                                    INDEX ON NEXT PAGE                                    DA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 134 of 267
Case 3:15-cv-06726-RK-JBD    Document 316-88 Filed 03/28/16    Page 129 of 157
PageID: 1112

# INDEX OF PROVISIONS

| | Section |
|---|---|
| Accumulation — Definition | 2 |
| Accumulation Units | 1 |
| Annuity Starting Date — Change of | 15 |
| — Definition | 3 |
| Annuity Unit — Definition | 4 |
| Assignment — Void and of no effect | 30 |
| Benefits Based on Incorrect Data | 37 |
| Cash Surrender — No provision for | 31 |
| Certificate — Changes of | 11 |
| Claims of Creditors — Protection against | 36 |
| Commuted Value — Definition | 10 |
| Consideration | 11 |
| Correspondence with us | 34 |
| Death Benefit | 20 |
| — Beneficiary | 21 |
| — Changing the Beneficiary | 22 |
| — Definition | 7 |
| — Methods of Payment | 24 |
| — Number of Annuity Units | 26 |
| — Payment of | 23 |
| — Payments after death of Beneficiary | 25 |
| Elections and Changes — Procedure | 32 |
| Lapse — Protection against | 13 |
| Loans — No provision for | 31 |
| Non-Forfeiture of Benefits | 39 |
| Ownership of Certificate | 29 |
| Payment to an Estate, Trustee, etc. | 33 |
| Premiums — Discontinuing and Resuming | 14 |
| — Payment of | 12 |
| Proof of Survival | 38 |
| Report of Premiums and Accumulation | 28 |
| Request for Benefits | 34 |
| Rules of the Fund — Definition | 9 |
| Second Participant | 6 |
| Service of Process upon CREF | 35 |
| Transfers | 27 |
| — Definition | 8 |
| Unit Annuity — Definition | 5 |
| Unit Annuity Income — Number of Annuity Units | 19 |
| — Options | 17 |
| — Payments during guaranteed periods | 18 |
| — Starting payments | 16 |

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 135 of 267
Case 3:15-cv-06726-RK-JBD   Document 151-6889 Filed 03/28/16   Page 130 of 157
PageID: 1113

COLLEGE RETIREMENT EQUITIES FUND

| CONTRACT NUMBER Q-649916-7 | DATE OF ISSUE 02 01 1988 | DATE OF BIRTH ███████ | ANNUITY STARTING DATE 11 01 2018 |
|---|---|---|---|

ANNUITANT - ROSSO, JAMES T

SOCIAL SECURITY – XXX XX ██████

THIS POLICYTYPE IS DELIVERED IN THE STATE OF NEW YORK

C1000.10                                                                          PAGE 3

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 136 of 267
Case 3:15-cv-06726-RK-JBD   Document 51-8890 Filed 03/28/16   Page 131 of 157
PageID: 1114

**COLLEGE RETIREMENT EQUITIES FUND**
**(CREF)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your CREF Deferred Unit-Annuity Certificate**

Effective Date: Later of Date of Issue or December 29, 2011

This endorsement is part of your certificate with CREF. Please read this endorsement and attach it to your certificate.

*Your certificate is modified as follows:*

Notwithstanding any other provision in your certificate, no transaction available to you may be made effective on a day that is not a business day, except as follows: when a business day is the last day of a calendar month, annuity income payments and annuity death benefit payment methods may begin on the next day even when it is a non-business day.

*Roger W. Ferguson, Jr.*

*President and*
*Chief Executive Officer*

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 137 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6891 Filed 03/28/16    Page 132 of 157
PageID: 1115

**College Retirement Equities Fund**
730 Third Avenue, New York, NY  10017-3206
Telephone:  800-842-2733

**Endorsement to your Deferred Unit-Annuity Certificate**

Effective Date: Upon receipt

Please read this endorsement and attach it to your certificate. The purpose of this endorsement is to clarify the provisions of your certificate pertaining to the payment of death benefits. It does not take away any of the rights established under your certificate.

The value of any death benefit payments made under your certificate will be determined, in accordance with the Rules of the Fund, based on the value of the accumulation units to be paid, or converted to a unit-annuity, as of the date such payment or conversion is to be effective.

*Roger W. Ferguson, Jr.*

*President and*
*Chief Executive Officer*

CREF-DA-DB-END

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 138 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-2892 Filed 03/28/16    Page 133 of 157
PageID: 1116

COLLEGE RETIREMENT EQUITIES FUND
(CREF)
730 Third Avenue, New York, NY 10017-3206

**Endorsement to Your CREF Retirement Unit-Annuity Certificate**

This endorsement changes some of the provisions of your certificate and becomes part of it. The primary purpose of this endorsement is to make changes resulting from the Economic Growth and Tax Relief Reconciliation Act of 2001. Please read this endorsement and attach it to your certificate.

*The Right to a Tax-Free Rollover provision is replaced with the following:*

**Right to a Tax-Free Rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your certificate which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan. An eligible retirement plan is, to the extent permitted by law, a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408, or to the extent that the plan sponsor is a state or local government, Section 457(b).

Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your certificate will be governed by the laws and regulations then applicable.

*The Premium Amount provision is modified as follows:*

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in section 402(g) of the IRC, or as otherwise permitted by law. CREF will refund the accumulated value of all excess premiums made to this certificate, as required by law.

Your right to apply distributions from other plans to this certificate as direct rollovers under the IRC may be limited by the terms of the employer plan under which premiums are remitted to this certificate.

*The portion of the Methods of Payment of the Death Benefit provision that deals with the date by which a method must be chosen is modified as follows:*

The distribution of the death benefit under a method of payment must be made in such a form and begin at such date as meets the requirements of the IRC and the regulations thereunder. If such method of payment has not been chosen to begin by that date, we will elect a method of payment in accordance with the requirements of the IRC and any regulations thereunder.

*Herbert M. Allison*

*Chairman, President, and*
*Chief Executive Officer*

EGG-001-CRA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 139 of 267
Case 3:15-cv-06726-RK-JBD    Document 4-1    Filed 03/28/16    Page 134 of 157
PageID: 6893
PageID: 1117

COLLEGE RETIREMENT EQUITIES FUND
(CREF)
730 Third Avenue, New York, New York 10017-3206

Endorsement to your CREF Unit-Annuity Certificate
Added to all Retirement Unit-Annuities, Supplemental Retirement Unit-Annuities, Group
Retirement Unit-Annuities, Group Supplemental Retirement Unit-Annuities, and Rollover
Individual Retirement Unit-Annuities certificates.

Effective Date: December 31, 1997

This document, called an "endorsement", changes some of the provisions of your certificate
and becomes part of it. It does not take away any of the rights established under your
current certificate. It is important that you read the endorsement in conjunction with your
certificate. If any other provision of the certificate conflicts with this endorsement, this
endorsement will govern.

*The Internal Transfers provision of your certificate is modified by adding the following:*

You may transfer some or all of your Accumulation Units from a CREF Account under
your certificate to TIAA to purchase a guaranteed lifetime annuity income. You may
transfer to purchase annuity income at any time before your Annuity Starting Date, but
if your certificate is a Group Retirement Unit-Annuity certificate, you may not transfer
any earlier than the earliest date you are allowed to begin annuity income under your
Employer's Retirement Plan. The guaranteed benefit for the TIAA contract will be
determined on whichever of these bases produces the largest guaranteed payments:

A)  (1)   interest at the effective annual rate of 2%;
    (2)   mortality according to the Annuity 2000 mortality table (TIAA Merged
          Gender Mod A), with ages set back one year for each completed year
          between January 1, 1997 and the effective date of the Internal Transfer;
          and
    (3)   a charge of 3.5% for expenses and contingencies;

B)  the basis applicable to Internal Transfers to the Traditional Annuity under TIAA
    Retirement Annuity contracts issued on the effective date of the Internal
    Transfer, if any; and

C)  the interest rate, mortality table, and charge for contingencies and expenses in
    use for any individual single premium immediate annuities being offered by
    TIAA when the payments start.

*John H. Biggs*

*Chairman and*
*Chief Executive Officer*

C996.2
CREF DA Transfers to TIAA                                                    Ed. 12-97

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 140 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-2894 Filed 03/28/16    Page 135 of 157
PageID: 1118

A 028

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

### COLLEGE RETIREMENT EQUITIES FUND
### (CREF)
730 Third Avenue, New York, New York 10017-3206

Endorsement to your CREF Retirement Unit-Annuity Certificate

Effective Date: Date of Issue

This endorsement is part of your agreement with CREF, which also includes any prior endorsements. Please read this endorsement, then attach it to your certificate.

The purpose of this endorsement is to introduce a new CREF Account, and to make changes to the latest Annuity Starting Date and Premium Amount provisions, as required by federal legislation enacted in 1996. We have also added a provision describing tax-free rollovers and clarified the provisions on transfers within the TIAA-CREF system.

From now on, unless we indicate otherwise, any references in your certificate to the term "transfer" should be understood to refer to the term "Internal Transfer" described below.

*The Accounts provision is modified by adding the Inflation-Linked Bond Account as follows:*

Accounts.  CREF maintains the following eight investment Accounts, each with its own distinct investment portfolio:

The CREF Stock Account maintains a broadly diversified portfolio consisting primarily of common stocks.

The CREF Money Market Account maintains a portfolio consisting primarily of short-term debt securities and money market instruments.

The CREF Bond Market Account maintains a portfolio consisting primarily of investment grade fixed-income securities.

The CREF Social Choice Account maintains a portfolio consisting of common stocks, investment grade fixed-income securities and short-term debt securities.

The CREF Global Equities Account maintains a broadly diversified portfolio consisting primarily of foreign and domestic common stocks.

The CREF Growth Account maintains a portfolio consisting primarily of common stocks that we believe present the opportunity for exceptional growth.

The CREF Equity Index Account maintains a portfolio consisting primarily of domestic stocks selected to track the overall U.S. stock market.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 141 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6895Filed 03/28/16    Page 136 of 157
PageID: 1119

## Endorsement to Your CREF
## Retirement Unit-Annuity Certificate

The **CREF Inflation-Linked Bond Account** maintains a portfolio consisting primarily of inflation-indexed bonds issued by the U.S. Government and its agencies, foreign governments and other corporate entities.

In the future, CREF may establish other Accounts with other investment portfolios.

*The following terms are added to the Terms Used in This Certificate:*

Your **Companion TIAA Contract** is the Retirement Annuity contract, if any, issued to you on the same date this certificate was issued. TIAA is a companion organization to CREF.

Your **Required Beginning Date** is the latest date on which you can begin to receive your Accumulation in accordance with the minimum distribution rules of the IRC, without being subject to a federal excise tax. Generally, it is the April 1 following the calendar year in which you attain 70½ or, if later, the April 1 following the calendar year in which you retire.

*The term Transfers is replaced with the following:*

An **Internal Transfer** is the movement of accumulations between the CREF Accounts, or between this certificate and your Companion TIAA Contract. The provisions on Internal Transfers are set forth below.

*The Premium Amount provision is modified by adding the following:*

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in Section 402(g) of the IRC. CREF will refund the accumulated value of all excess premiums made to this certificate, as required by law.

*The provisions concerning Annuity Starting Date, Changing Your Annuity Starting Date, and Starting Your Unit-Annuity Income are modified by the following:*

The **Annuity Starting Date** is the date you exchange Accumulation Units for Annuity Units in order to provide Unit-Annuity payments, or the date you apply your Accumulation Units to a Minimum Distribution Option contract. Any time before your Annuity Starting Date, you may change your Annuity Starting Date to a date after the change, but not later than your Required Beginning Date.

If the requirements for starting your income have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to a date after these requirements have been completed or, if earlier, to your Required Beginning Date.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 142 of 267
Case 3:15-cv-06726-RK-JBD    Document 16896  Filed 03/28/16    Page 137 of 157
PageID: 1120

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

The latest Annuity Starting Date on which you may choose an Income Option that is contingent on your life is the first day of the month in which you attain age 90.

*The Transfers provision is replaced with the following:*

Internal Transfers. Any time before your Annuity Starting Date, you may transfer some or all of your Accumulation Units from a CREF Account under your certificate to purchase Accumulation Units in one of the other CREF Accounts under your certificate, or to your Companion TIAA Contract. Any Internal Transfer to TIAA is subject to the terms of your Companion TIAA Contract. CREF may limit Internal Transfers from each Account to not more than one in each calendar quarter.

For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to transfer to an account other than the CREF Stock Account or the CREF Money Market Account may be limited in accordance with the Rules of the Fund.

You may transfer your entire Accumulation in an Account, or any part thereof not less than $1,000.

An Internal Transfer will be effective as of the end of the Business Day in which CREF receives, in a form acceptable to CREF, your request for an Internal Transfer. You may defer the effective date of the Internal Transfer until any Valuation Day following the date on which we receive your request. CREF will determine all values as of the end of the effective date. You can't revoke a request for an Internal Transfer after its effective date.

The number of your Accumulation Units will be reduced by the number of units Transferred. If all of your Accumulation Units under your certificate are withdrawn as an Internal Transfer, all obligations of CREF to you under this certificate are fulfilled.

*The Payment of the Lump-sum Benefit provision is modified by adding the following:*

You may choose to defer the effective date of the Lump-sum Benefit until any Valuation Day following the date on which we receive the above requirements, and all values will be determined as of the end of such effective date.

The Lump-sum Benefit may be paid to:

A) you as a cash withdrawal;
B) another funding vehicle as a direct transfer under the federal tax law; or
C) a CREF Rollover Individual Retirement Annuity certificate or another funding vehicle as a tax-free rollover as described in the Right to a Tax-Free Rollover provision below.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 143 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6897 Filed 03/28/16    Page 138 of 157
PageID: 1121

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

*The following provision is added to the General Provisions:*

**Right to a Tax-Free Rollover.** If you (or your surviving spouse or alternate payee under a qualified domestic relations order) receive a distribution from your certificate which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), you (or your surviving spouse or alternate payee under a qualified domestic relations order) may elect to have any portion of it paid as a direct rollover to an eligible retirement plan, as described below.

An eligible retirement plan is:
   A) an individual retirement account or annuity described in IRC Section 408;
   B) if your certificate is part of a tax deferred annuity plan described in IRC Section 403(b), another such tax deferred annuity plan that accepts the eligible rollover distribution; or
   C) if your certificate is part of a qualified plan described in IRC Section 401(a) or 403(a), another such qualified plan that accepts the eligible rollover distribution.

An eligible retirement plan for a surviving spouse is only an individual retirement account or annuity described in IRC Section 408.

*John H. Biggs*

*Chairman and
Chief Executive Officer*

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 144 of 267
Case 3:15-cv-06726-RK-JBD    Document 31-6898 Filed 03/28/16    Page 139 of 157
PageID: 1122

Endorsement to Your CREF Unit-Annuity Certificate

## COLLEGE RETIREMENT EQUITIES FUND
### (CREF)
730 Third Avenue, New York, New York 10017-3206

**Endorsement to Retirement Unit-Annuity Certificate, Supplemental Retirement Unit-Annuity Certificate, Group Retirement Unit-Annuity Certificate, Group Supplemental Retirement Unit-Annuity Certificate, Rollover Individual Retirement Unit-Annuity Certificate, Minimum Distribution Annuity Certificate and Accumulation-Unit Deposit Certificate**

This endorsement is part of your agreement with CREF, which also includes any prior endorsements. The purpose of an endorsement is to make changes to the provisions of your certificate. Please read this endorsement, then attach it to your certificate.

The Accounts provision is modified by adding the Growth and Equity Index Accounts, available as of July 1, 1994, as follows:

**Accounts.** CREF maintains the following seven investment Accounts, each with its own distinct investment portfolio:

The CREF Stock Account maintains a broadly diversified portfolio consisting primarily of common stocks.

The CREF Money Market Account maintains a portfolio consisting primarily of short-term debt securities and money market instruments.

The CREF Bond Market Account maintains a portfolio consisting primarily of investment grade fixed income securities.

The CREF Social Choice Account maintains a portfolio consisting primarily of common stocks, investment grade fixed income securities, and short-term debt securities.

The CREF Global Equities Account maintains a broadly diversified portfolio consisting primarily of foreign and domestic common stocks.

The CREF Growth Account maintains a portfolio consisting primarily of common stocks that present the opportunity for exceptional growth.

The CREF Equity Index Account maintains a portfolio consisting primarily of domestic stocks selected to track the overall U.S. stock market.

In the future, CREF may establish other Accounts with other investment portfolios.

*John H. Biggs*

Chairman and
Chief Executive Officer

C996
CREF ACCOUNTS

Ed. 7-94

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 145 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-99 Filed 03/28/16    Page 140 of 157
PageID: 1123

Endorsement to Your CREF
Retirement Unit-Annuity Certificate                        Page 1 of 3

## COLLEGE RETIREMENT EQUITIES FUND
### (CREF)
730 Third Avenue, New York, New York 10017-3206

### Endorsement to CREF Retirement Unit-Annuity Certificates

### Effective Date: July 1, 1994

This endorsement is part of your agreement with CREF, which also includes any prior endorsements. The purpose of an endorsement is to make changes to the provisions of your certificate. Please read this endorsement, then attach it to your certificate.

A new option is added to the Income Options provision:

> **Minimum Distribution Annuity.** This Income Option is designed to enable you to meet the minimum distribution requirements under federal tax law. A payment will be made to you each year until your Accumulation is entirely paid out, or until your prior death. If required to meet the minimum distribution requirements, an initial payment will be made on the Annuity Starting Date, generally on or before the April 1 following the calendar year in which you reach age 70½. This option may not provide a lifetime income in all situations.
>
> If you die before the Accumulation has been entirely paid out, a death benefit equal to the remaining Accumulation will be paid to the Beneficiary you name when electing this option.
>
> This option is only available when you must begin receiving income in order to avoid penalties under federal tax law.

The Unit-Annuity for a Fixed Period portion of the Income Options provision is replaced with the following:

> **Unit-Annuity for a Fixed Period.** A payment will be made to you each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen, no further payments will be made. If you die before the end of the period chosen, the monthly payments will continue to the end of that period, as explained in your certificate. A Unit-Annuity for a Fixed Period is subject to the terms set forth in your certificate for the other types of Unit-Annuities. The Rules of the Fund may limit your right to receive a Unit-Annuity for a Fixed Period.

The term Termination of Employment is replaced with the following:

> Termination of Employment is a bona fide cessation of an employment relationship with your Employer. Dissolution or modification of the Retirement Plan; changes in the name

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 146 of 267
Case 3:15-cv-06726-RK-JBD    Document 191-6900 Filed 03/28/16    Page 141 of 157
PageID: 1124

Endorsement to Your CREF
Retirement Unit-Annuity Certificate                                    Page 2 of 3

or affiliation of your Employer; leaves of absence, with or without pay; vacations; or other events not in fact a termination of employment will not be considered a Termination of Employment.

Two new methods are added to the Methods of Payment of the Death Benefit provision:

**Single-sum Payment.** The Death Benefit will be paid to your Beneficiary in one sum.

**Minimum Distribution Annuity.** This Method of Payment is designed to enable your Beneficiary to meet the minimum distribution requirements under federal tax law. A payment will be made for each year that a distribution is required until your Accumulation is entirely paid out, or until the prior death of your Beneficiary. This method may not provide a lifetime income in all situations.

If your Beneficiary dies before your Accumulation has been entirely paid out, the remaining accumulation will be paid in one sum to the payee named to receive it.

The Lump-sum Benefits provision is replaced with the following:

1. **Availability of Lump-sum Benefits.** On or before the Annuity Starting Date you may choose to withdraw, as a Lump-sum Benefit, all or part of a specified Account's Accumulation Units. The Rules of the Fund may limit your right to a Lump-sum Benefit. Any choice of Lump-sum Benefit must be made by written notice to CREF.

If you are married and your Accumulation is subject to ERISA, your right to receive a Lump-sum Benefit is subject to the rights of your spouse as described in your certificate.

2. **Payment of the Lump-sum Benefit.** If you choose the Lump-sum Benefit, the minimum amount you may withdraw as a Lump-sum Benefit from a CREF Account is $1,000, or, if less, the value of all Accumulation Units in an Account. All values will be determined as of the end of the Business Day in which CREF has received, in a form acceptable to CREF:

A. your request for a Lump-sum Benefit;
B. verification of your eligibility for a Lump-sum Benefit for those Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan; and
C. if your Accumulation is subject to the ERISA requirements described in your certificate, a Waiver of Spouse's Rights and consent to that waiver by your spouse, or proof that you are not married.

You may choose to defer the effective date of the Lump-sum Benefit until the last day of any month following the date on which we receive the above requirements, and all values will be determined as of the end of such effective date. The request for a Lump-sum Benefit cannot be revoked after the effective date of such Lump-sum Benefit.

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 147 of 267
Case 3:15-cv-06726-RK-JBD   Document 51-6901 Filed 03/28/16   Page 142 of 157
PageID: 1125

Endorsement to Your CREF
Retirement Unit-Annuity Certificate                                    Page 3 of 3

    If all of your Accumulation Units under this certificate are withdrawn as a Lump-sum Benefit, all obligations of CREF to you under this certificate are fulfilled.

The portion of the Transfers provision relating to frequency of transfers is modified to read as follows:

    CREF may limit Transfers from each Account to not more than one in each calendar quarter.

*John H. Biggs*

*Chairman and*
*Chief Executive Officer*

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 148 of 267
Case 3:15-cv-06726-RK-JBD    Document 316-2 Filed 03/28/16    Page 143 of 157
PageID: 1126

## COLLEGE RETIREMENT EQUITIES FUND
### (CREF)
730 Third Avenue, New York, New York 10017

### Endorsement to CREF Retirement Unit-Annuity Certificate

#### Effective Date: July 1, 1992

This endorsement adds the following to the corresponding provisions of your certificate and/or adds the following provisions to your certificate. This endorsement is to be read in conjunction with your certificate.

### CREF GLOBAL EQUITIES ACCOUNT

As of the effective date, CREF maintains, in addition to its other Investment Accounts, the Global Equities Account.

The CREF Global Equities Account maintains a broadly diversified investment portfolio consisting primarily of foreign and domestic common stocks. This Account maintains separate Accumulation Unit and Annuity Unit values. All CREF Annuity Income Options and Methods of Payment of the Death Benefit are available from the Global Equities Account. The Rules of the Fund may limit your right to allocate premiums to this Account, Transfer funds to this Account, or choose an Income Option from this Account. CREF may delete the Global Equities Account or stop providing Unit-Annuities in the Global Equities Account.

### RESTRICTIONS ON DISTRIBUTION
### OF ACCUMULATION ARISING FROM ELECTIVE DEFERRALS

This certificate may be used as part of a tax-deferred annuity plan as specified under IRC Section 403(b). IRC Section 403(b) prohibits the distribution to you of the portion, if any, of your Accumulation equal to:

  A) amounts attributable to funds transferred to this certificate from a custodial account established under IRC Section 403(b)(7); plus
  B) amounts attributable to premiums paid to an IRC Section 403(b)(1) annuity contract as elective deferrals under a salary reduction agreement (within the meaning of IRC Section 403(b)(11)); less
  C) the value, if any, of the amounts described in (B) determined as of December 31, 1988;
until you:

  (1) attain age 59½;
  (2) separate from service of the employer under whose plan the aforementioned portion is attributable;
  (3) die; or
  (4) become disabled within the meaning of IRC Section 72(m)(7).

Any request for an early withdrawal due to disability must be submitted with evidence of the disability on forms satisfactory to CREF and not inconsistent with applicable law.

*Chairman and*
*Chief Executive Officer*

C995-DA
Ed. 7-92

CREF DA

**COLLEGE RETIREMENT EQUITIES FUND**
**(CREF)**

730 Third Avenue, New York, New York 10017

Endorsement to CREF Retirement Unit-Annuity Certificate

Effective Date: March 1, 1991

This endorsement adds the following to the corresponding provisions of your certificate and/or adds the following provisions to your certificate. This endorsement is to be attached to and read in conjunction with your certificate and any prior endorsements.

**Annuity Units.** The CREF Stock, CREF Money Market, and CREF Social Choice Accounts each maintain separate Annuity Units. All CREF Annuity Income Options and Methods of Payments of the Death Benefit are available from these Accounts. For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to choose a Unit-Annuity Income Option from the CREF Social Choice Account may be limited in accordance with the Rules of the Fund.

## DELETION OF A CREF ACCOUNT OR A UNIT-ANNUITY

CREF may delete the CREF Bond Market Account, the CREF Social Choice Account, and any future Account. Also, CREF may stop providing Unit-Annuities in the CREF Social Choice Account or in any future Account.

**Accumulation.** If you have Accumulation Units in a CREF Account that is deleted, you must transfer them to another CREF Account. If you do not make a choice, CREF will transfer your Accumulation in such Account to the CREF Money Market Account.

**Unit-Annuity.** If a CREF Account is deleted or if a CREF Account stops providing Unit-Annuities, any Annuity Units in such Account must be converted to a Unit-Annuity in any other CREF Account that maintains Annuity Units. If no choice is made, any Unit-Annuity in the Account will be converted to a Unit-Annuity in the CREF Money Market Account. All elections and choices made in connection with an Income Option or a Method of Payment of the Death Benefit and in effect as of the date of conversion will remain in effect. The number of Annuity Units in the Account to which the Unit-Annuity is converted will be determined in accordance with the Rules of the Fund.

Chairman and
Chief Executive Officer

C997-DA
Ed. 3-91

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 150 of 267
Case 3:15-cv-06726-RK-JBD    Document 16904    Filed 03/28/16    Page 145 of 157
PageID: 1128

COLLEGE RETIREMENT EQUITIES FUND
(CREF)

730 Third Avenue, New York, New York 10017

Endorsement to CREF Retirement Unit-Annuity Certificate

Effective Date: March 1, 1990

## CREF ACCOUNTS

**Accounts.** CREF maintains the following four investment Accounts, each with its own distinct investment portfolio:

> The CREF Stock Account maintains a broadly diversified portfolio consisting primarily of common stocks.

> The CREF Money Market Account maintains a portfolio consisting primarily of short-term debt securities.

> The CREF Bond Market Account maintains a portfolio consisting primarily of investment grade bonds.

> The CREF Social Choice Account maintains a portfolio consisting primarily of common stocks, investment grade bonds, and short-term debt securities.

In the future, CREF may establish other Accounts with other investment portfolios.

## TERMS USED IN THIS CERTIFICATE

**Accumulation Units.** Each CREF Account maintains a separate Accumulation Unit value.

**Annuity Units.** The CREF Stock and CREF Money Market Accounts each maintain separate Annuity Units. All CREF Annuity Income Options and Methods of Payment of the Death Benefit are available from the CREF Stock Account and from the CREF Money Market Account.

A **Valuation Day** is a day on which the dollar values of the Accumulation Units in the CREF Accounts are established. The procedure for determining Valuation Days is contained in the Rules of the Fund.

A **Business Day** is any day that the New York Stock Exchange is open for trading. A Business Day ends at 4:00 p.m. New York time, or, if earlier, the time trading on the New York Stock Exchange closes for that day.

**Employer.** Your Employer is the organization that remits premiums to this certificate. More than one Employer may have remitted premiums to this certificate.

**Termination of Employment** for the purpose of determining the availability of a Lump-sum Benefit or a Unit Annuity for a Fixed Period, is a bona fide cessation of an employment relationship with your Employer, including retirement. Dissolution or modification of the Retirement Plan; changes in the name or affiliation of your Employer; leaves of absence, with or without pay; vacations; or other events not in fact a termination of employment will not be considered a Termination of Employment.

A **Retirement Plan** is an Employer's plan, qualified under Section 401(a), 403(a), or 403(b) of the Internal Revenue Code of 1986 as amended, for providing retirement benefits for employees.

A **Funding Vehicle** is an annuity or an investment fund established to provide retirement benefits from monies remitted under a Retirement Plan.

Case 3:15-cv-06726-RK-JBD     Document 255-3     Filed 04/17/25     Page 151 of 267
Case 3:15-cv-06726-RK-JBD     Document 51-6905 Filed 03/28/16     Page 146 of 157
PageID: 1129

A Transfer is the use of the value of some or all of your Accumulation Units to purchase fixed–dollar benefits under a TIAA annuity contract, to purchase Accumulation Units in another CREF Account, or to purchase benefits through another Funding Vehicle. The conditions applying to Transfers are set forth below.

## ALLOCATION OF PREMIUMS

You may allocate any whole number percentage of a premium to a CREF Account. CREF will credit your premiums among the Accounts according to the most recent instructions CREF has received from you. For premiums remitted on your behalf as part of a Retirement Plan, your right to allocate such premiums to the Bond Market Account, to the Social Choice Account, and to any future CREF Account may be limited in accordance with the Rules of the Fund.

## TRANSFERS

You may Transfer some or all of your Accumulation Units from a CREF Account (a) to purchase Accumulation Units in one of the other CREF Accounts, (b) to purchase a TIAA fixed–dollar annuity, or (c) to Transfer to a Funding Vehicle not offered by CREF or TIAA.

Your request for a Transfer must be made before the Annuity Starting Date and is subject to the following conditions:

    (A) the Transfer will take effect and all values will be determined as of the end of the Business Day in which CREF receives your request for Transfer, or, if you choose, the last day of the current month or of a specified future month;

    (B) the request for a Transfer cannot be revoked after the effective date of such Transfer; and

    (C) if less than the full Accumulation in an Account is being Transferred, the amount Transferred must be at least $1,000.

CREF reserves the right to limit Transfers to not more than twice in any calendar year.

For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to Transfer to the Bond Market Account, to the Social Choice Account, to any future CREF Account, and/or to a Funding Vehicle not offered by CREF or TIAA, may be limited in accordance with the Rules of the Fund.

## LUMP–SUM BENEFITS

After Termination of Employment, you may choose to receive a Lump–sum Benefit from some or all of a specified Account's Accumulation Units. For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to a Lump–sum Benefit may be limited in accordance with the Rules of the Fund. Your request for a Lump–sum Benefit must be made before the Annuity Starting Date, and is subject to the following conditions:

    (A) all values will be determined as of the end of the Business Day in which CREF has received:

        (1) your request for a Lump–sum Benefit;
        (2) verification of Termination of Employment; and
        (3) all premiums to be paid to your certificate under your Retirement Plan;

    or, if you choose, the last day of the then–current month or of a specified future month;

    (B) the request for a Lump–sum Benefit cannot be revoked after the effective date of such Lump–sum Benefit; and

    (C) if the Lump–sum Benefit is less than the full Accumulation in an Account, the Lump–sum Benefit must be at least $1,000.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 152 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6906 Filed 03/28/16    Page 147 of 157
PageID: 1130

## UNIT ANNUITY FOR A FIXED PERIOD

After Termination of Employment, you may choose to receive a Unit Annuity for a Fixed Period from some or all of a specified Account's Accumulation Units. A payment will be made to you each month for a fixed period of not less than five or more than thirty years, as chosen. At the end of the period chosen, no further payments will be made. If you die before the end of the period chosen, the monthly payments will continue to the end of that period. A Unit Annuity for a Fixed Period is subject to the terms set forth in your certificate for the other types of Unit Annuities. For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to receive a Unit Annuity for a Fixed Period may be limited in accordance with the Rules of the Fund.

## CREF'S RIGHT TO SPLIT YOUR CERTIFICATE

If your right to a Lump-sum Benefit, a Unit Annuity for a Fixed Period, or a Transfer does not apply uniformly to all your Accumulation Units, CREF reserves the right to split your certificate into two or more CREF certificates. A Lump-sum Benefit, a Unit Annuity for a Fixed Period, and certain Transfers may not be available to you until CREF has split your certificate.

## PARTICIPANT INSTRUCTIONS

CREF will specify the acceptable form of instructions for requesting a Transfer, a Lump-sum Benefit, a Unit Annuity for a Fixed Period, and the Allocation of Premiums. CREF may reasonably rely on your instructions, where properly given, for a Transfer, a Lump-sum Benefit, a Unit Annuity for a Fixed Period, and the Allocation of Premiums.

## DELETION OF A CREF ACCOUNT

CREF reserves the right to delete the CREF Bond Market Account, the CREF Social Choice Account, and any future Account. As of the date of such deletion, CREF will Transfer your Accumulation, if any, in such Account, to the CREF Money Market Account unless you notify CREF otherwise.

## COMPLIANCE WITH LAWS AND REGULATIONS

CREF will administer this certificate to comply with all laws and regulations pertaining to the terms and conditions of this certificate. If this certificate conflicts with any applicable law or regulation, such law or regulation will prevail.

Chairman and
Chief Executive Officer

C998-DA
Ed. 3-90

CREF DA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 153 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6907 Filed 03/28/16    Page 148 of 157
PageID: 1131

COLLEGE RETIREMENT EQUITIES FUND
730 Third Avenue, New York, New York 10017

Endorsement to all Retirement Unit Annuity Certificates and all Supplemental Retirement Unit Annuity Certificates.
**Effective Date: April 1, 1988**

As of the effective date, CREF maintains two separate investment Accounts. You, the Participant, may specify to which Accounts premiums are to be allocated and may transfer the value of your Accumulation Units between the CREF Accounts. The following provisions are added to your certificate:

**Accounts.**  CREF maintains these separate Accounts each with distinct investment portfolios:

the Stock Account investing primarily in a broadly diversified portfolio of common stocks; and

the Money Market Account investing primarily in money market instruments.

A Valuation Day is a day on which values of Accumulation Units in the CREF Accounts are established. The procedure for determining Valuation Days is contained in the Rules of the Fund.

A Business Day is any day that the New York Stock Exchange is open for trading. A Business Day ends at 4:00 p.m. New York time, or, if earlier, the time trading on the New York Stock Exchange closes for that day.

**Transfer Between the Two CREF Accounts.**  You may have CREF use the value of some or all of your Accumulation Units in either Account to purchase Accumulation Units in the other CREF Account at their then current value. The request for such Transfer must be made before the Annuity Starting Date and is subject to the following conditions:

A)   The Transfer will take effect and all values determined as of the end of the Business Day in which CREF receives your request for Transfer or, if you choose, the last day of the current month or of a specified future month;

B)   The request for a Transfer cannot be revoked after the effective date of such Transfer; and

C)   If less than the full Accumulation in an Account is being transferred, the amount transferred from one Account to the other must be at least $1,000.

**Allocation of Premiums.**  Each premium will be allocated between CREF's Accounts in accordance with your most recent instructions that have been received by CREF prior to or accompanying the premium. You may allocate any whole percentage of a premium to an Account. However, if premiums are remitted on your behalf as part of an employer's benefit plan, your right to allocate such premiums may be limited.

In addition, the following amendments are made to your certificate:

**Annuity Units.**  Separate Annuity Units and values will be maintained in the Stock and Money Market Accounts. All CREF Annuity Income Options and Methods of Payment of the Death Benefit are available in these Accounts.

**Accumulation Units.**  Separate Accumulation Units and values will be maintained in each CREF Account. You must specify from which Account each Transfer, and under the Supplemental Retirement Unit Annuity each Withdrawal, is to be made.

**Effective Dates.**  A Transfer to TIAA, and under the Supplemental Retirement Unit Annuity a Withdrawal or Surrender, will take effect and all values determined as of the end of the Business Day in which CREF receives your request for such Transfer, Withdrawal or Surrender; or if you choose, the last day of the current month or of a specified future month.

*Chairman and*
*Chief Executive Officer*

C899.1
Ed. 4-88

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 154 of 267
Case 3:15-cv-06726-RK-JBD    Document 51-6908 Filed 03/28/16    Page 149 of 157
PageID: 1132

## COLLEGE RETIREMENT EQUITIES FUND
730 Third Avenue, New York, New York 10017

**Endorsement to all Retirement Unit Annuity Certificates, all Supplemental Retirement Unit Annuity Certificates, all Group Retirement Unit Annuity Certificates and all Accumulation Unit Deposit Certificates.**

Effective at the close of business on December 31, 1986, the Accumulation Unit value will be restated. The number of Accumulation Units credited to you will be increased so that your Accumulation based on the new Accumulation Unit value will be equal to your Accumulation based on the old Accumulation Unit value.

Effective on January 1, 1987, net dividend income will be reflected in the value of each Accumulation Unit and will no longer be used to purchase additional Accumulation Units. The Accumulation Unit value will then vary in accordance with net dividend income, as well as capital gains and losses.

*Chairman and*
*Chief Executive Officer*

C999
Ed. 2-87

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 155 of 267
Case 3:15-cv-06726-RK-JBD    Document 316-909 Filed 03/28/16    Page 150 of 157
PageID: 1133

COLLEGE RETIREMENT EQUITIES FUND
730 Third Avenue, New York, New York 10017

ENDORSEMENT ATTACHED TO RETIREMENT UNIT-ANNUITY CERTIFICATE

In order to conform to the requirements of the Tax Reform Act of 1984 and the Retirement Equity Act of 1984, this CREF certificate is subject to the following conditions notwithstanding any statements to the contrary which may appear within the certificate:

(1) CHOICE OF INCOME OPTIONS AND METHODS OF PAYMENT OF THE DEATH BENEFIT

The availability of the Income Options and Methods of Payment of the Death Benefit set forth in the certificate is subject to the applicable restrictions and distribution requirements of the Internal Revenue Code of 1954 ("IRC"), as amended, and the rulings and regulations issued thereunder, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, and the rulings and regulations issued thereunder.

(2) ANNUITY STARTING DATE

Your Annuity Starting Date may not be deferred beyond April 1 of the calendar year following the calendar year in which you attain age 70½.

(3) SPOUSE'S RIGHT TO BENEFITS

If all or part of your Accumulation is attributable to contributions made under a retirement plan or tax deferred annuity plan subject to ERISA and a plan contribution has been paid on your behalf after August 22, 1984; then, only to the extent required by the IRC or ERISA, your rights to choose an Income Option and to name a beneficiary for the Death Benefit are subject to your spouse's right, if any, to benefits as follows:

Spouse's Survivor Unit Annuity Income.   If you are married on the Annuity Starting Date, your Income Benefit must be paid under a Survivor Unit Annuity Option with your spouse as Second Participant unless we receive, in form satisfactory to CREF, a waiver of your spouse's right to a Survivor Unit Annuity Income with your spouse's written consent or verification that your spouse cannot be located.

Spouse's Survivor Death Benefit.   If you die before the Annuity Starting Date and you are then married, the payment of the Death Benefit to your named beneficiary is subject to your spouse's right to receive a Death Benefit of a unit-annuity which is the actuarial equivalent of one-half of the portion of the Accumulation, if any, attributable to contributions made under a plan subject to ERISA, provided a plan contribution has been paid after August 22, 1984. Your spouse's right to a Survivor Death Benefit may be waived, in form satisfactory to CREF, with your spouse's written consent or verification that your spouse cannot be located. A waiver of the Survivor Death Benefit may not be made prior to the year in which you attain age 35, or, if earlier, your termination of employment with the institution then remitting premiums for this certificate.

Verification of your marital status may be required, in form satisfactory to CREF, for purposes of establishing your spouse's right to benefits or a waiver of these rights. You may revoke a waiver of your spouse's right to benefits at any time during your lifetime and before the Annuity Starting Date. Your spouse may not revoke a consent after the consent has been given.

C1090.2
H.387

CREF-DA

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 156 of 267
Case 3:15-cv-06726-RK-JBD    Document 151-6910 Filed 03/28/16    Page 151 of 157
PageID: 1134

(4) **AUTOMATIC BENEFICIARY DESIGNATION**

If you die before the Annuity Starting Date never having named a beneficiary, your estate and your surviving spouse become the beneficiaries as follows:

(a) if you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

(b) if you leave a surviving spouse, your spouse will receive a Death Benefit, payable under one of the Methods of Payment of the Death Benefit, which is the actuarial equivalent of one-half of the Accumulation with the remainder of the Accumulation being paid to your estate in one sum.

(5) **METHOD OF PAYMENT OF THE DEATH BENEFIT**

The distribution of the Death Benefit under any Method of Payment must be made over the lifetime of your beneficiary or over a period not exceeding your beneficiary's life expectancy. The Death Benefit must be applied under a chosen Method of Payment within one year of the date of your death; otherwise payments will be made to your beneficiary beginning on the first day of the month in which the first anniversary of your date if death occurs under the Unit Annuity for a Fixed Period Method for a period of five years with payments made annually.

(6) **LIABILITY OF CREF**

Any action taken by CREF in good faith before receiving written notice of a waiver of rights included in this amendment, or of revocation of such waiver, will not subject CREF to liability because our acts were contrary to what was stated in such waiver or revocation.

The provisions of this amendment are effective January 1, 1985.

_Chairman and_
_Chief Executive Officer_

Case 3:15-cv-06726-RK-JBD     Document 255-3     Filed 04/17/25     Page 157 of 267
Case 3:15-cv-06726-RK-JBD     Document 81-6911 Filed 03/28/16     Page 152 of 157
PageID: 1135

## PART A: TERMS USED IN THIS CERTIFICATE

1. **Accumulation Units.** Each premium paid to your certificate will purchase a number of Accumulation Units determined in accordance with the Rules of the Fund. Before the Annuity Starting Date, your share of the net dividend and other income of CREF will purchase additional Accumulation Units that will be credited to you. The current value of each Accumulation Unit is based on the market value of CREF's investments and will be determined in accordance with the Rules of the Fund.

2. Your Accumulation is the value of all of your Accumulation Units. It will provide the benefits described in this certificate.

3. The **Annuity Starting Date** shown on page 3 is the date your lifetime income is scheduled to begin. The Date may be changed as explained in Sections 15 and 16.

4. An **Annuity Unit** is the unit of payment for all periodic benefits. The current value of an Annuity Unit will change from time to time to reflect changes in CREF'S investment, mortality and expense experience. The dollar value of any payment will be the product of the number of Annuity Units to be paid and the then current value of an Annuity Unit.

5. A **Unit Annuity** is a series of payments of the current value of a fixed number of Annuity Units. The number of Annuity Units to be paid and their then current value will be determined in accordance with the Rules of the Fund, using actuarial methods. The Options under which you may receive your Unit Annuity Income are described in Part C.

6. The **Second Participant** is the person you name, when starting to receive your income under a Survivor Unit Annuity Option, to receive a life income if he or she survives you. You may name your spouse, or any other person eligible under CREF's practices then in effect, to be a Second Participant.

7. The **Death Benefit** is the value of your Accumulation. It will be used to pay your beneficiary an income under one of the methods set forth in Part D if you die before the Annuity Starting Date.

8. A **Transfer** is the use of the value of some or all of your Accumulation Units to purchase fixed dollar benefits under a TIAA deferred or pay-out contract. The conditions applying to transfers are set forth in Part E.

9. The **Rules of the Fund** govern all matters affecting the interest of anyone in the Fund to the extent such matters are not specifically provided in this certificate. The Board of Trustees of CREF may amend the Rules of the Fund from time to time. Amendments to such Rules are effective only when approved by the Superintendent of Insurance of the State of New York as not being unfair, unjust, inequitable or prejudicial to the interest of anyone in the Fund. A copy of the Rules was furnished to you when this certificate was issued; you will be notified of all amendments to the Rules.

10. The **Commuted Value** is a one-sum payment made in lieu of a series of payments. The Commuted Value of a series of payments of Annuity Units is computed in accordance with the Rules of the Fund, in which it is referred to as the 'present value.'

## PART B: CERTIFICATE AND PREMIUMS

11. **The Certificate.** We have issued this certificate in return for your completed application and the first premium. Any endorsement or amendment of this certificate or waiver of any of its provisions will be valid only if in writing and signed by an Executive Officer or Registrar of CREF. All premiums and benefits are payable at CREF's home office in New York, NY.

12. **Premium Amount.** Premiums for this certificate may be paid in any amount not less than $25 each. You may change the amount or frequency of future premiums at any time. CREF will accept premiums any time before the Annuity Starting Date or your prior death.

13. **Unconditional Protection Against Lapse or Forfeiture.** Your certificate will not lapse after the first premium has been paid. If premiums cease, you continue to own all of your Accumulation Units.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 158 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-12 Filed 03/28/16    Page 153 of 157
PageID: 1136

14. Discontinuing and Resuming Premium Payments. Premiums may be stopped at any time without notice to CREF. Premiums may be resumed before the Annuity Starting Date without payment of any past due premium or penalty of any kind.

## PART C: YOUR UNIT ANNUITY INCOME

15. Changing Your Annuity Starting Date. Any time before you start to receive your Unit Annuity Income, you may change the Annuity Starting Date to the first of any month after the change, but not to a month later than the one following your seventy-first birthday. If you have not chosen an Annuity Starting Date prior to your sixty-fifth birthday, the Date will be the first of the month following that birthday.

16. Starting Your Unit Annuity Income. Payment of your Unit Annuity Income will begin as of the Annuity Starting Date you have chosen, if you are then living and:

A) you have sent us this certificate;
B) you have chosen one of the Income Options set forth in Section 17; and
C) we have received due proof of your age and, if you choose a Survivor Unit Annuity Option, the age of your Second Participant.

If A, B and C of this Section have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to the first of the month after A, B and C have been completed or to the first of the month following your seventy-first birthday, whichever comes first.

17. Income Options are the ways in which you may have your Unit Annuity Income paid to you. Any time before the Annuity Starting Date you may choose the Option you want. You may change your choice any time before payments begin, but once they have begun no change can be made.

Automatic Election Provision. If on the Annuity Starting Date determined in accordance with Sections 15 and 16, you have not chosen an Income Option, you will be deemed to have chosen the 'Life Unit Annuity with 10-Year Guaranteed Period' Option if you are then single, or the 'Half Benefit to Second Participant with 10-Year Guaranteed Period' Option if you are then married.

These are the Income Options from which you will choose. All of them provide a lifetime income for you, some provide that payments will continue for the lifetime of a Second Participant and some provide that payments will continue in any event during a guaranteed period as explained in Section 18:

Single Life Unit Annuity. A payment will be made to you each month as long as you live. All payments will cease at your death. This Option provides nothing for anyone after your death.

Life Unit Annuity with 10-, 15- or 20-Year Guaranteed Period. A payment will be made to you each month as long as you live. If you die before the end of the guaranteed period you have chosen, monthly payments will continue to the end of that period.

Survivor Unit Annuity Options. Under each of these Options a payment will be made to you each month as long as you live, and payments will continue for life to the Second Participant you have named if he or she survives you. After payments begin, you cannot change your choice of Annuity Units. The number of Annuity Units paid to you or a surviving Second Participant each month depends on which of these Options you choose:

Full Benefit to Survivor with 10-, 15- or 20-Year Guaranteed Period. At the death of either you or your Second Participant the monthly payments that continue to the survivor will be the full number of Annuity Units that would have been paid if both had lived. If you choose a guaranteed period and you and your Second Participant both die before the end of the period chosen, the full number of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

Two-thirds Benefit to Survivor with or without a 10-, 15- or 20-Year Guaranteed Period. At the death of either you or your Second Participant the monthly payments that continue to the survivor will be two-thirds the number of Annuity Units that would have been paid if both had lived. If you choose a guaranteed period

C1000.10
Ed. 1-85

Page 5
0A

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 159 of 267
Case 3:15-cv-06726-RK-JBD    Document 16-13 Filed 03/28/16    Page 154 of 157
PageID: 1137

and you and your Second Participant both die before the end of the period chosen, the two-thirds number of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

**Half Benefit to Second Participant with or without a 10-, 15- or 20-Year Guaranteed Period.** The full monthly number of Annuity Units will not change as long as you live. If your Second Participant survives you, he or she will receive monthly payments each month of one-half the number of Annuity Units you would have received if you had lived. If you choose a guaranteed period and you and your Second Participant both die before the end of the period chosen, the one-half number of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

18. **Payments to the End of a Guaranteed Period.** At the time you choose an Income Option, you name the person or persons to receive these payments. You may later change the named persons and, if you choose a Survivor Unit Annuity, after your death your surviving Second Participant may change the named persons unless you direct otherwise.

At the death of the last survivor of you and your Second Participant before the end of a guaranteed period you have chosen under one of the Survivor Unit Annuity Options, or at your death before the end of a guaranteed period under one of the other Income Options, the monthly payments due for the remainder of the guaranteed period will continue to the surviving person or persons named to receive them. The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is then living, the Commuted Value will be paid in one sum to the estate of the last survivor of you and your Second Participant if you chose a Survivor Unit Annuity Option, or to your estate if you chose one of the other Income Options.

If a person receiving these payments dies before the end of the guaranteed period, the Commuted Value of any payments still due that person will be paid to any other person or persons named to receive it. If no one has been named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

19. **The Number of Annuity Units** will be determined as of the Annuity Starting Date, in accordance with the Rules of the Fund, by: A) the value of your Accumulation Units at that time; B) the Income Option you choose; C) your age; D) if you choose one of the Survivor Unit Annuity Options, your Second Participant's age; E) if the Rules of the Fund provide for the use of sex-distinct mortality, your sex and that of any Second Participant; and F) the value of an Annuity Unit.

If your initial Unit Annuity payment would be less than $25, CREF will have the right to change to quarterly, semi-annual or annual payments, whichever would result in an initial payment of $25 or more and the shortest interval between payments.

## PART D: DEATH BENEFIT

20. **The Death Benefit.** If you die before the Annuity Starting Date, CREF will pay the Death Benefit to your beneficiary under one of the Methods of Payment set forth in Section 24. You may choose the Method during your lifetime as explained in Section 32. If you do not so choose, your beneficiary will make the choice when he or she becomes entitled to payments. You may change the Method at any time before payments begin. After your death, your beneficiary may also change the Method chosen by you, if you so provide. Any choice of Method or change of such choice must be made in writing as explained in Section 32.

21. **Naming Your Beneficiary.** Beneficiaries are persons you name, in form satisfactory to CREF, to receive the Death Benefit if you die before the Annuity Starting Date. You may designate different classes of beneficiaries, such as primary (first) and contingent (secondary). These classes set the order of payment. If a class contains more than one person, the Death Benefit will be paid to the then living persons in the class in equal shares, unless you provide otherwise. For example, if you die before the Annuity Starting Date, having named your spouse as primary beneficiary and 'children' as equal contingent beneficiaries, your spouse would receive the Death Benefit if he or she survived you. But if your spouse did not survive you, then your children would receive equal shares of the Death Benefit.

The terms 'children' or 'my children' may be used to name a class of beneficiaries, either primary or

Case 3:15-cv-06726-RK-JBD     Document 255-3     Filed 04/17/25     Page 160 of 267
Case 3:15-cv-06726-RK-JBD     Document 55-14   Filed 03/28/16     Page 155 of 157
PageID: 1138

contingent. Unless you specify otherwise, these terms will mean all children born of your marriage or marriages and any children legally adopted by you. The term 'children' also has the same inclusive meaning when used to name as beneficiaries the children of your spouse, your child, your brother or your sister.

If you name your estate as beneficiary, or if none of the beneficiaries you have named is alive at the time of your death, the Death Benefit will be paid to your estate in one sum.

If you die prior to the Annuity Starting Date never having named a beneficiary, your estate and your surviving spouse, if any, become the beneficiaries as follows:

A) if you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

B) if you leave a surviving spouse, your spouse will receive lifetime monthly payments of the number of Annuity Units he or she would have received as Second Participant if you had started to receive your Income Benefit as of the first day of the month in which you die, having chosen the 'Half Benefit to Second Participant with 10-Year Guaranteed Period' Option. The part of the Death Benefit not needed to provide this income to your spouse will be paid to your estate in one sum.

**22. Changing Your Beneficiary.** At any time before the Annuity Starting Date, you may change your beneficiary or add or delete beneficiaries as explained in Section 32.

**23. Payment of the Death Benefit.** Payment of the Death Benefit under one of the Methods set forth in Section 24 will start as of the first day of the month after we have received:

A) this certificate;

B) due proof of your death;

C) the choice of a Method of Payment as provided in Section 24; and

D) due proof of the beneficiary's age if the Method chosen pays a lifetime income.

**24. Methods of Payment.** The Death Benefit will be paid to your beneficiary under one of the Methods shown below.

**Single Life Unit Annuity.** A payment will be made to your beneficiary each month for life. All payments will cease at his or her death. This Method provides nothing for anyone after the death of your beneficiary.

**Life Unit Annuity with 10-, 15- or 20-Year Guaranteed Period.** A payment will be made to your beneficiary each month for life. If he or she dies before the end of the guaranteed period chosen, the monthly payments will continue to the end of that period as explained in Section 25.

**Unit Annuity for a Fixed Period.** A payment will be made to your beneficiary each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen the entire Death Benefit will have been paid out and no further payments will be made. If your beneficiary dies before the end of the period chosen, monthly payments will continue to the end of that period as explained in Section 25.

**Unit Deposit.** CREF will hold your beneficiary's Accumulation Units on deposit for a chosen period of not less than two nor more than thirty years. No periodic payments will be made under this Method. Additional Accumulation Units will be purchased in accordance with the Rules of the Fund from your beneficiary's share of the net dividend and other income of CREF. At the end of the period chosen, CREF will make a one-sum payment to your beneficiary. This one-sum payment will be the then current value of all Accumulation Units held by CREF for your beneficiary. If your beneficiary dies while any part of the Death Benefit is held by CREF, that amount will be payable as explained in Section 25.

Instead of a chosen period, the Accumulation Units may be held on deposit for 'the lifetime of the beneficiary,' with the one-sum payment made after the death of your beneficiary as explained in Section 25.

The value of the Death Benefit placed under this Method must be at least $5,000.

**Transfer to a TIAA Dollar Pay-out Contract.** CREF will transfer the Death Benefit to TIAA for the purchase of an individual pay-out contract on the life of the beneficiary in any form then being issued by TIAA for such transfers, or an Annuity for a Fixed Period of not less than two nor more than thirty years, or an Interest Payments contract for A) the lifetime of the beneficiary; or B) a chosen period of not less than two nor more than thirty years. The pay-out rates for the TIAA contract will be the rates applying to such transfers at

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 161 of 267
Case 3:15-cv-06726-RK-JBD   Document 5.1915 Filed 03/28/16   Page 156 of 157
PageID: 1139

that time; the contract will give the beneficiary the same rights as any person applying for a similar TIAA contract. The value of the Death Benefit transferred under this Method must be at least $1,000; however, if an Interest Payments contract is chosen, the value of the Death Benefit transferred must be at least $5,000.

If any Method chosen, except Unit Deposit, would result in an initial payment of less than $25, CREF will have the right to require a change in choice that will result in an initial payment of not less than $25 a month.

25. **Payments after the Death of a Beneficiary.** Any monthly payments still due at the death of your beneficiary during a guaranteed or fixed period will be continued to the person or persons named by you or your beneficiary to receive them. The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is living at the death of your beneficiary, the Commuted Value will be paid in one sum to your beneficiary's estate.

If a person receiving these payments dies before the end of the guaranteed or fixed period, the Commuted Value of any payments still due that person will be paid to any other person or persons named to receive it. If no one has been so named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

If your beneficiary dies while any Accumulation Units are held by CREF under the Unit Deposit Method, their then current value will be paid in one sum to the person or persons you or your beneficiary have named to receive it. If no such person survives your beneficiary, the then current value of all Accumulation Units held on deposit will be paid in one sum to your beneficiary's estate.

26. **The Number of Annuity Units for a Beneficiary** will be determined, in accordance with the Rules of the Fund, by: A) the value of your Accumulation Units as of the date of your death; B) the Method of Payment chosen for the Death Benefit; C) if the Method chosen pays a lifetime income, the age of your beneficiary and, if the Rules of the Fund provide for the use of sex-distinct mortality, his or her sex; and D) the value of an Annuity Unit.

## PART E: TRANSFERS

27. **Transfer to TIAA Dollar Annuity.** You may transfer all or a part of your Accumulation to TIAA for the purchase of a TIAA deferred or pay-out annuity contract on your life, provided the election to transfer is made before the Annuity Starting Date, and subject to the following conditions:

A) the premium rates for the TIAA contract will be the rates applying to such Transfers at the time the Transfer is made;

B) you will have the same rights under the TIAA contract as any person then being issued a similar contract, except since a Transfer cannot be revoked or cancelled there will be no temporary right to cancel;

C) the effective date of the Transfer will be the first day of the month following the month in which we receive your election or the first day of any later month you select;

D) the election of a Transfer cannot be revoked after the effective date of such Transfer;

E) the amount transferred must be at least $1,000;

F) no more than two Transfers may be made in any year; and

G) the TIAA contract will not provide for assignment, loan or cash surrender.

The number of your Accumulation Units will be reduced by the number of such Units transferred to TIAA.

## PART F: GENERAL PROVISIONS

28. **Report of Premiums and Accumulation.** Once each year until the Annuity Starting Date, we will mail you a report for the calendar year just ended. It will show the amount of premiums paid during the year and the value of your Accumulation (Death Benefit) as of the end of the year.

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 162 of 267
Case 3:15-cv-06726-RK-JBD   Document 5-6316   Filed 03/28/16   Page 157 of 157
PageID: 1140
PageID: 6316

29. **Ownership.** You own this certificate. During your lifetime, you may, to the extent permitted by law, exercise every right given by it without the consent of any other person.

30. **No Assignment.** Neither you nor any other person may assign, pledge, or transfer ownership of this certificate or any benefits under its terms. Any such action will be void and of no effect.

31. **No Cash Surrender or Loans.** This certificate does not provide for cash surrender or loans.

32. **Procedure for Elections and Changes.** You, or your Second Participant or beneficiary having the right to do so, may elect or change, in accordance with the terms of your certificate, any of the following by written notice satisfactory to CREF sent to its home office in New York, NY:

   A) the Annuity Starting Date;
   B) an Income Option;
   C) a Transfer;
   D) a Method of Payment for the Death Benefit; or
   E) a beneficiary or any person named to receive payments remaining due.

No such notice will take effect unless it is received by CREF. When received it will take effect as of the date it was signed, whether or not the signer is living at the time we receive it. Any action taken by CREF in good faith before receiving the notice will not subject CREF to liability because our acts were contrary to what was stated in the notice.

33. **Payment to an Estate, Guardian, Trustee, etc.** CREF reserves the right to pay in one sum the Commuted Value of any benefits due an estate, corporation, partnership, trustee or other entity not a natural person. CREF will not be responsible for the acts or neglects of any executor, trustee, guardian, or other third party to whom payment is made.

34. **Correspondence and Request for Benefits.** No notice, application, form, premium payment, or request for benefits will be deemed to be received by us unless it is received at our home office. All benefits are payable at our home office. Any questions about this certificate or inquiries about our service should be directed to us at our address:

> CREF
> 730 Third Avenue
> New York, NY 10017.

35. **Service of Process upon CREF.** We will accept service of process in any action or suit against us on this contract in any court of competent jurisdiction in the United States, Puerto Rico or Canada, provided such process is properly made. We will also accept such process sent to us by registered mail if the plaintiff is a resident of the state, district, territory, or province in which such action or suit is brought. This Section does not waive any of our rights, including the right to remove such action or suit to another court.

36. **Protection Against Claims of Creditors.** The benefits and rights accruing to you or any other person under this certificate are exempt from the claims of creditors or legal process to the fullest extent permitted by law. This protection is contained in the statute of the State of New York establishing CREF.

37. **Benefits Based on Incorrect Data.** If the amount of benefits is determined by data as to a person's age or sex that is incorrect, benefits will be recalculated on the basis of the correct data. If any overpayments or underpayments have been made by CREF, adjustments will be made in accordance with the Rules of the Fund.

38. **Proof of Survival.** CREF reserves the right to require satisfactory proof that anyone named to receive benefits under the terms of your certificate is alive on the date any benefit payment is due. If this proof is not received after requested in writing, CREF will have the right to make reduced payments or to withhold payments entirely until such proof is received. If under a Survivor Unit Annuity Option CREF has overpaid benefits because of a death of which we were not notified, subsequent payments will be reduced or withheld until the amount of the overpayment has been recovered.

39. **Non-Forfeiture of Benefits.** Benefits payable under this certificate will not be less than the minimum required as of the Date of Issue by any statute of the State in which this certificate is delivered. Any benefits purchased cannot be forfeited under this certificate.

EXHIBIT D

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 164 of 267
PageID: 6918
Case 3:15-cv-06726-MAS-DEA   Document 86   Filed 07/27/18   Page 1 of 19 PageID: 2070

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 3:15-cv-06726-MAS-DEA |
| | : | |
| TEACHERS INSURANCE AND | : | **DECLARATION OF JOHN BASEHORE** |
| ANNUITY ASSOCIATION OF | : | **ON BEHALF OF THE** |
| AMERICA, et al. | : | **EDUCATIONAL TESTING SERVICE** |
| | : | **EMPLOYEE BENEFITS** |
| Defendants. | : | **ADMINISTRATION COMMITTEE** |

I, John Basehore, make the following declaration in accordance with 28 U.S.C. §1746, and declare under penalty of perjury that the following is true and correct based upon my personal knowledge or from documents kept in the ordinary course of business that I reviewed and relied upon in the course of performing my job duties.

1.    I am adult individual and have been continuously employed by Educational Testing Service ("ETS"), from July 22, 2002 through the present time.

2.    Since it was first formed, I have been a member of the Educational Testing Service Employee Benefits Administration Committee (the "EBAC"), formerly known as the ETS Officers' Retirement Committee.

3.    The EBAC has been in existence since October 17, 2008 and has been delegated settlor, or plan sponsor, functions and fiduciary responsibilities of the ETS Board of Trustees with regard to various ERISA covered benefit plans, including both the Educational Testing Service 401(a) Retirement Plan (the "401(a) Plan") and Educational Testing Service 403(b) Retirement Savings Plan (the "403(b) Plan") (collectively the "ETS Retirement Plans," and

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 165 of 267
PageID: 6919
Case 3:15-cv-06726-MAS-DEA    Document 86    Filed 07/27/18    Page 2 of 19 PageID: 2071

individually a "Plan"). Both Plans were known by different names in the past, but for ease of reference I will refer to them by their current names.

4.    Since I was hired by ETS I have personally been a participant under both of those Plans.

5.    Each of the ETS Retirement Plans is governed by a Plan Document. Since their original adoption by the Board of Trustees, the ETS Retirement Plans have been amended from time to time over the years by the ETS Board of Trustees and/or the EBAC.

6.    At the time the EBAC considered Ms. Luciano's claim for benefits, the competing claimants (Ms. Luciano and Ms. Rosso) both treated the 2009 Restatement of the 401(a) Plan as the relevant Plan document, and a copy of that version of the Plan is attached as Exhibit A. At that time, the competing claimants also treated the 2007 Restatement of the 403(b) Plan as the relevant Plan document, a copy of which is attached as Exhibit B. (Collectively, these two documents as amended and restated at the applicable time period are referred to as the "Plan Documents").

7.    One of the responsibilities of the EBAC is to serve as the custodian of documents concerning the ETS Retirement Plans, as well as to respond to inquiries from Plan participants and to distribute notices, summary plan descriptions and other information to Plan participants and their beneficiaries. Previously these functions were handled by the ETS Human Resources Department under the authority of the ETS Board of Trustees.

8.    Additional communications with Plan participants and beneficiaries such as providing statements of account balances and transfers, benefit elections and beneficiary designation correspondence, have been handled by Teachers Insurance and Annuity Association ("TIAA") and College Equities Retirement Fund ("CREF") (collectively "TIAA").

2

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 166 of 267
PageID: 6920
Case 3:15-cv-06726-MAS-DEA    Document 86    Filed 07/27/18    Page 3 of 19 PageID: 2072

9.    As a member of the EBAC I have had access to the Plan Documents for the ETS

Retirement Plans, but as a participant, I have never received a copy of either Plan Document.

10.    It has not been the practice of ETS, the EBAC or TIAA to distribute copies of any

Plan Documents to participants and beneficiaries in the absence of a specific written request of a

participant or beneficiary.

11.    I have directed a search by current and former staff members supporting the

administration of the ETS Retirement Plans and by TIAA to determine if any record exists of the

distribution of a copy of either Plan Document to any participant and beneficiary by ETS, the

EBAC or TIAA.

12.    We have been able to locate only a single circumstance when a copy of the Plan

Documents were provided to a participant or beneficiary of the ETS Retirement Plans. This

occurred when TIAA provided copies of the Plan Documents to the attorneys for Lorraine

Luciano. These documents were not sent to Ms. Luciano's counsel until months after the death

of her late husband, James Rosso. In the context of this litigation, copies were later provided to

the attorney for Lucille Rosso, Mr. Rosso's sister and the beneficiary he named to receive his

benefits in the event of his death.

13.    Aside from that one instance involving Ms. Luciano's claim for benefits, we have

been unable to identify a single case in which a copy of any Plan Document was ever distributed

to a Plan participant, Plan beneficiary, or the attorney for either a Plan participant or beneficiary.

14.    In the course of administering the ETS Retirement Plans, the EBAC and its

predecessor kept records of their activities, which records include records of correspondence

with Plan participants and beneficiaries.

3

Case 3:15-cv-06726-RK-JBD   Document 255-3   Filed 04/17/25   Page 167 of 267
PageID: 6921
Case 3:15-cv-06726-MAS-DEA   Document 86   Filed 07/27/18   Page 6 of 19 PageID: 2075

27.    With regard to the 401(a) Plan, the endorsement clarified the rights of a

Participant's spouse to benefits in the following language:

> **Spouse's Survivor Death Benefit**. If you die before the Annuity Starting
> Date and you are then married, the payment of the Death Benefit to your
> named beneficiary is subject to your spouse's right to receive a Death
> Benefit of a unit-annuity which is the actuarial equivalent of one-half of
> the portion of the Accumulation, if any, attributable to contributions made
> under a plan subject to ERISA, provided a plan contribution has been paid
> after August 22, 1984. Your spouse's right to a Survivor Death Benefit
> may be waived, in form satisfactory to TIAA, with your spouse's written
> consent or verification that your spouse cannot be located.

(emphasis in original). A copy of this endorsement, which was issued to Mr. Rosso's annuity

certificate and which was considered by the EBAC in its determination is attached as Exhibit C.

28.    With regard to the 403(b) Plan, the endorsement clarified the rights of a

Participant's spouse to benefits in almost identical language as follows:

> **Spouse's Survivor Death Benefit**. If you die before the Annuity Starting
> Date and you are then married, the payment of the Death Benefit to your
> named beneficiary is subject to your spouse's right to receive a Death
> Benefit of a unit-annuity which is the actuarial equivalent of one-half of
> the portion of the Accumulation, if any, attributable to contributions made
> under a plan subject to ERISA, provided a plan contribution has been paid
> after August 22, 1984. Your spouse's right to a Survivor Death Benefit
> may be waived, in form satisfactory to CREF, with your spouse's written
> consent or verification that your spouse cannot be located.

(emphasis in original). A copy of this endorsement, which was issued to Mr. Rosso's annuity

certificate and which was considered by the EBAC in its determination is attached as Exhibit D.

29.    Our records show that TIAA also issued a form "Notice of Spouse's Right to

Annuity Death Benefits" dated 2/85 to participants in the 403(b) Plan describing the effect of the

Tax Reform Act of 1984 and the Retirement Equity Act of 1984. In relevant part, it stated:

> **IF YOU ARE NOT MARRIED NOW BUT YOU ARE MARRIED
> AT YOUR DEATH**, then 50% of your annuity death benefits covered by
> the law will be payable to the person to whom you are married at the time
> of your death and the remainder will be payable to the person(s) you have
> named in your beneficiary designation.

6

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 168 of 267
PageID: 6922
Case 3:15-cv-06726-MAS-DEA    Document 86    Filed 07/27/18    Page 7 of 19 PageID: 2076

(emphasis in original). A copy of this Notice is attached as Exhibit E.

30.    As the Plan administrator, the EBAC has been required under ERISA, as was ETS as the Plan administrator before it, to provide a summary plan description "written in a manner calculated to be understood by the average plan participant" and "sufficiently comprehensive to apprise the plan's participants and beneficiaries of their rights and obligations under the plan." 29 C.F.R. § 2520.102-2 (42 Fed. Reg. 37180, July 19, 1977).

31.    Subsequent to the adoption of the Retirement Equity Act of 1984, ETS issued a series of summary plan descriptions identifying the rights of a participant's surviving spouse to the participant's benefits if the participant died before starting to receive those benefits.

32.    For example, the 1991 Summary Plan Description for the 401(a) Plan stated the following (at pp. 8-9):

> **Death Benefit on Accumulations**
>
> If you die before beginning to receive your annuity income, the full current value of your accumulation is payable as a death benefit to the beneficiar(ies) you name, subject to the spousal rights mentioned on page 9. ...
>
> **Spousal Rights**
>
> ... If you die before your income annuity income begins, your surviving spouse must receive a benefit that is at least 50 percent of the full current value of your annuity accumulation (i.e., the preretirement death benefit) under any of the options available. ...

A copy of the 1991 Summary Plan Description for the 401(a) Plan is attached as Exhibit F.

33.    In 1993, ETS issued a Summary Plan Description for the 403(b) Plan as amended and restated January 1, 1985, which contained the following description (at pp. 8, 10):

> **Death Benefit on Accumulations**
>
> If you die before beginning to receive your annuity income, the full current value of your accumulation at the time of your death is payable to your beneficiary, subject to the spousal rights mentioned on page 10. ...

7

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 169 of 267
PageID: 6923
Case 3:15-cv-06726-MAS-DEA   Document 86-1   Filed 07/27/18   Page 97 of 163 PageID: 2185

# Exhibit E

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 170 of 267
PageID: 6924
Case 3:15-cv-06726-MAS-DEA   Document 86-1   Filed 07/27/18   Page 98 of 163 PageID: 2186

**TIAA CREF**

**Teachers Insurance and Annuity Association**
**College Retirement Equities Fund**

730 Third Avenue/New York, NY 10017 (212) 490-9000

# NOTICE OF SPOUSE'S RIGHT TO ANNUITY DEATH BENEFITS

On August 23, 1984, federal pension law* was amended to affect annuity benefits under private retirement or tax deferred annuity plans subject to ERISA. Retirement or tax deferred annuity plans at public institutions (state colleges or universities) are not covered. The law provides that 50% of annuity death benefits covered by the law must be paid as a pre-retirement death benefit to the spouse of a deceased retirement or tax deferred annuity plan participant regardless of the designation of beneficiary in effect at the time of death, unless the surviving spouse has consented to the designation of the non-spouse beneficiary, in writing. If you are currently under a retirement or tax deferred annuity plan at a private institution which is subject to ERISA *or at some future date, participate in a plan at a private institution* and you have named a person other than a spouse as your primary beneficiary, here is how the new law may affect your annuity death benefits.

> **IF YOU ARE *NOT* MARRIED NOW** and are not married at your death, then the law does not affect your annuity death benefits. They will be paid to the person(s) you have named in your beneficiary designation.

> **IF YOU ARE MARRIED NOW,** then 50% of your annuity death benefits covered by the law will be payable to your spouse, if he or she survives you, and the remainder of your annuity death benefits will be paid to the person(s) you have named in your beneficiary designation.

> **IF YOU ARE NOT MARRIED NOW BUT YOU ARE MARRIED AT YOUR DEATH,** then 50% of your annuity death benefits covered by the law will be payable to the person to whom you are married at the time of your death and the remainder will be payable to the person(s) you have named in your beneficiary designation.

The purpose of the law is to ensure that, if you are married at the time of your death and you die before annuity income begins, then your surviving spouse is assured a pre-retirement death benefit of at least one-half of your annuity accumulation, which is subject to the law. While most married participants want their surviving spouse to receive all of their benefits in the event of their death before retirement income begins, some plan participants may want all the benefits to be paid to someone other than their spouse.

An example of this might be the payment of benefits to a trustee to administer the benefits for the surviving spouse and other family members. Federal pension law makes such an arrangement possible by allowing the participant to waive the spouse's benefit, if the spouse consents to the waiver in writing.

## WAIVER OF THE SPOUSE'S PRE-RETIREMENT DEATH BENEFIT

The law provides that a plan participant who is **at least 35 years of age** can waive the automatic survivor protection described above. (A younger participant may make a waiver after he or she has terminated employment with the employer funding the retirement or tax-deferred annuity plan.) Such a waiver will be valid only if it is in writing and signed by both the plan participant and his or her spouse and meets certain other requirements. The spouse's signature must be witnessed by a notary public or by a plan representative. TIAA-CREF will provide waiver forms upon request.

If you have any questions concerning this matter or if you're at least 35 years of age and wish to receive the form "Waiver of Pre-Retirement Survivor Annuity" write or phone Policy Services Administration (212) 490-9000.

---

* The law is the *Employee Retirement Income Security Act of 1974 (ERISA) as amended by the Retirement Equity Act of 1984 (REACT).*

F5176 (2/85)

BASEHORE 0093

EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LORRAINE H. LUCIANO, on behalf of herself and all others similarly situated, | : : : |
| *Plaintiff,* | : |
| v. | : : |
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA - COLLEGE RETIREMENT EQUITIES FUND, et al., | Civil Action No.: : : 3:15-cv-06726-RK-JBD |
| *Defendants* | : : |
| and | : : |
| JOSEPHINE MERCANTINI BOCCI, EXECUTRIX OF THE ESTATE OF LUCILLE ROSSO, | : : : : |
| *Intervenor Defendant.* | : : : |

## DECLARATION OF ANDREA DREYER

I, Andrea Dreyer, make this Declaration under 28 U.S.C. § 1746 and declare under penalty of perjury that the following is true and correct based upon my personal knowledge or from documents kept in the ordinary course of business that I reviewed and relied upon in the course of performing my job duties:

1.    I have been employed by Teachers Insurance and Annuity Association of America ("TIAA") from 2018 to the present. I have held the position of Associate General Counsel throughout that time.

2.     I am familiar with Educational Testing Service ("ETS").  For many

years dating back to the 1980s and up through the end of June 2007, TIAA issued

individual annuity contracts to participants in the ETS 403(b) Plan ("Plan") for their

retirement benefit under the Plan and College Retirement Equities Fund ("CREF")[1]

issued individual annuity certificates to ETS Plan participants for their retirement

benefit under the Plan.  Attached as Exhibit 1 are a standard TIAA annuity contract

with an effective date of January 1, 2007 and a standard CREF annuity certificate

with an effective date of January 1, 2007 -- both of which were issued to ETS Plan

participants.

3.     Beginning in 1985, TIAA annually mailed ETS Plan participants a

Notice regarding preretirement survivor benefits that addressed spousal rights to a

preretirement benefit and waiver of spousal rights.  Attached as Exhibit 2 is a stock

exemplar of the Notice on Preretirement Survivor Benefits that was mailed to ETS

Plan participants in 2008.

---

[1] Established as a companion nonprofit organization to TIAA, CREF was created in
1952 through an act of the New York State legislature, to provide retirement
annuities based on investments in common stock.  These variable annuities are
regulated as insurance products by the New York State Department of Financial
Services.  In the 1980s, CREF registered with the Securities and Exchange
Commission (SEC) as an investment company under the Investment Company Act
of 1940.  Given the historical relationship between TIAA and CREF, TIAA has in
the past used the brand name "TIAA-CREF."  The brand name "TIAA-CREF" is
not a legal entity.  In 2016, TIAA removed "-CREF" from its brand name.

I declare under penalty of perjury that the foregoing statements of fact are true

and correct based on my personal knowledge.

Executed in _New York, NY_____ on November _25__, 2024.

*Andrea Dreyer*
_____

EXHIBIT 1



8500 Andrew Carnegie Blvd.
Charlotte, NC 28262-8500

Dear  :

We are happy to enclose your new TIAA and CREF contracts/certificates. These are the legal documents that outline all of the provisions that these annuities provide. Keep these documents in a safe place for future reference.

TIAA and CREF annuities can play an important role in your retirement planning. Annuities can provide:

- Income you can't outlive[1]
- A low-cost[2] way to save and invest for your retirement
- The opportunity for tax-deferred savings
- An array of investment choices

Whatever your retirement goals are, TIAA and CREF annuities can help you get there. For more information about how annuities work, visit **TIAA.org/annuitybenefits**.

If you have any questions about your contracts, call us at **800-842-2252**. Consultants are available weekdays, 8 a.m. to 10 p.m. (ET).

[1]Subject to the claims-paying ability of the issuing company.

[2]Applies to variable annuity expense ratios. Source: Morningstar Direct, March 31, 2022. 64% of TIAA-CREF variable annuity accounts have expense ratios that are in the bottom quartile (or 89.61% are below median) of their respective Morningstar category. Our variable annuity products are subject to various fees and expenses, including but not limited to management, administrative, and distribution fees; our variable annuity products have an additional mortality and expense risk charge.

This material is for informational or educational purposes only and is not fiduciary investment advice, or a securities, investment strategy, or insurance product recommendation. This material does not suggest any specific course of action or consider an individual's own objectives or circumstances which should be the basis of any investment decision.

**You should consider the investment objectives, risks, charges and expenses carefully before investing. Please call 877-518-9161 or log on to TIAA.org for current product and fund prospectuses that contain this and other information. Please read the prospectuses carefully before investing.**

**Investment, insurance and annuity products are not FDIC insured, are not bank guaranteed, are not deposits, are not insured by any federal government agency, are not a condition to any banking service or activity, and may lose value.**

TIAA-CREF Individual & Institutional Services, LLC, Member FINRA, distributes securities products. Annuity contracts and certificates are issued by Teachers Insurance and Annuity Association of America (TIAA) and College Retirement Equities Fund (CREF), New York, NY. Each is solely responsible for its own financial condition and contractual obligations.

0005

# Teachers Insurance and Annuity Association of America

730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

# Retirement Annuity Contract

*Annuitant:* ███████████████

*Contract Number:* ███████    *Date of Issue:*  01 01 2007

This is a contract between you, the annuitant, and us, Teachers Insurance and Annuity Association of America (TIAA). PLEASE READ YOUR CONTRACT. IT IS IMPORTANT.

## GENERAL DESCRIPTION

You may allocate your TIAA premiums between the Traditional Annuity and the Real Estate Account. Your rights under this contract are subject to the vesting provisions of your employer plan.

**Traditional Annuity.** Each premium allocated to the Traditional Annuity buys a definite amount of lifetime income for you, based on the rate schedule in effect for your contract at the time the premium is paid. Your Traditional Annuity accumulation will be credited with a guaranteed interest rate, and may also be credited with additional amounts declared by TIAA. You can transfer your Traditional Annuity accumulation to your companion CREF certificate or to the Real Estate Account over a 10-year period. You can not withdraw or transfer your Traditional Annuity accumulation in a lump sum.

**Real Estate Account.** Each premium allocated to the Real Estate Account buys a number of accumulation units. **Your Real Estate Account accumulation is not guaranteed, and may increase or decrease depending on investment results.** Before beginning to receive annuity income, you can transfer your Real Estate Account accumulation to your Traditional Annuity accumulation or to your companion CREF certificate in a lump sum.

When you are ready to start receiving your income, you may, in accordance with the terms of your employer plan, choose an option from among those described in your contract. If you die before you start receiving your income, your accumulation will provide a death benefit for your beneficiary.

**30-Day Right to Examine Your Contract.** You have 30 days from the day you receive this contract to examine it and to cancel it if you decide not to keep it. If you decide to cancel this contract, send it and your request to TIAA at the address shown above. Upon receipt of such request, TIAA will refund all premiums allocated to the Traditional Annuity and the accumulated value of all premiums allocated to the Real Estate Account as of the date you mailed or delivered your request to us. Any premium taxes and expense charges deducted from premiums will also be refunded. As of that date, the contract will then be void and no benefits will be provided under it. If this contract was issued as a result of a transfer from another contract or certificate issued by TIAA or CREF, the refund will be reinstated in such contract or certificate as of the date of cancellation. Note: You may be required to keep this contract in force under the terms of your employer plan. Please consult with your employer before canceling this contract.

*This contract cannot be assigned and it does not provide loans.*
*This contract does not provide for cash surrenders from the Traditional Annuity.*

*E. Laverne Jones*
*Vice President and*
*Corporate Secretary*

*Chairman, President and*
*Chief Executive Officer*

**Individual Flexible Premium
Nonparticipating Deferred Annuity
Fixed and Variable Accumulations**

INDEX ON NEXT PAGE

## Your TIAA Retirement Annuity Contract

# INDEX OF PROVISIONS

**Section**

Accumulation
- Definition ........................................................ 1
- Real Estate Account ...................................... 35
- Traditional Annuity ...................................... 32
Accumulation Arising From Elective Deferrals
- Restrictions on Distribution of ................. 73
Accumulation Units
- Definition ...................................................... 34
- Number of...................................................... 38
- Additional Amounts...................................... 33
Annuity Starting Date
- Definition ...................................................... 2
- Required Beginning ..................................... 18
Assignment - Void and of no effect ......................... 62
Benefits
- Based on Incorrect Data............................... 70
- Requests for .................................................. 74
Business Day .................................................... 4
Cash Surrender
- Not Available from the Traditional Annuity ... 63
Claims of Creditors
- Protection Against ........................................ 64
Commuted Value .................................................. 5
Companion CREF Certificate ................................. 26
Contestability ..................................................... 25
Contract
- Consists of ..................................................... 24
- Substitute ...................................................... 31
Correspondence with us ......................................... 74
Death Benefit
- Amount of Payments ...................................... 46
- Beneficiary ..................................................... 3
- Definition ...................................................... 6
- Methods of Payment ...................................... 45
- Naming Your Beneficiary .............................. 44
- Payment of ..................................................... 43
- Payments after Death of Beneficiary ............. 47
Elections and Changes - Procedure for ................... 74
Employer ............................................................ 7
Employer Plan...................................................... 8
ERISA ................................................................ 9
Funding Vehicle .................................................. 10
General Account .................................................. 11
Income Benefit
- Amount of payments ...................................... 42
- Definition ...................................................... 12
- Options .......................................................... 40
- Payments during a guaranteed period ............ 41
- Starting payments ......................................... 39
Internal Transfers
- Amount .......................................................... 48

**Section**

- Crediting ........................................................ 52
- Definition ...................................................... 13
- Effective Date ................................................ 51
- From the Real Estate Account ........................ 48
- From the Traditional Annuity ........................ 50
- Systematic ..................................................... 49
IRC ................................................................... 14
Lapse or Forfeiture
- Protection against .......................................... 30
Laws and Regulations
- Compliance with ........................................... 72
Loans - No provision for......................................... 62
Lump-sum Benefit from the Real Estate Account
- Availability of ............................................... 53
- Definition ...................................................... 15
- Effective Date ................................................ 54
- Payment of ..................................................... 55
- Systematic withdrawals ................................. 56
Net Investment Factor ......................................... 36
Non-Forfeiture of Benefits .................................... 65
Payee ................................................................. 16
Payment to an Estate, Trustee, etc........................... 68
Premiums
- Allocation of .................................................. 28
- Payment of ..................................................... 27
- Taxes ............................................................. 29
Proof of Survival ................................................. 71
Rate Schedule
- Change of....................................................... 75
- Definition ...................................................... 17
Real Estate Account
- Definition ...................................................... 20
- Deletion of ..................................................... 60
Report of Accumulation ........................................ 61
Second Annuitant ................................................ 19
Separate Account
- Charge ........................................................... 37
- Definition ...................................................... 20
- Insulation of .................................................. 59
Service of Process upon TIAA ................................ 69
Spouse's Rights
- Definition ...................................................... 21
- Right to Benefits ............................................ 57
- Waiver of Rights............................................ 58
Tax-Free Rollover
- Right to .......................................................... 67
Traditional Annuity ............................................. 22
Transfer Payout Annuity ...................................... 50
Valuation Day and Valuation Period ..................... 23
Vesting .............................................................. 66

**Your TIAA Retirement Annuity Contract**

### PART A:  ANNUITANT DATA

*Annuitant:*              ███████████████████

*Social Security Number:*   ON FILE

*Date of Birth:*          ████████

*Issue Date:*   01 01 2007

*Annuity Starting Date:*    07 01 2019

*Contract Number:*        ███████████

*Companion CREF Certificate Number:*   ████████████

This contract is made and delivered in and is to be performed in NEW JERSEY.

**Your TIAA Retirement Annuity Contract**

This page has been left blank intentionally.

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA
(TIAA)**
730 Third Avenue, New York, NY 10017-3206
Telephone: 800-842-2733

**Endorsement to Your TIAA Retirement Annuity Contract**

Effective Date: Later of Date of Issue or July 11, 2020,
and as part of END-1000.24-ACC, if such endorsement applies

This endorsement modifies the provisions of your TIAA Retirement Annuity Contract and becomes part of it. Please read this endorsement and attach it to your contract.

*The following provisions are added to your contract:*

The term **Investment Account** refers to the Real Estate Account or to any subaccount of any other Separate Account available under the contract.

**Retirement Plan Loans**

A Retirement Plan Loan is a disbursement of some or all of your Investment Account accumulation to provide loans. To the extent your employer's plan so provides and in accordance with section 72(p) of the IRC, as amended, and ERISA, to the extent applicable, you may request a Retirement Plan Loan from your available Investment Account accumulations, at any time prior to the annuity starting date. Retirement Plan Loans are not available from your TIAA Traditional accumulations. The amount of a Retirement Plan Loan may generally not exceed the least of:

    i)      the total of your available Investment Account accumulations;
    ii)     50% of the present value of your vested accrued benefit under any of your employer's plans; and
    iii)    $50,000

In determining the amount available for a Retirement Plan Loan, all plans of your employer, including 403(b), 401(a), 403(a) and 457(b) plans, to the extent loans are available, and all such plans of any related employers under IRC Section 414(b), (c) or (m) shall be considered employer plans for this purpose.

A request for a Retirement Plan Loan must be made on or before the annuity starting date in accordance with the terms of your contract. A Retirement Plan Loan will be effective as of the business day on which we receive your request, in a form acceptable to TIAA as well as any spousal waiver that may be required under ERISA or the terms of your employer's plan. TIAA will determine all values as of the end of the effective date. You can't revoke a request for a Retirement Plan Loan after its effective date.

A Retirement Plan Loan reduces the accumulations from which it is paid by the amount of the loan chosen. The loan will be issued in accordance with the terms of a loan agreement. The loan agreement will describe the terms, conditions and any fees or charges for the loan. Any loan repayments applied to the contract will be applied as new premiums.

*Roger W. Ferguson, Jr.*
*President and*
*Chief Executive Officer*

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA**
**(TIAA)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone:  800-842-2733

**Endorsement to Your TIAA Deferred Annuity Contract**

Effective Date: Later of Date of Issue or December 29, 2011,
and as part of endorsement END-1000.24-ACC or END-1200.8-ACC,
if such an endorsement applies.

This endorsement is part of your contract with TIAA.  Please read this endorsement and attach it to your contract.

*The definition of* **valuation day** *is replaced with the following:*

A **valuation day** is any day that the New York Stock Exchange is open for trading. Valuation days end as of the close of all U.S. national exchanges where securities or other investments of the Separate Account(s) are principally traded. A **valuation period** is the time from the end of a valuation day to the end of the next valuation day.

*Your contract is modified as follows:*

Notwithstanding any other provision in your contract, no transaction available to you may be made effective on a day that is not a business day, except as follows: when a business day is the last day of a calendar month, annuity income payments and annuity death benefit payment methods may begin on the next day even when it is a non-business day.

*President and*
*Chief Executive Officer*

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA
(TIAA)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your TIAA Deferred Annuity Contract**

Effective Date: Date of issue, and as part of endorsement END-1000.24-ACC or END-1200.8-ACC,
if such endorsement applies

This endorsement is part of your contract with TIAA. It adds a provision to your contract, as follows:

An **internal funding vehicle transfer** is the movement of accumulations among or between any of the following:

    i.      your Traditional Annuity accumulation
    ii.     your Real Estate Account accumulation
    iii.    your Investment Account accumulation
    iv.    your companion CREF certificate
    v.     any other funding vehicle accumulation you may have which is administered by TIAA or CREF on the same record-keeping system as this contract.

However, an internal funding vehicle transfer does not include any of the following:

- Systematic withdrawals and transfers (SWATs)
- Automatic rebalances
- Any transaction arising from a TIAA sponsored advice product or service
- Transfer Payout Annuity (TPA) payments directed to the Real Estate Account.

You may not apply internal funding vehicle transfers to your Real Estate Account accumulation if after giving effect to such transfer the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you would exceed a threshold amount of $150,000. Any internal funding vehicle transfer which cannot be applied pursuant to this rule will be rejected in its entirety and we will communicate such rejection to you. If, as of the effective date of this endorsement, the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you already exceeds the threshold amount, you will not be required to reduce such accumulation to a level at or below the threshold.

The Real Estate Account accumulation unit values used in applying this provision will be those calculated as of the valuation day preceding the day on which the proposed transfer is to be effective. For the purpose of this provision, the total value of your Real Estate Account accumulation will include the value of any pending internal funding vehicle transfers into your Real Estate Account accumulation under any TIAA annuity contracts or certificates issued to you.

---

T-DA-REA-E1                                                                                                    Page E1

**Endorsement to Your TIAA Contract**

TIAA reserves the right in the future to increase or decrease the threshold dollar amount associated with this provision. However, the threshold amount will never be less than $100,000. If, as of the effective date of such a change in the threshold amount, the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you already exceeds the new threshold amount, you will not be required to reduce such accumulation to a level at or below the new threshold. TIAA also reserves the right in the future to include among the restricted transactions any of the categories currently excluded above or to include any categories of transactions associated with services that may be introduced in the future. Any such future changes will only affect transactions with effective dates on or after the effective date of such change. You will be given at least two months advance written notice of any such change.

Nothing in this endorsement shall be construed to limit TIAA's right to stop accepting premiums and/or internal transfers at any time.

*Roger W. Ferguson, Jr.*
*President and*
*Chief Executive Officer*

**TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA**
**(TIAA)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your TIAA Deferred Annuity Contract**

Effective Date: Later of Date of Issue or September 18, 2023

This endorsement is part of your contract with TIAA and becomes part of it. Please read this endorsement and attach it to your contract.

*The **internal funding vehicle transfer** provision is replaced with the following:*

An **internal funding vehicle transfer** is the movement of accumulations among or between any of the following:

|       |                                                                                                                 |
|-------|-----------------------------------------------------------------------------------------------------------------|
| i.    | your Traditional Annuity accumulation                                                                           |
| ii.   | your Real Estate Account accumulation                                                                           |
| iii.  | your Investment Account accumulation                                                                            |
| iv.   | your companion CREF certificate                                                                                 |
| v.    | any other funding vehicle accumulation you may have which is administered by TIAA or CREF on the same record-keeping system as this contract. |

However, an internal funding vehicle transfer does not include any of the following:
- Any transaction arising from a TIAA sponsored advice product or service
- Transfer Payout Annuity (TPA) payments directed to the Real Estate Account.

You may not apply internal funding vehicle transfers to your Real Estate Account accumulation if after giving effect to such transfer the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you would exceed a threshold amount of $150,000. Any internal funding vehicle transfer which cannot be applied pursuant to this rule will be rejected in its entirety and we will communicate such rejection to you. If, as of the effective date of this endorsement, the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you already exceeds the threshold amount, you will not be required to reduce such accumulation to a level at or below the threshold.

The Real Estate Account accumulation unit values used in applying this provision will be those calculated as of the valuation day preceding the day on which the proposed transfer is to be effective. For the purpose of this provision, the total value of your Real Estate Account accumulation will include the value of any pending internal funding vehicle transfers into your Real Estate Account accumulation under any TIAA annuity contracts or certificates issued to you.

TIAA reserves the right in the future to increase or decrease the threshold dollar amount associated with this provision. However, the threshold amount will never be less than $100,000. If, as of the effective date of such a change in the threshold amount, the total value of your Real Estate Account accumulation under this contract and any other TIAA annuity contract or certificate issued to you already exceeds the new threshold amount, you will not be required to reduce such accumulation to a

---

T-DA-REA-E2                                                                                              Page E1

**Endorsement to Your TIAA Contract**

level at or below the new threshold. TIAA also reserves the right in the future to include among the restricted transactions any of the categories currently excluded above or to include any categories of transactions associated with services that may be introduced in the future. Any such future changes will only affect transactions with effective dates on or after the effective date of such change. You will be given at least two months advance written notice of any such change.

Nothing in this endorsement shall be construed to limit TIAA's right to stop accepting premiums and/or internal transfers at any time.

*President and Chief Executive Officer*

**Teachers Insurance and Annuity Association of America**
730 Third Avenue, New York, NY 10017-3206
Telephone: 800-842-2733

**Endorsement to your Deferred Annuity Contract**

Effective Date: Attached at issue

Please read this endorsement and attach it to your contract. This endorsement changes your contract and becomes part of it. It does not take away any of the rights established under your contract.

The purpose of this endorsement is to change your contract to allow for accumulations under Roth 401(k) and Roth 403(b) plans.

*The following provision is added to your contract:*

**Roth Accounting.** Notwithstanding any other provision in your contract, all amounts added to or deducted from your accumulation will be accounted for separately to the extent required by IRC Section 402A, or any successor section governing Roth 401(k) and/or Roth 403(b) amounts. If there is a change in IRC Section 402A, this provision shall be construed as referring to such section as changed.

*The* Right to a Tax-Free Rollover *provision is replaced with the following:*

**Right to a Tax-Free Rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your contract which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan.

An eligible retirement plan is, to the extent permitted by law:
- for accumulations accounted for as Roth 401(k) or Roth 403(b) accumulations,
   a plan satisfying the requirements of IRC Section 402A(c)(3)(A); and
- for all other accumulations,
   a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408, or to the extent that the plan sponsor is a state or local government, Section 457(b).

Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your contract will be governed by the laws and regulations then applicable.

*Vice President and*
*Corporate Secretary*

*Chairman, President and*
*Chief Executive Officer*

TIAA-ROTH-IND-END

**Your TIAA Retirement Annuity Contract**

## PART B: TERMS USED IN THIS CONTRACT

1.  Your **accumulation** is equal to the sum of your Traditional Annuity accumulation (described in Part D) and your Real Estate Account accumulation (described in Part E). Your accumulation will provide the benefits described in your contract.

2.  Your **annuity starting date** is the date as of which you begin to receive income benefits or payments under a transfer payout annuity from your accumulation under this contract. Your scheduled annuity starting date is shown on page 3. You may change your annuity starting date, as explained in section 39. You must begin to receive benefits no later than your required beginning date, as described in section 18.

3.  **Beneficiaries** are persons you name, in a form satisfactory to TIAA as explained in section 44, to receive the death benefit if you die before your annuity starting date.

4.  A **business day** is any day that the New York Stock Exchange is open for trading. A business day ends at 4:00 P.M. Eastern time, or when trading closes on the New York Stock Exchange, if earlier.

5.  The **commuted** (discounted) **value** is a one-sum amount paid in lieu of a series of payments that are not contingent upon the survival of an annuitant. It is less than the total of those payments, because future interest, included when computing the series of payments, will not be earned if payment is to be made in one sum. The commuted value of future payments is therefore the sum of those payments less the interest from the date of commutation to the date each payment would have been made. The same interest rate or rates used in computing the benefit payments will be used to determine the commuted value.

6.  The **death benefit** is the current value of your accumulation under your contract at your death. It will be paid to your beneficiary under one of the methods set forth in Part G if you die before your annuity starting date.

7.  Your **employer** is an organization that remits premiums to this contract. More than one employer may remit premiums to this contract.

8.  An **employer plan** is a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 415(m), 457, or any other section providing similar benefits for employees.

9.  **ERISA** is the Employee Retirement Income Security Act of 1974, as amended.

10. A **funding vehicle** is an annuity contract, custodial account, or trust designated to receive contributions under an employer plan.

11. The **general account** consists of all of TIAA's assets other than those in separate accounts.

**Your TIAA Retirement Annuity Contract**

12.  The **income benefit** is the periodic amount payable to you under one of the income options set forth in Part F. The first payment will be payable as of your annuity starting date.

13.  An **internal transfer** is the movement of accumulations between your Traditional Annuity accumulation and your Real Estate Account accumulation, or between this contract and your companion CREF certificate. The provisions concerning internal transfers are set forth in Part H.

14.  The **IRC** is the Internal Revenue Code of 1986, as amended. All references to any section of the IRC shall be deemed to refer not only to such section but also to any amendment thereof and any successor statutory provisions.

15.  A **lump-sum benefit from the Real Estate Account** is a withdrawal in a single sum of all or part of your Real Estate Account accumulation. The provisions concerning lump-sum benefits are set forth in Part I. Lump-sum benefits are not available from your Traditional Annuity accumulation.

16.  The **payee** is a person named to receive any periodic payments or amounts due under an income option or method of payment of the death benefit:

   A)  after your death, if the income option that had been chosen was a one-life annuity with a guaranteed period, the "interest payment and retirement annuity", or the minimum distribution annuity;

   B)  after the death of both you and your second annuitant, if the income option that had been chosen was a two-life annuity with a guaranteed period; or

   C)  after the death of a beneficiary, if the death benefit payment method that had been chosen was a one-life annuity with a guaranteed period, a fixed-period annuity, or the minimum distribution annuity.

17.  The **rate schedule** sets forth the bases for computing the Traditional Annuity accumulation and any benefits and distributions arising from it. To the extent permitted by law, TIAA may change the rate schedule, after no less than three months' notice to you, for any premiums, additional amounts, or internal transfers applied to the Traditional Annuity accumulation after the change. No change of rate schedule will affect benefits bought by premiums, additional amounts, or internal transfers applied to the Traditional Annuity accumulation prior to the change.

18.  Your **required beginning date** is the latest date on which you can begin to receive your accumulation in accordance with the rules of the IRC and the terms of your employer plan. Generally, it is the April 1 following the calendar year in which you attain 70-1/2 or, if later, the April 1 following the calendar year in which you retire.

19.  The **second annuitant** is the person you name, if you choose to receive your income under a two-life annuity, to receive an income for life if he or she survives you. You may name

**Your TIAA Retirement Annuity Contract**

your spouse or any other person eligible under TIAA's practices then in effect, to be a second annuitant, subject to the rights of your spouse, if any, as described in Part J.

20.   **Separate account.**  All premiums and internal transfers credited to the Real Estate Account become part of a separate account. The Real Estate Account is designated as "VA-2" and was established by TIAA in accordance with New York law to provide benefits under this contract and other contracts. The assets and liabilities of separate account VA-2 are segregated from the assets and liabilities of the general account, and from the assets and liabilities of any other TIAA separate account.

21.   **Spouse's rights.**  If you are married and all or part of your accumulation is attributable to contributions made under an employer plan subject to ERISA, then your spouse is entitled to benefits, as described in Part J.

22.   The **Traditional Annuity** refers to the guaranteed annuity benefits under your contract. Each premium allocated to the Traditional Annuity under your contract buys a definite amount of lifetime income for you, based on the rate schedule in effect for your contract at the time the premium is paid.

23.   A **valuation day** is any business day, as well as the last calendar day of each month.  A **valuation period** is the time from the end of a valuation day to the end of the next valuation day.

## PART C:  CONTRACT AND PREMIUMS

24.   **The contract.**  This document (and any endorsements and amendments to it) is the entire contract between you and TIAA. We have issued this contract in return for the first premium. Any endorsement or amendment of this contract, waiver of any of its provisions, or change in rate schedule will be valid only if in writing and signed by an executive officer of TIAA.

25.   **Contestability.**  The contract is incontestable.

26.   **Companion CREF certificate.**  The College Retirement Equities Fund (CREF) is a companion organization to TIAA. CREF issued a companion CREF Retirement Unit-Annuity certificate to you when you received this contract. The certificate number is shown on page 3.

27.   **Premiums** remitted for this contract may be any amount not less than $100. Premiums may be stopped at any time without notice to TIAA and then resumed without payment of any past due premium or penalty of any kind. Your right to apply distributions from other plans to this contract as direct rollovers under the IRC may be limited by the terms of your employer plan.

**Your TIAA Retirement Annuity Contract**

TIAA reserves the right to limit to $300,000 the total premiums paid on this and any other TIAA annuity contract on your life in any twelve-month period. TIAA will not accept premiums after your annuity starting date or prior death. Premiums will be credited to your contract as of the first day of the month in which they are received by TIAA at the location that TIAA will designate by prior written notice.

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in section 402(g) of the IRC, or as otherwise permitted by law. TIAA will refund the accumulated value of all excess premiums made to this contract, as required by law.

28. **Allocation of premiums.** You allocate premiums between the Traditional Annuity and the Real Estate Account. If you allocate premiums to the Traditional Annuity they increase your Traditional Annuity accumulation. If you allocate premiums to the Real Estate Account, they purchase accumulation units in the Real Estate Account. You may change your allocation for future premiums at any time. TIAA will allocate your premiums according to the most recent valid instructions we have received from you in a form acceptable to TIAA. Your employer plan may limit your right to allocate premiums to the Real Estate Account.

TIAA may stop accepting premiums to the Real Estate Account at any time.

29. **Premium taxes.** If state or local government premium taxes are incurred, they will be deducted from your contract accumulation, to the extent permitted by law.

30. **Unconditional protection against lapse or forfeiture.** Your contract will not lapse after the first premium has been paid. No additional premiums are required.

31. **Substitute contract.** TIAA reserves the right to stop accepting premiums under this contract after we have given you three months' notice, but only if:

A)    at the same time we stop accepting premiums to all other Retirement Annuity contracts written on this contract form and delivered in the jurisdiction shown on page 3;

B)    premiums are accepted under a new TIAA deferred annuity contract issued without an application, to be effective with the first premium paid for it; and

C)    the new contract has the same annuity starting date, beneficiary, income options and methods of benefit payment as those under this contract at the time of substitution.

**Your TIAA Retirement Annuity Contract**

## PART D:  TRADITIONAL ANNUITY ACCUMULATION

32.    Your **Traditional Annuity accumulation** is equal to:

| | |
|---|---|
| A) | all premiums allocated to the Traditional Annuity under your contract; plus |
| B) | interest credited at the guaranteed interest rate set forth in the rate schedule; plus |
| C) | any additional amounts credited to the Traditional Annuity under your contract; plus |
| D) | any internal transfers to the Traditional Annuity under your contract; less |
| E) | any premium taxes incurred by TIAA for your Traditional Annuity accumulation; less |
| F) | any amount applied to a transfer payout annuity; less |
| G) | any charges for expenses and contingencies set forth in the rate schedule; less |
| H) | any amount applied to provide income or death benefits. |

When different rate schedules apply to different parts of the Traditional Annuity Accumulation, any deductions from the Traditional Annuity Accumulation will be allocated among the parts on a pro rata basis.

33.    **Additional amounts.**  TIAA may credit additional amounts to your Traditional Annuity accumulation. TIAA does not guarantee that there will be additional amounts. TIAA will determine at least annually if additional amounts will be credited.

Any additional amounts credited to your Traditional Annuity accumulation will buy benefits for you based on the rate schedule in effect on the day the additional amounts are credited. Additional amounts may also be paid with any Traditional Annuity benefits payable to you or your beneficiary.

Any additional amounts credited to your Traditional Annuity accumulation will be credited under a schedule of additional amount rates declared by TIAA. For a Traditional Annuity accumulation in force as of the effective date of such a schedule, the additional amount rates will not be modified for a period of twelve months following the schedule's effective date.  For any premiums, any additional amounts, and any internal transfers applied to the Traditional Annuity during the twelve-month period described in the preceding sentence, TIAA may declare additional amounts at rates which remain in effect through the end of such twelve-month period.  Thereafter, any additional amount rates declared for such premiums, additional amounts and internal transfers will remain in effect for periods of twelve months or more.

**Your TIAA Retirement Annuity Contract**

### PART E:  REAL ESTATE ACCOUNT ACCUMULATION AND UNITS

34. **Accumulation unit.** The value of one accumulation unit is calculated at the end of each valuation day. The value of an accumulation unit is equal to the previous day's value multiplied by the net investment factor for the Real Estate Account.

35. Your **Real Estate Account accumulation** is equal to the number of accumulation units you own multiplied by the value of one accumulation unit. Real Estate Account accumulations are variable and are not guaranteed; they may increase or decrease depending on investment results.

36. The **net investment factor** for the Real Estate Account for a valuation period is based on the amount of accrued real estate net operating income, dividends, interest and other income during the current period, a deduction of the separate account charge, both realized and unrealized capital gains and losses incurred, and other accounting adjustments during the current period.  The precise formula for the net investment factor is A divided by B, as follows:

   A) The value of the Real Estate Account's net assets at the end of the current valuation period, less any premiums received during the current period.

   B) The value of the Real Estate Account's net assets at the end of the previous valuation period, plus the net effect of transactions (e.g. internal transfers, benefit payments) made at the start of the current valuation period.

37. The **separate account charge** covers mortality and expense risk, liquidity risk, and administrative and investment advisory services. TIAA, at its discretion, can increase or decrease the separate account charge. The separate account charge is guaranteed not to exceed 2.50% per year of net assets.

38. **Number of accumulation units.** Each premium and each internal transfer applied to the Real Estate Account on your behalf buys a number of accumulation units equal to the amount of the premium or internal transfer divided by the value of one accumulation unit as of the end of the business day in which the premium or internal transfer is credited. The number of accumulation units under your contract will be decreased by any premium taxes incurred by TIAA for your Real Estate Account accumulation and by the application of any accumulation units to any benefits or internal transfers paid from the Real Estate Account accumulation under your contract. Such transactions will decrease the number of accumulation units under your contract by an amount equal to the dollar value of the transaction divided by the value of one accumulation unit as of the end of the valuation day on which the transaction becomes effective.

**Your TIAA Retirement Annuity Contract**

## PART F: YOUR INCOME BENEFIT

39. **Starting your income benefit.** Your annuity starting date may not be earlier than the earliest date allowed under your employer plan, nor later than your required beginning date. Payment of your income benefit will begin as of the annuity starting date you have chosen, if you are then living and:

   A)   you have chosen one of the income options set forth in section 40;
   B)   if you choose a one-life annuity, we have received proof of your age;
   C)   if you choose a two-life annuity, we have received proof of your age and the age of your second annuitant;
   D)   if you choose the minimum distribution annuity, we have received proof of your age and the age of the calculation beneficiary you name, if any; and
   E)   if your accumulation is subject to the ERISA requirements described in Part J, we have received any required waiver of spouse's rights or proof that you are not married.

   If the requirements of this section have not been completed by the annuity starting date you have chosen, the annuity starting date will be deferred to a date after these requirements have been completed, or if earlier, to your required beginning date. You may not begin a one-life annuity after you attain age 90, nor may you begin a two-life annuity after you or your second annuitant attain age 90.

   At any time before you start to receive your income benefit, you may change your annuity starting date to a date after the change, by written notice to TIAA as explained in section 74.

40. **Income options** are the ways in which you may have your income benefit paid to you. The minimum distribution option is available from your Traditional Annuity and Real Estate Account accumulations. The other income options are available from your Traditional Annuity accumulation only. You can transfer some or all of your Real Estate Account accumulation to your Traditional Annuity accumulation to receive benefits under an income option available from the Traditional Annuity. Also, you may transfer some or all of your Real Estate Account accumulation to your companion CREF certificate, as described in section 48, to receive benefits under an income option available under that certificate.

   You may choose the option you want any time before your annuity starting date. You may change your choice any time before payments begin, but once they have begun, the election to begin receiving benefits is irrevocable and no change can be made. Any choice of option or change of such choice must be made by written notice to TIAA as explained in section 74.

   Your right to elect an option or change such election may be limited in accordance with section 72. If your accumulation is subject to ERISA, your choice of an income option is subject to the rights of your spouse, if any, to benefits as explained in Part J. The

## Your TIAA Retirement Annuity Contract

availability of certain income options may be restricted by the IRC and by the terms of your employer plan.

If you separate from service with your employer, we may distribute your accumulation to you, in accordance with the terms of your employer plan, provided that such distribution is made under one of the available income options described below. If the plan administrator for your employer plan or his or her designee notifies us that distribution from your contract must begin under the minimum distribution rules of federal tax law, we will begin income benefits under the income option selected by your plan administrator, provided such income option is one of the available income options described below.

The following are the income options from which you may choose. All of them provide an income for you, some provide that payments will continue for the lifetime of a second annuitant and some provide that payments will continue in any event during a guaranteed period as explained in section 41. The periodic amount paid to you or a surviving second annuitant depends on which of these options you choose.

**One-life annuity.** A payment will be made to you each month for as long as you live. You may include a guaranteed period of 10, 15 or 20 years. If you do not include a guaranteed period, all payments will cease at your death. If you include a guaranteed period and you die before the end of that period, monthly payments will continue until the end of that period and then cease.

**Two-life annuity.** A payment will be made to you each month for as long as you live. After your death, a payment will be made each month to the second annuitant you have named, for as long as he or she survives you. You cannot change your choice of second annuitant after your payments begin. You may include a guaranteed period of 10, 15 or 20 years. If you do not include a guaranteed period, all payments will cease when you and your second annuitant have both died. You may choose from among the following forms of two-life annuity.

**Full benefit to survivor.** At the death of either you or your second annuitant, the full amount of the monthly payments that would have been paid if you both had lived will continue to be paid to the survivor. If you include a guaranteed period and you and your second annuitant both die before the end of the period chosen, the full amount of the monthly payments that would have been paid if you both had lived will continue to be paid until the end of that period and then cease.

**Two-thirds benefit to survivor.** At the death of either you or your second annuitant, two-thirds of the monthly payments that would have been paid if you both had lived will continue to be paid to the survivor. If you include a guaranteed period and you and your second annuitant both die before the end of the period chosen, two-thirds of the monthly payments that would

**Your TIAA Retirement Annuity Contract**

have been paid if you both had lived will continue to be paid until the end of that period and then cease.

**Half benefit to second annuitant.** The full monthly income will continue to be paid as long as you live. After your death, if your second annuitant survives you, one-half of the monthly payments that would have been paid if you had lived will continue to be paid to your second annuitant. If you include a guaranteed period and you and your second annuitant both die before the end of the period chosen, one-half of the monthly payments that would have been paid if you had lived will continue to be paid until the end of that period and then cease.

**Interest payment and retirement annuity.** A payment will be made to you each month until you die or convert to another income option. The amount of the payment will be equal to the interest that TIAA would otherwise credit to your Traditional Annuity accumulation.

You must convert to another income option no later than your required beginning date, as defined in section 18, or, if earlier, the first day of the month in which you attain age 90. If you die before converting, a death benefit equal to your accumulation plus any interest credited to your Traditional Annuity accumulation since the last payment will be paid to the person or persons you name when electing this option.

This income option is only available if you are at least age 55 and it is more than one year prior to your required beginning date. The value of the Traditional Annuity accumulation placed under this option must be at least $10,000.

**Minimum distribution annuity.** This income option enables you to limit your distribution to the minimum distribution requirements of federal tax law. Payments will be made to you from your accumulation until your accumulation is entirely paid out, or until your prior death. This option may not provide income that lasts for your entire lifetime.

If, under this income option, you die before your entire accumulation has been paid out, a death benefit equal to your remaining accumulation will be paid to the person or persons you name when electing this option.

This income option is only available on or after your required beginning date. The value of the accumulation placed under this option must be at least $10,000.

**Automatic election provision.** If on your required beginning date, you have not met the requirements for starting your income benefit described in section 39, you will be deemed to have chosen the form of benefit distribution, if any, specified by the terms of your employer plan, if such form of benefit is available under this contract. Otherwise, you will be deemed to have chosen a one-life annuity if you are then single, or the "half benefit

**Your TIAA Retirement Annuity Contract**

to second annuitant" form of the two-life annuity if you are then married, each with a
10-year guaranteed period, if allowed under federal tax law.

41. **Post-mortem payments during a guaranteed period.** Any periodic payments or other
amounts remaining due after your death and the death of your second annuitant, if any,
during a guaranteed period will be paid to the payee named to receive them. You name the
payee at the time you choose the income option, as described in section 74. You may later
change the named payee. If you choose a two-life annuity, your surviving second annuitant
may change the named payees after your death, unless you direct otherwise.

A payee may choose to receive in one sum the commuted value of any remaining
periodic payments that do not involve life contingencies, unless you direct otherwise. If
no payee was named to receive these payments, or if no one so named is then living, we
will pay the remaining payments due or the commuted value of the remaining periodic
payments in one sum to your estate, or to the estate of the last survivor of you and your
second annuitant if you chose a two-life annuity.

If a payee receiving payments during a guaranteed period dies while payments
remain due, the commuted value of any remaining payments due to that person will be
paid to any other surviving payee that you (or your second annuitant) had named to receive
them. If no payee so named is then living, the commuted value will be paid to the estate
of the last payee who was receiving these benefit payments.

42. The **amount of your periodic income benefit** as of the annuity starting date for the income
option will be determined by:

   A)   the amount of your Traditional Annuity accumulation;
   B)   if you choose the minimum distribution annuity, the amount of your Real
        Estate Account accumulation;
   C)   the rate schedule or schedules under which any premiums, additional
        amounts and internal transfers were applied to your Traditional Annuity
        accumulation;
   D)   the income option you choose;
   E)   if you choose a one-life annuity, your age;
   F)   if you choose a two-life annuity, your age and your second annuitant's age;
        and
   G)   if you choose the minimum distribution annuity, your age and the age of the
        calculation beneficiary you name under the minimum distribution annuity,
        if applicable.

If your income benefit would be less than $100 a month, TIAA will have the right
to change to quarterly, semi-annual or annual payments, whichever will result in payments
of $100 or more and the shortest interval between payments.

**Your TIAA Retirement Annuity Contract**

## PART G:  DEATH BENEFIT

43.  **Payment of the death benefit.**  If you die before your annuity starting date, the death benefit will be payable to your beneficiary. We must receive the following in a form acceptable to TIAA before any death benefit will be paid:

    A)    proof of your death;

    B)    the choice of a method of payment as provided in section 45; and

    C)    proof of the beneficiary's age if the method of payment chosen is the one-life annuity or the minimum distribution annuity.

    Payment under the single-sum payment method will be made as of the date we receive these items; payment under any other method of payment will start no later than the first day of the month after we have received these items.

44.  **Naming your beneficiary.**  Beneficiaries are persons you name to receive the death benefit if you die before your annuity starting date. At any time before your annuity starting date, you may name, change, add or delete your beneficiaries by written notice to TIAA, as explained in section 74. If your accumulation is subject to ERISA, then your right to name a beneficiary for the death benefit is subject to the rights of your spouse, if any, as described in Part J.

    You can name two "classes" of beneficiaries, primary and contingent, which set the order of payment. At your death, your beneficiaries are the surviving primary beneficiary or beneficiaries you named. If no primary beneficiary survives you, your beneficiaries are the surviving contingent beneficiary or beneficiaries you named.

    If a class contains more than one person, the death benefit will be paid in equal shares to the then living persons in the class, unless you've explicitly provided otherwise. For example, if you name your spouse as primary beneficiary and your "children" as contingent beneficiaries, your spouse would receive the death benefit if he or she survived you. But if your spouse did not survive you, then your surviving children would receive the death benefit in equal shares. The share of any named beneficiary in a class who does not survive will be allocated in equal shares to the beneficiaries in such class who do survive, even if you've provided for these beneficiaries to receive unequal shares.

    The death benefit will be paid to your estate in one sum if you name your estate as beneficiary, if none of the beneficiaries you have named is alive at the time of your death, or if at your death you had never named a beneficiary. If distributions to a named beneficiary are barred by operation of law, the death benefit will be paid to your estate.

    If at your death any distribution of the death benefit would be in conflict with any rights of your spouse under law that were not previously waived, or with the terms of your employer plan, TIAA will pay the death benefit in accordance with your spouse's rights.

45.  **Methods of payment** are the ways in which your beneficiary may receive the death benefit. The minimum distribution annuity and single-sum payment methods are available from your Traditional Annuity and Real Estate Account accumulations. The other methods are

## Your TIAA Retirement Annuity Contract

available from the Traditional Annuity only. Your beneficiary can, however, transfer some or all of your Real Estate Account accumulation to the Traditional Annuity in order to receive that portion of the death benefit under a method of payment available from the Traditional Annuity. Your beneficiary can also transfer some or all of your accumulation to CREF in order to receive that portion of the death benefit under a method of payment offered by CREF. Such transfer can be for all of your accumulation, or for any part thereof not less than $1,000.

You may choose the method of payment and change your choice at any time before payments begin. After your death, your beneficiary may change the method chosen by you, if you so provide. If you do not choose a method of payment, your beneficiary will make the choice when he or she becomes entitled to payments. If the amount of the death benefit due to any one beneficiary is less than $5,000, TIAA may change the method of payment for the portion of the death benefit payable to that beneficiary to the single-sum payment method. The right to elect a method or change such election may be limited in accordance with section 72.

A beneficiary may not begin to receive the death benefit under the one-life annuity method after he or she attains age 90. If you die before your annuity starting date and have chosen the one-life annuity method for a beneficiary who has attained age 90, he or she must choose another method. Any choice of method or change of such choice must be made by written notice to TIAA, as explained in section 74.

Generally, the distribution of the death benefit under any method of payment must be made over the lifetime of your beneficiary or over a period not to exceed your beneficiary's life expectancy.

The distribution of the death benefit under a method of payment must be made in such a form and begin at such date as meets the requirements of the IRC and the regulations thereunder. If such method of payment has not been chosen to begin by that date, payments will be made to your beneficiary under the form of distribution, if any, specified by the terms of your employer plan, if such form of distribution is available under this contract. Otherwise, we will elect a method of payment in accordance with the requirements of the IRC and any regulations thereunder.

Notwithstanding any other provision in your contract, if you die before the annuity starting date, we will pay the portion of the death benefit, if any, attributable to premiums not remitted under an employer plan in accordance with the requirements of Section 72(s) of the IRC.

The following are the methods of payment:

**Single-sum payment.** The death benefit will be paid to your beneficiary in one sum.

**One-life annuity.** A payment will be made to your beneficiary each month for life. A guaranteed period of 10, 15 or 20 years may be included. If a guaranteed period isn't included, all payments will cease at the death of your beneficiary. If a guaranteed period is included and your beneficiary dies before the end of that

**Your TIAA Retirement Annuity Contract**

period, monthly payments will continue until the end of that period and then cease, as explained in section 47.

**Fixed-period annuity.** A payment will be made to your beneficiary each month for a fixed period of not less than 5 nor more than 30 years, as chosen. At the end of the period chosen, the entire death benefit will have been paid out. If your beneficiary dies before the end of the period chosen, the monthly payments will continue until the end of that period and then cease, as explained in section 47.

**Minimum distribution annuity.** This method enables your beneficiary to limit his or her distribution to the minimum distribution requirements of federal tax law. Payments are made from your accumulation in each year that a distribution is required, until your accumulation is entirely paid out or until your beneficiary dies. This method may not provide income for your beneficiary that lasts for his or her entire lifetime. If your beneficiary dies before the entire accumulation has been paid out, the remaining accumulation will be paid in one sum to the payee named to receive it. The value of the death benefit placed under this method must be at least $10,000.

46. The **amount of death benefit payments** will be determined as of the date payments are to begin by:

    A)    the amount of your Traditional Annuity accumulation;

    B)    if the method chosen is the minimum distribution annuity, the amount of your Real Estate Account accumulation;

    C)    the rate schedule or schedules under which any premiums, additional amounts and internal transfers were applied to your Traditional Annuity accumulation;

    D)    the method of payment chosen for the death benefit; and

    E)    if the method chosen is the one-life annuity or the minimum distribution annuity, the age of your beneficiary.

If any method chosen would result in payments of less than $100 a month, TIAA will have the right to require a change in choice that will result in payments of at least $100 a month.

47. **Payments after the death of a beneficiary.** Any periodic payments or other amounts remaining due after the death of your beneficiary during a guaranteed or fixed period will be paid to the payee named by you or your beneficiary to receive them, by written notice to TIAA as explained in section 74. The commuted value of these payments may be paid in one sum unless we are directed otherwise.

If no payee has been named to receive these payments, or if no one so named is living at the death of your beneficiary, the commuted value will be paid in one sum to your beneficiary's estate.

**Your TIAA Retirement Annuity Contract**

---

If a payee receiving these payments dies before the end of the guaranteed or fixed period, the commuted value of any payments still due that person will be paid to any other payee named to receive it. If no one has been so named, the commuted value will be paid to the estate of the last payee who was receiving these payments.

If your beneficiary dies while any part of the death benefit is held by TIAA under the minimum distribution annuity, that amount will be paid in one sum to the payee you or your beneficiary have named to receive it. If no such person survives your beneficiary, the death benefit will be paid in one sum to your beneficiary's estate.

## PART H: INTERNAL TRANSFERS

48. **Internal transfers from the Real Estate Account or from CREF.** You may transfer all of your Real Estate Account accumulation, or any part thereof not less than $1,000, to your TIAA Traditional Annuity accumulation or your companion CREF certificate. If you have an accumulation in your companion CREF certificate, you may transfer from that certificate to this contract. Any transfer to or from CREF is subject to the terms of your companion CREF certificate and CREF's Rules of the Fund. TIAA reserves the right to limit internal transfers from the Real Estate Account to not more than one in a calendar quarter. TIAA reserves the right to stop accepting internal transfers to the Traditional Annuity and/or the Real Estate Account at any time.

49. **Systematic transfers from the Real Estate Account.** You may elect to have transfers from the Real Estate Account made on a systematic basis. Systematic transfers may be made semi-monthly, monthly, quarterly, semi-annually or annually. Semi-monthly transfers are made twice a month, with the second payment scheduled 14 days after the first payment. You choose which day the transfer will be made, except that if the date of a scheduled transfer is not a business day, the transfer will be made on the following business day. Transfers will continue until you tell us to stop or your Real Estate Account accumulation is insufficient to support the transfer. Systematic transfers are subject to all the provisions described above for transfers, except that a reduced minimum amount of $100 applies to such transfers.

50. **Internal transfers from the Traditional Annuity.** You may transfer your Traditional Annuity accumulation to your companion CREF certificate or to the Real Estate Account under a transfer payout annuity. Each transfer payout annuity payment to CREF is subject to the terms of your companion CREF certificate and CREF's Rules of the Fund. For the portion of your Traditional Annuity accumulation purchased by premiums remitted under an employer plan, your right to transfer to the Real Estate Account may be limited by the plan. TIAA reserves the right to stop accepting transfer payout annuity payments to the Real Estate Account at any time.

Transfer payout annuity payments will be made over a 10-year period. The amount of each transfer payout annuity payment will be determined as of the annuity starting date for the transfer payout annuity by:

---

**Your TIAA Retirement Annuity Contract**

    A)   the amount of your Traditional Annuity accumulation; and

    B)   the interest rate(s) in the rate schedule(s) under which any premiums, additional amounts, and internal transfers were applied to your Traditional Annuity accumulation.

Your request for a transfer payout annuity must be made by written notice to TIAA, as described in section 74. If you die before all transfer payout annuity payments have been made, any remaining payments will continue to the beneficiary you name when electing this option. Your beneficiary may instead choose to receive a death benefit equal to the commuted value of any remaining payments.

51.    **Effective date of internal transfer.**  An internal transfer will be effective as of the end of the business day in which we receive your written request for an internal transfer. You may defer the effective date of the internal transfer until any valuation day following the date on which we receive your request. TIAA will determine all values as of the end of the effective date. You can't revoke a request for an internal transfer after its effective date.

52.    **Crediting internal transfers.**  Internal transfers to your Traditional Annuity accumulation are credited to the Traditional Annuity as of the end of the effective date of the internal transfer. Internal transfers to your Real Estate Account accumulation purchase accumulation units as of the end of the effective date of the internal transfer.

## PART I:  REAL ESTATE ACCOUNT LUMP-SUM BENEFITS

53.    **Availability of the Real Estate Account lump-sum benefit.**  You may, subject to the limits described below, withdraw as a lump-sum benefit all of your Real Estate Account accumulation, or any part thereof not less than $1,000. TIAA reserves the right to limit lump-sum benefits to not more than one in a calendar quarter. A lump-sum benefit will not be available before the earliest date permitted under your employer plan. The portion of your accumulation available to you as a lump-sum benefit may be limited by your employer plan.

If you are married and some or all of your Real Estate Account accumulation is subject to ERISA, your right to receive a lump-sum benefit is subject to the rights of your spouse as described in Part J.

Federal tax law may restrict distributions before age 59-1/2, as described in section 73.

54.    **Effective date of a Real Estate Account lump-sum benefit.**  Any choice of lump-sum benefit must be made by written notice to TIAA on or before the day your income benefits begin, as explained in section 74. A lump-sum benefit will be effective as of the business day on which we receive, in a form acceptable to TIAA:

    A)   your request for a lump-sum benefit;

**Your TIAA Retirement Annuity Contract**

> B)   verification of your eligibility for a lump-sum benefit for those Real Estate Account accumulation units purchased by premiums remitted on your behalf under an employer plan; and
>
> C)   if your Real Estate Account accumulation is subject to the ERISA requirements described in Part J, a waiver of spouse's rights or proof that you are not married.

You may choose to defer the effective date of the lump-sum benefit until any valuation day following the date on which we receive the above requirements. TIAA will determine all values as of the end of the effective date. You can't revoke a request for a lump-sum benefit after its effective date.

55.   **Payment of the Real Estate Account lump-sum benefit.**   A lump-sum benefit may be paid:

> A)   to you as a cash withdrawal;
> B)   to another funding vehicle as a direct transfer under federal tax law; or
> C)   to a TIAA IRA contract, a CREF IRA certificate, or to a funding vehicle whether or not it is offered by TIAA or CREF, as a tax-free rollover as permitted in section 67.

56.   **Systematic withdrawals.**   You may elect to have lump-sum benefits from your Real Estate Account accumulation made on a systematic basis.  Systematic withdrawals may be made semi-monthly, monthly, quarterly, semi-annually or annually. Semi-monthly withdrawals are made twice a month, with the second payment scheduled 14 days after the first payment. You choose which day the lump-sum benefit will be paid, except that if the date of a scheduled lump-sum benefit is not a business day, it will be paid on the following business day. Withdrawals will continue until you tell us to stop or until the portion of your Real Estate Account accumulation available to you is insufficient to support the benefit. Systematic withdrawals are subject to all the provisions described above for lump-sum benefits, except that a reduced minimum amount of $100 applies.

## PART J:  SPOUSE'S RIGHTS TO BENEFITS

57.   **Spouse's rights to benefits.**   If you are married, and all or part of your accumulation is attributable to contributions made under an employer plan subject to ERISA, then, only to the extent required by the IRC or ERISA, your rights to choose certain benefits are restricted by the rights of your spouse to benefits as follows:

> **Spouse's survivor retirement benefit.** If you are married on your annuity starting date, your income benefit must be paid under a two-life annuity with your spouse as second annuitant.

**Your TIAA Retirement Annuity Contract**

**Spouse's survivor death benefit.** If you die before your annuity starting date and your spouse survives you, the payment of the death benefit to your named beneficiary is subject to your spouse's right to receive a death benefit of one-half of any part of your accumulation attributable to contributions made under a plan subject to ERISA.

Your spouse may consent to a waiver of his or her rights to these benefits, as explained in section 58.

58.  **Waiver of spouse's rights.** If you are married, your spouse must consent to a waiver his or her rights to survivor benefits before you can choose:

A)    an income option other than a two-life annuity with your spouse as second annuitant; or

B)    beneficiaries who are not your spouse for more than half of the death benefit; or

C)    a Real Estate Account lump-sum benefit.

In order to waive the rights to spousal survivor benefits, we must receive, in a form satisfactory to TIAA, your spouse's consent, or a satisfactory verification that your spouse cannot be located. A waiver of rights with respect to an income option or a lump-sum benefit must be made in accordance with the IRC and ERISA. A waiver of the survivor death benefit may not be effective if it is made prior to the earlier of the plan year in which you reach age 35 or your separation from service of your employer.

Verification of your marital status may be required, in a form satisfactory to TIAA, for purposes of establishing your spouse's rights to benefits or a waiver of these rights. You may revoke a waiver of your spouse's rights to benefits at any time during your lifetime. Your spouse may not revoke a consent after the consent has been given.

## PART K: GENERAL PROVISIONS

59.  **Insulation of the separate account.** TIAA owns the assets in separate account VA-2. To the extent permitted by law, the assets of the separate account will not be charged with liabilities arising out of any other business TIAA may conduct. All income, investment gains and investment losses of the separate account, whether or not realized, will be credited to or charged against only that account without regard to TIAA's other income, gains or losses.

60.  **Deletion of the Real Estate Account.** TIAA may delete the Real Estate Account. If you own accumulation units in the Real Estate Account and it is deleted, you must transfer them to your Traditional Annuity accumulation or to your companion CREF certificate. If you don't tell us where to transfer your accumulation units, we'll transfer them to the CREF Money Market Account under your companion CREF certificate.

**Your TIAA Retirement Annuity Contract**

---

61. **Report of accumulation.** At least once each year, we will provide you with a report for your contract showing the value of your accumulation (death benefit) as of a date specified in the report.

62. **No assignment, transfer or loans.** Neither you nor any other person may assign, pledge, or transfer ownership of this contract or any benefits under its terms. Any such action will be void and of no effect. This contract does not provide for loans.

63. **No cash surrender** benefit is available from your Traditional Annuity accumulation.

64. **Protection against claims of creditors.** The benefits and rights accruing to you or any other person under this contract are exempt from the claims of creditors or legal process to the fullest extent permitted by law.

65. **Non-forfeiture of benefits.** Amounts payable under this contract will not be less than the minimum required as of the date of issue by any statute of the state or other jurisdiction in which this contract is delivered. Your accumulation and any benefits purchased cannot be forfeited under this contract.

66. **Vesting.** Subject to your employer plan, the right to receive and exercise every benefit, option, right and privilege conferred by this contract may not be immediately vested in you. In that case, your right to receive and exercise such benefits, options, rights and privileges will commence on your vesting date as determined in accordance with your employer plan.

67. **Right to a tax-free rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your contract which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan. An eligible retirement plan is, to the extent permitted by law, a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408 and to the extent that the plan sponsor is a state or local government, Section 457(b).
     Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your contract will be governed by the laws and regulations then applicable.

68. **Payment to an estate, trustee, etc.** TIAA reserves the right to pay in one sum the commuted value of any benefits due an estate, corporation, partnership, trustee or other entity that isn't a natural person. TIAA won't be responsible for the acts or neglects of any executor, trustee, guardian, or other third party receiving payments under your contract.
     If you designate a trustee of a trust as beneficiary, TIAA is not obliged to inquire into the terms of the underlying trust or any will.
     If death benefits become payable to the designated trustee of a testamentary trust, but:

---

## Your TIAA Retirement Annuity Contract

   A)   no qualified trustee makes claim for the benefits within nine months after your death; or

   B)   evidence satisfactory to TIAA is presented at any time within such nine-month period that no trustee can qualify to receive the benefits due,

payment will be made to the successor beneficiaries, if any are designated and survive you; otherwise payment will be made to the executors or administrators of your estate.

If benefits become payable to an *inter-vivos* trustee (i.e. a person appointed to execute a trust created during an individual's lifetime), but the trust is not in effect or there is no qualified trustee, payment will be made to the successor beneficiaries, if any are designated and survive you; otherwise payment will be made to the executors or administrators of your estate.

Payment to any trustee, successor beneficiary, executor, or administrator, as provided for above, shall fully satisfy TIAA's payment obligations under this contract to the extent of such payment.

69. **Service of process upon TIAA.** We will accept service of process in any action or suit against us on this contract in any court of competent jurisdiction in the United States or Puerto Rico provided such process is properly made. We will also accept such process sent to us by registered mail if the plaintiff is a resident of the jurisdiction in which the action or suit is brought. This section does not waive any of our rights, including the right to remove such action or suit to another court.

70. **Benefits based on incorrect data.** If the amount of benefits is determined by data as to a person's age or any other factor that is incorrect, benefits will be recalculated on the basis of the correct data. Any amounts underpaid by TIAA on the basis of the incorrect data will be paid at the time the correction is made. Any amounts overpaid by TIAA on the basis of the incorrect data will be charged against the payments due after the correction is made. Any amounts so paid or charged will include compound interest at the effective annual rate of 6%.

71. **Proof of survival.** TIAA reserves the right to require satisfactory proof that anyone named to receive benefits under the terms of your contract is alive on the date any benefit payment is due. If this proof is not received after it has been requested in writing, TIAA will have the right to make reduced payments or to withhold payments entirely until such proof is received. If under a two-life annuity TIAA has overpaid benefits because of a death of which we were not notified, subsequent payments will be reduced or withheld until the amount of the overpayment, plus compound interest at the effective annual rate of 6%, has been recovered.

72. **Compliance with laws and regulations.** TIAA will administer your contract to comply with all laws and regulations pertaining to the terms and conditions of your contract. You cannot elect any benefit or exercise any right under your contract if the election of that

**Your TIAA Retirement Annuity Contract**

benefit or exercise of that right is prohibited under an applicable state or federal law or regulation.

The choice of income option, annuity starting date, beneficiary or second annuitant, method of payment of the death benefit, and the availability of internal transfers and lump-sum benefits as set forth in this contract are subject to the applicable restrictions, distribution requirements, and incidental benefit requirements of ERISA and the IRC, and any rulings and regulations issued under ERISA and the IRC.

73. **Restrictions on distribution of accumulation arising from elective deferrals.** IRC Section 403(b) limits distributions from your contract. In general, IRC Section 403(b) prohibits the distribution to you of the portion of your accumulation equal to:

A)  amounts attributable to funds transferred to this contract from a custodial account established under IRC Section 403(b)(7); plus

B)  amounts attributable to premiums paid to an IRC Section 403(b)(1) annuity contract as elective deferrals under a salary reduction agreement (within the meaning of IRC Section 403(b)(11)); less

C)  the value, if any, of the amounts described in B) determined as of December 31, 1988.

until you:

(1)  reach age 59-1/2;

(2)  have a severance from employment with respect to the employer under whose plan the aforementioned portion is attributable;

(3)  die;

(4)  become disabled within the meaning of IRC Section 72(m)(7); or

(5)  encounter financial "hardship" within the meaning of IRC Section 403(b).

In the case of hardship, IRC Section 403(b) generally requires that any earnings credited after December 31, 1988 and any contributions paid after December 31, 1988 to a custodial account established under IRC Section 403(b)(7) that are not elective deferrals under a salary reduction agreement, will not be available for distribution.

Any request for an early withdrawal due to disability, hardship, or severance from employment must be submitted with evidence of the disability, hardship, or severance from employment on forms satisfactory to TIAA and must not be inconsistent with applicable law.

74. **Procedure for elections, changes, and requests for benefits.** You (or your beneficiaries after your death) have to make any choice or changes available under your contract in a form acceptable to TIAA at our home office in New York, NY, or at another location that we designate. If you (or your beneficiaries after your death) send us a notice changing your beneficiaries or other persons named to receive payments, it will take effect as of the date it was signed even if you (or any other signer) then die before the notice actually reaches TIAA. Any other notice will take effect as of the date TIAA receives it. If TIAA takes any

**Your TIAA Retirement Annuity Contract**

action in good faith before receiving the notice, we won't be subject to liability even if our acts were contrary to what you told us in the notice. All benefits are payable at our home office in New York, NY, or at another location that we designate. If you have any questions about this contract or inquiries about our service, or if you need help to resolve a problem, you can contact us at the address or phone number below.

TIAA
730 Third Avenue
New York, NY 10017-3206
Telephone: 800 842-2733

75. **Change of rate schedule.** We may, at any time and from time to time, substitute a new rate schedule for the one currently effective in your contract. A new rate schedule will apply only to benefits arising from any premiums, additional amounts, and internal transfers applied to the Traditional Annuity while such rate schedule is in effect. Any change in the rate schedule will not affect the amount of benefits purchased prior to the change by any premiums, additional amounts, and internal transfers applied to the Traditional Annuity. Any change in the interest rate credited before your annuity starting date or your prior death is subject to the minimum rate specified in the applicable state nonforfeiture law, if any, or if none, the applicable National Association of Insurance Commissioners model nonforfeiture law. Any change in the charge for expenses or contingencies must comply with any applicable state nonforfeiture law. A change in the rate schedule will be made only after we have given you three months' written notice of the change. Any such change will also be made to all other Retirement Annuity contracts written on this contract form and delivered in the jurisdiction shown on page 3. Any new rate schedule will specify:

   A)   the charges for expenses and contingencies; and
   B)   the interest rates and the mortality bases used for determining benefits arising from amounts applied to the Traditional Annuity.

**Your TIAA Retirement Annuity Contract**

This page has been left blank intentionally.

**Teachers Insurance and Annuity Association of America**
**Your TIAA Retirement Annuity Contract**

## RATE SCHEDULE

**Rate schedule.** The benefits bought by any premiums applied to the Traditional Annuity while this rate schedule is in effect will be computed on this basis:

(1) no deduction for expenses or contingencies, except for any premium taxes incurred by TIAA for your contract;

(2) interest at the effective annual rate of 3% from the first day of the month in which the premium is received to your annuity starting date or the date death benefits begin, and at the effective annual rate of 2½% thereafter; and

(3) mortality according to the Annuity 2000 Mortality Table (Merged Gender Mod A).

**The benefits bought by** any additional amounts and internal transfers applied to the Traditional Annuity while this rate schedule is in effect will be computed on the same basis as for premiums, except that interest will be credited from the end of the day the additional amount or internal transfer is credited to the Traditional Annuity.

These rates cease to apply to any Traditional Annuity accumulations that you transfer to the Real Estate Account or to your companion CREF certificate.

**Betterment of rates.** When you or your beneficiary begin benefits under a one-life or two-life annuity, we will compute any benefits provided by the portion of your Traditional Annuity accumulation resulting from amounts applied to the Traditional Annuity while this rate schedule is in effect on the basis stated above, or, if it produces a larger guaranteed benefit, on the basis then in use for any individual single premium immediate annuities offered by TIAA.

**Teachers Insurance and Annuity Association of America**
**Your TIAA Retirement Annuity Contract**

<table>
<tr><td colspan="10" align="center"><b>Guaranteed Annual Amount of Income Benefits under a<br>One-Life Annuity with 10-Year Guaranteed Period Purchased<br>by a Single Premium of $100 Credited to the Traditional Annuity</b><br>One-twelfth of the amount shown is payable each month</td></tr>
<tr>
<td>Age Attained When Premium is Paid*</td>
<td colspan="3">Annuity Beginning at</td>
<td>Age Attained When Premium is Paid*</td>
<td colspan="3">Annuity Beginning at</td>
<td>Age Attained When Premium is Paid*</td>
<td colspan="3">Annuity Beginning at</td>
</tr>
<tr>
<td></td><td>Age 60</td><td>Age 65</td><td>Age 70</td>
<td></td><td>Age 60</td><td>Age 65</td><td>Age 70</td>
<td></td><td>Age 60</td><td>Age 65</td><td>Age 70</td>
</tr>
<tr><td>20</td><td>$14.51</td><td>$18.46</td><td>$23.84</td><td>37</td><td>$8.78</td><td>$11.17</td><td>$14.42</td><td>54</td><td>$5.31</td><td>$6.76</td><td>$8.73</td></tr>
<tr><td>21</td><td>14.09</td><td>17.92</td><td>23.15</td><td>38</td><td>8.52</td><td>10.84</td><td>14.00</td><td>55</td><td>5.16</td><td>6.56</td><td>8.47</td></tr>
<tr><td>22</td><td>13.68</td><td>17.40</td><td>22.47</td><td>39</td><td>8.28</td><td>10.52</td><td>13.60</td><td>56</td><td>5.01</td><td>6.37</td><td>8.23</td></tr>
<tr><td>23</td><td>13.28</td><td>16.89</td><td>21.82</td><td>40</td><td>8.03</td><td>10.22</td><td>13.20</td><td>57</td><td>4.86</td><td>6.18</td><td>7.99</td></tr>
<tr><td>24</td><td>12.89</td><td>16.40</td><td>21.18</td><td>41</td><td>7.80</td><td>9.92</td><td>12.82</td><td>58</td><td>4.72</td><td>6.00</td><td>7.75</td></tr>
<tr><td>25</td><td>12.52</td><td>15.92</td><td>20.57</td><td>42</td><td>7.57</td><td>9.63</td><td>12.44</td><td>59</td><td>4.58</td><td>5.83</td><td>7.53</td></tr>
<tr><td>26</td><td>12.15</td><td>15.46</td><td>19.97</td><td>43</td><td>7.35</td><td>9.35</td><td>12.08</td><td>60</td><td>4.45</td><td>5.66</td><td>7.31</td></tr>
<tr><td>27</td><td>11.80</td><td>15.01</td><td>19.39</td><td>44</td><td>7.14</td><td>9.08</td><td>11.73</td><td>61</td><td></td><td>5.49</td><td>7.10</td></tr>
<tr><td>28</td><td>11.46</td><td>14.57</td><td>18.82</td><td>45</td><td>6.93</td><td>8.81</td><td>11.39</td><td>62</td><td></td><td>5.33</td><td>6.89</td></tr>
<tr><td>29</td><td>11.12</td><td>14.14</td><td>18.27</td><td>46</td><td>6.73</td><td>8.56</td><td>11.06</td><td>63</td><td></td><td>5.18</td><td>6.69</td></tr>
<tr><td>30</td><td>10.80</td><td>13.73</td><td>17.74</td><td>47</td><td>6.53</td><td>8.31</td><td>10.73</td><td>64</td><td></td><td>5.03</td><td>6.49</td></tr>
<tr><td>31</td><td>10.48</td><td>13.33</td><td>17.22</td><td>48</td><td>6.34</td><td>8.07</td><td>10.42</td><td>65</td><td></td><td>4.88</td><td>6.30</td></tr>
<tr><td>32</td><td>10.18</td><td>12.94</td><td>16.72</td><td>49</td><td>6.16</td><td>7.83</td><td>10.12</td><td>66</td><td></td><td></td><td>6.12</td></tr>
<tr><td>33</td><td>9.88</td><td>12.57</td><td>16.24</td><td>50</td><td>5.98</td><td>7.60</td><td>9.82</td><td>67</td><td></td><td></td><td>5.94</td></tr>
<tr><td>34</td><td>9.59</td><td>12.20</td><td>15.76</td><td>51</td><td>5.80</td><td>7.38</td><td>9.54</td><td>68</td><td></td><td></td><td>5.77</td></tr>
<tr><td>35</td><td>9.31</td><td>11.85</td><td>15.30</td><td>52</td><td>5.64</td><td>7.17</td><td>9.26</td><td>69</td><td></td><td></td><td>5.60</td></tr>
<tr><td>36</td><td>9.04</td><td>11.50</td><td>14.86</td><td>53</td><td>5.47</td><td>6.96</td><td>8.99</td><td>70</td><td></td><td></td><td>5.44</td></tr>
</table>

The yearly payments shown above are those that result from a premium of $100 paid or credited to the Traditional Annuity when you have reached an age shown in the "Age Attained" column, but have not passed that birthday by as much as one month. All ages used in computing benefits are calculated in completed years and months. Payments at ages other than those shown, and under other income options, are computed on the basis stated in the rate schedule for benefits bought by premiums. For premiums other than $100, payments will be proportionate.

* Premiums are considered to be paid, and will be credited to your contract, as of the first day of the month in which they are received.

**Individual Flexible Premium**
**Nonparticipating Deferred Annuity**
**Fixed and Variable Accumulations**

# College Retirement Equities Fund
# New York, N.Y.

## Retirement Unit-Annuity Certificate



| | Certificate Number | Date of Issue Mo. Day Yr. | Date of Birth Mo. Day Yr. | Annuity Starting Date Mo. Day Yr. |
|---|---|---|---|---|
| | ▓▓▓▓▓ | 01 01 2007 | ▓▓▓▓▓ | 07 01 2019 |
| Participant | ▓▓▓▓▓▓▓▓ | | | |

*Social Security Number* - ON FILE

This is to certify that you, as the owner (Participant) of this certificate, are entitled to share in the benefits of COLLEGE RETIREMENT EQUITIES FUND ("CREF"). No other person or institution is a party to this certificate.

This page refers briefly to some of the features of your certificate. The next pages set forth in detail the rights and obligations of both CREF and you under the certificate. PLEASE READ YOUR CERTIFICATE. IT IS IMPORTANT.

### GENERAL DESCRIPTION

Each premium paid to CREF purchases a number of Accumulation Units representing your share in CREF. You may convert these into a lifetime income of Annuity Units. If you die before starting to receive this income the Accumulation Units will provide a benefit for your beneficiary under one of the methods described in your certificate.

Once each year we will report to you on the amount of premiums paid and the current value of your Accumulation Units.

When you are ready to start receiving your lifetime income, you choose the income option you want from among those described in your certificate. All options provide a lifetime income for you, and all but one also have some provision for another person, to be named by you.

You, or your beneficiary at your death, may have CREF pay the value of some or all of your Accumulation Units to Teachers Insurance and Annuity Association of America ("TIAA") for the purchase of a fixed dollar contract, as explained in your certificate.

*This certificate cannot be assigned nor does it provide for cash surrender or loans.*

*This certificate does not guarantee any fixed dollar amount of benefits.*

*President and*
*Chief Executive Officer*

## INDEX OF PROVISIONS

|  | Section |
|---|---|
| Accumulation - Definition | 2 |
| Accumulation Units | 1 |
| Annuity Starting Date - Change of | 15 |
|     - Definition | 3 |
| Annuity Unit - Definition | 4 |
| Assignment - Void and of no effect | 30 |
| Benefits Based on Incorrect Data | 37 |
| Cash Surrender - No provision for | 31 |
| Certificate - Changes of | 11 |
| Claims of Creditors - Protection against | 36 |
| Commuted Value - Definition | 10 |
| Consideration | 11 |
| Correspondence with us | 34 |
| Death Benefit | 20 |
|     - Beneficiary | 21 |
|     - Changing the Beneficiary | 22 |
|     - Definition | 7 |
|     - Methods of Payment | 24 |
|     - Number of Annuity Units | 26 |
|     - Payment of | 23 |
|     - Payments after death of Beneficiary | 25 |
| Elections and Changes - Procedure | 32 |
| Lapse - Protection against | 13 |
| Loans - No provision for | 31 |
| Non-Forfeiture of benefits | 39 |
| Ownership of Certificate | 29 |
| Payment to an Estate, Trustee, etc. | 33 |
| Premiums - Discontinuing and Resuming | 14 |
|     - Payment of | 12 |
| Proof of Survival | 38 |
| Report of Premiums and Accumulation | 28 |
| Request for Benefits | 34 |
| Rules of the Fund - Definition | 9 |
| Second Participant | 6 |
| Service of Process upon CREF | 35 |
| Transfers - | 27 |
|     - Definition | 8 |
| Unit-Annuity - Definition | 5 |
| Unit-Annuity Income - Number of Annuity Units | 19 |
|     - Options | 17 |
|     - Payments during guaranteed periods | 18 |
|     - Starting payments | 16 |

**Your CREF Retirement
Unit-Annuity Certificate**

## COLLEGE RETIREMENT EQUITIES FUND

| *Certificate Number* | *Date Of Issue* | *Date Of Birth* | *Annuity Starting Date* |
|---|---|---|---|
| ███ | 01 01 2007 | ███ | 07 01 2019 |

*Participant* - ███████████

*Social Security Number* -  ON FILE

This certificate is made and delivered in and is to be performed in the State of New York. The validity and effect of the certificate are governed by the laws there in force.

**COLLEGE RETIREMENT EQUITIES FUND
(CREF)**
730 Third Avenue, New York, NY 10017-3206
Telephone: 800-842-2733

**Endorsement to Your CREF Retirement Unit-Annuity Certificate**

Effective Date: Later of Date of Issue or July 11, 2020

This endorsement modifies the provisions of your CREF Retirement Unit-Annuity Certificate and becomes part of it. Please read this endorsement and attach it to your certificate.

*The following provision is added to your certificate:*

**Retirement Plan Loans**

A retirement plan loan is a disbursement of some or all of your accumulation to provide loans. To the extent your employer's plan so provides and in accordance with section 72(p) of the IRC, as amended, and ERISA, to the extent applicable, you may request a Retirement Plan Loan from your accumulations, at any time prior to the annuity starting date. The amount of a Retirement Plan Loan may generally not exceed the least of:

    i)       the total of your accumulations;

    ii)      50% of the present value of your vested accrued benefit under any of your employer's plans; and

    iii)    $50,000

In determining the amount available for a Retirement Plan Loan, all plans of your employer, including 403(b), 401(a), 403(a) and 457(b) plans, to the extent loans are available, and all such plans of any related employers under IRC Section 414(b), (c) or (m) shall be considered employer plans for this purpose.

A request for a Retirement Plan Loan must be made on or before the annuity starting date in accordance with the terms of your certificate. A Retirement Plan Loan will be effective as of the business day on which we receive your request, in a form acceptable to CREF as well as any spousal waiver that may be required under ERISA or the terms of your employer's plan. CREF will determine all values as of the end of the effective date. You can't revoke a request for a Retirement Plan Loan after its effective date.

A Retirement Plan Loan reduces the accumulations from which it is paid by the amount of the loan chosen. The loan will be issued in accordance with the terms of a loan agreement. The loan agreement will describe the terms, conditions and any fees or charges for the loan. Any loan repayments applied to the certificate will be applied as new premiums.

*The provision describing the number of **accumulation units** in any account under your certificate is modified such that the number of accumulation units is decreased in accordance with the amount of your Retirement Plan Loan.*

*Roger W. Ferguson, Jr.*
*President and*
*Chief Executive Officer*

**COLLEGE RETIREMENT EQUITIES FUND**
**(CREF)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your CREF Deferred Annuity Certificate**

Effective Date: Later of Date of Issue or April 29, 2022

This endorsement modifies the provisions of your CREF Deferred Annuity Certificate and becomes part of it. Please read this endorsement and attach it to your certificate.

*The following change is made to your certificate:*

As of the effective date above, the CREF Bond Market Account is renamed the CREF Core Bond Account. Any references to the CREF Bond Market Account are changed to CREF Core Bond Account.

*President and Chief Executive Officer*

# COLLEGE RETIREMENT EQUITIES FUND
## (CREF)
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your CREF Deferred Annuity Certificate**

Effective Date: April 24, 2015

This endorsement amends and is part of your certificate V36447A2 with CREF.

In accordance with the CREF Rules of the Fund, as of the effective date of this endorsement, each CREF Account has multiple expense classes ("class"). Such class or classes under which any CREF contract or certificate participates within each CREF Account is determined in accordance with criteria established by CREF and is governed by the CREF Rules of the Fund.

The accumulation under your certificate is currently assigned to class R2.

Annuity units under all CREF payout annuities are currently assigned to class R3.

Accumulation unit value(s) and annuity unit value(s) of an Account are determined by your assigned class(es).

CREF reserves the right to change the class with which the value of any accumulation units and/or annuity units under this certificate is associated.

*Roger W. Ferguson, Jr.*
*President and*
*Chief Executive Officer*

C-CERT-MULTI-E1                                                                                           Page E1

**COLLEGE RETIREMENT EQUITIES FUND
(CREF)**
730 Third Avenue, New York, N.Y. 10017-3206
Telephone: 800-842-2733

**Endorsement to Your CREF Deferred Unit-Annuity Certificate**

Effective Date: Later of Date of Issue or December 29, 2011

This endorsement is part of your certificate with CREF. Please read this endorsement and attach it to your certificate.

*Your certificate is modified as follows:*

Notwithstanding any other provision in your certificate, no transaction available to you may be made effective on a day that is not a business day, except as follows: when a business day is the last day of a calendar month, annuity income payments and annuity death benefit payment methods may begin on the next day even when it is a non-business day.

*Roger W. Ferguson, Jr.*
*President and
Chief Executive Officer*

C-DAIC-ME-E1                                                                                              Page E1

**College Retirement Equities Fund**
730 Third Avenue, New York, NY 10017-3206
Telephone: 800-842-2733

**Endorsement to your Deferred Unit-Annuity Certificate**

Effective Date: Attached at issue

Please read this endorsement and attach it to your certificate. The purpose of this endorsement is to clarify the provisions of your certificate pertaining to the payment of death benefits. It does not take away any of the rights established under your certificate.

The value of any death benefit payments made under your certificate will be determined, in accordance with the Rules of the Fund, based on the value of the accumulation units to be paid, or converted to a unit-annuity, as of the date such payment or conversion is to be effective.

*President and*
*Chief Executive Officer*

CREF-DA-DB-END

**COLLEGE RETIREMENT EQUITIES FUND**
**(CREF)**
730 Third Avenue, New York, New York 10017-3206

**Endorsement to your CREF Unit-Annuity Certificate**

Added to all Retirement Unit-Annuities, Supplemental Retirement Unit-Annuities, Group Retirement Unit-Annuities, Group Supplemental Retirement Unit-Annuities, and Rollover Individual Retirement Unit-Annuities certificates.

This document, called an "endorsement", changes some of the provisions of your certificate and becomes part of it. **It does not take away any of the rights established under your current certificate.** It is important that you read the endorsement in conjunction with your certificate. If any other provision of the certificate conflicts with this endorsement, this endorsement will govern.

*The **Internal Transfers** provision of your certificate is modified by adding the following:*

You may transfer some or all of your Accumulation Units from a CREF Account under your certificate to TIAA to purchase a guaranteed lifetime annuity income. You may transfer to purchase annuity income at any time before your Annuity Starting Date, but if your certificate is a Group Retirement Unit-Annuity certificate, you may not transfer any earlier than the earliest date you are allowed to begin annuity income under your Employer's Retirement Plan. The guaranteed benefit for the TIAA contract will be determined on whichever of these bases produces the largest guaranteed payments:

A) (1) interest at the effective annual rate of 2%;
   (2) mortality according to the Annuity 2000 mortality table (TIAA Merged Gender Mod A), with ages set back one year for each completed year between January 1, 1997 and the effective date of the Internal Transfer; and
   (3) a charge of 3.5% for expenses and contingencies;

B) the basis applicable to Internal Transfers to the Traditional Annuity under TIAA Retirement Annuity contracts issued on the effective date of the Internal Transfer, if any; and

C) the interest rate, mortality table, and charge for contingencies and expenses in use for any individual single premium immediate annuities being offered by TIAA when the payments start.

*President and*
*Chief Executive Officer*

## COLLEGE RETIREMENT EQUITIES FUND
## (CREF)
730 Third Avenue, New York, NY 10017-3206

**Endorsement to Your CREF Retirement Unit-Annuity Certificate**

This endorsement changes some of the provisions of your certificate and becomes part of it. The primary purpose of this endorsement is to make changes resulting from the Economic Growth and Tax Relief Reconciliation Act of 2001. Please read this endorsement and attach it to your certificate.

*The **Right to a Tax-Free Rollover** provision is replaced with the following:*

**Right to a Tax-Free Rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your certificate which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan. An eligible retirement plan is, to the extent permitted by law, a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408, or to the extent that the plan sponsor is a state or local government, Section 457(b).

Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your certificate will be governed by the laws and regulations then applicable.

*The **Premium Amount** provision is modified as follows:*

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in section 402(g) of the IRC, or as otherwise permitted by law. CREF will refund the accumulated value of all excess premiums made to this certificate, as required by law.

Your right to apply distributions from other plans to this certificate as direct rollovers under the IRC may be limited by the terms of the employer plan under which premiums are remitted to this certificate.

*The portion of the **Methods of Payment** of the **Death Benefit** provision that deals with the date by which a method must be chosen is modified as follows:*

The distribution of the death benefit under a method of payment must be made in such a form and begin at such date as meets the requirements of the IRC and the regulations thereunder. If such method of payment has not been chosen to begin by that date, we will elect a method of payment in accordance with the requirements of the IRC and any regulations thereunder.

*President and*
*Chief Executive Officer*

EGG-001-CRA

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

### COLLEGE RETIREMENT EQUITIES FUND
### (CREF)
730 Third Avenue, New York, New York 10017-3206

Endorsement to your CREF Retirement Unit-Annuity Certificate

Effective Date: Date of Issue

This endorsement is part of your agreement with CREF, which also includes any prior endorsements. Please read this endorsement, then attach it to your certificate.

The purpose of this endorsement is to introduce a new CREF Account, and to make changes to the latest Annuity Starting Date and Premium Amount provisions, as required by federal legislation enacted in 1996. We have also added a provision describing tax-free rollovers and clarified the provisions on transfers within the TIAA-CREF system.

From now on, unless we indicate otherwise, any references in your certificate to the term "transfer" should be understood to refer to the term "Internal Transfer" described below.

*The Accounts provision is modified by adding the Inflation-Linked Bond Account as follows:*

> **Accounts.** CREF maintains the following eight investment Accounts, each with its own distinct investment portfolio:
>
>> The **CREF Stock Account** maintains a broadly diversified portfolio consisting primarily of common stocks.
>>
>> The **CREF Money Market Account** maintains a portfolio consisting primarily of short-term debt securities and money market instruments.
>>
>> The **CREF Bond Market Account** maintains a portfolio consisting primarily of investment grade fixed-income securities.
>>
>> The **CREF Social Choice Account** maintains a portfolio consisting of common stocks, investment grade fixed-income securities and short-term debt securities.
>>
>> The **CREF Global Equities Account** maintains a broadly diversified portfolio consisting primarily of foreign and domestic common stocks.
>>
>> The **CREF Growth Account** maintains a portfolio consisting primarily of common stocks that we believe present the opportunity for exceptional growth.
>>
>> The **CREF Equity Index Account** maintains a portfolio consisting primarily of domestic stocks selected to track the overall U.S. stock market.

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

---

The **CREF Inflation-Linked Bond Account** maintains a portfolio consisting primarily of inflation-indexed bonds issued by the U.S. Government and its agencies, foreign governments and other corporate entities.

In the future, CREF may establish other Accounts with other investment portfolios.

*The following terms are added to the **Terms Used in This Certificate:***

Your **Companion TIAA Contract** is the Retirement Annuity contract, if any, issued to you on the same date this certificate was issued. TIAA is a companion organization to CREF.

Your **Required Beginning Date** is the latest date on which you can begin to receive your Accumulation in accordance with the minimum distribution rules of the IRC, without being subject to a federal excise tax. Generally, it is the April 1 following the calendar year in which you attain 70½ or, if later, the April 1 following the calendar year in which you retire.

*The term **Transfers** is replaced with the following:*

An **Internal Transfer** is the movement of accumulations between the CREF Accounts, or between this certificate and your Companion TIAA Contract. The provisions on Internal Transfers are set forth below.

*The **Premium Amount** provision is modified by adding the following:*

Elective deferral contributions made to your TIAA or CREF contracts or certificates may not exceed the annual limits on elective deferrals described in Section 402(g) of the IRC. CREF will refund the accumulated value of all excess premiums made to this certificate, as required by law.

*The provisions concerning **Annuity Starting Date, Changing Your Annuity Starting Date,** and **Starting Your Unit-Annuity Income** are modified by the following:*

The Annuity Starting Date is the date you exchange Accumulation Units for Annuity Units in order to provide Unit-Annuity payments, or the date you apply your Accumulation Units to a Minimum Distribution Option contract. Any time before your Annuity Starting Date, you may change your Annuity Starting Date to a date after the change, but not later than your Required Beginning Date.

If the requirements for starting your income have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to a date after these requirements have been completed or, if earlier, to your Required Beginning Date.

---

## Endorsement to Your CREF
## Retirement Unit-Annuity Certificate

The latest Annuity Starting Date on which you may choose an Income Option that is contingent on your life is the first day of the month in which you attain age 90.

*The **Transfers** provision is replaced with the following:*

**Internal Transfers.** Any time before your Annuity Starting Date, you may transfer some or all of your Accumulation Units from a CREF Account under your certificate to purchase Accumulation Units in one of the other CREF Accounts under your certificate, or to your Companion TIAA Contract. Any Internal Transfer to TIAA is subject to the terms of your Companion TIAA Contract. CREF may limit Internal Transfers from each Account to not more than one in each calendar quarter.

For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to transfer to an account other than the CREF Stock Account or the CREF Money Market Account may be limited in accordance with the Rules of the Fund.

You may transfer your entire Accumulation in an Account, or any part thereof not less than $1,000.

An Internal Transfer will be effective as of the end of the Business Day in which CREF receives, in a form acceptable to CREF, your request for an Internal Transfer. You may defer the effective date of the Internal Transfer until any Valuation Day following the date on which we receive your request. CREF will determine all values as of the end of the effective date. You can't revoke a request for an Internal Transfer after its effective date.

The number of your Accumulation Units will be reduced by the number of units Transferred. If all of your Accumulation Units under your certificate are withdrawn as an Internal Transfer, all obligations of CREF to you under this certificate are fulfilled.

*The **Payment of the Lump-sum Benefit** provision is modified by adding the following:*

You may choose to defer the effective date of the Lump-sum Benefit until any Valuation Day following the date on which we receive the above requirements, and all values will be determined as of the end of such effective date.

The Lump-sum Benefit may be paid to:
A) you as a cash withdrawal;
B) another funding vehicle as a direct transfer under the federal tax law; or
C) a CREF Rollover Individual Retirement Annuity certificate or another funding vehicle as a tax-free rollover as described in the Right to a Tax-Free Rollover provision below.

## Endorsement to Your CREF
## Retirement Unit-Annuity Certificate

*The following provision is added to the **General Provisions:***

**Right to a Tax-Free Rollover.** If you (or your surviving spouse or alternate payee under a qualified domestic relations order) receive a distribution from your certificate which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), you (or your surviving spouse or alternate payee under a qualified domestic relations order) may elect to have any portion of it paid as a direct rollover to an eligible retirement plan, as described below.

An eligible retirement plan is:
A) an individual retirement account or annuity described in IRC Section 408;
B) if your certificate is part of a tax deferred annuity plan described in IRC Section 403(b), another such tax deferred annuity plan that accepts the eligible rollover distribution; or
C) if your certificate is part of a qualified plan described in IRC Section 401(a) or 403(a), another such qualified plan that accepts the eligible rollover distribution.

An eligible retirement plan for a surviving spouse is only an individual retirement account or annuity described in IRC Section 408.

*President and*
*Chief Executive Officer*

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

COLLEGE RETIREMENT EQUITIES FUND
(CREF)
730 Third Avenue, New York, New York 10017-3206

## Endorsement to CREF Retirement Unit-Annuity Certificate

This endorsement is part of your agreement with CREF. The purpose of an endorsement is to make changes to the provisions of your certificate. Please read this endorsement in conjunction with your certificate.

Provisions regarding the **CREF Accounts** are added:

**Accounts.** CREF maintains the following five investment Accounts, each with its own distinct investment portfolio:

The **CREF Stock Account** maintains a broadly diversified portfolio consisting primarily of common stocks.

The **CREF Money Market Account** maintains a portfolio consisting primarily of short-term debt securities and money market instruments.

The **CREF Bond Market Account** maintains a portfolio consisting primarily of investment grade fixed income securities.

The **CREF Social Choice Account** maintains a portfolio consisting primarily of common stocks, investment grade fixed income securities, and short-term debt securities.

The **CREF Global Equities Account** maintains a broadly diversified portfolio consisting primarily of foreign and domestic common stocks.

In the future, CREF may establish other Accounts with other investment portfolios.

**Deletion of a CREF Account or a Unit-Annuity.** CREF may delete the CREF Bond Market Account, the CREF Social Choice Account, the CREF Global Equities Account, and any future Account. Also, CREF may stop providing Unit-Annuities in the CREF Social Choice Account, CREF Global Equities Account or in any future Account.

**Accumulation.** If you have Accumulation Units in a CREF Account that is deleted, you must transfer them to another CREF Account. If you do not make a choice, CREF will transfer your Accumulation in such Account to the CREF Money Market Account.

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

---

> **Unit-Annuity.** If a CREF Account is deleted or if a CREF Account stops providing Unit-Annuities, any Annuity Units in such Account must be converted to a Unit-Annuity in any other CREF Account that maintains Annuity Units. If no choice is made, any Unit-Annuity in the Account will be converted to a Unit-Annuity in the CREF Money Market Account. All elections and choices made in connection with an Income Option or a Method of Payment of the Death Benefit and in effect as of the date of conversion will remain in effect. The number of Annuity Units in the Account to which the Unit-Annuity is converted will be determined in accordance with the Rules of the Fund.

The **Accumulation Units** provision is replaced with:

> Each CREF Account maintains a separate Accumulation Unit value. The current value of each Account's Accumulation Unit is based generally on the market value of that Account's investments and will be determined in accordance with the Rules of the Fund.

The following is added to the **Annuity Starting Date** provision:

> Your Annuity Starting Date may not be deferred beyond April 1 of the calendar year following the calendar year in which you attain age 70½.

The following is added to the **Annuity Units** provision:

> The CREF Stock, CREF Money Market, CREF Social Choice, and CREF Global Equities Accounts each maintain separate Annuity Units. All CREF Annuity Income Options and Methods of Payment of the Death Benefit are available from these Accounts. For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to choose an Income Option from the CREF Social Choice or CREF Global Equities Accounts or any future Account may be limited in accordance with the Rules of the Fund.

The **Transfer** term in the **Terms Used in this Certificate** is replaced with:

> A **Transfer** is the use of the value of some or all of your Accumulation Units to purchase fixed-dollar benefits under a TIAA annuity contract, to purchase Accumulation Units in another CREF Account, or to purchase benefits through another Funding Vehicle. The conditions applying to Transfers are set forth below.

---

## Endorsement to Your CREF
## Retirement Unit-Annuity Certificate

The following **Terms Used in This Certificate** are added:

> A **Business Day** is any day that the New York Stock Exchange is open for trading. A Business Day ends at 4:00 p.m. New York time, or, if earlier, the time trading on the New York Stock Exchange closes for that day.

> **Employer.** Your Employer is the organization that remits premiums to this certificate. More than one Employer may have remitted premiums to this certificate.

> **ERISA** is the Employee Retirement Income Security Act of 1974, as amended.

> A **Funding Vehicle** is an annuity or an investment fund established to provide retirement benefits from monies remitted under a Retirement Plan.

> The **IRC** is the Internal Revenue Code of 1986, as amended.

> A **Retirement Plan** is an Employer's plan, qualified under Section 401(a), 403(a), or 403(b) of the Internal Revenue Code of 1986 as amended, for providing retirement benefits for employees.

> A **Valuation Day** is a day on which the dollar values of the Accumulation Units in the CREF Accounts are established. The procedure for determining Valuation Days is contained in the Rules of the Fund.

The following is added to the **Premium Amount** provision:

> You may allocate any whole number percentage of a premium to a CREF Account. CREF will credit your premiums among the Accounts according to the most recent instructions CREF has received from you. For premiums remitted on your behalf as part of a Retirement Plan, your right to allocate such premiums to the CREF Bond Market Account, to the CREF Social Choice Account, to the CREF Global Equities Account, and to any future CREF Account may be limited in accordance with the Rules of the Fund.

Two new options are added to the **Income Options** provision. The first option, the **Unit-Annuity for a Fixed Period,** does not provide a lifetime income for you. The second option, the **Minimum Distribution Annuity,** may not provide a lifetime income in all situations; however, this option may be converted to an option that provides a lifetime income, subject to federal tax law limitations.

> **Unit-Annuity for a Fixed Period.** A payment will be made to you each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen, no further payments will be made. If you die before the end of the period chosen, the monthly payments will continue to the end of that period, as explained in your

**Endorsement to Your CREF
Retirement Unit-Annuity Certificate**

certificate. A Unit-Annuity for a Fixed Period is subject to the terms set forth in your certificate for the other types of Unit-Annuities. The Rules of the Fund may limit your right to receive a Unit-Annuity for a Fixed Period.

**Minimum Distribution Annuity.** This Income Option is designed to enable you to meet the minimum distribution requirements under federal tax law. A payment will be made to you each year until your Accumulation is entirely paid out, or until your prior death. If required to meet the minimum distribution requirements, an initial payment will be made on the Annuity Starting Date, generally on or before the April 1 following the calendar year in which you reach age 70½.

If you die before the Accumulation has been entirely paid out, a death benefit equal to the remaining Accumulation will be paid to the Beneficiary you name when electing this option.

This option is only available when you must begin receiving income in order to avoid penalties under federal tax law.

The **Naming Your Beneficiary** provision is modified by the following:

If you die prior to the Annuity Starting Date never having named a Beneficiary, your estate and your surviving spouse, if any, become the Beneficiaries as follows:

A)  if you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

B)  if you leave a surviving spouse, your spouse will receive a Death Benefit, payable under one of the Methods of Payment, which is the actuarial equivalent of one-half of your Accumulation, as of the date Death Benefit payments are paid or begin. The remainder of your Accumulation will be paid to your estate in one sum.

The following is added to the **Methods of Payment** of the Death Benefit provision:

In accordance with federal tax law requirements, a fixed or guaranteed period chosen under any Method of Payment may not exceed your Beneficiary's life expectancy. The Death Benefit must be applied under a chosen Method of Payment within one year of the date of your death; otherwise payments will be made to your Beneficiary beginning on the first day of the month in which the first anniversary of your date of death occurs, under the Unit-Annuity for a Fixed Period method for a period of five years with payments made annually.

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

Two new methods are added to the **Methods of Payment** of the **Death Benefit** provision:

**Single-sum Payment.** The Death Benefit will be paid to your Beneficiary in one sum.

**Minimum Distribution Annuity.** This Method of Payment is designed to enable your Beneficiary to meet the minimum distribution requirements under federal tax law. A payment will be made for each year that a distribution is required until your Accumulation is entirely paid out, or until the prior death of your Beneficiary. This method may not provide a lifetime income in all situations.

If your Beneficiary dies before your Accumulation has been entirely paid out, the remaining accumulation will be paid in one sum to the payee named to receive it.

The provision on **Transfers** is replaced with:

You may Transfer some or all of your Accumulation Units from a CREF Account under your certificate: (a) to purchase Accumulation Units in one of the other CREF Accounts under your certificate, (b) to purchase a TIAA fixed-dollar annuity, or (c) to a Funding Vehicle not offered by CREF or TIAA.

For Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan, your right to Transfer to the CREF Bond Market Account, to the CREF Social Choice Account, to the CREF Global Equities Account, to any future CREF Account, and/or to a Funding Vehicle not offered by CREF or TIAA, may be limited in accordance with the Rules of the Fund.

If you choose to Transfer, we will pay your Accumulation, or any part thereof not less than $1,000.

All values will be determined as of the end of the Business Day in which CREF has received, in a form acceptable to CREF:

A) your request for a Transfer; and
B) when required by law, if your Accumulation is subject to the ERISA requirements described in the Spouse's Right to Benefits provision below, a Waiver of Spouse's Rights or proof that you are not married.

You may choose to defer the effective date of the Transfer until the last day of any month following the date on which we receive the above requirements, and all values will be determined as of the end of such effective date.

The request for a Transfer cannot be revoked after the effective date of such Transfer.

If you Transfer to a TIAA annuity, you will have the same rights under the TIAA contract as any person then being issued a similar contract.

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

The number of your Accumulation Units will be reduced by the number of units Transferred. If all of your Accumulation Units under your certificate are withdrawn as a Transfer, all obligations of CREF to you under this certificate are fulfilled. CREF may limit Transfers from each Account to not more than one in each calendar quarter.

A provision on **Lump-Sum Benefits** is added:

**Availability of Lump-sum Benefits.** On or before the Annuity Starting Date you may choose to withdraw, as a Lump-sum Benefit, all or part of a specified Account's Accumulation Units. The Rules of the Fund may limit your right to a Lump-sum Benefit. Any choice of Lump-sum Benefit must be made by written notice to CREF.

If you are married and your Accumulation is subject to ERISA, your right to receive a Lump-sum Benefit is subject to the rights of your spouse as described in your certificate. Federal tax law may restrict distributions before age 59½, as described in the Restrictions on Distribution of Accumulation Arising from Elective Deferrals provision below.

**Payment of the Lump-sum Benefit.** If you choose the Lump-sum Benefit, the minimum amount you may withdraw as a Lump-sum Benefit from a CREF Account is $1,000, or, if less, the value of all Accumulation Units in an Account. All values will be determined as of the end of the Business Day in which CREF has received, in a form acceptable to CREF:

A) your request for a Lump-sum Benefit;
B) verification of your eligibility for a Lump-sum Benefit for those Accumulation Units purchased by premiums remitted on your behalf under a Retirement Plan; and
C) if your Accumulation is subject to the ERISA requirements described in your certificate, a Waiver of Spouse's Rights and consent to that waiver by your spouse, or proof that you are not married.

You may choose to defer the effective date of the Lump-sum Benefit until the last day of any month following the date on which we receive the above requirements, and all values will be determined as of the end of such effective date.

The request for a Lump-sum Benefit cannot be revoked after the effective date of such Lump-sum Benefit.

If all of your Accumulation Units under this certificate are withdrawn as a Lump-sum Benefit, all obligations of CREF to you under this certificate are fulfilled.

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

A provision on **Spouse's Rights to Benefits** is added:

**Spouse's Rights to Benefits.** If

A) you are married, and
B) all or part of your Accumulation is attributable to contributions made under a retirement plan or tax-deferred annuity plan subject to ERISA, and
C) a plan contribution has been paid on your behalf after August 22, 1984,

then, only to the extent required by the IRC or ERISA, your rights to choose an Income Option, name a Beneficiary for the Death Benefit, receive a Lump-sum Benefit, or Transfer your Accumulation are restricted by the rights of your spouse to benefits as follows:

**Spouse's Survivor Retirement Benefit.** If you are married on the Annuity Starting Date, your Income Benefit must be paid under a Survivor Unit-Annuity Option with your spouse as Second Participant.

**Spouse's Survivor Death Benefit.** If you die before the Annuity Starting Date and your spouse survives you, the payment of the Death Benefit to your named Beneficiary is subject to your spouse's right to receive a Death Benefit of a Unit-Annuity which is the actuarial equivalent as of the date such Unit-Annuity begins of one-half of your Accumulation, if any, attributable to contributions made under a plan subject to ERISA.

Your spouse may consent to a waiver of his or her rights to these benefits, as explained in the following section.

**Waiver of Spouse's Rights.** Your spouse must consent to a waiver of his or her rights to survivor benefits before you can choose:

A) an Income Option other than a Survivor Unit-Annuity with your spouse as Second Participant;
B) Beneficiaries who are not your spouse for more than half of the Death Benefit;
C) a Lump-sum Benefit; or
D) to the extent such waiver is required by law, a Transfer.

In order to waive the rights to spousal survivor benefits we must receive, in form satisfactory to CREF, your spouse's written consent, or verification that your spouse cannot be located. A waiver of rights with respect to an Income Option may be made by you and consented to by your spouse no earlier than 90 days before the Annuity Starting Date. A waiver of the Survivor Death Benefit may not be effective if it is made prior to the plan year in which you reach age 35, or, if earlier, your separation from service of

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

your Employer. Generally, a waiver of rights with respect to the portion of the Accumulation to be used for a Lump-sum Benefit or Transfer may be made no earlier than 90 days before the effective date of such Lump-sum Benefit or Transfer.

Verification of your marital status may be required, in form satisfactory to CREF, for purposes of establishing your spouse's rights to benefits or a waiver of these rights. You may revoke a waiver of your spouse's rights to benefits at any time during your lifetime. Your spouse may not revoke a consent after the consent has been given.

The **Procedure for Elections and Changes** provision is replaced by:

An election or change may be made, in accordance with the terms of your certificate, by written notice satisfactory to CREF. No such notice will take effect unless it is received by CREF at its home office in New York, NY. Any notice of change in Beneficiary or other person named to receive payments will take effect as of the date it was signed, whether or not the signer is living at the time we received it. Any other notice will take effect as of the date it is received. Any action taken by CREF in good faith before receiving the notice will not subject CREF to liability even though our acts were contrary to what was stated in the notice.

The following **General Provisions** are added:

**CREF's Right to Split Your Certificate.** If your right to a Lump-sum Benefit, a Unit-Annuity for a Fixed Period, or a Transfer does not apply uniformly to all your Accumulation Units, CREF reserves the right to split your certificate into two or more CREF certificates. A Lump-sum Benefit, a Unit-Annuity for a Fixed Period, and certain Transfers may not be available to you until CREF has split your certificate.

**Restrictions on Distribution of Accumulation Arising from Elective Deferrals.** This certificate may be used as part of a tax-deferred annuity plan as specified under IRC Section 403(b). IRC Section 403(b) prohibits the distribution, in accordance with the provisions of the contract, to you of the portion, if any, of your Accumulation equal to:

A) amounts attributable to funds transferred to this certificate from a custodial account established under IRC Section 403(b)(7); plus

B) amounts attributable to premiums paid to an IRC Section 403(b)(1) annuity contract as elective deferrals under a salary reduction agreement (within the meaning of IRC Section 403(b)(11)); less

C) the value, if any, of the amounts described in (B) determined as of December 31, 1988;

until you:

**Endorsement to Your CREF**
**Retirement Unit-Annuity Certificate**

(1) reach age 59½;
(2) separate from service of the employer under whose plan the aforementioned portion is attributable;
(3) die;
(4) become disabled within the meaning of IRC Section 72(m)(7); or
(5) encounter financial "hardship" within the meaning of IRC Section 403(b).

In the case of hardship, IRC Section 403(b) requires that any earnings credited after December 31, 1988 and, in addition any contributions paid after December 31, 1988 to a custodial account established under IRC Section 403(b)(7) that are not elective deferrals under a salary agreement, will not be available for distribution.

Any request for an early withdrawal due to disability or hardship must be submitted with evidence of the disability or hardship on forms satisfactory to CREF and not inconsistent with applicable law. An individual shall be considered to be disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration.

**Compliance with Laws and Regulations.** CREF will administer this certificate to comply with all laws and regulations pertaining to the terms and conditions of this certificate. If this certificate conflicts with any applicable law or regulation, such law or regulation will prevail.

The choice of Income Option, Annuity Starting Date, Beneficiary, Second Participant, Method of Payment of the Death Benefit, and the availability of Lump-sum Benefits and Transfers as set forth in this certificate are subject to the applicable restrictions, distribution requirements, and incidental benefit requirements of ERISA and the IRC, and any rulings and regulations issued under ERISA and the IRC.

*President and*
*Chief Executive Officer*

**College Retirement Equities Fund**
730 Third Avenue, New York, NY 10017-3206
Telephone: 800-842-2733

**Endorsement to your Deferred Unit-Annuity Certificate**

Effective Date: Attached at issue

Please read this endorsement and attach it to your certificate. This endorsement changes your certificate and becomes part of it. It does not take away any of the rights established under your certificate.

The purpose of this endorsement is to change your certificate to allow for accumulations under Roth 401(k) and Roth 403(b) plans.

*The following provision is added to your certificate:*

**Roth Accounting.** Notwithstanding any other provision in your certificate, all amounts added to or deducted from your accumulation will be accounted for separately to the extent required by IRC Section 402A, or any successor section governing Roth 401(k) and/or Roth 403(b) amounts. If there is a change in IRC Section 402A, this provision shall be construed as referring to such section as changed.

*The* Right to a Tax-Free Rollover *provision is replaced with the following:*

**Right to a Tax-Free Rollover.** If you or your surviving spouse (or your spouse or former spouse as an alternate payee under a "qualified domestic relations order," as defined in the IRC) receive a distribution from your certificate which qualifies as an eligible rollover distribution under IRC Section 402(c)(4), any portion of it may be paid as a direct rollover to an eligible retirement plan.

An eligible retirement plan is, to the extent permitted by law:
- for accumulations accounted for as Roth 401(k) or Roth 403(b) accumulations, a plan satisfying the requirements of IRC Section 402A(c)(3)(A); and
- for all other accumulations, a plan satisfying the requirements of IRC Section 401(a), 403(a), 403(b), 408, or to the extent that the plan sponsor is a state or local government, Section 457(b).

Retirement plans eligible for such rollovers may, in the future, be changed by law. If such changes become effective, your certificate will be governed by the laws and regulations then applicable.

President and
Chief Executive Officer

CREF-ROTH-IND-END

## PART A:  TERMS USED IN THIS CERTIFICATE

1.    **Accumulation Units.** Each premium paid to your certificate will purchase a number of Accumulation Units determined in accordance with the Rules of the Fund.  Before the Annuity Starting Date, your share of the net dividend and other income of CREF will purchase additional Accumulation Units that will be credited to you.  The current value of each Accumulation Unit is based on the market value of CREF's investments and will be determined in accordance with the Rules of the Fund.

2.    Your **Accumulation** is the value of all of your Accumulation Units.  It will provide the benefits described in this certificate.

3.    The **Annuity Starting Date** shown on page 3 is the date your lifetime income is scheduled to begin.  The Date may be changed as explained in Sections 15 and 16.

4.    An **Annuity Unit** is the unit of payment for all periodic benefits.  The current value of an Annuity Unit will change from time to time to reflect changes in CREF's investment, mortality and expense experience.  The dollar value of any payment will be the product of the number of Annuity Units to be paid and the then current value of an Annuity Unit.

5.    A **Unit-Annuity** is a series of payments of the current value of a fixed number of Annuity Units.  The number of Annuity Units to be paid and their then current value will be determined in accordance with the Rules of the Fund, using actuarial methods.  The Options under which you may receive your Unit-Annuity Income are described in Part  C.

6.    The **Second Participant** is the person you name, when starting to receive your income under a Survivor Unit-Annuity Option, to receive a life income if he or she survives you.  You may name your spouse, or any other person eligible under CREF's practices then in effect, to be a Second Participant.

7.    The **Death Benefit** is the value of your Accumulation.  It will be used to pay your beneficiary an income under one of the methods set forth in Part D if you die before the Annuity Starting Date.

8.    A **Transfer** is the use of the value of some or all of your Accumulation Units to purchase fixed-dollar benefits under a TIAA deferred or pay-out contract.  The conditions applying to transfers are set forth in Part  E.

9.    The **Rules of the Fund** govern all matters affecting the interest of anyone in the Fund to the extent such matters are not specifically provided in this certificate.  The Board of Trustees of CREF may amend the Rules of the Fund from time to time.  Amendments to such Rules are effective only when approved by the Superintendent of Insurance of the State of New York as not being unfair, unjust, inequitable or prejudicial to the interest

of anyone in the Fund. A copy of the Rules was furnished to you when this certificate was issued; you will be notified of all amendments to the Rules.

**10.**     The **Commuted Value** is a one-sum payment made in lieu of a series of payments. The Commuted Value of a series of payments of Annuity Units is computed in accordance with the Rules of the Fund, in which it is referred to as the 'present value.'

## PART B: CERTIFICATE AND PREMIUMS

**11.**     **The Certificate.** We have issued this certificate in return for your completed application and the first premium. Any endorsement or amendment of this certificate or waiver of any of its provisions will be valid only if in writing and signed by an Executive Officer or Registrar of CREF. All premiums and benefits are payable at CREF's home office in New York, NY.

**12.**     **Premium Amount.** Premiums for this certificate may be paid in any amount not less than $25 each. You may change the amount or frequency of future premiums at any time. CREF will accept premiums any time before the Annuity Starting Date or your prior death.

**13.**     **Unconditional Protection Against Lapse or Forfeiture.** Your certificate will not lapse after the first premium has been paid. If premiums cease, you continue to own all of your Accumulation Units.

**14.**     **Discontinuing and Resuming Premium Payments.** Premiums may be stopped at any time without notice to CREF. Premiums may be resumed before the Annuity Starting Date without payment of any past due premiums or penalty of any kind.

## PART C: YOUR UNIT-ANNUITY INCOME

**15.**     **Changing Your Annuity Starting Date.** Any time before you start to receive your Unit-Annuity Income, you may change the Annuity Starting Date to the first of any month after the change, but not to a month later than the one following your seventy-first birthday. If you have not chosen an Annuity Starting Date prior to your sixty-fifth birthday, the Date will be the first of the month following that birthday.

**16.**     **Starting Your Unit-Annuity Income.** Payment of your Unit-Annuity Income will begin as of the Annuity Starting Date you have chosen, if you are then living and:

    A) you have sent us this certificate;

    B) you have chosen one of the Income Options set forth in Section 17; and

C) we have received due proof of your age and, if you choose a Survivor Unit-Annuity Option, the age of your Second Participant.

If A, B and C of this Section have not been completed by the Annuity Starting Date you have chosen, the Annuity Starting Date will be deferred to the first of the month after A, B and C have been completed or to the first of the month following your seventy-first birthday, whichever comes first.

17. **Income Options** are the ways in which you may have your Unit-Annuity Income paid to you.  Any time before the Annuity Starting Date, you may choose the Option you want. You may change your choice any time before payments begin, but once they have begun no change can be made.

   **Automatic Election Provision.**  If on the Annuity Starting Date determined in accordance with Sections 15 and 16, you have not chosen an Income Option, you will be deemed to have chosen the 'Life Unit-Annuity with 10-Year Guaranteed Period' Option if you are then single, or the 'Half Benefit to Second Participant with 10-Year Guaranteed Period' Option if you are then married.

   These are the Income Options from which you will choose.  All of them provide a lifetime income for you, some provide that payments will continue for the lifetime of a Second Participant and some provide that payments will continue in any event during a guaranteed period as explained in Section 18:

   **Single Life Unit-Annuity.**  A payment will be made to you each month as long as you live.  All payments will cease at your death.  This Option provides nothing for anyone after your death.

   **Life Unit-Annuity with 10-, 15- or 20-Year Guaranteed Period.**  A payment will be made to you each month as long as you live.  If you die before the end of the guaranteed period you have chosen, monthly payments will continue to the end of that period.

   **Survivor Unit-Annuity Options.**  Under each of these Options a payment will be made to you each month as long as you live, and payments will continue for life to the Second Participant you have named if he or she survives you.  After payments begin, you cannot change your choice of Second Participant.  The number of Annuity Units paid to you or a surviving Second Participant each month depends on which of these Options you choose:

   **Full Benefit to Survivor with 10-, 15- or 20-Year Guaranteed Period.**  At the death of either you or your Second Participant the monthly payments that continue to the survivor will be the full number of Annuity Units that would have been paid if both had lived.  If you choose a guaranteed period and you and your Second Participant both die before the end of the period chosen, the full number

**Your CREF Retirement Unit-Annuity Certificate**    **Sections 17-18**

of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

**Two-thirds Benefit to Survivor with or without a 10-, 15- or 20-Year Guaranteed Period.** At the death of either you or your Second Participant the monthly payments that continue to the survivor will be two-thirds the number of Annuity Units that would have been paid if both had lived. If you choose a guaranteed period and you and your Second Participant both die before the end of the period chosen, the two-thirds number of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

**Half Benefit to Second Participant with or without a 10-, 15- or 20-Year Guaranteed Period.** The full monthly number of Annuity Units will not change as long as you live. If your Second Participant survives you, he or she will receive monthly payments each month of one-half the number of Annuity Units you would have received if you had lived. If you choose a guaranteed period and you and your Second Participant both die before the end of the period chosen, the one-half number of Annuity Units will continue to be paid to the end of that period; otherwise all payments will cease at the death of the last survivor of you and the Second Participant.

18.    **Payments to the End of a Guaranteed Period.** At the time you choose an Income Option, you name the person or persons to receive these payments. You may later change the named persons and, if you choose a Survivor Unit-Annuity, after your death your surviving Second Participant may change the named persons unless you direct otherwise.

At the death of the last survivor of you and your Second Participant before the end of a guaranteed period you have chosen under one of the Survivor Unit-Annuity Options, or at your death before the end of a guaranteed period under one of the other Income Options, the monthly payments due for the remainder of the guaranteed period will continue to the surviving person or persons named to receive them. The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is then living, the Commuted Value will be paid in one sum to the estate of the last survivor of you and your Second Participant if you chose a Survivor Unit-Annuity Option, or to your estate if you chose one of the other Income Options.

If a person receiving these payments dies before the end of the guaranteed period, the Commuted Value of any payments still due that person will be paid to any other person or persons named to receive it. If no one has been named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

**Your CREF Retirement Unit-Annuity Certificate**                    **Sections 19-21**

19.    **The Number of Annuity Units** will be determined as of the Annuity Starting Date, in accordance with the Rules of the Fund, by:  A) the value of your Accumulation Units at that time; B) the Income Option you choose; C) your age; D) if you choose one of the Survivor Unit-Annuity Options, your Second Participant's age; E) if the Rules of the Fund provide for the use of sex-distinct mortality, your sex and that of any Second Participant; and F) the value of an Annuity Unit.

If your initial Unit-Annuity payment would be less than $25, CREF will have the right to change to quarterly, semi-annual or annual payments, whichever would result in an initial payment of $25 or more and the shortest interval between payments.

## PART D:  DEATH BENEFIT

20.    The **Death Benefit.**  If you die before the Annuity Starting Date, CREF will pay the Death Benefit to your beneficiary under one of the Methods of Payment set forth in Section 24. You may choose the Method during your lifetime as explained in Section 32. If you do not so choose, your beneficiary will make the choice when he or she becomes entitled to payments.  You may change the Method at any time before payments begin. After your death, your beneficiary may also change the Method chosen by you, if you so provide.  Any choice of Method or change of such choice must be made in writing as explained in Section 32.

21.    **Naming Your Beneficiary.**  Beneficiaries are persons you name, in form satisfactory to CREF, to receive the Death Benefit if you die before the Annuity Starting Date.  You may designate different classes of beneficiaries, such as primary (first) and contingent (secondary).  These classes set the order of payment.  If a class contains more than one person, the Death Benefit will be paid to the then living persons in the class in equal shares, unless you provide otherwise.  For example, if you die before the Annuity Starting Date, having named your spouse as primary beneficiary and 'children' as equal contingent beneficiaries, your spouse would receive the Death Benefit if he or she survived you. But if your spouse did not survive you, then your children would receive equal shares of the Death Benefit.

The terms 'children' or 'my children' may be used to name a class of beneficiaries, either primary or contingent.  Unless you specify otherwise, these terms will mean all children born of your marriage or marriages and any children legally adopted by you. The term 'children' also has the same inclusive meaning when used to name as beneficiaries the children of your spouse, your child, your brother or your sister.

If you name your estate as beneficiary, or if none of the beneficiaries you have named is alive at the time of your death, the Death Benefit will be paid to your estate in one sum.

If you die prior to the Annuity Starting Date never having named a beneficiary, your estate and your surviving spouse, if any, become the beneficiaries as follows:

A) if you leave no surviving spouse, the Death Benefit will be paid to your estate in one sum;

B) if you leave a surviving spouse, your spouse will receive lifetime monthly payments of the number of Annuity Units he or she would have received as Second Participant if you had started to receive your Income Benefit as of the first day of the month in which you die, having chosen the 'Half Benefit to Second Participant with 10-Year Guaranteed Period' Option. The part of the Death Benefit not needed to provide this income to your spouse will be paid to your estate in one sum.

22.   **Changing Your Beneficiary.**  At any time before the Annuity Starting Date, you may change your beneficiary or add or delete beneficiaries as explained in Section 32.

23.   **Payment of the Death Benefit.**  Payment of the Death Benefit under one of the Methods set forth in Section 24 will start as of the first day of the month after we have received:

   A) this certificate;
   B) due proof of your death;
   C) the choice of a Method of Payment as provided in Section 24; and
   D) due proof of the beneficiary's age if the Method chosen pays a lifetime income.

24.   **Methods of Payment.**  The Death Benefit will be paid to your beneficiary under one of the Methods shown below.

   **Single Life Unit-Annuity.**  A payment will be made to your beneficiary each month for life.  All payments will cease at his or her death.  This Method provides nothing for anyone after the death of your beneficiary.

   **Life Unit-Annuity with 10-, 15- or 20-Year Guaranteed Period.**  A payment will be made to your beneficiary each month for life.  If he or she dies before the end of the guaranteed period chosen, the monthly payments will continue to the end of that period as explained in Section 25.

   **Unit-Annuity for a Fixed Period.**  A payment will be made to your beneficiary each month for a fixed period of not less than two nor more than thirty years, as chosen. At the end of the period chosen the entire Death Benefit will have been paid out and no further payments will be made.  If your beneficiary dies before the end of the period chosen, monthly payments will continue to the end of that period as explained in Section 25.

   **Unit Deposit.**  CREF will hold your beneficiary's Accumulation Units on deposit for a chosen period of not less than two nor more than thirty years.  No periodic payments will be made under this Method.  Additional Accumulation Units will be purchased in accordance with the Rules of the Fund from your beneficiary's share of the net dividend and other income of CREF.  At the end of the period chosen, CREF will make a one-sum payment to your beneficiary.  This one-sum payment will be the then current value of all Accumulation Units held by CREF for your beneficiary.  If

your beneficiary dies while any part of the Death Benefit is held by CREF, that amount will be payable as explained in Section 25.

Instead of a chosen period, the Accumulation Units may be held on deposit for 'the lifetime of the beneficiary,' with the one-sum payment made after the death of your beneficiary as explained in Section 25.

The value of the Death Benefit placed under this Method must be at least $5,000.

**Transfer to a TIAA Dollar Pay-out Contract.**  CREF will transfer the Death Benefit to TIAA for the purchase of an individual pay-out contract on the life of the beneficiary in any form then being issued by TIAA for such transfers, or an Annuity for a Fixed Period of not less than two nor more than thirty years, or an Interest Payments contract for A) the lifetime of the beneficiary; or B) a chosen period of not less than two nor more than thirty years.  The pay-out rates for the TIAA contract will be the rates applying to such transfers at that time; the contract will give the beneficiary the same rights as any person applying for a similar TIAA contract.  The value of the Death Benefit transferred under this Method must be at least $1,000; however, if an Interest Payments contract is chosen, the value of the Death Benefit transferred must be at least $5,000.

If any Method chosen, except Unit Deposit, would result in an initial payment of less than $25, CREF will have the right to require a change in choice that will result in an initial payment of not less than $25 a month.

25.   **Payments after the Death of a Beneficiary.**  Any monthly payments still due at the death of your beneficiary during a guaranteed or fixed period will be continued to the person or persons named by you or your beneficiary to receive them.  The Commuted Value of these payments may be paid in one sum unless we are directed otherwise.

If no one has been named to receive these payments, or if no one so named is living at the death of your beneficiary, the Commuted Value will be paid in one sum to your beneficiary's estate.

If a person receiving these payments dies before the end of the guaranteed or fixed period, the Commuted Value of any payments still due that person will be paid to any other person or persons named to receive it.  If no one has been so named, the Commuted Value will be paid to the estate of the last person who was receiving these payments.

If your beneficiary dies while any Accumulation Units are held by CREF under the Unit Deposit Method, their then current value will be paid in one sum to the person or persons you or your beneficiary have named to receive it.  If no such person survives your beneficiary, the then current value of all Accumulation Units held on deposit will be paid in one sum to your beneficiary's estate.

26.   **The Number of Annuity Units for a Beneficiary** will be determined, in accordance with the Rules of the Fund, by:  A) the value of your Accumulation Units as of the date of your death; B) the Method of Payment chosen for the Death Benefit; C) if the Method chosen

pays a lifetime income, the age of your beneficiary and, if the Rules of the Fund provide for the use of sex-distinct mortality, his or her sex; and D) the value of an Annuity Unit.

## PART E: TRANSFERS

27. **Transfer to TIAA Dollar Annuity.**  You may transfer all or a part of your Accumulation to TIAA for the purchase of a TIAA deferred or pay-out annuity contract on your life, provided the election to transfer is made before the Annuity Starting Date, and subject to the following conditions:

   A) the premium rates for the TIAA contract will be the rates applying to such Transfers at the time the Transfer is made;

   B) you will have the same rights under the TIAA contract as any person then being issued a similar contract, except since a Transfer cannot be revoked or cancelled there will be no temporary right to cancel;

   C) the effective date of the Transfer will be the first day of the month following the month in which we receive your election or the first day of any later month you select;

   D) the election of a Transfer cannot be revoked after the effective date of such Transfer;

   E) the amount transferred must be at least $1,000;

   F) no more than two Transfers may be made in any year; and

   G) the TIAA contract will not provide for assignment, loan or cash surrender.

The number of your Accumulation Units will be reduced by the number of such Units transferred to TIAA.

## PART F: GENERAL PROVISIONS

28. **Report of Premiums and Accumulation.**  Once each year until the Annuity Starting Date, we will mail you a report for the calendar year just ended.  It will show the amount of premiums paid during the year and the value of your Accumulation (Death Benefit) as of the end of the year.

29. **Ownership.**  You own this certificate.  During your lifetime, you may, to the extent permitted by law, exercise every right given by it without the consent of any other person.

30. **No Assignment.**  Neither you nor any other person may assign, pledge, or transfer ownership of this certificate or any benefits under its terms.  Any such action will be void and of no effect.

**Your CREF Retirement Unit-Annuity Certificate**                    **Sections 31-36**

31.   **No Cash Surrender or Loans.**  This certificate does not provide for cash surrender or loans.

32.   **Procedure for Elections and Changes.**  You, or your Second Participant or beneficiary having the right to do so, may elect or change, in accordance with the terms of your certificate, any of the following by written notice satisfactory to CREF sent to its home office in New York, NY:

   A)  the Annuity Starting Date;
   B)  an Income Option;
   C)  a Transfer;
   D)  a Method of Payment for the Death Benefit; or
   E)  a beneficiary or any person named to receive payments remaining due.

No such notice will take effect unless it is received by CREF.  When received it will take effect as of the date it was signed, whether or not the signer is living at the time we receive it.  Any action taken by CREF in good faith before receiving the notice will not subject CREF to liability because our acts were contrary to what was stated in the notice.

33.   **Payment to an Estate, Guardian, Trustee, etc.**  CREF reserves the right to pay in one sum the Commuted Value of any benefits due an estate, corporation, partnership, trustee or other entity not a natural person.  CREF will not be responsible for the acts or neglects of any executor, trustee, guardian, or other third party to whom payment is made.

34.   **Correspondence and Request for Benefits.**  No notice, application, form, premium payment, or request for benefits will be deemed to be received by us unless it is received at our home office.  All benefits are payable at our home office.  Any questions about this certificate or inquiries about our service should be directed to us at our address:

CREF
730 Third Avenue
New York, NY  10017-3206.

35.   **Service of Process upon CREF.**  We will accept service of process in any action or suit against us on this contract in any court of competent jurisdiction in the United States, Puerto Rico or Canada, provided such process is properly made.  We will also accept such process sent to us by registered mail if the plaintiff is a resident of the state, district, territory, or province in which such action or suit is brought.  This Section does not waive any of our rights, including the right to remove such action or suit to another court.

36.   **Protection Against Claims of Creditors.**  The benefits and rights accruing to you or any other person under this certificate are exempt from the claims of creditors or legal process to the fullest extent permitted by law.  This protection is contained in the statute of the State of New York establishing CREF.

37.  **Benefits Based on Incorrect Data.**  If the amount of benefits is determined by data as to a person's age or sex that is incorrect, benefits will be recalculated on the basis of the correct data.  If any overpayments or underpayments have been made by CREF, adjustments will be made in accordance with the Rules of the Fund.

38.  **Proof of Survival.**  CREF reserves the right to require satisfactory proof that anyone named to receive benefits under the terms of your certificate is alive on the date any benefit payment is due.  If this proof is not received after requested in writing, CREF will have the right to make reduced payments or to withhold payments entirely until such proof is received.  If under a Survivor Unit-Annuity Option CREF has overpaid benefits because of a death of which we were not notified, subsequent payments will be reduced or withheld until the amount of the overpayment has been recovered.

39.  **Non-Forfeiture of Benefits.**  Benefits payable under this certificate will not be less than the minimum required as of the Date of Issue by any statute of the State in which this certificate is delivered.  Any benefits purchased cannot be forfeited under this certificate.

**30 Day Free Look to Your CREF**
**Retirement Unit-Annuity Certificate**

### COLLEGE RETIREMENT EQUITIES FUND
730 Third Avenue, New York, New York 10017-3206

## NOTICE OF 30 DAY RIGHT TO CANCEL THIS CERTIFICATE

It is our wish that you fully understand the provisions of your Certificate and be entirely satisfied with it. Please read it carefully. You may cancel this Certificate by taking all of the following actions within 30 days from the date you receive it:

1. Delivering or mailing the certificate to us, and

2. Sending us the "Notice of Cancellation" below or a telegram or other written notification similarly worded.

The Certificate and notification should be delivered or mailed to: CREF, 730 Third Avenue, New York, NY 10017-3206.

---

### CAUTION: IMPORTANT!

If this Certificate has been issued in accordance with the requirements of your employer's retirement plan, keeping the Certificate may be required as a condition of your employment. If you have any questions, please review the provisions of your employer's retirement plan or consult with your employer to determine your rights and obligations with respect to the plan and this Certificate.

---

## NOTICE OF CANCELLATION

I am the owner of CREF Certificate No. _____.

I hereby cancel this Certificate. I request that the accumulated value of all premiums paid for it be refunded to the remitter of the premiums. I understand that if this Certificate was issued as a result of a transfer from another CREF unit-annuity certificate or a certificate or a contract issued by Teachers Insurance and Annuity Association of America, the premium refund will be reinstated in such certificate or contract.

I understand that upon delivering or mailing this notice and the Certificate to CREF, the Certificate is void as of the date of issue and no benefits will be provided under it.

Dated: _____    Signature: _____

_____
*Name (Please Print)*

C059-M
CREF DA

Ed. 4-93

# COLLEGE RETIREMENT EQUITIES FUND
# RULES OF THE FUND

### Effective as of May 1, 2024

Note to participants: CREF's rules of the fund (also referred to as the rules for determining benefits) include general descriptions as well as the necessarily technical matters and formulas used in the calculation of your CREF benefits. The Board of Trustees of CREF has established these rules and procedures, and may amend and add to them from time to time, to carry out the provisions of the contracts and certificates and to govern all matters affecting the interest of anyone participating in CREF to the extent such matters are not specifically provided for in the contracts and certificates. These rules and any changes to them are effective only when approved by the Superintendent of Financial Services of the State of New York (the "Department") as not being unfair, unjust, inequitable or prejudicial to the interest of anyone participating in CREF. These rules have been worked out with great care to assure equitable treatment among participants. This printing of the rules contains amendments as adopted by the Board of Trustees and approved by the Superintendent of Financial Services of the State of New York.

The rules of the fund concern only the methods of calculating the amounts of benefits. The various benefit options are described in your CREF contract or certificate.

## PART I. GENERAL DESCRIPTION OF THE CREF ANNUITY

A life annuity is a financial instrument that enables you to maximize the amount of periodic income you can get from your retirement savings, while insuring that you will never outlive those savings. Without annuities, you can only be certain that you won't outlive your retirement savings if you live only on the income earned by your savings, keeping your investments intact. If you take regular withdrawals that exceed your investment income, you risk exhausting your retirement savings while you are still alive and in need of retirement income.

The annuity mechanism enables you to maximize your payment amounts by distributing both investment income and a portion of the investment with each periodic payment. An annuity company can do this by pooling the retirement savings for all annuitants into one large fund from which annuity payments are made. The annuity payments are calculated so that each recipient gets the largest amount that the company can pay without exceeding the fund. This is possible through the use of mortality tables developed from the experience of many years. The company doesn't know **which** individuals will live through each year, but it does know about how **many** will live. It can therefore provide a lifetime income to each annuitant that will be greater than the investment income alone.

CREF provides variable annuities to its participants through eight different investment accounts. CREF has four expense classes, which apply to each of the eight accounts. An expense class within CREF is referred to as a CREF Expense Class ("Expense Class"), and an Expense Class within a particular account is referred to as a CREF Account Class ("Account Class"). We refer to these classes as Account Class 1, Account Class 2, Account Class 3, and Account Class 4 in this document. Premiums contributed to CREF buy accumulation units, which are similar to shares in a mutual fund. The value of each Account Class's accumulation unit changes over time reflecting the investment experience (dividend and interest income, plus capital gains and losses) and expenses of the Account Class. Capital gains and losses include all changes in market values, whether realized from the sale of assets or unrealized.

Unlike TIAA, where the guaranteed life income from an annuity is a specified number of dollars per payment period, in CREF the life income is a specified number of annuity units per payment period. When participants are ready to begin receiving annuity income, their accumulation units are

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 249 of 267<sub>7090</sub>
PageID: 7003
**CREF's Rules of the Fund**

converted into annuity units of equal total value. Lifetime income under a CREF variable annuity is paid as the current value of a specified number of annuity units. Payments are determined under one of two income change methods. Under the annual income change method, the amount of each payment is determined once each year, so that the payments remain level for one year intervals. Under the monthly income change method, the amount of each payment is determined every month, so that the amount may change every month.

Separate annuity units are maintained for each income change method within each Account Class that offers unit-annuities. The initial determination of the number of annuity units each annuitant will receive is based on assumptions about investment return, expenses and mortality. The value of an annuity unit changes over time to reflect differences in the actual experience of the Account Class from each of the assumptions.

For example, if actual mortality experience matches that which was expected, and actual investment experience less expenses exceeds the assumed 4% effective annual rate of investment return, the value of an annuity unit will generally increase, while if actual investment experience less expenses falls short of the assumed 4% effective annual rate of investment return, the value of an annuity unit will generally decrease.

Each account has a different investment objective, so the unit values and the changes in unit values for the Account Classes in one account will not necessarily be similar to the unit values or changes in unit values for the Account Classes of another account. Within each Account Class, the values of the accumulation units and annuity units (if any) will usually be different from each other.

Some Account Classes offer unit-annuities. Separate funds are maintained in each Account Class that offers unit-annuities. The accounts, the funds, and the different kinds of units are described in the next sections.

## PART II. INVESTMENT ACCOUNTS

CREF has established the following investment accounts:

- the **CREF Stock Account** -- a broadly diversified portfolio consisting primarily of common stocks;

- the **CREF Global Equities Account** -- a broadly diversified portfolio consisting primarily of foreign and domestic common stocks;

- the **CREF Equity Index Account** -- a portfolio consisting primarily of domestic common stocks selected to track the overall U.S. stock market;

- the **CREF Growth Account** -- a portfolio consisting primarily of common stocks that we believe present the opportunity for exceptional growth;

- the **CREF Social Choice Account** -- a portfolio consisting primarily of common stocks, investment grade fixed-income securities and short-term debt securities;

- the **CREF Money Market Account** -- a portfolio consisting primarily of short-term debt securities and money market instruments;

- the **CREF Core Bond Account** -- a portfolio consisting primarily of investment grade fixed-income securities; and

- the **CREF Inflation-Linked Bond Account** -- a portfolio consisting primarily of inflation-indexed bonds issued by the U.S. Government and its agencies, corporate entities, and foreign governments.

Some CREF contracts and certificates may limit the accounts available for use under the contract/certificate. A retirement plan may limit pre-retirement participation in any account for premiums remitted under that plan. However, under the following CREF contracts and certificates, a retirement plan may not limit participation in the CREF Stock Account and the CREF Money Market Account: Retirement Unit-Annuity, Supplemental Retirement Unit- Annuity, Group Retirement Unit-Annuity, Group Supplemental Retirement Unit-Annuity, and Keogh Group Retirement Unit-Annuity. CREF may restrict certain classes of contracts and/or certificates from participating in the Inflation-Linked Bond Account.

CREF may delete or may stop providing unit-annuities from any account except the CREF Stock Account and the CREF Money Market Account. CREF may also stop providing unit-annuities under either income change method from any account.

CREF has four Expenses Classes. The Expense Class(es) associated with a contract or certificate is shown on the contract, certificate, or on an Endorsement thereto.

The Expense Class or Classes under which any CREF contract or certificate participates within CREF is determined in accordance with eligibility criteria established by CREF as follows.

**Determination of Expense Class Eligibility**

Accumulations: Institutions

Employer sponsored arrangements, as determined by CREF ("Institutions"), are in the following Expense Classes:

**Expense Class 1**:  Institutions with CREF assets under management below $20 million.

**Expense Class 2**:  Institutions with CREF assets under management of $20 million or more, but less than $400 million.

**Expense Class 3**:  Institutions with CREF assets under management of $400 million or more.

**Expense Class 4**:  Institutions that have adopted Retirement Choice / Retirement Choice Plus contracts as well as have entered into a recordkeeping services agreement with TIAA.

Accumulations: Other

For all other accumulations, the Expense Class for each product is determined based on the following. Such products include IRAs, Keoghs, After-Tax Retirement Annuities, deposit contracts issued in settlement of death proceeds, and any other contracts not being used as employer-sponsored plan accumulation funding vehicles (each a "Product"):

(1) CREF will determine the administrative expenses and the distribution expenses, associated with total CREF assets, separately for each Product;

(2) For each Product, CREF will determine the ratio of administrative expenses to total CREF assets under management and the ratio of distribution expenses to total CREF assets under management;

(3) For each Expense Class shown above, CREF will determine the ratio of administrative expenses to CREF assets under management in the Expense Class and the ratio of distribution expenses to CREF assets under management in the Expense Class;

(4) The Expense Class for each Product is the Expense Class whose combined administrative and distribution expense ratios associated with total CREF assets in such Expense Class is closest

to such Product's combined administrative and distribution expense ratios. This will generally result in a Product being assigned to the less expensive of the two Expense Classes between which its combined administrative and distribution expense ratios fall, unless such assignment would under the circumstances result in an undue financial impact on the Expense Class as a whole. Investment performance alone will not result in the reassignment of a Product to a more expensive Expense Class.

For purposes of this determination, each Product shall be considered separately or, subject to the Department's approval, combined with one or more other Products. The total amount of administrative expenses and the total amount of distribution expenses shall also be separately determined in accordance with the corporate methodology for allocating CREF expenses. Any change to such methodology will preserve the principles of classification and fairness established by the eligibility criteria described above. Administrative and distribution expenses are proportionately allocated among the Expense Classes 1, 2, and 3 and Products based on actual utilization of services and costs, by Institutions and Products and in accordance with the CREF administrative and distribution services agreements. For the above products, Expense Class 4 is not available.

Annuity Units

The Expense Class(es) for Annuity Units shall be determined similarly to the determination of Expense Classes for "Accumulations: Other", described above.

****************

There may be exceptions to these classifications provided there is a sound actuarial basis for such exceptions and there is no unfair discrimination under applicable law. Such exceptions may include an Institution's decision to reject their reclassification from a more expensive Expense Class to a less expensive Expense Class subsequent to its initial Expense Class designation. Such rejection shall not be permitted in connection with an Institution's initial Expense Class determination. Initial Expense Class determinations will only include Expense Classes 1, 2 and 3. Expense Class 4 is optional and must be requested by the Institution subject to meeting the eligibility criteria.

CREF may adopt reasonable guidelines, interpretations, and procedures applicable to Part II that are not inconsistent with these rules and which preserve the principles of classification and fairness established by the eligibility criteria described above. Such guidelines, interpretations, and procedures include, for example, the frequency of class eligibility review and the definition of an "Institution" for the purposes of assignment of such Institution to an Expense Class.

CREF may add, delete, or modify one or more Expense Classes or may stop providing unit-annuities from one or more Expense Classes. Expense Class eligibility criteria may be changed by CREF. Any such additions to, deletions of, or modifications to the Expense Classes, and any such changes to the criteria, will be subject to approval of the Department. Changes to the Expense Class eligibility criteria may result in transfers of existing accumulations and/or annuity units to a different Expense Class.

Expense Class qualification will be reviewed at least annually by CREF. As a result, the applicable Expense Class for accumulations and/or annuity units may change.

**Investment Management, Administration, Distribution, and other Expenses; Charges**

Each Valuation Day, CREF deducts charges from the net assets of each Account for the expenses of investment management, administration, distribution, and other expenses and services. TIAA or

**CREF's Rules of the Fund**

subsidiaries of TIAA provide or arrange for the provision of these services for CREF "at cost" to TIAA and its affiliates.

(1) <u>Investment Management Expenses</u>. These expenses generally include investment management, portfolio accounting and custodial services. This charge does not vary by Expense Class.

(2) <u>Administrative Expenses</u>. These expenses cover the costs of administration and operations of CREF and the contracts. Administrative expenses for Expense Classes 1, 2 and 3 include certain costs associated with the provision by TIAA entities of recordkeeping and other services for products utilizing CREF Accounts. A portion of these expenses is allocated to CREF in accordance with applicable allocation procedures.

(3) <u>Distribution Expenses</u>. These expenses generally include the costs of solicitation, distribution, providing information, and rendering assistance and other services to contract owners and employers.

The preceding expenses also include the costs of audit, legal and certain other services provided by third parties.

Data supporting the above expenses are obtained from CREF's accounting and financial reporting systems, and are reviewed by the appropriate administrative departments. CREF expenses are regularly reviewed during the year, and are updated and approved by Management and the CREF Board of Trustees at least annually.

The total amount of investment management expenses is separately determined. The ratio of such amount to total assets under management is then allocated among the Expense Classes equally (i.e., same percentage charge), rather than on the basis of actual utilization of services and costs associated with a particular Expense Class, and in accordance with the investment management agreement.

The total amount of administrative expenses for Expense Classes 1, 2 and 3 and the total amount of distribution expenses for the Expense Classes are also separately determined in accordance with CREF's corporate methodology for allocating expenses. Administrative and distribution expenses are proportionately allocated among the Expense Classes and Products based on actual utilization of services and costs, by Institutions and Products and in accordance with the CREF administrative and distribution services agreements.

**Mortality and Expense Charge**

Each Valuation Day, CREF also deducts a mortality and expense risk charge to guarantee that contract owners transferring funds to TIAA for the immediate purchase of lifetime payout annuities will not be charged more than the annuity purchase rate stipulated in the contract. This charge does not vary by Expense Class (i.e., same percentage charge).

## PART III.  FUNDS

Each Account Class currently maintains an accumulation fund. In addition, each Account Class may offer unit-annuities under either or both income change methods and include one or two annuity funds. Unit-annuities are not currently offered under all classes in any account. For each Account Class, the accumulation fund equals the portion of the Account Class's total net assets allocated to participants in the accumulation period. The annuity fund for each income change method in each Account Class that offers unit-annuities equals the portion of the Account Class's total net assets allocated to participants receiving annuity benefits payable under that income change method. There

is no segregation of individual assets within an Account Class; however, a liability is maintained for each fund. An Account Class's total net assets are A) the value of the Account Class's total assets less B) the value of the Account Class's total liabilities excluding that Account Class's accumulation fund and annuity funds, if any. If, at any time, there are no remaining participants or beneficiaries receiving annuity benefits from an annuity fund in an Account Class the net assets of that fund will be transferred to that Account Class's accumulation fund.

A "period" is the time from the end of one valuation day to the end of the next valuation day. A "valuation day" is any day that the New York Stock Exchange is open for trading. Valuation days end as of the close of all United States national exchanges where securities or other investments of CREF are principally traded.

The value of each Account Class's accumulation fund and each Account Class's annuity funds, if any, at the end of a valuation day equals the corresponding value at the end of the previous valuation day, increased by amounts added to each fund during the current period and reduced by amounts withdrawn from each fund during the current period. These changes include the increase by the allocated portion of the current period's net investment income and capital gains and the decrease by the allocated portion of the current period's capital losses. This allocated portion is determined in accordance with the respective proportions of the Account Class's accumulation fund and annuity funds as of the end of the previous valuation day as adjusted for additions to and withdrawals from each fund as of the beginning of the current period.

The periodic total yield rate for an Account Class is based on the amount of dividends, interest and other income accrued and allocated to that Account Class during the current period, a deduction of expense charges, and both realized and unrealized capital gains and losses allocated to that Account Class during the current period. The precise formula for the rate is C minus 1, where C is A divided by B, and A and B are as follows:

A. The Account Class's accumulation unit value as of the end of the valuation day at the end of the period.

B. The Account Class's accumulation unit value as of the end of the prior valuation day.

## EXPENSES

The investment advisory expense charges, the operating expense charges, and the mortality and expense risk charges are established by the Board of Trustees of CREF, and may be changed from time to time, but any changes in these charges become effective only when approved by the Superintendent of Financial Services of the State of New York. Each participant receives a schedule of the current charges.

*Note:* The current charges were established as of May 1, 2024. These charges are assessed each calendar day at a rate equal to the following percentages divided by 365, or by 366 during leap years.

- **Administrative Expense Charge:**
  - -- For Expense Class 1 (also called "R1") within each account, 0.340% of the Account Class's net assets.
  - -- For Expense Class 2 (also called "R2") within each account, 0.210% of the Account Class's net assets.
  - -- For Expense Class 3 (also called "R3") within each account, 0.150% of the Account Class's net assets.
  - -- For Expense Class 4 (also called "R4") within each account, 0.010% of the Account Class's net assets.

CREF's Rules of the Fund

- **Distribution Expense Charge:**
  - -- For Expense Class 1 within each account, 0.060% of the Account Class's net assets.
  - -- For Expense Class 2 within each account, 0.025% of the Account Class's net assets.
  - -- For Expense Class 3 within each account, 0.020% of the Account Class's net assets.
  - -- For Expense Class 4 within each account, 0.005% of the Account Class's net assets.

- **Mortality and Expense Risk Charge:**
  - -- 0.005% of each Account Class's net assets.

- **Investment Advisory Expense Charge:**

  For any Account Class:

  0.080% of the CREF Stock Account's net assets in the Account Class;

  0.075% of the CREF Global Equities Account's net assets in the Account Class;

  0.010% of the CREF Equity Index Account's net assets in the Account Class;

  0.050% of the CREF Growth Account's net assets in the Account Class;

  0.045% of the CREF Social Choice Account's net assets in the Account Class;

  0.015% of the CREF Money Market Account's net assets in the Account Class;

  0.075% of the CREF Core Bond Account's net assets in the Account Class;

  0.040% of the CREF Inflation-Linked Bond Account's net assets in the Account Class.

Without limiting the powers of the Board of Trustees, it is the established policy to maintain an approximate balance between the cumulative total of expense charges and the cumulative total of CREF's expenses as determined by cost analyses. Accordingly, at the end of each calendar quarter, or as soon as practicable thereafter, any difference between the expense charges and CREF's actual expenses is repaid by equal daily installments through the end of the next calendar quarter, provided that material differences may be repaid in the current calendar quarter, in accordance with generally accepted accounting principles. It is also the policy that changes in the stated expense charge rates are made as infrequently as practicable, consistent with the policy of maintaining the approximate balance referred to above.

Each participant's share in the accumulation funds is expressed in terms of accumulation units, and each participant's share in each of the annuity funds is expressed in terms of annuity units payable at stated intervals under a specified income change method.

## PART IV. ACCUMULATION UNITS

All payments by participants and their employers to CREF accumulating annuities buy accumulation units in one or more of the Account Classes. The dollar value of each such unit varies from valuation day to valuation day in accordance with the change in the value of the accumulation fund for that Account Class relative to the change in the number of accumulation units outstanding in that Account Class.

The dates at which all amounts credited to a participant commence or cease to participate in the accumulation fund, in the absence of specific provisions in the participant's contract or certificate, are determined by CREF in accordance with established rules.

Case 3:15-cv-06726-RK-JBD    Document 255-3    Filed 04/17/25    Page 255 of 267
PageID: 7009
CREF's Rules of the Fund

For accumulation units purchased by premiums remitted under a retirement plan, the plan may limit: withdrawals, availability of the unit-annuity for a fixed period, participation in accounts to the extent described above, and transfers to a funding vehicle not offered by CREF or TIAA.

## VALUE OF ONE ACCUMULATION UNIT

The value of each Account Class's accumulation unit as of the end of each valuation day will be determined by dividing A) the value of the Account Class's accumulation fund as of the end of the valuation day by B) the total number of accumulation units held by all participants in that Account Class as of the end of the valuation day. The value of the Account Class's accumulation fund and the total number of accumulation units does not include the impact of funds or units added or subtracted as a result of transactions effective as of that valuation day.

## TOTAL NUMBER OF ACCUMULATION UNITS CREDITED TO A PARTICIPANT AT THE END OF ANY PERIOD

At the end of any valuation day, the total number of accumulation units credited to a participant may be determined by taking the number of accumulation units to the participant's credit at the end of the previous period and adding the number of units purchased by premiums or transfers during the period and subtracting the number of units transferred, withdrawn or converted into annuity units during the period. The number of accumulation units so added or subtracted will be based on the accumulation unit value determined at the end of the period.

## PART V. ANNUITY UNITS

At the time annuity payments are to begin for a participant (or for the beneficiary in the event the participant has died), the value of the accumulation units held by the participant in each Account Class is converted into a promise to pay, periodically, the then current value of a number of annuity units in an Account Class that offers unit-annuities. Unit-annuities are not currently offered under all Account Classes. Accordingly, upon conversion, accumulations in Account Classes not offering unit-annuities must be converted to annuity units in an Account Class that offers unit-annuities. The number of annuity units established on conversion is, in general, obtained by dividing the value of the participant's accumulation units at that time by the actuarial present value of an annuity of the value of one annuity unit at that time. Such present values are calculated based on the annuity unit value for the Account Class from which the unit-annuity is to be paid.

The dates at which participants commence or cease to participate in the annuity funds, in the absence of specific provisions in the participant's contract or certificate, are determined by CREF in accordance with established rules.

The rules stated in the following paragraphs refer only to annuities paid on a monthly basis. For annuities paid on a frequency other than monthly, appropriate actuarial adjustments are made.

## HOW UNIT-ANNUITY PAYMENTS ARE DETERMINED

The amount of each annuity payment is determined by multiplying the number of annuity units payable by the value of one annuity unit as of the payment valuation date for the income change method selected.

▶ Under the **annual income change method**, the amount of each payment is revalued once each year. The payment valuation date for the annual income change method is the last valuation day in March, with the subsequent payment changes effective on May 1. For participants beginning

annuity income, the initial value of the annuity unit is the interim annuity unit value for the annual income change method as of the end of the day on which the accumulation units are converted into annuity units.

▶ Under the **monthly income change method**, the amount of each payment is revalued every month. The payment valuation date for the monthly income change method is the twentieth day of a month (or if the twentieth is not a valuation day, the prior valuation day) for payments due on the first day of the following month. For participants beginning annuity income, the initial value of the annuity unit is the interim annuity unit value for the monthly income change method as of the end of the day on which the accumulation units are converted into annuity units.

The value of an annuity unit is defined in terms of a basic annuity unit that is established as of the last valuation day in March of each year, for each income change method offered in each Account Class providing unit-annuities. The value of the interim annuity unit for each income change method offered in each such Account Class is set equal to the value of the basic annuity unit on the last valuation day in March, and is redetermined as of each subsequent valuation day.

● **Beginning Income:** The following example illustrates how the number of annuity units is calculated for a participant who elects a single life annuity from the CREF Stock Account, payable monthly under the annual income change method.

**Example:** Suppose that at retirement Professor Smith, a participant, owns 1,000 accumulation units in the CREF Stock Account under Account Class 1, each worth $110. The value of Professor Smith's accumulation units equals 1,000 multiplied by $110, or $110,000. Assume that Expense Class "x" is the only Expense Class in any account from which unit-annuities are currently being paid. Next, assume that the actuarial present value of a single life annuity of $1 a month at Professor Smith's retirement age is $160, and that the current value of one interim annuity unit payable under the annual income change method in the Stock Account under Account Class x is $170. At Professor Smith's age, the actuarial present value of a single life annuity of the current value of one Stock Account annuity unit per month payable under the annual income change method under Account Class x is thus $160 multiplied by $170, or $27,200. To obtain the number of annuity units for Professor Smith, we divide the $110,000 by the $27,200 and find that Professor Smith will receive the value of 4.044 Stock Account annuity units per month for life payable under the annual income change method under Account Class x (unless those annuity units are subsequently transferred or switched). Accordingly, Professor Smith will receive monthly income payments of 4.044 multiplied by $170, or $687.48 per month until the payments are revalued on the next payment valuation date for the annual income change method.

● **Transferring:** Some CREF contracts and certificates allow annuitants to transfer annuity units from an account to any other account then offering unit-annuities under the same income change method and Expense Class. The resulting number of annuity units payable from an Account Class to which annuity units are transferred will be obtained by multiplying the number of annuity units transferred out of the originating Account Class by the interim annuity unit value for that income change method in the originating Account Class, and dividing the result by the interim annuity unit value for the same income change method and Expense Class in the account to which the units are being transferred. Participation in the experience of the accounts changes as of the transfer's effective date. The amount of each unit-annuity payment will change when the payments are revalued on the next payment valuation date that is on or after the transfer's effective date.

▶ For example, if annuity units payable under the annual income change method are transferred on September 1, the unit-annuity payments will be revalued on the next payment valuation date for

**CREF's Rules of the Fund**

the annual income change method (the last valuation day in March), and the new payment amount will begin with payments beginning on the following May 1.

▶ If annuity units payable under the monthly income change method are transferred on the fifteenth day of a month, the unit-annuity payment will be revalued on the twentieth day of that month (or the prior valuation day if the twentieth is not a valuation day, which is the payment valuation date for the monthly income change method), and the change in payment will occur for the unit-annuity payment due on the first day of the next month.

The following example illustrates a transfer of annuity units payable under the annual income change method from the CREF Stock Account to the CREF Core Bond Account.

**Example:** As above, suppose that Professor Smith owns 4.044 annuity units in the CREF Stock Account Class x payable monthly under the annual income change method as a single life annuity, and that the current value of a Stock Account Class x annuity unit for the annual income change method for payments through April 1, 20xx is $170. Suppose that on January 11, 20xx Professor Smith transfers all of those annuity units to the CREF Core Bond Account Class x. Next, assume that on January 11, 20xx the value of the Stock Account Class x interim annuity unit for the annual income change method is $173 and the value of the Core Bond Account Class x interim annuity unit for the annual income change method is $44. To obtain the number of annuity units purchased in the Core Bond Account Class x for Professor Smith, we multiply the 4.044 Stock Account Class x annuity units by $173, and divide by $44 to get 15.900 Core Bond Account Class x annuity units payable under the annual income change method.

From February 1, 20xx through April 1, 20xx, Professor Smith will continue to receive a monthly payment of $687.48 (equal to his original 4.044 Stock Account Class x annuity units multiplied by $170). Beginning May 1, 20xx, Professor Smith will receive monthly income payments of 15.900 Core Bond Account Class x annuity units multiplied by the recalculated basic annuity unit value, as of the last valuation day in March of 20xx, for the Core Bond Account Class x under the annual income change method. The revaluation, on the last valuation day in March of 20xx, of the monthly annuity payment for Professor Smith will include the effect of participation in the Stock Account Class x from the day following the last valuation day in March of the prior year through January 11, 20xx, and participation in the Core Bond Account Class x from January 12 through the last valuation day in March of 20xx.

If accumulation units are purchased by premiums received on behalf of a participant within 70 days after a participant begins annuity payments, they may be converted into annuity units under the same annuity income option. Accumulation units will be converted into annuity units using the same methods and values used for other accumulation units being converted into annuity units on that date. Payments from the additional annuity units purchased under either income change method will begin with the next payment due after the payment valuation date for the monthly income change method which is on or after the conversion date.

## VALUE OF ONE ANNUITY UNIT

● **Interim Annuity Unit Values:** Separate annuity units are maintained for each of the income change methods within each Account Class providing unit-annuities. The value of an annuity unit is defined in terms of a basic annuity unit that is established as of the last valuation day in March of each year, for each income change method offered in each Account Class providing unit-annuities. The value of the interim annuity unit for each income change method offered in an Account Class is set equal to the value of the basic annuity unit on the last valuation day in March. The interim annuity unit value for an income change method under an Account Class as of any other valuation day is

**CREF's Rules of the Fund**

equal to the most recently determined basic annuity unit value for that income change method under that Account Class multiplied by A and divided by B, then modified by C and D, as follows:

A.  The value of $1 accumulated at the Account Class's periodic total yield rates from the end of the last valuation day of the preceding March, through the current valuation day.

B.  The value of $1 accumulated with interest at the effective rate of 4% from the end of the last valuation day of the preceding March, through the current valuation day.

C.  An adjustment to reflect that annuity income amounts are redetermined only on the payment valuation date for that income change method. The purpose of the adjustment is to equitably apportion the annuity fund's assets between annuitants who participated in the annuity fund for the entire period between two payment valuation dates for that income change method, and those who enter or leave the fund during that period.

D.  An adjustment to reflect year-to-date mortality experience, determined as of the respective last valuation days of each June, September, and December.

● **Basic Annuity Unit Values:** The value of one basic annuity unit payable under each income change method in each Account Class providing unit-annuities was initially set to $10.00 and has been subsequently revalued as described below.

The value of an Account Class's basic annuity unit for each income change method is revalued on the last valuation day of each March by dividing the annuity fund for the income change method in that Account Class less the present value of all annuity benefits that are payable under that income change method on April 1 under annuity contracts and certificates in force on the last valuation day in March, by the discounted actuarial present value of the total number of that Account Class's annuity units that are payable on May 1 and thereafter over the future lifetimes (and for fixed periods) of all participants receiving annuity payments under that income change method as of the last valuation day in March, in accordance with specified assumptions as to mortality and net investment income.

Example: Assume the last valuation day in March of 20xx is March 30th. A hypothetical basic annuity unit value recalculation as of March30[th], 20XX can be summarized as follows:

A.  Annuity fund at March30[th], 20XX:                                          $10,000,000

B.  Present value of benefit payments to be made on April 1, 20XX under annuity certificates in force on March 30th, 20XX:                    $800,000

C.  Discounted Actuarial present value as of March 30, 20XX of total number of annuity units payable on May 1 and thereafter over future lifetimes (and for fixed periods) of all annuitants in force as of March 30, 20XX:                                          125,000

New basic annuity unit value = (A – B) ÷ C = $73.60

The precise actuarial formula for the value of the basic annuity unit for each income change method in an Account Class, as recalculated as of the last valuation day in any March, is A divided by B, as follows:

A.  The Account Class's annuity fund for the income change method as of such last valuation day in March, reduced by the present value of the benefits payable under that income change method on April 1 to annuitants in force on such last valuation day in March.

**CREF's Rules of the Fund**

> B. The present value of the sum, for all annuitants in the Account Class as of such last valuation day in March, of the product of (i) multiplied by (ii) where:
>
>> (i)  is the number of annuity units payable under that income change method each month, and
>>
>> (ii) is the actuarial present value on March 31 of an annuity of $1 per month, with payments beginning on May 1 and continuing while such annuity units are payable.

The present values as described above will be calculated on the basis of interest at the effective annual rate of 4%. The actuarial present values described above will be calculated on the basis of interest at the effective annual rate of 4% and mortality according to the CREF Progressive Annuitant Mortality Table, a merged gender table updated annually as necessary to incorporate CREF's most recently available mortality experience.

## DETERMINATION OF THE NUMBER OF ANNUITY UNITS FOR A PARTICIPANT

The number of annuity units payable to an annuitant under an income change method from an Account Class will be modified by the number of units purchased by converting accumulation units into annuity units and by transfers or switches. The number of annuity units so added or subtracted will be based on the formulas described below. If a participant requests a transfer and a switch on the same effective date, the transfer will be processed first. The right of a participant, second participant, or beneficiary to transfer among CREF accounts, to transfer between a CREF contract or certificate and a comparable TIAA contract, or to switch between income change methods is determined by the terms of the CREF contract / certificate and the TIAA contract.

● **Beginning Income:** When accumulation units are converted into annuity units, the number of annuity units is determined by actuarial methods which take into account the value of the accumulation units being converted, the income option chosen, the mortality table used for participants in the annuity funds, and interest at the effective rate of 4% per year.

The precise actuarial formula for the number of annuity units obtained as a result of converting accumulation units to annuity units payable from an Account Class under an income change method, is A divided by B, as follows:

> A. The value of the accumulation units being converted into annuity units as of the conversion date.
>
> B. The product of (i) multiplied by (ii) as follows:
>
>> (i)  The actuarial present value of an annuity due of $1 per month payable for as long as such annuity units are payable, calculated on the basis of interest at the effective annual rate of 4% and mortality according to the CREF Progressive Annuitant Mortality Table, a merged gender table updated annually as necessary to incorporate CREF's most recently available mortality experience.
>>
>> (ii) The Account Class's interim annuity unit value for the income change method as of the conversion date.

● **Transferring between CREF Accounts:** When a participant or beneficiary receiving annuity benefits transfers annuity units from one CREF account to another CREF account, the Expense Class will remain the same. The number of annuity units in the CREF account transferred to will be determined by multiplying A by B and dividing by C, as follows:

C-R2024

CREF's Rules of the Fund

    A.    The number of annuity units to be transferred from the Account Class.

    B.    The interim annuity unit value, determined on the transfer date, for the income change method in the Account Class from which the annuity units are being transferred.

    C.    The interim annuity unit value, determined on the transfer date, for the same income change method in the Account Class to which the annuity units are being transferred.

●  **Transferring from a TIAA Separate Account to a CREF Account:** When a participant or beneficiary receiving annuity benefits transfers annuity units from a TIAA Separate Account to a companion CREF contract or certificate, the number of annuity units in the CREF account transferred to is equal to A plus B, all divided by C, as described below.

    A.    ▶ if the annuity units being transferred are payable under the annual income change method, i) minus ii) as follows:

        i)    the actuarial present value of the monthly payments scheduled to be paid from the new annuity units through the April 1 following the transfer date, determined on the participant's then-current attained age and the actuarial basis then in use for transfers out of the TIAA Separate Account from which the transfer is being made.

        ii)    the actuarial present value of the payments described in i), determined on the participant's then-current attained age and the actuarial basis then in use for participants beginning income in CREF.

        ▶ if the annuity units being transferred are payable under the monthly income change method, zero.

    B.    the product of i), ii), and iii), as follows:

        i)    the number of annuity units being transferred from the TIAA Separate Account from which the transfer is being made.

        ii)    the interim annuity unit value, determined on the transfer date, for the income change method in the TIAA Separate Account from which the annuity units are being transferred.

        iii)    the actuarial present value of an annuity of $1.00 per period, payable as follows, determined on the participant's then-current attained age and the actuarial basis then in use for transfers out of the TIAA Separate Account from which the transfer is being made.

            ▶ if the annuity units are payable under the annual income change method, the annuity is payable for as long as such annuity units are payable, beginning with the first payment scheduled after the April 1 following the transfer date.

            ▶ if the annuity units are payable under the monthly income change method, the annuity is payable for as long as such annuity units are payable, beginning with the first payment scheduled from the new units.

    C.    the interim annuity unit value, determined on the transfer date, for the same income change method in the Account Class to which the units are being transferred, multiplied by the present value of an annuity of $1.00 per period, payable as described in B.iii) above, determined on the actuarial basis then in use for participants beginning income in CREF.

CREF's Rules of the Fund

● **Transferring from a TIAA Traditional Annuity to a CREF Account:** When a participant or beneficiary receiving annuity benefits transfers from the TIAA Traditional Annuity to a companion CREF contract or certificate, the number of annuity units in the Account Class transferred to is equal to the account value transferred from TIAA (as determined under the terms of the TIAA contract) divided by the product of A and B, as described below.

A.  the interim annuity unit value, determined on the transfer date, for the income change method in the Account Class to which the units are being transferred.

B.  the present value of an annuity of $1.00 per month, payable for as long as such annuity units are payable, beginning with the first payment scheduled from the new units, determined on the basis of interest at the effective annual rate of 4% and the mortality basis then in use for participants beginning income in CREF.

● **Switching:** When a participant receiving annuity benefits under one income change method switches annuity units to the other income change method within the same Account Class as of the last valuation day in any March, the number of annuity units payable under the other income change method will be determined by multiplying A by B and dividing by C, as follows:

A.  The number of annuity units to be switched.

B.  The basic annuity unit value, determined as of the effective date of the switch, for the income change method in the Account Class from which the annuity units are being switched.

C.  The basic annuity unit value, determined as of the effective date of the switch, for the other income change method in the same Account Class.

## PRESENT VALUES OF UNIT-ANNUITIES

● **Commuted Values:** Under some CREF contracts and certificates, the present value of a unit-annuity may be calculated to provide a one-sum payment in lieu of any annuity payments remaining due to a beneficiary during a guaranteed period, or to an annuitant or beneficiary during the remainder of a fixed-period unit-annuity. The formula for the present value of a unit-annuity at the end of any valuation day is the actuarial present value, calculated on the basis of interest at the effective annual rate of 4%, of the unit-annuity payments due for the remainder of the guaranteed or fixed period.

► If the annuity units being commuted are payable under the annual income change method, the dollar amount is that scheduled to be paid through the following April 1, and, thereafter, the dollar amount is equal to the number of annuity units payable each month multiplied by the interim annuity unit value for the annual income change method as of the calculation date.

► If the annuity units being commuted are payable under the monthly income change method, the dollar amount is that scheduled to be paid for any payment that has already been valued on a prior payment valuation date for the monthly income change method, and, thereafter, the dollar amount is equal to the number of annuity units payable each month multiplied by the interim annuity unit value for the monthly income change method as of the calculation date.

● **Transfers to TIAA:** Some CREF contracts and certificates allow annuitants to transfer annuity units from a CREF account to a companion TIAA contract. The value used to determine benefits in TIAA will be the actuarial present value, calculated on the actuarial basis then in use for participants beginning income in CREF, of an annuity. The annuity will begin with the payment due after the next payment valuation date for the monthly income change method that is on or after the

**CREF's Rules of the Fund**

effective date of the transfer, and the annuity is payable for as long as the annuity units being transferred are payable.

▶ If the annuity units being transferred are payable under the annual income change method, the dollar amount used in the calculation is that scheduled to be paid through the following April 1, and thereafter is equal to the number of annuity units payable each month multiplied by the interim annuity unit value for the annual income change method as of the effective date of the transfer.

▶ If the annuity units being transferred are payable under the monthly income change method, the dollar amount used in the calculation is equal to the number of annuity units payable each month multiplied by the interim annuity unit value for the monthly income change method as of the effective date of the transfer.

## REDETERMINATION OF NUMBER OF ANNUITY UNITS BECAUSE OF AN INCORRECT STATEMENT OF AGE

If a participant's date of birth, as stated in a CREF certificate under which unit-annuity payments are being made, is incorrect, the number of annuity units payable each month, beginning when the correction is made and continuing throughout the subsequent duration of the annuity, is appropriately redetermined by actuarial formula.

The redetermined number of annuity units is equal to the number of annuity units currently payable under each income change method from each Account Class multiplied by a factor equal to A minus B, all divided by C, as defined below. All present values are calculated as of the original commencement date of the unit-annuity, on the income option chosen and on the actuarial basis then in use.

A. The actuarial present value of an annuity due of $1 per month payable for as long as such annuity units are payable, based on the incorrect age that was used in the initial calculation.

B. The actuarial present value of an annuity due of $1 per month payable for as long as such annuity units are payable, but not beyond the correction date, based on the correct age as of the initial calculation date.

C. The actuarial present value of an annuity due of $1 per month payable after the correction date, for as long as such annuity units are payable, based on the correct age as of the initial calculation date.

*President and*
*Chief Executive Officer*

# NOTICE

## NEW JERSEY LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of New Jersey who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the New Jersey Life and Health Insurance Guaranty Association.

The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force.

The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

## DISCLAIMER

**The New Jersey Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in New Jersey. You should not rely on coverage by the New Jersey Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. *However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy.***

**The New Jersey Life and Health Insurance Guaranty Association**
**521 Newman Springs Road, Suite 22**
**Lincroft, NJ 07738**

**State of New Jersey**
**Department of Banking and Insurance**
**20 West State Street**
**P.O Box 325**
**Trenton, NJ 08625**

The state law that provides for this safety-net coverage is called the New Jersey Life and Health Insurance Guaranty Association Act, N.J.S.A. 17B:32A-1, et seq, (the "Act").

(please turn to back of page)

## COVERAGE

The following is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

Generally, individuals will be protected by the Life and Health Insurance Guaranty Association if they live in New Jersey and hold a life, health or long term care insurance contract, annuity contract, or if they are insured under a group insurance contract, issued by a member insurer.

The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this Association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- the policy is issued by an organization which is not a member of the New Jersey Life and Health Insurance Guaranty Association.

The Association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate as more fully described in Section 3 of the Act;
- dividends;
- credits given in connection with the administration of a policy by a group contractholder;
- employers' plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them).

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the Association is obligated to pay out. The Association cannot pay more than what the insurance company would owe under a policy or contract.

With respect to any one insured individual, regardless of the number of policies or contracts, the Association will pay not more than $500,000 in life insurance death benefits and present value annuity benefits, including net cash surrender and net cash withdrawal values. Within this overall limit, the Association will not pay more than $100,000 in cash surrender values for annuity benefits, $500,000 in life insurance death benefits or $500,000 in present value of annuities – again no matter how many policies and contracts that were with the same company, and no matter how many different types of coverages.

The Association will not pay more than $2,000,000 in benefits to any one contractholder under any one unallocated annuity contract.

There are no limits on the benefits the Association will pay with respect to any one group, blanket or individual accident and health insurance policy.

EXHIBIT 2



2008 NOTICE



**FINANCIAL SERVICES**
**FOR THE GREATER GOOD®**

730 Third Avenue
New York, NY 10017-3206

PRESORTED STANDARD
U.S. POSTAGE
**PAID**
TIAA-CREF

# 2008 NOTICE:
# YOUR PRERETIREMENT SURVIVOR BENEFITS

### Why am I receiving this notice?

Federal law requires that we send information about preretirement survivor benefits, if you are:

- *between the ages of 32 and 34 and we're currently receiving contributions on your behalf*

  **or**

- *under age 35 and have stopped working.* We assume you've stopped working if we're no longer receiving contributions on your behalf. (If you're still working, your employer may be sending contributions for you to another investment company.)

### What are preretirement survivor benefits?

These are the amounts that can be paid to your beneficiary. They include your contributions and earnings plus any employer contributions and earnings that are vested. Contributions become vested after you've worked for a period of time defined by your employer's plan. Survivor benefits can be paid as:

- Lifetime income through annuities with or without guaranteed periods
- Income for a set number of years
- Lump-sum cash withdrawals

### Can anyone be my beneficiary? Are there exceptions?

Anyone can be your beneficiary. **But, if you're married, the law requires us to pay 50% of your benefits to your surviving spouse.** The other 50% can go to any beneficiary you choose. However, if you participated in state college/university and/or certain church plans, you don't have to leave 50% to your surviving spouse. This exception also applies to benefits from private institutions with no contributions since August 22, 1984.

### What if I don't want my spouse to be my beneficiary?

**Your spouse's rights can be waived** if you're married and you want more than 50% of your benefits to go to someone else. To waive spousal rights, you must be at least 35 years old, or if you're younger, you must have stopped working. Also, you must give us a written waiver with your spouse's consent, the nonspouse beneficiary's name, and both your spouse's and your signatures. A waiver is official **only** after a notary public acknowledges or your employer's benefits office verifies your spouse's signature.

### May I revoke my waiver?

Your spouse can't but you can. If you want to revoke it, just complete a new beneficiary form and name your spouse as primary beneficiary for at least 50% of your benefits. If you remarry or decide to change your nonspouse beneficiary, you and your spouse will have to complete a new waiver and beneficiary designation change form.

### Where can I get more information?

Call us at **800 842-2776,** Monday through Friday from 8 a.m. to 10 p.m. and Saturday from 9 a.m. to 6 p.m. (ET). For more information about your account, log on to the secure portion of our website at **tiaa-cref.org** by entering your User ID and password. If you haven't logged in before, just follow the easy instructions.

F9199 (12/08)